MULLIN HOARD & BROWN, L.L.P.
David R. Langston, SBN: 11923800
Brad W. Odell, SBN: 24065839
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
drl@mhba.com
bodell@mhba.com
*Counsel for Debtors, Reagor-Dykes*
*Motors, LP; Reagor-Dykes Imports, LP;*
*Reagor-Dykes Amarillo, LP; Reagor-Dykes*
*Auto Company, LP; Reagor-Dykes*
*Plainview, LP; Reagor-Dykes Floydada, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>**REAGOR-DYKES MOTORS, LP**<br><br>Debtor. | § § § § § | Case No. 18-50214-rlj11 |
| IN RE:<br><br>**REAGOR-DYKES IMPORTS, LP**<br><br>Debtor. | § § § § § § | Case No. 18-50215-rlj11<br>(Jointly Administered Under<br>Case No. 18-50214) |
| IN RE:<br><br>**REAGOR-DYKES AMARILLO, LP**<br><br>Debtor. | § § § § § § | Case No. 18-50216-rlj11<br>(Jointly Administered Under<br>Case No. 18-50214) |
| IN RE:<br><br>**REAGOR-DYKES AUTO COMPANY, LP**<br><br>Debtor. | § § § § § § | Case No. 18-50217-rlj11<br>(Jointly Administered Under<br>Case No. 18-50214) |
| IN RE:<br><br>**REAGOR-DYKES PLAINVIEW, LP**<br><br>Debtor. | § § § § § | Case No. 18-50218-rjl11<br>(Jointly Administered Under |

Case No. 18-50214)

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES FLOYDADA, LP** | § | **Case No. 18-50219-rlj11** |
| | § | **(Jointly Administered Under** |
| Debtor. | § | **Case No. 18-50214)** |

## DEBTORS'-IN-POSSESSION EMERGENCY JOINT APPLICATION TO EMPLOY CHIEF RESTRUCTURING OFFICER

TO THE HONORABLE BANKRUPTCY JUDGE:

Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP (each a "Debtor," and collectively, the "Debtors") hereby move the Court for an order authorizing the Debtors to employ BlackBriar Advisors LLC as Chief Restructuring Officer of the Debtors ("Application"). In support of this Application, the Debtors respectfully state as follows:

### I. JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.     INTRODUCTION

2.     On August 1, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties, affairs, and assets as debtors-in-possession.

### III.    *THE DEBTORS' BACKGROUND*

3.    The Debtors are Texas limited partnerships which own and operate auto dealerships in and around West Texas. The Debtors make up a part of what is known as the Reagor-Dykes Auto Group.

4.    Reagor-Dykes Motors, LP operates two dealerships: Spike Dykes Ford Lincoln in Lamesa, Texas and Reagor-Dykes Auto Mall in Midland, Texas. Spike Dykes Ford Lincoln sells both new and used vehicles. Reagor-Dykes Auto Mall sells used vehicles. Each location also provides maintenance and service on vehicles for its customers. Reagor-Dykes Motors, LP has 80 employees.

5.    Reagor-Dykes Imports, LP operates two dealerships: Reagor-Dykes Mitsubishi in Lubbock, Texas and Reagor-Dykes South in Lubbock, Texas. Reagor-Dykes Mitsubishi sells both new and used vehicles. Reagor-Dykes South sells used vehicles. Reagor-Dykes Mitsubishi provides maintenance and service on vehicles for its customers. Reagor-Dykes Imports, LP has 69 employees.

6.    Reagor-Dykes Amarillo, LP operates one dealership with two locations in Amarillo, Texas. Reagor-Dykes Amarillo, LP operates Reagor-Dykes Mitsubishi of Amarillo. At the Debtor's south location, the Debtor sells both new and used vehicles. At the Debtor's north location, the Debtor sells used vehicles. Reagor-Dykes Amarillo, LP provides maintenance and service on vehicles for its customers. Reagor-Dykes Amarillo, LP has 33 employees.

7.    Reagor-Dykes Auto Company, LP operates one dealership, Reagor-Dykes Ford Lincoln in Plainview, Texas. Reagor-Dykes Ford Lincoln sells both new and used vehicles. Reagor-Dykes Auto Company, LP provides maintenance and service on vehicles for its customers. Reagor-Dykes Auto Company, LP has 61 employees.

8. Reagor-Dykes Plainview, LP operates one dealership, Reagor-Dykes Toyota in Plainview, Texas. Reagor-Dykes Toyota sells both new and used vehicles. Reagor-Dykes Plainview, LP provides maintenance and service on vehicles for its customers. Reagor-Dykes Plainview, LP has 35 employees.

9. Reagor-Dykes Floydada, LP operates one dealership, Reagor-Dykes Chevrolet in Floydada, Texas. Reagor-Dykes Chevrolet sells both new and used vehicles. Reagor-Dykes Floydada, LP provides maintenance and service on vehicles for its customers. Reagor-Dykes Floydada, LP has 26 employees.

10. The ownership/control persons of the Debtors are Rick Dykes and Bart Reagor, both of whom have been integrally involved in the non-financial (operations, sales, marketing capital markets relationships) side of the Debtors' operations ("Ownership").

## IV. _INDEBTEDNESS OWED TO FORD MOTOR CREDIT COMPANY_

11. The Debtors obtained pre-petition floor financing from Ford Motor Credit Company ("Ford"). Ford holds six loans against the Debtors. Each loan provides various line limits on the new and used vehicles. The tables below summarizes the various loans and lines:

| Reagor-Dykes Motors, LP – Loan No. **3865 | | | |
|---|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance[1] |
| New Ford Line | $27,000,000.00 | $15,600,000.00 | $18,566,042.40 |
| Used Line | $11,000,000.00 | $11,000,000.00 | $2,841,869.52 |
| AOP Line | $500,000.00 | $500,000.00 | $921,904.58 |
| New Lincoln Line | $400,000.00 | $400,000.00 | $461,303.43 |
| Demo Line | $1,000,000.00 | $1,000,000.00 | $268,825.49 |
| Program Line | $50,000.00 | $50,000.00 | $158,734.00 |
| Ford-Lincoln Rent a Car | $200,000.00 | $200,000.00 | $71,120.92 |
| Multi MFGS Accom. | $100,000.00 | $100,000.00 | $0.00 |
| Ford Courtesy Trans | $150,000.00 | $150,000.00 | $377,069.10 |
| Ford FCTP P-Car | $100,000.00 | $100,000.00 | $489,937.44 |

