Duane M. Geck
Cal. State Bar No. 114823
dmg@severson.com
Donald H. Cram
Cal. State Bar No. 160004
Tex. State Bar No. 05000300
dhc@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Secured Creditor
FORD MOTOR CREDIT COMPANY LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF TEXAS

### LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>**REAGOR-DYKES MOTORS, LP**<br><br>Debtors. | § § § § § § | **Case No. 18-50214-rlj11** |
| IN RE:<br><br>**REAGOR-DYKES IMPORTS, LP**<br><br>Debtors. | § § § § § § | **Case No. 18-50215-rlj11**<br>(Jointly Adminstered Under Case No. 18-50214) |
| IN RE:<br><br>**REAGOR-DYKES AMARILLO, LP**<br><br>Debtors. | § § § § § § | **Case No. 18-50216-rlj11**<br>(Jointly Adminstered Under Case No. 18-50214) |
| IN RE:<br><br>**REAGOR-DYKES AUTO COMPANY, LP** | § § § § | **Case No. 18-50217-rlj11**<br>(Jointly Adminstered Under |

|                              |   |                                                                                   |
|------------------------------|---|-----------------------------------------------------------------------------------|
| Debtors.                     | § | Case No. 18-50214)                                                                |
|                              | § |                                                                                   |
| IN RE:                       | § |                                                                                   |
|                              | § |                                                                                   |
| **REAGOR-DYKES PLAINVIEW, LP** | § | Case No. 18-50218-rjl11                                                          |
|                              | § | (Jointly Adminstered Under                                                        |
| Debtors.                     | § | Case No. 18-50214)                                                                |
| IN RE:                       | § |                                                                                   |
|                              | § |                                                                                   |
| **REAGOR-DYKES FLOYDADA, LP** | § | Case No. 18-50219-rlj11                                                          |
|                              | § | (Jointly Adminstered Under                                                        |
| Debtors.                     | § | Case No. 18-50214)                                                                |

## FORD MOTOR CREDIT COMPANY LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Secured Creditor, Ford Motor Credit Company LLC ("Ford Credit"), submits its Motion for Relief from the Automatic Stay authorizing it to foreclose its security interest against Debtors' vehicles and other collateral identified below, respectfully showing the Court as follows:

Ford Credit hereby moves the Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause on the grounds that Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP and Reagor-Dykes Floydada, LP (collectively "Debtors") have defaulted on the obligations secured by the vehicles and other collateral and Ford Credit's interest in the collateral is not adequately protected, and pursuant to 11 U.S.C. § 362(d)(2) on the grounds that there is no equity in the collateral for Debtors or the estate and it is not needed for Debtors' reorganization.

The motion is based upon this Motion for Relief from Stay with Memorandum of Points and Authorities, the Declaration of Paul A. Boudreau in support of Ford Credit's Motion for Relief from the Automatic Stay, Ford Credit's Opposition to Emergency Motion Authorizing Use of Cash Collateral [*Docket No. 15*], the Order Authorizing Debtors-In-Possession to Use Cash Collateral and for Adequate Protection [*Docket No. 30*] ("Cash Collateral Order"), all other

papers and pleadings on file in Debtors' bankruptcy case, and such other evidence as may be presented at any hearing on this matter.

## I. INTRODUCTION

Ford Credit is Debtors' "floor plan" or "inventory" lender and financed Debtors' acquisition of its inventory of cars and trucks for resale to consumers. Ford Credit has a perfected, first priority security interest in Debtors' inventory of vehicles as well as all parts, furniture, fixtures, equipment and general intangibles (primarily the franchise value), and the proceeds generated by the sale of those assets ("the Collateral").

Although the Court has authorized the use of Ford Credit's cash collateral pursuant to the terms of the Cash Collateral Order, Debtors have not complied with the terms of that Order. Ford Credit asserts there is no equity in the collateral and no "equity cushion" for adequate protection.

