Duane M. Geck
Cal. State Bar No. 114823
dmg@severson.com
Donald H. Cram
Cal. State Bar No. 160004
Tex. State Bar No. 05000300
dhc@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Secured Creditor
FORD MOTOR CREDIT COMPANY LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF TEXAS

# LUBBOCK DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| **REAGOR-DYKES MOTORS, LP** | § | **Case No. 18-50214-rlj11** |
| | § | |
| Debtor. | § | |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES IMPORTS, LP** | § | **Case No. 18-50215-rlj11** |
| | § | **(Jointly Administered Under** |
| Debtor. | § | **Case No. 18-50214)** |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES AMARILLO, LP** | § | **Case No. 18-50216-rlj11** |
| | § | **(Jointly Administered Under** |
| Debtor. | § | **Case No. 18-50214)** |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES AUTO COMPANY, LP** | § | **Case No. 18-50217-rlj11** |
| | § | **(Jointly Administered Under** |

|                                  |   |                              |
|----------------------------------|---|------------------------------|
| Debtor.                          | § | Case No. 18-50214)           |
|                                  | § |                              |
| IN RE:                           | § |                              |
|                                  | § |                              |
| **REAGOR-DYKES PLAINVIEW, LP**   | § | Case No. 18-50218-rlj11      |
|                                  | § | (Jointly Administered Under  |
| Debtor.                          | § | Case No. 18-50214)           |
|                                  | § |                              |
| IN RE:                           | § |                              |
|                                  | § |                              |
| **REAGOR-DYKES FLOYDADA, LP**    | § | Case No. 18-50219-rlj11      |
|                                  | § | (Jointly Administered Under  |
| Debtor.                          | § | Case No. 18-50214)           |

# FORD MOTOR CREDIT COMPANY LLC'S OBJECTION TO DEBTORS' EMERGENCY JOINT APPLICATION TO EMPLOY CHIEF RESTRUCTURING OFFICER

Secured Creditor, Ford Motor Credit Company LLC ("Ford Credit"), submits its Objection to Debtors' Emergency Application to Employ Chief Restructuring Officer respectfully showing the Court as follows:

## I. INTRODUCTION

Without evidence or any support, Debtors insinuate that its difficulties (an undefined "cash hole") have been "created by Ford sweeping Debtors' cash." This could not be farther from the truth. The Debtors created their own financial mess by: 1) selling vehicles without paying Ford Credit the amounts advanced for those vehicles (referred to as "Sales out of Trust" or SOT"); 2) double flooring vehicles – a process whereby Debtors fraudulently floored vehicles with Ford Credit and floored those same vehicles with other financing sources; 3) flooring vehicles that may never have existed or were not owned by the Debtors; and 4) submitting electronic payments drawn on accounts with insufficient funds. Ford Credit agrees that the Debtors' records are completely unreliable. Not only that, post-petition, Debtors are not selling vehicles, are unable to match vehicle inventory to specific dealerships, are unable to match keys and titles to its vehicle inventory, and are unable to fulfill its obligations to customers such as

registering vehicles after a sale. In addition to being incapable of fulfilling its obligations as Debtors-in-Possession, Debtors have not presented any information about the cost associated with employing a Chief Restructuring Officer or how Debtors intend to pay for a Chief Restructuring Officer.

## II. PERTINENT FACTS

1. On August 1, 2018 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").

2. Debtors are automobile dealerships engaged in the business of selling and leasing vehicles to retail customers and servicing vehicles for customers.

3. Prior to the Petition Date, Ford Credit provided Debtors financing for Debtors' acquisition of vehicle inventory to be used in their dealership operations. Generally speaking, Debtors entered into wholesale financing agreements and other loan agreements with Ford Credit, as well as security agreements granting Ford Credit a lien in all Debtors' vehicle inventory, as well as the proceeds, products, rents, issues and profits of such inventory. The financing agreements, security agreements and all related ancillary documents entered into in financing individual vehicles are hereafter referred to as the "Loan Documents". The collateral pledged to secure the Loan Documents is hereinafter referred to as the "Collateral".

4. The interests granted to secure the amounts financed by Ford Credit are evidenced by UCC-1 Financing Statements filed in the State of Texas, and thus, Ford Credit holds a properly perfected lien in the Collateral.

5. Debtors do not dispute that they are indebted to Ford Credit in an amount that exceeds $116 million[1] with interest and other charges continuing to accrue. The indebtedness

---

[1] As of July 31, 2018, the Debtors' total principal indebtedness under their Loan Agreements with Ford Credit is approximately $116,168,000.00 (exclusive of attorneys' fees). Interest and other charges continue to accrue daily as determined by the Loan Agreements.

owing to Ford Credit is secured as Ford Credit holds a pre-petition lien, in first position, in the Collateral, including Debtors' franchises and any proceeds therefrom.

6. Debtors' operating revenue is primarily generated through the sales and leasing of the new and used vehicles.

7. Due to pre-petition events of default and other acts of Debtors, Ford Credit asserts, and Debtors do not dispute that the default amounts owing to Ford Credit exceed $42 million.[2]

8. Ford Credit is undersecured in an amount that exceeds $30,000,000 primarily arising from sales of vehicle Collateral and failure to pay Ford Credit for those sales under the terms of the Loan Documents.