---

[1] Outstanding balance as of August 2, 2018.

| Reagor-Dykes Imports, LP – Loan No. **1560 | | |
|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance |
| Mitsubishi New | $6,500,000.00 | $1,600,000.00 | $2,599,985.66 |
| Multi MFGS Used | $10,600,000.00 | $10,600,000.00 | $3,399,728.50 |
| Multi MFGS Accom. | $400,000.00 | $400,000.00 | $177,951.25 |
| Multi MFGS Demo | $100,000.00 | $100,000.00 | $74,041.25 |
| Multi MFGS Service | $250,000.00 | $250,000.00 | $27,450.00 |

| Reagor-Dykes Amarillo, LP – Loan No. **1558 | | |
|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance |
| Mitsubishi New | $4,000,000.00 | $1,300,000.00 | $3,354,420.56 |
| Multi MFGS Used | $5,800,000.00 | $5,800,000.00 | $2,581,743.81 |
| Multi MFGS Accom. | $300,000.00 | $300,000.00 | $54,315.00 |
| Multi MFGS Demo | $100,000.00 | $100,000.00 | $0.00 |
| Multi MFGS Service | $100,000.00 | $100,000.00 | $0.00 |

| Reagor-Dykes Auto Company, LP – Loan No. **4603 | | |
|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance |
| Ford New | $8,700,000.00 | $6,100,000.00 | $6,876,536.85 |
| Lincoln New | $950,000.00 | $550,000.00 | $308,237.30 |
| Multi MFGS Used | $7,000,000.00 | $7,000,000.00 | $1,873,577.50 |
| Multi MFGS Prog. | $50,000.00 | $50,000.00 | $92,525.00 |
| Multi MFGS Accom. | $400,000.00 | $400,000.00 | $112,800.00 |
| Ford Rent a Car | $200,000.00 | $200,000.00 | $0.00 |
| Multi MFGS Demo | $600,000.00 | $600,000.00 | $370,193.61 |
| Multi MFGS AOP | $300,000.00 | $300,000.00 | $0.00 |
| Ford Courtesy Trans | $550,000.00 | $550,000.00 | $469,330.03 |
| Ford FCTP P-Car | $450,000.00 | $450,000.00 | $946,649.04 |

| Reagor-Dykes Plainview, LP – Loan No. **2377 | | |
|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance |
| Toyota New | $10,000,000.00 | $6,100,000.00 | $8,620,070.46 |
| Multi MFGS Used | $4,700,000.00 | $4,700,000.00 | $2,145,682.50 |
| Multi MFGS Demo | $500,000.00 | $500,000.00 | $127,485.73 |
| Multi MFGS Accom | $250,000.00 | $250,000.00 | $78,100.00 |
| Multi MFGS Service | $200,000.00 | $200,000.00 | $0.00 |

| Reagor-Dykes Floydada, LP – Loan No. **2739 | | |
|---|---|---|
| Line Name | Original Line Limit | Current Line Limit | Outstanding Balance |
| Chevrolet New | $12,000,000.00 | $7,050,000.00 | $6,912,431.67 |
| Multi MFGS Used | $2,000,000.00 | $2,000,000.00 | $587,127.50 |
| Multi MFGS Accom | $50,000.00 | $50,000.00 | $0.00 |
| Multi MFGS Demo | $300,000.00 | $300,000.00 | $133,498.91 |
| Multi MFGS AOP | $200,000.00 | $200,000.00 | $0.00 |
| Multi MFGS Service | $150,000.00 | $150,000.00 | $0.00 |

12. Ford asserts its debt with the Debtors is secured by the Debtors' vehicle inventory, titles, parts, equipment, furniture, fixtures, and general intangibles, and income generated from the sale of those assets.

13. Ford asserts that the Debtors have defaulted under the loans on account of being out of trust by $41 million. The Debtors dispute this number. Based on the alleged default, Ford has stopped all funding on the loans.

## V. *EVENTS LEADING TO CHAPTER 11 FILINGS*

14. To monitor the Debtors' operations and Ford's loans and exposure, Ford periodically conducts audits of the Debtors' dealerships. Ford's last audit of the Debtors was done in June of 2018. According to Ford's audit, the Debtors received not only a clean bill of health, but were commended on the performance the Debtors were experiencing at the dealerships.

15. Despite the praise received by Ford in just the past couple months, Ford conducted another audit in July, despite having done one in just last month. Based on this audit, Ford asserts that the Debtors have been failing to meet certain standards under their floor financing requirements. On July 26, 2018, Ford came in, conducted an audit and then on July 30, 2018, stopped funding the Debtors under their lines of credit which fund their floor plans.

16. Additionally, Ford provides financing to the Debtors' customers when a customer purchases a vehicle from the Debtors. Ford ceased providing indirect lending to the Debtors and their customers. Needless to say, this froze the Debtors operations, dried up their cash, and forced them to seek protection of this Court to keep the doors open and operating.

17. Having been taken completely by surprise by the alleged findings of Ford in its last audit, the sweeping of all the Debtors' cash that Ford could sweep and control, the findings

to date as to the concerning activities of the former CFO and perhaps others working in concert within the Debtors' operations, the Debtors and Ownership have been working non-stop to determine (this is a non-exclusive list): (i) the size of the cash hole created by the Ford sweeping of Debtors' cash, (ii) the true-up as best possible of what Ford has done with the funds swept; (iii) the nature of the actions and conduct of the former CFO and perhaps others working in concert that have caused losses to the Debtors (just what did they do?); (iv) how best to reverse the financial improprieties once determined (both to avoid any further losses and so that the Debtors' can produce viable and trustworthy financial data); (v) the size of the loss created by actions of the former CFO and perhaps others working in concert, (vi) the losses if any to other lenders created by the same conduct, (vii) the use by Ford of the cash swept (viii) the amount of cash needed immediately to right operations (e.g., to effectuate trade-in payoffs, clear up outstanding balances at lending institutions and the Debtors' banks), (ix) capital needs to move forward and to create the best chance for consensual use of cash collateral, (x) the possible sources of post-petition financing from third party sources, and (importantly) (xi) the extent to which the individual assets of Ownership can be best deployed to assist the Debtors on an emergency/immediate basis.