The vehicles comprising the large portion of Ford Credit's Collateral, are depreciating assets. Before filing their bankruptcy petitions, Debtors sold or transferred hundreds vehicles and failed to pay Ford Credit. These vehicles total over $41 million in unpaid loan advances for which the vehicle collateral is gone. This may be one of the largest floor-plan frauds in the history of the United States.

This massive breach was accomplished in several ways. First, Debtors fraudulently mispresented sales-reporting data to Ford Credit such that Ford Credit believed Debtors was timely paying off cars it sold to the general public. In reality, Debtors had been engaging in a scheme similar to check-kiting whereby it actually sold vehicles on average 55 days before telling Ford Credit, thus allowing Debtors to "float" debt owed to Ford Credit.

Second, Debtors fraudulently obtained inventory financing for cars it had already sold. In other words, while Debtors no longer possessed and had no rights in the car, it would represent to Ford Credit that it still held the car as inventory and thus obtained additional financing.

Third, Debtors fraudulently secured double-flooring from Ford Credit and other lenders. Double-flooring refers to automobile dealers who receive acquisition funding from two different

lending sources for the acquisition of the same vehicle. This is a serious violation of any inventory financing agreement, and represents a material violation of a dealer's representations and warranties made to their lenders. *See U.S. v. Hoover*, 467 F.3d 496, 497 (5th Cir. 2006) (double flooring is "an illegal practice whereby a single vehicle is used as collateral for more than one loan.").

The principal loan balance owed to Ford Credit is approximately $116 million. Debtors' value of the vehicles remaining in inventory is unknown as Debtors have yet to file their Bankruptcy Schedules. However, it is nowhere near $116 million. Ford Credit estimates that the value of the remaining vehicle collateral is approximately $66 million. Ford Credit values the remaining non-vehicle collateral comprised of parts and accessories, furniture, fixtures and equipment at less than $3.5 million. Based on the foregoing values, Ford Credit maintains that it is substantially undersecured given that the remaining collateral has a total value of less than $116 million. There is no equity in the collateral and no "equity cushion" for adequate protection.

Debtors have no post-petition financing, so it is unable to acquire new inventory post-petition. There is no basis for any value attributable to the franchises because any franchise value can only be realized through a sale of dealership assets and a corresponding assignment of the franchise executory agreements with the respective manufacturer. Currently there is no prospect for any such sale.

The Debtors are struggling operating as a going concern. They are severely undercapitalized and is unable to pay their ordinary business expenses except through the use of Ford Credit's cash collateral. Under these circumstances, there is no prospect for a reorganization.

## II. STATEMENT OF FACTS

1. On August 1, 2018 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").

2. Debtors are automobile dealerships engaged in the business of selling and leasing vehicles to retail customers and servicing vehicles for customers.

3. Prior to the Petition Date, Ford Credit provided Debtors financing for Debtors' acquisition of vehicle inventory to be used in their dealership operations. Generally speaking, Debtors entered into wholesale financing agreements and other loan agreements with Ford Credit, as well as security agreements granting Ford Credit a lien in all Debtors' vehicle inventory, as well as the proceeds, products, rents, issues and profits of such inventory. The financing agreements, security agreements and all related ancillary documents entered into in financing individual vehicles are hereafter referred to as the "Loan Documents". The collateral pledged to secure the Loan Documents is hereinafter referred to as the "Collateral". The titles and dates of the Loan Documents are identified in Exhibit A hereto and copies of the Loan Documents are attached to the Declaration of Paul A. Boudreau in support of this motion.

4. The interests granted to secure the amounts financed by Ford Credit are evidenced by UCC-1 Financing Statements filed in the State of Texas, and thus, Ford Credit holds a properly perfected lien in the Collateral. The filing numbers and dates of the UCC-1s are also set forth on Exhibit A hereto and copies of the UCC-1s are attached to the Declaration of Paul A. Boudreau in support of this motion.