9. On August 3, 2018, the Court approved an Interim Cash Collateral Order [*Docket No. 30*]. At the August 3, 2018 hearing, Ford Credit advised the Court that it would be filing a motion to appoint a Chapter 11 trustee.

10. As a condition to the Debtors' use of cash collateral, the Interim Cash Collateral Order required that:

    a. Debtors return all vehicles in demonstration status to the dealerships on or before close of business August 4, 2018. Interim Cash Collateral Order, ¶ 3(g) [*Docket No. 30*].

    b. Debtors pay all taxes, licensing and registration fees and other obligations incurred in the ordinary course of business of an automobile dealer including all

---

[2] The Debtors are in default of their obligations to Ford Credit under their respective Loan Agreements with Ford Credit because as of July 31, 2018, Debtors have sold hundreds of vehicles and/or double floored vehicles and have failed to repay Ford Credit the amounts advanced by Ford Credit to Debtors to acquire those vehicles in an amount that exceeds $42 million. This creates a sales-out–of-trust or "SOT" condition. This is a serious breach of the Loan Agreements because Ford Credit has lost its vehicle collateral (or in some instances, never had the collateral) and the Debtors have received the proceeds from the sale or lease of those vehicles and used the money for other purposes—effectively reducing Ford Credit's Collateral that secures its loans to the Debtors.

contractual obligations with customers. Interim Cash Collateral Order, ¶ 3(i) [*Docket No. 30*].

c. Debtors allow Ford Credit agents to remain on the dealerships' premises and to hold all titles and keys to vehicles. Interim Cash Collateral Order, ¶ 7 [*Docket No. 30*].

11. Debtors have failed to comply with this provision of the Court's Interim Cash Collateral Order in that Debtors:

a. Have failed to return all demonstrator vehicles;

b. Have failed to register vehicles sold to consumers;

c. Have failed to pay off trade-in liens; and

d. Have failed to provide Ford Credit with keys and titles to all vehicle inventory.

12. On August 8, 2018, Debtor filed the instant application to employment of a Chief Restructuring Officer. [*Docket No. 38*].

13. On August 9, 2018, Ford Credit filed a motion for relief from the automatic stay and a motion to appoint a Chapter 11 trustee. [*Docket Nos. 46 and 47*].

### III. EMPLOYMENT OF A CRO

Debtors seek the employment of a Chief Restructuring Officer ("CRO") pursuant to Bankruptcy Code §§ 327, 363 and Bankruptcy Rule 2014. Section 327 states in relevant part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>
> (b) If the trustee is authorized to operate the business of the debtor under section. . . 1108 . . . , and if the debtor has regularly employed . . . accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.
> . . . .

> (d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

Section 328 states in relevant part that:

> (a) The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . .

Section 330 provides that a professional person employed under 327 may be awarded— – reasonable compensation for actual, necessary services rendered by the trustee, . . . professional person, . . . and by any paraprofessional person employed by any such person; and – reimbursement for actual, necessary expenses.

Bankruptcy Code § 363(b)(1) allows a debtor-in-possession to use, sell, or lease property of the estate other than in the ordinary course of business with Bankruptcy Court approval.

A bankruptcy court may approve the debtor-in-possession's retention of a professional to act as Chief Restructuring Officer if the professional satisfies the requirements of Bankruptcy Code Section 327. *In re Blue Stone Real Estate, Constr. & Dev. Corp.*, 392 B.R. 897, 906-907; see also, *In re First Merchants Acceptance Corp.*, No. 97-1500 JJF, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997); *In re Bartley Lindsay Co.*, 120 B.R. 507, 512 (Bankr. D. Minn. 1990); *cf. In re Marion Carefree Ltd. P'ship*, 171 B.R. 584 (Bankr. N.D. Ohio 1994); *In re Madison Mgmt. Group., Inc.*, 137 B.R. 375 (Banrk. N.D. Ill. 1992). Alternatively, courts have also held that a bankruptcy court may approve a Chief Restructuring Officer under Bankruptcy Code Section 363. *See, e.g., In re Colad Group, Inc.*, 324 B.R. 208, 215 (Bankr. W.D.N.Y. 2005); *see also In re Rangers Equity Holdings, L.P.*, No. 10-43624 (DML) (Bankr. N.D. Tex. June 28, 2010). However, other courts have questioned the ability of the bankruptcy court to authorize the employment of any sort of "trustee equivalent" outside § 1104(d). *See, e.g., In re Adelphia Comm. Corp.*, 336 B.R. 610, 620 (Bankr. S.D. N.Y. 2006).

In this instance, the Debtors' application must be denied in light of Ford Credit's pending motion for the appointment of a Chapter 11 trustee. [*Docket No. 47*].