18.     Because of the departure of the former CFO and the current state of flux in which the Debtors are trying to make certain their financial data can be reliable and relied upon, the Debtors and Ownership have determined it necessary to bring on through Court approval a Chief Restructuring Officer firm ("CRO") and a person within the CRO, to provide the Debtors with (i) a person, Bob Schleizer who is a Certified Turnaround Professional ("CTP") and Certified Insolvency Restructuring Advisor ("CIRA"), through whom the CRO will act as CRO, a person with extensive crisis management experience who can provide an independent presence through

whom the Debtors can communicate and operate while in chapter 11, and (ii) the CRO firm - BlackBriar Advisors LLC ("BlackBriar"), which has extensive financial and accounting experience within turn around and emergency financial conditions to provide both investigative and ongoing accounting and CFO services to the Debtors.

19.     The Debtors and Ownership understand that it is necessary for the interests of the Debtors' customers, creditors, the Debtors' communities and public at large, and importantly, the sanctity of the chapter 11 reorganization process that an independent, Court approved presence be brought in by the Debtors and Ownership to perform the services mentioned herein.

20.     Specifically, Ownership understands and embraces the prospect of BlackBriar conducting as part of its duties the inquiry into the extent to which there has been financial wrongdoing on the part of the former CFO and any other persons within the Debtors' organization, INCLUDING WITHOUT LIMITATION OWNERSHIP AND PERSONS RELATED TO OWNERSHIP.  IN EFFECT, OWNERSHIP HAS DETERMINED IT NECESSARY THAT BLACKBRIAR INVESTIGATE OWNERSHIP, in the name of transparency and as necessary to make certain the Debtors' fulfill their obligations within the chapter 11 process.

21.     Additionally, and just as importantly, the duties must include providing CFO services, given the departure of the former CFO.  One of the reasons the debtors and Ownership chose BlackBriar is its abilities to provide such services (the founders previously were partners with Tatum CFO Partners, a nationally recognized firm that provides independent CFO services to businesses worldwide).  It is of utmost importance that the Debtors' ongoing financial data be reliable, and that this reliability is effectuated in the most efficient means possible. BlackBriar is most capable to be able to accomplish this task efficiently.

22.     The need for retention of BlackBriar is evident, and both the Debtors and Ownership seek emergency approval of the CRO and BlackBriar, so that the necessary work can begin.

## VI.     *CHIEF RESTRUCTURING OFFICER*

23.     The Debtors file this Application to hire BlackBriar as CRO, and Robert (Bob) Schleizer to be the Partner in Charge for the engagement, and to act for BlackBriar as the CRO person. As well, the Debtors seek to have the duties of BlackBriar include the providing of third party accounting/CFO services as described above.

24.     The experience and qualifications of BlackBriar are outlined in the attached Exhibit "A," which also includes their rates for services and terms of engagement.

## VII.     *RELIEF REQUESTED*

25.     By this Application, Debtors seek to retain and employ BlackBriar Advisors LLC as Chief Restructuring Officer for Debtors, with the responsibilities and authority described herein, and to oversee and work with Ownership on the Debtors' operations, and/or to oversee the Debtor's reorganization efforts, if any. In support of this Application, Debtors submit the Declaration of Robert (Bob) Schleizer, who will be the Partner in Charge on this engagement with the Debtors (the "Declaration"), attached hereto as Exhibit "B".

## VIII.     *BASIS FOR RELIEF*

26.     Section 327(a) of the Bankruptcy Code provides that the Debtors are permitted to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

27.     Bankruptcy Rules 2014 provides that an application for retention of a professional person include:

[S]pecific facts showing the necessity for the employment, the names of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

FED. R. BANKR. P. 2014.

28. Further, this Court may approve retention and payment of a chief restructuring officer under § 363. *See, e.g., In re Colad Group, Inc.*, 324 B.R. 208, 215 (Bankr. W.D.N.Y. 2005); *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at *5 (Bankr. S.D.N.Y 2007). The retention of interim corporate officers such as a CRO and other temporary employees is proper under section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(l). In approving retention under § 363, courts look to whether the debtor has "a good business reason" in seeking approval of the application. *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at *5.

29. The debtor's business judgment is given significant weight. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm of Equity Sec Holders v. Lionel Corp. (In re Lionel Corp.)* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware &Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (courts have applied a "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from decision made

arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"). The business judgment rule is respected within the context of a chapter 11 case and shields a debtor's management from judicial second-guessing.

30.     Bankruptcy courts have considered the propriety of a debtor in possession's employment of a corporate officer under Bankruptcy Code Section 363 on numerous occasions and regularly concluded that it is an appropriate exercise of the debtor's business judgment to employ a corporate officer in such manner. *See, e.g. In re Seahawk Drilling, Inc.*, Case No. 11-20089 (Bankr. S.D. Tex. Feb. 14, 2011); *In re Gulf Coast Oil Corp.*, Case No. 08-50213 (Bankr. S.D. Tex. Sept. 29, 2008).