5. Debtors are indebted to Ford Credit in an amount that exceeds $116 million[1] with interest and other charges continuing to accrue. The indebtedness owing to Ford Credit is secured as Ford Credit holds a pre-petition lien, in first position, in the Collateral, including Debtors' franchises and any proceeds therefrom.

6. Debtors' operating revenue is primarily generated through the sales and leasing of the new and used vehicles.

---

[1] As of July 31, 2018, the Debtors' total principal indebtedness under their Loan Agreements with Ford Credit is approximately $116,168,000.00 (exclusive of attorneys' fees). Interest and other charges continue to accrue daily as determined by the Loan Agreements. (Boudreau Decl. ¶ 32).

7. Due to pre-petition events of default and other acts of Debtors, Ford Credit asserts, and Debtors does not dispute, that Ford Credit is undersecured in an amount that exceeds $30,000,000 primarily arising from sales of vehicle Collateral and failure to pay Ford Credit for those sales under the terms of the Loan Documents.[2]

8. On August 3, 2018, the Court approved an Interim Cash Collateral Order [*Docket No. 30*].

10. As a condition to the Debtors' use of cash collateral, the Interim Cash Collateral Order required that, "[T]he vehicles in demonstration status shall be returned to the dealerships on or before close of business August 4, 2018 and shall not be returned to demonstrator status without Ford Credit's prior written consent." Interim Cash Collateral Order, ¶ 3(g) [*Docket No. 30*].

11. Debtors have failed to comply with this provision of the Court's Interim Cash Collateral Order. In addition, Debtors appears to be moving demonstrator vehicles between Debtors and non-Debtors entities. Given the prepetition activities of the Debtors, Ford Credit is concerned that assets belonging to the bankruptcy estate are being dissipated.

### III. GROUNDS FOR VACATING AUTOMATIC STAY

Nothing in § 362(d) expressly limits a secured creditor who seeks only to foreclose upon specific property from obtaining relief from the automatic stay. *Delta Savs. & Loan Ass'n v. IRS*, 847 F.2d 248, 250 (5th Cir. 1988); *In re Timbers of Inwood Forest Assocs, Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986). Debtors carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§ 362(g) and 363(p). Debtors' permission to use cash collateral expires

---

[2] The Debtors are in default of their obligations to Ford Credit under their respective Loan Agreements with Ford Credit because as of July 31, 2018, Debtors have sold hundreds of vehicles and/or double floored vehicles and have failed to repay Ford Credit the amounts advanced by Ford Credit to Debtors to acquire those vehicles in an amount that exceeds $41 million. This creates a sales-out-of-trust or "SOT" condition. This is a serious breach of the Loan Agreements because Ford Credit has lost its vehicle collateral (or in some instances, never had the collateral) and the Debtors have received the proceeds from the sale or lease of those vehicles and used the money for other purposes—effectively reducing Ford Credit's Collateral that secures its loans to the Debtors.

August 16, 2018. Debtors does not appear to be generating the necessary operating capital to keep the dealership in business and to pay Ford Credit the amounts that Debtors owes.

Debtors' only exit consists of a sale of the dealership assets including a sale of the dealership premises which is not property of the estate. Not only must Debtors find a buyer, Debtors must also obtain manufacturer consent to assume and assign the Debtors franchises. The value of Debtors' franchises can only be realized through a sale of the dealership. However, there is no pending sale of the dealership.

Debtors cannot carry their burden on the issue of adequate protection, and Debtors are not in a position to provide Ford Credit with adequate protection.

### A. Ford Credit is Entitled to Relief from Stay for Cause, Including Lack of Adequate Protection

A party may seek relief from the stay "for cause, including lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). In other words, the continuation of the automatic stay depends upon whether a secured creditor's interest in property is adequately protected. *See In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004).