### IV. DEBTORS ARE INCAPABLE OF FULFILLING ITS OBLIGATIONS AS DEBTORS-IN-POSSESSION

Through § 1104(a)(1) of the Bankruptcy Code, Congress has mandated that a Chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'"). When a debtor-in-possession, its management, or its professionals have exhibited an inability or unwillingness to comply with their basic fiduciary duties, there is but one remedy established by Congress to supplant management while allowing the case to remain in Chapter 11 – the appointment of a trustee pursuant to 11 U.S.C. § 1104(a). *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D. N.Y. 1989) ("And if the debtor-in-possession defaults in this respect, [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.").

While Ford Credit believes that a CRO can play a constructive role in certain cases, it cannot fill the shoes of a Chapter 11 trustee when cause exists warranting the appointment of an independent fiduciary under § 1104. As in the present case, Debtors have engaged in pre-petition activity that disqualifies current management from serving as the debtor-in-possession.

Upon the filing of a bankruptcy petition, by operation of law, management transforms into a fiduciary that is bound to act for the benefit all stakeholders, including creditors. Debtors' history of financial irregularities and egregious mismanagement along with other facts render Debtors' management unfit for service as a fiduciary. Under these circumstances, the Bankruptcy Code dictates that the Court appoint an independent Chapter 11 trustee.

Debtors seek to employ a CRO who will report to the same management that failed to detect or remedy prior malfeasance. As much as Ford Credit respects the integrity and qualifications of the proposed CRO, the appointment of a CRO which merely preserves current

management's prerogatives may substantially harm the estate as a CRO lacks the independence associated with a Chapter 11 trustee.

In the face of allegations of fraud and malfeasance, the Debtors' application is nothing more than an "end run" around Ford Credit's pending motion for the appointment of a Chapter 11 trustee. Moreover, the Code makes it clear that a bankruptcy court "shall order the appointment of a trustee" whenever there is "cause," as well as when it is in the best interests of the estate. Ridding an estate of defalcating management is so critically urgent that neither the Code nor the Bankruptcy Rules impose any minimum notice periods relevant to the appointment of a Chapter 11 trustee.

Ford Credit maintains that grounds exist to appoint a trustee and the appointment of a CRO does not provide a substitute cure. The integrity of the bankruptcy process is better served by advancing consideration of Ford Credit's trustee motion rather than considering Debtors' employment application which arguably seeks a remedy which was clearly never intended by the Code – the pertinent inquiry is into the conduct of the Debtors and their entitlement to remain in possession.

## V. DEBTORS HAVE NOT PROVIDED ANY BUDGET INFORMATION REGARDING THE COST OF A CRO OR HOW IT INTENDS TO PAY THE CRO

Although Debtors have disclosed the hourly rates associated with the proposed CRO, there has been no proposed monthly budget disclosing the anticipated expense of a CRO nor an explanation of how the CRO is to be paid. Outside of the use of Ford Credit's cash collateral, the Debtors have little ability to pay any expenses, let alone the cost associated with employment of a CRO. Further, Debtors' application is unclear whether the CRO will be employed as a regular employee under § 363 of the Bankruptcy Code or as a professional under § 327 of the Code. This lack of disclosure further evidences the fact that the Debtors do not have the wherewithal to continue to operate as Debtors-in-possession.

## VI. CONCLUSION

Debtors' application to employ a CRO is nothing more than an "end run" around Ford Credit's pending motion to appoint a Chapter 11 trustee. Debtors past fraudulent activity and

malfeasance disqualifies current management from continuing control and the Debtors should not be permitted to proceed in this case as Debtors-in-possession. Cause exists to appoint a Chapter 11 trustee. As such, Debtors' application should be denied.

DATED: August 14, 2018  SEVERSON & WERSON
A Professional Corporation

By:    /s/ Donald H. Cram
        Donald H. Cram

Attorneys for Secured Creditor
FORD MOTOR CREDIT COMPANY LLC

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Objection to Debtors' Emergency Application to Employ Chief Restructuring Officer was served on the following parties in interest via ECF on this 14th day of August, 2018:

1. David R. Langston and Brad W. Odell
   Mullin Hoard & Brown, L.L.P.
   P.O. Box 2585
   Lubbock, TX  79408-2585
   *Counsel for Debtors*

2. U.S. Trustee's Office
   1100 Commerce St., Room 9C60
   Dallas, TX  75242

3. Jimmy D. Parrish
   Baker Hostetler
   200 South Orange Ave., Suite 2300
   Orlando, FL 32801-3432
   *Attorneys for Gulf States Toyota*

4. John F. Massouh
   Sprouse Shrader Smith, PLLC
   701 S. Taylor, Suite 500
   Amarillo, TX 79101
   *Attorneys for First Capital Bank of Texas*

5. Tommy J. Swann and Abel Reyna
   McClesky, Harriger, Brazill & Graf, L.L.P.
   5010 University Ave., 5th Floor
   Lubbock, TX  79413-4422
   *Attorneys for Universal Underwriters Service Corporation*

6. Jason M. Rudd and Lauren K. Drawhorn
   Wick Phillips Gould & Martin, LLP
   3131 McKinney Avenue, Suite 100
   Dallas, TX  75204
   *Attorneys for Vista Bank*

7. All parties receiving notice via ECF in this case.

/s/ Donald H. Cram
Donald H. Cram