31.     While Debtors believe themselves fully capable of fulfilling their roles as debtors-in-possession consistent with their obligations under the Bankruptcy Code, Debtors have determined in their business judgment that the retention of a Chief Restructuring Officer ("CRO") will provide the Debtors with stability, oversight, and operational assistance to determine and resolve the disputes between Ford and the Debtors, as well as give Ford, the Debtors, other creditors, and parties in interest greater confidence in the Debtors operations. Such retention will significantly reduce the adversarial nature of this case and will permit Debtors a reasonable period to explore their options regarding a possible sale of assets or other form of asset disposition or reorganization, overseen by an independent person, as the CRO determines is the best direction for these Debtors. In addition to assisting with the working relationship with Ford, Debtors believe that the employment of BlackBriar will enhance their ability to analyze from an independent perspective potential purchasers, the possibility of a viable plan of reorganization, to explore whether there are possible exit financing options, and, with the expertise of BlackBriar, potentially to improve operations, controls, and capital. Debtors have

thus determined in their business judgment that retaining BlackBriar will benefit Debtors and their estate while at the same time fulfilling the policy of chapter 11 of the Bankruptcy Code to allow Debtors the chance, as debtors-in-possession, to control their own reorganization process. *See In re Blue Stone Real Estate, Construction & Dev. Corp.*, 392 B.R. 897, 905 (Bankr. M.D. Fla. 2008).

## IX. *SERVICES TO BE PROVIDED*

32.     As Chief Restructuring Officer, BlackBriar will provide the following services:

a. review all aspects of operations, accounting, and the business activities of the Debtors and because of the affiliation of certain non-debtors, the accounting services for certain non-Debtor operating entities, the work for which will be necessary to provide full accounting pictures of the Debtors;

b. evaluate the Debtors inventory and other assets;

c. evaluate the Debtors capital needs;

d. set or adjust compensation for other employees of Debtors, if necessary;

e. review Debtors' books and records;

f. conduct such investigation as it deems necessary to fulfill the required components of its engagement as described above;

g. direct the preparation of budget projections, cash disbursements and receipts and results of operations to determine long and short-term needs;

h. to provide CFO and outside accounting services that will include preparation of the Debtors' Monthly Operating Reports;

i. oversee the analysis and investigation of possible recapitalization or merger options and the determination of whether any such possibilities could reach fruition;

j. pursue and oversee a sale process for Debtors' assets if BlackBriar in consultation with Ownership determines it is in the best interests of the estates;

k. oversee the process for determining whether  formulation and filing of a joint chapter 11 plan and disclosure statement is a viable possibility; and

l. perform other services as directed by the Bankruptcy Court and mutually agreed by BlackBriar.

33. Robert (Bob) Schleizer, the Partner in Charge on this engagement with BlackBriar, will be employed as a corporate officer of the Debtors and, as such, will consult with Debtors' Ownership in connection with his duties.

## X. *DISINTERESTEDNESS OF BLACKBRIAR ADVISORS LLC*

34. To the best of Debtors' knowledge and based upon the Declaration, BlackBriar is a "disinterested person" as that term is defined in § 101(14), as modified by § 1107(b) of the Bankruptcy Code.

35. To the best of Debtors' knowledge and based upon the Declaration, BlackBriar does not hold or represent an interest adverse to Debtors or their estates, in accordance with § 327 of the Bankruptcy Code.

36. To the best of Debtors' and BlackBriar's knowledge, information, and belief, and based upon the Declaration, (a) BlackBriar does not have any connection with Debtors, creditors of the Debtors, the United States Trustee's office, any person employed in the office of the United States Trustee's office, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; except as disclosed in the Declaration; (b) BlackBriar is not a creditor, equity security holder, or insider of Debtors; (c) none of BlackBriar's partners or associates are, or were, within two years of the Petition Date, a director, officer, or employee of Debtors; and (d) BlackBriar (or any of its partners or associates) neither holds nor represents an interest adverse to Debtors, their estates, or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

37. In addition, BlackBriar represents that it is not a potential direct or indirect purchaser of Debtors' assets. Further, it agrees that in the event potential purchasers or investors

become known to it, it will immediately disclose any connections with such potential purchasers or investors.

38.     Debtor submits that retention of BlackBriar is in the best interest of Debtors, their estates, and the creditors.

## XI.     *TERMS OF RETENTION*

39.     As more fully set forth in the Engagement Letter attached to this Application, BlackBriar will be engaged to perform the duties described above and be paid on an hourly basis at the rates described in the Engagement Letter. As a professional of the Debtors' bankruptcy estates, BlackBriar will be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court dealing with Interim Compensation Procedures.

## XII.     *SHORTENED NOTICE AND NEED FOR EMERGENCY CONSIDERATION*

40.     The Debtors' believe that the need for a CRO in these cases is crucial to the survival of the Debtors businesses, the estates, and in the best interests of the creditors. The Debtors need the ability to bring in a CRO immediately to be able to investigate the financial transactions that led to the Debtors' need to file bankruptcy, to investigate the allegations/accusations of Ford, to investigate the potential for any wrongdoing by the Debtors' former CFO and Ownership, to stabilize the Debtors accounting functions, to immediately put into place strong accounting controls, and to provide CFO support upon the departure of the Debtors' former CFO. On account of these crucial needs, the Debtors seek to have this Application heard on an emergency basis in conjunction with the continued hearing on use of cash collateral on August 16, 2018 at 10:00 a.m. Debtors likewise seek to have notice shortened on this Application to no more than seven (7) days. The Debtors assert that shortened notice and emergency consideration are appropriate and proper in this situation.

WHEREFORE, the Debtors respectfully request that the Court set an emergency hearing on seven (7) days' notice, determine that such notice and opportunity for a hearing is reasonable under the circumstances, and upon hearing of the Application enter an order authorizing the Debtors to employ BlackBriar Advisors LLC as the Chief Restructuring Officer of the Debtors. Further, the Debtors pray for such other and further relief, at law or in equity, to which the Debtors may show themselves justly entitled.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553

/s/ David R. Langston
David R. Langston, SBN: 11923800
Brad W. Odell, SBN: 24065839
*Counsel for Debtors, Reagor-Dykes*
*Motors, LP; Reagor-Dykes Imports, LP;*
*Reagor-Dykes Amarillo, LP; Reagor-Dykes*
*Auto Company, LP; Reagor-Dykes*
*Plainview, LP; Reagor-Dykes Floydada, LP*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion was served on the following parties in interest via ECF on this 8th day of August 2018:

1.    Reagor Dykes Auto Group
1215 Ave. J
Lubbock, Texas 79401

2.    Keith Langley and Brandon K. Bains
Langley LLP
1301 Solana Blvd.
Bldg. 1, Suite 1545
Westlake, Tx. 76262
Email: klangley@l-llp.com and bbains@l-llp.com
***Attorneys for Ford Motor Credit***