Ford Credit is entitled to relief from stay for cause and lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1). Debtors are in default under the terms of the Loan Agreements and have sold vehicles "out of trust" or "SOT". Ford Credit's vehicle collateral consist of depreciating assets that lose value every day. Debtors' permission to use cash collateral will expire on August 16, 2018. As such, Debtors have no source of income to operate their business. Income is generated only through the sales of vehicles and parts which all represent the cash collateral of Ford Credit. Once Debtors sells a vehicle or part to a consumer, Ford Credit loses its security interest in the item sold and can look only to the proceeds of the item sold to satisfy its loan balance. Debtors carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§ 362(g) and 363(p). It is apparent that the collateral has insufficient value to generate operating capital and to pay Ford Credit the amounts that Debtors owes it while Debtors continues to operate. Ford Credit is not adequately protected and relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(1).

### B. Ford Credit is Entitled to Relief Because there is Little or No Equity in the Vehicles for the Estate and the Vehicles are not Necessary for an Effective Reorganization

Ford Credit is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2). The total amount that the Debtors owes Ford Credit is approximately $116 million.

Ford Credit maintains that, the value of the Debtors' remaining vehicle inventory is approximately $66 million. Ford Credit estimates that the value of the Debtors' non-vehicle assets have a value of $3.5 million.[3]

Accordingly, Ford Credit asserts that it is undersecured. The total indebtedness owed to Ford Credit is approximately $116 million. This leaves Ford Credit undersecured in the approximate amount of $46 million.

Debtors have no means to satisfy their secured creditors – let alone their unsecured creditors. There is no pending sale of the dealership. Even if Debtors were to obtain a sale, there is no equity in the assets of the estate and no likelihood of a reorganization that is in prospect. Accordingly, Ford Credit has satisfied the conditions to vacate the automatic stay as set forth under *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 US 365, 108 S.Ct. 626, 98 L.Ed2d 740 (1988) and therefore is entitled to relief from the automatic stay.

### IV. REQUEST FOR SHORTENED NOTICE AND EXPEDITED HEARING

Ford Credit requests that this Motion be heard on an expedited basis in conjunction with the continued hearing on use of cash collateral Scheduled for August 16, 2018 at 10:00 a.m. Ford Credit also requests that the Court shorten notice on this motion so that it may be heard on August 16, 2018.

### V. CONCLUSION

For the reasons set forth above, Ford Credit respectfully requests that this Court:

---

[3] Ford Credit has not evaluated the value of Debtors' franchises. However, any value associated with the franchises can be realized only if there is a sale.

1. Issue an order granting relief from the automatic stay authorizing Ford Credit to enforce its security interests in its Collateral including but not limited to taking possession and disposing of Ford Credit's vehicle collateral pursuant to applicable law;

2. Waive the 14 day waiting period under Bankruptcy Rule 4001(a)(3);

3. Issue an order directing Debtors to turnover and surrender the Collateral to Ford Credit; and

4. Enter such other and further relief as this Court deems necessary and proper.

DATED: August 9, 2018

SEVERSON & WERSON
A Professional Corporation

By: /s/ Donald H. Cram
      Donald H. Cram

Attorneys for Secured Creditor
FORD MOTOR CREDIT COMPANY LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion and supporting delcaration was served on the following parties in interest via ECF on this 9th day of August, 2018:

1. David R. Langston and Brad W. Odell
   Mullin Hoard & Brown, L.L.P.
   P.O. Box 2585
   Lubbock, TX 79408-2585
   *Counsel for Debtors*

2. U.S. Trustee's Office
   1100 Commerce St., Room 9C60
   Dallas, TX 75242

3. Reagor-Dykes Amarillo, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

4. Reagor-Dykes Auto Company, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

5. Reagor-Dykes Floydada, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

6. Reagor-Dykes Imports, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

7. Reagor-Dykes Motors, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

8. Reagor-Dykes Plainview, LP
   1215 Ave. J
   Lubbock, Tx 79401-4019

9. All parties receiving notice via ECF in this case.

I further certify that a true and correct copy of the foregoing motion and supporting declaration will be served on the following parties in interest listed on the attached list of 20 larges unsecured creditors via regular U.S. Mail on this 9th day of August, 2018.