3.    Donald Cram and Duane M. Geck
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Email: dmg@severson.com and dhc@severson.com
***Attorneys for Ford Motor Credit***

4.    U.S. Trustee's Office
1100 Commerce St., Room 9C60
Dallas, Texas 75242

5.    All parties receiving notice via ECF in this case.

I further certify that a true and correct copy of the foregoing Motion will be served on the following parties in interest via regular U.S. Mail on this 9th day of August 2018:

1.    All parties listed on the attached mailing list being the 20 Largest Unsecured Creditors.

/s/ David R. Langston
David R. Langston

Reagor Dykes Auto Group
1215 Ave. J
Lubbock, Texas 79401

United States Trustee
Attn: Erin Schmidt/Stephen McKitt
1100 Commerce Street, Room 976
Dallas, TX 75242

Keith Langley and
Brandon Bains
Langley LLP
1301 Solana Blvd.
Bldg. 1, Suite 1545
Westlake, Tx. 76262

Donald Cram and
Duane M. Geck
Severson & Werson
One Embarcadero Center,
Suite 2600
San Francisco, CA 94111

Jim Parrish
Baker Hostetler
200 South Orange Ave., Suite 2300
Orlando, Fl. 32801-3432

John Massouh
Sprouse Shrader Smith,
PLLC
701 S. Taylor, Suite 500
Amarillo, Tx. 79101

Laura Monroe
Perdue Brandon Fielder et al
P.O. Box 817
Lubbock, Tx. 79408

Reuben Hancock
Reuben L. Hancock PC
7480 Golden Pond Place, Ste 200
Amarillo, TX 79121

Thomas A. Connop
Locke Lord LLP
2200 Ross Ave., Suite
2800
Dallas, Tx 75201

Roger Key
Key Terrell & Seger LLP
P.O. Box 64968
Lubbock, Tx. 79464

Roger Cox
Underwood
P.O. Box 9158
Amarillo, Tx. 79105-9158

AER Manufacturing
P.O. Box 974180
Dallas, TX 75397-4180

American Tire Distributors
Payment Processing Center
P.O. Box 889
Huntersville, NC 28070-0889