/s/ Donald H. Cram<br>
Donald H. Cram

## SERVICE LIST 20 LARGEST UNSECURED CREDITORS
### Reagor-Dykes Motors, LP
**United States Bankruptcy Court for the Northern District of Texas Case No. 18-5014-rlj11**

| | |
|---|---|
| AER Manufacturing<br>P. O. Box 974180<br>Dallas, TX 75397-4180 | Telephone: 800-621-0545 |
| American Tire Distributors<br>Payment Processing Center<br>P. O. Box 889<br>Huntersville, NC 28070-0889 | Telephone: 704-992-2000 |
| Bistro Battery<br>124 E. Slaton Road<br>Lubbock, TX 79452 | Telephone: 806-745-2052 |
| Bumper Manufacturing<br>2500 Minis Drive<br>Haltom City, TX 76117 | Telephone: 817-831-4401 |
| Concho Supply, Inc.<br>P. O. Box 3487<br>San Angelo, TX 76902 | Telephone: 325-949-4649 |
| Descriptive Auto Design, LLP<br>P. O. Box 64366<br>Lubbock, TX 79464 | Telephone: 806-792-1551 |
| Earl Owens Company, LLC<br>P. O. Box 111787<br>Carrollton, TX 75011 | Telephone: 469-892-2424 |
| Fender Truck Accessories<br>P. O. Box 2576<br>Midland, TX 79702 | Telephone: 432-683-8473 |
| Ford Motor Credit Co.<br>9009 Carothers Parkway<br>Franklin, TX 37067 | Keith Langley<br>klangley@l-llp.com<br>214-722-7171 |
| Keystone Automotive Operations<br>P. O. Box 417450<br>Boston, MA 02241-7450 | Jellis@lkqcorp.com<br>800-551-5610 |
| Lubbock Auto Spa<br>3305 81st Street<br>Lubbock, TX 79423 | Jeff Barthalomen<br>806-239-0712 |

| | |
|---|---|
| Meyer Distributing<br>560 East 25th Street<br>Jasper, IN 47546 | Telephone: 806-639-3787 |
| Napa Auto Parts<br>310 N. 4th<br>Lamesa, TX 79331 | Telephone: 806-872-2147 |
| O'Reilley Auto Parts<br>P. O. Box 9464<br>Springfield, MO 65801-9464 | Telephone: 417-862-2674 |
| Reid Bethel Tire Co.<br>P. O. Box 29<br>Lamesa, TX 79331 | Telephone: 806-872-8886 |
| Reynolds and Reynolds<br>P. O. Box 182206<br>Columbus, OH 43218-2206 | Telephone: 937-485-2000 |
| Sam Pack's Five Star Ford<br>P. O. Box 910227<br>Dallas, TX 75391 | Telephone: 972-961-3004 |
| Sewell Ford Inc.<br>P. O. Box 3432<br>Odessa, TX 79760 | Telephone: 432-498-0421 |
| The Reinalt-Thomas Corporation<br>P. O. Box 29851<br>Phoenix, AZ 85038-9851 | Telephone: 602-996-0201 |
| Valvaline LLC<br>3499 Blazer Parkway<br>Lexington, KY 40509 | Vick Stephenson<br>Telephone: 214-878-4091 |

**Exhibit A**

1. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about June 22, 2015 between Ford Credit and RD Plainview.

2. Security Agreement dated on or about June 22, 2015 between Ford Credit and RD Plainview.

3. Security Agreement dated on or about June 19, 2015 between Ford Credit and RD III.

4. Limited Liability Certificate dated on or about October 12, 2015 and signed by Bart Reagor as president for RD III.

5. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Imports.

6. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Imports.

7. Limited Liability Certificate dated on or about October 13, 2014 and signed by Bart Reagor and Rick Dykes.

8. Continuing Guaranty dated November 13, 2014 between Ford Credit and RD Auto Co., RD Motors, and RD Amarillo.

9. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about March 3, 2008 between Ford Credit and RD Motors.