Bristo Battery
124 E. Slaton Rd.
Lubbock, TX 79452

Bumper Manufacturing
2500 Minis Drive
Haltom City, TX 76117

Concho Supply Inc.
P.O. Box 3487
San Angelo, TX 76902

Descriptive Auto Design, LLP
P.O. Box 64366
Lubbock, TX 79464

Earl Owens Company,
LLC
P.O. Box 111787
Carrollton, TX 75011

Fender Truck Accessories
P.O. Box 2576
Midland, TX 79702

Keystone Automotive Operations
P.O. Box 417450
Boston, MA 02241-7450

Lubbock Auto Spa
Attn: Jeff Barthalomen
3305 81st St.
Lubbock, TX 79423

Meyer Distributing
560 East 25th St.
Jasper, IN 47546

Napa Auto Parts
310 N 4th
Lamesa, TX 79331

O'Reilley Auto Parts
P.O. Box 9464
Springfield, MO 65801-
9464

Reid Bethel Tire Co.
P.O. Box 29
Lamesa, TX 79331

Reynolds and Reynolds
P.O. Box 182206
Columbus, OH 43218-2206

Sam Pack's Five Star Ford
P.O. Box 910227
Dallas, TX 75391

Sewell Ford Inc
P.O. Box 3432
Odessa, TX 79760

The Reinalt-Thomas Corporation
P.O. Box 29851
Phoenix, AZ 85038-9851

Valvaline LLC
Attn.: Vic Stephenson
3499 Blazer Parkway
Lexington, KY 40509

1-800 Radiator
P.O. Box 2786
Amarillo, TX 79105

Advantage Supply
P.O. Box 471103
Fort Worth, TX 76147

Alsco Inc.
Attn: Jim McIntire
404 N. University
Lubbock, TX 79415

American Tire Distribution
8814 Senator Circle
Wolfforth, TX 79382

Auto Plus
3319 82nd St.
Lubbock, TX 79423

Auto Trim & UP Fischer
Auto Glass
6832 Wayne Ave., Suite F
Lubbock, TX 79424

Auto Zone Stores, Inc.
P.O. Box 116067
Atlanta, GA 30368-6067

CND Body Works
8809 Valencia Ave.
Lubbock, TX 79424

Digicut Systems
7700 E. 38th St.
Tulsa, OK 74145

Discount Tire Company
P.O. Box 29851
Phoenix, AZ 85038-9851

Frontier Dodge
5801 Spur 327
Lubbock, TX 79424

Gene Messer
6161 Rothway Street
Houston, TX 77040

Quantumlinq Computing
P.O. Box 6682
Lubbock, TX 79493

R&D Cleaning & Floor Service
Attn:Robert Lee
7420 Glove Ave.
Lubbock, TX 79404

Scoggin Dickey Buick
GMC
Dave Zwiacher
P.O. Box 64910
Lubbock, TX 79464

South Plains Towing LLC
P.O. Box 64368
Lubbock, TX 79464

UPS
Lockbox 577
Carol Stream, IL 60132

West Texas Pal, Inc.
P.O. Box 131809
Spring, TX 77393

A&R Plumbing
P.O. Box 3447
Amarillo, TX 79116

Airgas USA, LLC
P.O. Box 676015
Dallas, TX 75267-6015

American Tire
Distributors
9151 S. Georgia St.
Amarillo, TX 79118

Bob Howard Parts Distribution
3501 N. Santa Fe
Oklahoma City, OK 73118

CDK Global
P.O. Box 88921
Chicago, IL 60695-1921

Caprock Marketing LLC
P.O. Box 6447
Lubbock, TX 79493

Chestersweb.Com
10300 S. Georgia
Amarillo, TX 79118

Dallas Dodge Chrysler Jeep
11550 LBJ Fwy.
Dallas, TX 75238

Greg Lair
P.O. Box 510
Canyon, TX 79015

James Burgess
7814 Farrell
Amarillo, TX 79121

Lamar Companies
P.O. Box 96030
Baton Rouge, LA 70896

Marcella Richardson
2015 Ron Dr.
Amarillo, TX 79107

Quality Vending
1000 S.E. 6th
Amarillo, TX 79105

Safety Kleen
P.O. Box 650509
Dallas, TX 75265

Steve Dickey
402 NE 6th
Tulia, TX 79088

Windshields Unlimited Inc.
4004 SW 34th Ave.
Amarillo, TX 79109

American Glass Distributors
8211 Hwy. 87
Lubbock, TX 79423

American Tire
Distributors
9151 S. Georgia St.
Amarillo, TX 79118

Bristo Battery
P.O. Box 3608
Lubbock, TX 79452

Concho Supply
4102 Sherwood Way
San Angelo, TX 76902

Dealers Truck Equipment,
Co.
P.O. Box 31435
Shreveport, LA 71130

Finishmaster
Attn: Danny McCarley
P.O. Box 744316
Atlanta, GA 30374-4316

High Plains Radio Network
Attn: Chris Moore
P.O. Box 1478
Plainview, TX 79073-1478

Hurricane Office Supply
& Printing
Attn: Dean Trew
1407 East FM 1585
Lubbock, TX 79423

Keystone Automotive
Industries
1411 S. Loop 289
Lubbock, TX 79423

Lesco Distributing
1628 W. Crosby Rd.
Carrollton, TX 75006

Maurry Powe
1000 N I-27
Plainview, TX 79072

NTS Communications
Attn: Cyrus Driver
P.O. Box 10730
Lubbock, TX 79408-3730

Officewise Furniture and Supply
Attn: Tommy Sansom
P.O. Box 2688
Amarillo, TX 79105-2688

Valvoline LLC
P.O. Box 117131
Atlanta, GA 30368-7131

Tucky's Auto Parts
P.O. Box 1973
Plainview, TX 79072

Dealer Tire, LLC
3711 Chester Ave.
Cleveland, OH 44114

Earl Owen Company
1235 West Trinity Mills
Rd.
Carrollton, TX 75006

Johnson Auto Glass
3709 Ave. Q
Lubbock, TX 79412

Lubbock Sound Equipment Inc.
P.O. Box 93366
Lubbock, TX 79493

Pearl Proximity LLC
2701 East Plano Pkwy
Ste. 100
Plano, TX 75074

Roger Foote Lawn Care
2601 W. 17th St.
Plainview, TX 79072

ADI
5901 Spur 327
Lubbock, TX 79424

AT&T
P.O. Box 105414
Atlanta, GA 30348

Ameripride Services, Inc.
P.O. Box 1594
Bemidji, MN 56619

CPW Lubbock
4319 Hurron Ave., Suite A
Lubbock, TX 79407

Clear Vu Auto Glass
7415 82nd St.
Lubbock, TX 79424

Custom Sound Works
5131 80th St.
Lubbock, TX 79424

Driveline Express
1615 Buddy Holly Ave.
Lubbock, TX 79401

Holmes Plumbing
1432 CR 242
Floydada, TX 79235

Safety Kleen
2600 N. Central Express
Suite 400
Richardson, TX 75080

South Plains Parts Co.
1103 S. Ralls Hwy.
Floydada, TX 79235

Stephen Fyffe
c/o Michael Carper and
Robert Nebb
Law Offices of Michael
Carper
1102 Main St.
Lubbock, TX 79401

Suddenlink
1820 SSW Loop 323
Tyler, TX 75701

Mark D. Sherrill
Eversheds Sutherland, LLP
1001 Fannin, Ste. 3700
Houston, Tx. 77002

Thomas Byrne
Eversheds Sutherland, LLP
999 Peachtree Street NE, Ste. 2300
Atlanta, GA  30309

Michael G. Kelly
Kelly Morgan Dennis Corzine & Hanson, PC
P.O. Box 1311
Odessa, TX 79760-1311

Bruce Bagelman
Stinson, Leonard Street, LLP
3102 Oak Law Ave., Suite 777
Dallas, TX  75219

Mark S. Carder
Stinson Leonard Street, LLP
1201 Walnut, Suite 2900
Kansas City, MO  64106

Mark Harmon
Boerner Dennis & Franklin, PLLC
P.O. Box 1738
Lubbock, TX 79408

Stephen P. Strohschein
McGlinchey Stafford, PLLC
301 Main St., 14th Fl.
Baton Rouge, LA 70801

Stephanie Laird Tolson
McGlinchey Stafford, PLLC
1001 McKinney, Suite 1500
Houston, TX 77002

Jason Rudd
Wick Phillips
3131 McKinney Ave., Suite 100
Plano, TX 75024

Lauren Drawhorn
Wick Phillips
100 Throckmorton Street
Suite 1500
Fort Worth, TX 76102



August 8, 2018

Mr. Bart Reagor
**Reagor-Dykes Auto Company, LP, et al.**
1215 Ave J
Lubbock, TX 79401

Re: Engagement Agreement

Dear Mr. Reagor:

BlackBriar Advisors LLC is pleased to have the opportunity to provide financial and operational advisory services to serve as Chief Restructuring Officer ("CRO") to Reagor-Dykes Auto Company, LP, Debtor in Possession Case No. 18-50215-rj11, Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Motors, LP (Case No. 18-50214), and Reagor-Dykes Plainview, LP (Case No. 18-50218) (collectively known as "Debtors," "Reagor-Dykes," or the "Company").