10. Security Agreement dated on or about March 3, 2008 between Ford Credit and RD Motors.

11. Master Security Agreement dated on or about December 15, 2011 between Ford Credit and RD Motors.

12. Master Loan and Security Agreement dated on or about November 21, 2011 between Ford Credit and RD Motors.

13. Loan Supplement to Master Loan and Security Agreement (Revolving Line of Credit) dated on or about November 21, 2011 between Ford Credit and RD Motors.

14. Loan Supplement to Master Loan and Security Agreement (Revolving Line of Credit) dated on or about April 30, 2014 between Ford Credit and RD Motors.

15. Amendment (Master Loan and Security Agreement) dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports and RD Amarillo.

16. Loan Supplement (Master Loan and Security Agreement) (Revolving Line of Credit Increase) dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports and RD Amarillo.

17. Second Amendment (Master Loan and Security Agreement) dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview, and RD Floydada.

18. Fourth Loan Supplement (Master Loan and Security Agreement) (Revolving Line of Credit – Amendment) dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview and RD Floydada.

19. Cross-Default and Cross-Collateralization Agreement dated on or about November 21, 2011 between Ford Credit and RD Motors, Bart Reagor and Rick Dykes.

20. Cross-Default and Cross-Collateralization Agreement dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, Bart Reagor and Rick Dykes.

21. Amended and Restated Cross-Default and Cross-Collateralization Agreement dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview, RD Floydada, Bart Reagor and Rick Dykes.

22. Continuing Guaranty and Wholesale Financing Guaranty dated on or about April 5, 2007 between Ford Credit and Bart Reagor, Rick Dykes, and Reagor Auto Mall.

23. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and RD Auto and RD Amarillo.

24. Continuing Guaranty dated on or about October 12, 2015 between Ford Credit and RD Auto.

25. Limited Liability Certificate dated on or about September 29, 2016 signed by Bart Reagor.

10872.0173/11328555.3

26. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

27. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

28. Master Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

29. Continuing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor Auto Mall.

30. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and RD II, L.L.C., RD Motors, and RD Imports.

31. Limited Liability Certificate dated on or about October 1, 2014 signed by Bart Reagor and Rick Dykes.

32. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 1, 2015 between Ford Credit and RD Floydada.

33. Security Agreement dated on or about October 1, 2015 between Ford Credit and RD Floydada.

34. Continuing Guaranty dated on or about January 8, 2016 between Ford Credit and Bart Reagor, Rick Dykes and Reagor Auto Mall.

35. Limited Liability Certificate dated on or about October 1, 2015 signed by Bart Reagor and Rick Dykes.

36. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

37. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

38. Master Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

39. Continuing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor-Dykes II, L.L.C.

40. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and Reagor-Dykes Amarillo, L.P., Reagor-Dykes Motors, L.P., and Reagor-Dykes Imports, L.P.

41. Limited Liability Certificate dated on or about October 13, 2014 signed by Bart Reagor and Rick Dykes.

42. Wholesale Financing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor-Dykes II, L.L.C.

43. UCC-1 Financing Statements filed with the Texas Secretary of State on October 14, 2014 as Document No. 14-0032742912 and all continuations, and amendments.

44. UCC-1 Financing Statements filed with the Texas Secretary of State on October 14, 2014 as Document No. 14-0032743660 and all continuations, and amendments.

45. UCC-1 Financing Statements filed with the Texas Secretary of State on March 4, 2008 as Document No. 08-0007673445 and all continuations, and amendments.

46. UCC-1 Financing Statements filed with the Texas Secretary of State on October 11, 2010 as Document No. 10-29340403 and all continuations, and amendments.

47. UCC-1 Financing Statements filed with the Texas Secretary of State on October 9, 2015 as Document No. 15-0032542032 and all continuations, and amendments.

48. UCC-1 Financing Statements filed with the Texas Secretary of State on June 25, 2015 as Document No. 15-0020004335 and all continuations, and amendments