## SCOPE OF SERVICES

The financial advisory services (the "Services") that BlackBriar Advisors LLC ("BlackBriar") will perform as CRO for the Company include:

- Assistance with the preparation of Chapter 11 bankruptcy schedules including the Statement of Financial Affairs and supporting schedules;
- Review/prepare cash flow forecasts and budgets to be filed with the Court;
- Preparation of schedules and monthly operating reports to support Chapter 11 administration;
- Conduct all investigations deemed necessary to determine any financial wrongdoing done on the part of any present, former, or both officers, directors, and owners of the Debtors;
- Conduct all investigations deemed necessary related to the lending relationship between Ford Motor Credit Company and the Debtors;
- Provide testimony to support Debtors in bankruptcy hearings as required;
- Administer post-petition banking facilities;
- Secure Debtor in Possession financing, as required during the case;
- Negotiate with existing creditors to restructure current financing agreements to support the Company's restructuring/reorganization plan;
- Secure exit financing, as required to support the Company's reorganization, as required;
- Review ongoing strategic initiatives and assess financial and liquidity impact;
- Negotiate/Communicate with lenders, creditors and stakeholders;
- Direct operations with management including oversight and approval of disbursements, approval of all contracts for construction completion and administrative services;

**3131 McKinney Ave., Ste 600, Dallas, TX 75204**
**Phone: 214.599.8600**
www.blackbriaradvisors.com



- Preparation of bi-weekly project progress reports and review financial results with stakeholders and lenders;
- Such other duties as mutually agreed upon.

Services will be performed by under the direction of Robert Schleizer who will serve as CRO and Lyndon James, Senior Partner who will support the CRO as acting Chief Financial Officer. BLACKBRIAR will provide additional professionals as required to support the Company during the bankruptcy process.

## FEES

Services will be provided to you at the following rates:

| | | |
|---|---|---|
| Partners and Managing Directors | $395 | per hour |
| Senior Directors | 345 | per hour |
| Directors | 295 | per hour |
| Senior Financial Analysts | 245 | per hour |
| Financial Analysts | 175 | per hour |
| Mileage | Published IRS rates per mile | |
| Actual Reasonable and Customary Meals and Travel Expenses. | | |

## WORK PRODUCT

The Company acknowledges and agrees that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by BLACKBRIAR pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without BLACKBRIAR's prior written consent. Furthermore, the Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein.  Upon full payment of all amounts due to us in connection with this engagement, the work product embodied in the deliverables set out in this engagement letter will become your sole and exclusive property, except as set forth below.

BLACKBRIAR and the Company acknowledge and agree that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by BLACKBRIAR pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without BLACKBRIAR's prior written consent. BLACKBRIAR further acknowledges that portions of its work product will be filed with the United States Trustee in connection with the pending Chapter 11 case and that any such filings will not constitute confidential Work Product.  The Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein.

## GENERAL TERMS

This engagement letter and the relationship established hereby shall be governed by all orders approving this engagement and compensation hereunder entered in the Debtors' bankruptcy cases described above, the laws of the State of Texas (without regard to its conflict of laws' provisions), and any dispute or claim arising out of or relative thereto shall be heard by the U.S. Bankruptcy Court for the Northern District of Texas, Lubbock Division (the "Bankruptcy Court"). This engagement letter constitutes the entire agreement between the parties and may be modified or amended only in writing signed by both parties, after proper approval from the Bankruptcy Court.

We are prepared to begin immediately. If the foregoing terms are acceptable, please acknowledge below.

Very truly yours,

**BlackBriar Advisors, LLC**

Agreed to and accepted by:

By: _____
Its:

Date: _____

 

## Robert Schleizer – *Managing Partner*

Professional career comprised of over thirty years of financial and operational experience serving private and public companies in financial and organization restructuring, crisis management, acquisitions and divestitures, and equity and debt financings. Industry expertise includes retail, real estate, construction, logistics and transportation, manufacturing and distribution.

He previously served as Chief Financial Officer and Director for PawnMart, Inc., a $50 million, 34 store specialty retail chain based in the Southeast since 2000. In addition to serving as CFO, he was a director and had served as interim CEO. He directed the sale of the company to the industry leader for $61 million in 2013.

As Managing Partner of BlackBriar, his recent engagements include serving as Receiver and Chief Restructuring Officer (CRO) for a $35 million revenue metal fabricator, CRO of a $60 million aviation parts reseller, CRO directing the operational and financial restructuring of a $35 million revenue private equity owned logistics company, directing sales, marketing and operations.

Prior to co-founding BlackBriar Advisors LLC, Bob served as Managing Director for BBK, an international financial advisory. Bob was responsible for establishing the Southwest office for BBK, as well as business development on a national basis. Responsibilities included operational oversight of professionals in the southwest market, as well as engagement execution. His engagements included serving as Chief Restructuring Officer for a $50 million revenue multi-state potato grower and processor handling complex financial issues in bankruptcy; providing financial advisor services to a distressed lumber mill; and restructuring and refinancing a southeastern non-profit organization.

Prior to BBK, Bob was the Restructuring Practice Leader in the Southwest region for Tatum LLC, where he directed distressed engagements including international companies during his ten years with Tatum. Bob had responsibility for staffing and overseeing clients in financial and operational distress. Bob held various interim management roles including Restructuring Advisor for a $200M private equity owned multinational appliance manufacturer and CFO overseeing the wind-down and sale of a motorcycle manufacturing firm disposing of assets via section 363 sale and public auctions.

. Bob's accomplishments also included:

- Directing a successful bankruptcy reorganization and merger as CFO of a public holding company that grew to a 34 specialty retail and finance chain in Georgia and North Carolina, by raising $35M of debt and equity.

 **Robert Schleizer –** *Managing Partner, BlackBriar Advisors LLC (continued)*

- Directing a financial and operational restructuring resulting in a return to profitable operations after consecutive annual losses as CFO of a $50M, privately-held family business specializing in transportation of bulk petroleum products

Bob's previous professional experience includes extensive real estate leasing, management and development, Vice President and CFO of a development-stage firm with proprietary video technology; COO and CFO of a regional trucking company; Owner of a crisis management firm providing financial consulting, leasing, development, renovation and real estate management expertise.

**Education and Certifications**
- Bachelor of Science in Accounting, Arizona State University
- Certified Insolvency Restructuring Advisor (CIRA)
- Certified Turnaround Professional

**Affiliations and Memberships**
- American Bankruptcy Institute
- Turnaround Management Association – Chairman – National Finance Committee
- State Bar of Texas – Bankruptcy Section (non-law section)
- Association of Insolvency & Restructuring Advisors
- National Association of Corporate Directors

**Contact Information:**

**Office:** 214.483.1261
**Cell:** 214.882.8300
**Fax:** 214.483.1271
**Email:** bschleizer@blackbriaradvisors.com

**Office Address:** 3131 McKinney Ave., Suite 600
Dallas, TX 75204

 

## D. Lyndon James – *Founding Partner*

Lyndon is a financial and operational professional with over thirty years of executive leadership positions in diversified industries. Lyndon has extensive energy, mining, manufacturing, retail, distribution, and insurance experience.

Prior to co-founding BlackBriar Advisors LLC, Lyndon was a Senior Director at BBK, Ltd., an international financial advisory firm. He led the energy sector practice for the firm, developing extensive relationships in the exploration and production, refining and petrochemicals, and services sectors of the market. Prior to joining BBK, Lyndon was a Partner of Tatum, LLC in Dallas where he led many successful engagements as CEO and CFO.

Recent engagements include:

- Serving as Financial Advisor to a project team developing and enhancing internal controls and revenue procedures and processes to facilitate the refinancing of a $13 million credit facility for an international $80 million revenue private equity owned oil field services enterprise;

- Serving as CFO and Financial Advisor to a financial troubled $45 million commercial electrical parts distributor. During his tenure, he directed a restructuring of the finance department, negotiated the exit of the CEO, negotiated extensions of a $12 million credit facility multiple times during the restructuring, led the company through an ERP system installation and directed a sale process that netted the owner nearly 3X his investment as a result of the turnaround.

- Serving as CEO for an oil field service company and orchestrating the sale of the company to a private party to resolve operational and financial issues.

- Serving as expert witness in 5 separate lawsuits involving accounting and management issues related to oil and gas investment schemes, including the development of expert reports and testifying in federal and state courts.

- Serving as restructuring advisor for an oil and gas E&P company directing the sale of the firm's assets to a private equity firm through a Chapter 11, section 363 sale process.

- Serving as interim CFO for a start-up E&P company including completion of a $4 million debt agreement and initiating the natural gas hedging program.

- Leading an oilfield service company, through Chapter 11 bankruptcy as CEO. He marketed the company to potential buyers and coordinated the buyout of the debt and equity by a private equity firm. Also, negotiated and sold the company's safety business to an outside buyer and led the integration of the merged companies.

- Directing the turnaround of a publicly traded petroleum products distributor created by a reverse merger as interim CFO. He renegotiated and increased the working capital revolving facility after a covenant default; and provided financial leadership to restructure the operations and close down the unprofitable operations.

 **Lyndon James** – *Partner, BlackBriar Advisors LLC (continued)*

- Serving as interim CFO for a $200 million, 70 store retail chain.  He managed the company's financial functions thru an extended capital restructuring which included numerous asset sales and a bank debt refinancing.
- Serving as interim CFO for a $40 million aircraft parts distributor.  He managed the financial function during a distressed business sale that allowed the business owners to retain an ownership stake in the new business and maintain senior management positions.
- Serving as CFO of the 8th largest oil refinery in the U.S., secured a $450 million construction loan through a syndication of 20 U.S. and international banks and $70 million working capital revolving credit facility for general corporate purposes which helped the company complete a $1.2 billion refinery upgrade project.

As Vice President and Chief Financial Officer of Insurance Team One Services, Inc., Lyndon developed the initial business plan for the startup and was responsible for the development of the community bank insurance agency program.

Lyndon was Senior Vice President and Chief Financial Officer for the Henry Group, Inc. a privately owned manufacturing and Installation Company servicing the food industry, where he led a mergers and acquisition program and managed finance, accounting, information technology and human resource functions.

Lyndon also held executive accounting and finance positions for ARCO Oil and Gas Company, a $20 billion oil and gas exploration and production company; as well as  ARCO Coal Company, one of the largest and most profitable international coal mining companies in the world.

### Education and Certifications:
- Master of Science in Management and Administrative Sciences, University of Texas, Dallas
- Bachelor of Business Administration in Accounting, University of Texas, Arlington
- Certified Public Accountant, State of Texas
- Registered Financial Gerontologist

### Affiliations and Memberships:
- Member – Energy Leadership Group
- Dallas Petroleum Club

### Contact Information:
**Phone:** 214.599.8600
**Cell:** 469.450.3009
**Email:** ljames@blackbriaradvisors.com

**Office Address:** 3131 McKinney Ave., Suite 600
Dallas, TX 75204

**DECLARATION OF ROBERT (BOB) SCHLEIZER IN SUPPORT OF THE
DEBTORS'-IN-POSSESSION EMERGENCY JOINT APPLICATION
TO EMPLOY CHIEF RESTRUCTURING OFFICER**

I, Robert Schleizer, state and declare:

1.      That he is a resident of Dallas, Dallas County, Texas, that he is over 21 years of age and is of sound mind and has never been convicted of an offense; that he is the managing partner of BlackBriar Advisors LLC, in Dallas County, Texas, is a Certified Turnaround Professional ("CTP") and Certified Insolvency Restructuring Advisor ("CIRA"), and possesses all of the qualifications to provide financial and operational advisory services to serve as Chief Restructuring Officer ("CRO") for the Debtors.

2.      That he has read the Debtors' Emergency Joint Application To Employ Chief Restructuring Officer in connection with the Chapter 11 bankruptcy proceedings of the Debtors. That he has extensive knowledge and experience in providing financial and operational advisory services to serve as Chief Restructuring Officer ("CRO") and is in all respects qualified to render the necessary services requested by the Debtors.

3.      That BlackBriar Advisors LLC, is disinterested and has no connection with any of the creditors of the estate, or any party of interest, their respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the U.S. Trustee, other than as disclosed in paragraph 4.

4.      BlackBriar Advisors LLC and some affiliated entities have been represented in the past by Keith Langley, counsel for Ford Motor Credit Company. At this time there are not any open matters in which Mr. Langley is actively representing BlackBriar Advisors LLC. Further, Mr. Langley currently acts as the registered agent of BlackBriar Advisors LLC.

5.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 8, 2018

_____
Robert Schleizer

