

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 17, 2018**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP** | § | Case No. 18-50214-rlj11 |
| | § | |
| Debtor. | § | |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES IMPORTS, LP** | § | Case No. 18-50215-rlj11 |
| | § | (Jointly Administered Under |
| Debtor. | § | Case No. 18-50214) |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES AMARILLO, LP** | § | Case No. 18-50216-rlj11 |
| | § | (Jointly Administered Under |
| Debtor. | § | Case No. 18-50214) |
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES AUTO COMPANY, LP** | § | Case No. 18-50217-rlj11 |
| | § | (Jointly Administered Under |
| | § | Case No. 18-50214) |
| Debtor. | § | |
| IN RE: | § | |

| | § | |
|---|---|---|
| **REAGOR-DYKES PLAINVIEW, LP** | § | **Case No. 18-50218-rjl11** |
| | § | **(Jointly Administered Under** |
| Debtor. | § | **Case No. 18-50214)** |

| **IN RE:** | § | |
|---|---|---|
| | § | |
| **REAGOR-DYKES FLOYDADA, LP** | § | **Case No. 18-50219-rlj11** |
| | § | **(Jointly Administered Under** |
| Debtor. | § | **Case No. 18-50214)** |

## SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF FORD MOTOR CREDIT COMPANY, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING

CAME ON for consideration Debtors' Joint Emergency Motion for Authority to Use Cash Collateral (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtor") and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; interim hearings having been held to consider the relief requested in the Motion on August 3 and 16, 2018 (collectively, the "Interim Hearing"); upon the record of the Interim Hearing; the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; that the Debtor has shown good, sufficient, and sound business purpose and justification for the relief requested in the Motion; Universal Underwriters Service Corporation ("Universal") filed a limited objection to the Motion; Ford Motor Credit Company LLC ("Ford Credit") having consented to this order

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

(the "Interim Order") subject to the reservation of rights contained herein; this Interim Order having resolved the objection of Universal; and after due deliberation and sufficient cause appearing; therefore, the Court hereby finds:

A.    The Debtor filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 1, 2018 (the "Petition Date") with the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division (the "Court").

B.    The Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (together with any other statutory committee, a "Committee").

C.    The Debtor continues to manage and operate its business and assets as a debtor and debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in the Debtor's above-captioned chapter 11 case (the "Chapter 11 Case").

D.    Debtor owns multiple automobile dealerships and engages in the business of selling and leasing vehicles to retail customers and servicing vehicles for customers.

E.    Debtor liquidated funds in the Debtor's American Century Investment accounts which the Debtor asserts does not serve as collateral or cash collateral (as that term is defined in the Bankruptcy Code) to Ford Credit or any other lender of the Debtor.

F.    The Debtor requires the use of the Cash Collateral in order to continue the Debtor's ordinary course business operations and to maintain the value of the bankruptcy estate. The Debtor is permitted to use Cash Collateral, on an interim basis, on the terms and conditions provided for herein, commencing on the date hereof and expiring no later than August 30, 2018,

except as provided for herein (the "Interim Period"). The Debtor shall not use Cash Collateral except in accordance with the terms and conditions contained in this Interim Order and the Interim Budget (as defined herein) for the Interim Period subject to the Permitted Variance (as defined herein). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor, its estate or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

G.      Prior to the Petition Date, Ford Credit provided Debtor among other things, financing for Debtor's vehicle inventory to be used in its dealership operations.

H.      Generally speaking, the Debtor entered into a Wholesale Financing and Security Agreement ("Wholesale Agreement") and other loan agreements with Ford Credit granting Ford Credit a lien in the inventory, as well as the proceeds, products, rents, issues and profits of such inventory. The Wholesale Agreement and key related ancillary documents entered into in financing vehicles are hereafter referred to as the "Loan Documents". The collateral pledged to secure the Loan Documents is hereinafter referred to as the "Collateral". The titles and dates of the Loan Documents are identified in **Exhibit A** hereto.

I.      The interests granted to secure the amounts financed by Ford Credit are evidenced by UCC-1 Financing Statements filed in the State of Texas, and thus, Ford Credit asserts it holds a properly perfected lien in the Collateral. The filing numbers and dates of the UCC-1's are also set forth on **Exhibit A** hereto.

J.      Ford Credit asserts that Debtor is indebted to Ford Credit in an amount that exceeds $116 million with interest and other charges continuing to accrue. Ford Credit asserts a secured pre-petition lien, in first position except with respect to a lien properly in place by any taxing authority, in the Debtor's assets including Debtor's vehicle inventory (except for certain

Honda Courtesy vehicles), parts and supplies, furniture, machinery and fixtures (except for purchase money security interests of certain equipment sellers who have filed appropriate UCC-1 Financing Statements), receivables, intangibles, including the Debtor's franchises and any proceeds therefrom, to secure the indebtedness owed to Ford Credit.

K.      Universal asserts that the Debtor holds in a fiduciary capacity funds generated from the sale of products sold by the Debtor in connection with the sale of automobiles from the Debtor's various dealerships which Universal asserts does not constitute assets of the Debtor's bankruptcy estates;

L.      The Debtor's operating revenue is primarily generated through the sales and leasing of the financed vehicles. Such proceeds constitute Ford Credit's Cash Collateral as such term is used in Section 363 of the Bankruptcy Code ("Cash Collateral"), and absent the consent of Ford Credit or an order of this Court after notice and hearing, the Debtor is prohibited from using such Cash Collateral.

M.      The Debtor asserts a need for the use of the cash generated from sales and leasing of the Collateral in order to continue the operations of its business.

N.      But for the Debtor agreeing to the specific terms of this Interim Order, Ford Credit would not consent, and would object, to the Debtor's continuing use of Ford Credit's Cash Collateral.

O.      Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtor's interim use of Cash Collateral is necessary to preserve the bankruptcy estate and to avoid immediate and irreparable harm to the Debtor, its bankruptcy estate and assets.

**Accordingly, it is therefore and hereby ORDERED that:**

1.     On the record before this Court, including the record made at the Interim Hearing, and good and sufficient cause appearing therefor, the Motion is hereby granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.  This Interim Order shall constitute findings of fact and constitute conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon the execution thereof.

**Use of Cash Collateral.**

2.     Subject to the terms and conditions of this Interim Order, the Debtor is authorized, pursuant to §363(c)(2) of the Bankruptcy Code to collect and use Ford Credit's Cash Collateral from the date of this Interim Order.  Subject to the terms and conditions of this Interim Order, the Debtor may use Cash Collateral in the ordinary course of its business solely to pay ordinary and necessary expenditures, determined in its reasonable business judgment to be necessary for its continuing operation (the "Expenditures").  The Debtor may not, without the written consent of Ford Credit, exceed the amounts set forth in the monthly budget set forth in **Exhibit B** which is attached hereto (the "Interim Budget"), except that the Debtor will be entitled to a variance of the Interim Budget equal to not more than five percent of the total Budget (the "Permitted Variance"), and provided, however, the Debtor is not authorized to use Ford Credit's Cash Collateral for the payment of any line item of rent and/or insurance, without the written agreement of Ford, in the Interim Budget.  Ford Credit consents to the use of Cash Collateral through the date of August 30, 2018 (the "Cash Collateral Use Termination Date").

**Adequate Protection.**

3.     As adequate protection of Ford Credit's interests in the Collateral:

(a)     On the day of any retail sale or lease of a vehicle, or one business day from Debtor's receipt of any of the sale proceeds for any retail sale or lease of a vehicle that has been sold or leased on or before the date of this Interim Order for which Debtor received proceeds before or after the date of this Interim Order, Debtor shall immediately and forthwith remit to Ford Credit by electronic funds transfer all amounts received by Debtor up to the amount advanced by Ford Credit to Debtor on the vehicle (the "Advanced Price");

(b)     On the day of any sale or lease of a vehicle not floored by Ford Credit (the "Non-Floored Vehicles"), Debtor shall immediately and forthwith remit to Ford Credit by certified funds or other immediately available funds received by Debtor in the amount of 80% of Debtor's net sale price of the Non-Floored Vehicle after payment of existing liens against such Vehicle, taxes, registration, and licensing;

(c)     To the extent Debtor has cash available in the Budget, Debtor shall pay to Ford Credit the amount of amortized curtailment/principal payments due under the respective Loan Documents, beginning with the payments due August, 2018, and each month thereafter on the dates and according to the terms set forth in the Loan Documents. Debtor and Ford Credit agree to work in good faith to address all issues pertaining to the payment of amortized curtailment/principal payments that come due during the Interim Period;

(d)     Debtor shall provide Ford Credit with proof of the payment of any existing liens, Department of Motor Vehicle fees and/or sales or use tax on a weekly basis;

(e)     Should Debtor receive any vehicles as a "trade in" for the payment of any vehicle constituting Collateral, Debtor shall notify Ford Credit within one business day of receiving the trade-in and shall promptly pay or satisfy any liens or amounts owing against the trade-in vehicle;

(f)     Trades or transfers of floored vehicles by Debtor with other dealers, wholesale sales, auction sales and fleet sales of greater than 2 vehicles (collectively, "Dealer Trades") are prohibited without the prior written consent of Ford Credit;

(g)     All vehicles previously in demonstration status shall not be returned to demonstrator status without Ford Credit's prior written consent. Debtor shall not place any Vehicles into use as service or "loaner" vehicles and shall not permit Vehicles to be used for overnight test drives without Ford Credit's prior written consent;

(h)     As the Debtor in the ordinary course of its service department's business consumes parts, accessories, supplies or related equipment ("Parts Inventory"), the Debtor shall replenish the Parts Inventory so that the value of the Parts Inventory does not drop below such value as of the Petition Date;

(i)    Debtor shall pay all sales taxes, licensing and registration fees and other obligations incurred in the ordinary course of business of an automobile dealer including all contractual obligations with customers;

(j)    Debtor shall maintain and insure Ford Credit's Collateral in amounts and levels consistent with past practice and the requirements of Ford Credit under the terms of the Loan Documents; and

(k)    All terms of the Loan Documents shall remain in full force and effect, except to the extent they are inconsistent with this Interim Order.

**Replacement Lien.**

4.    As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code, of Ford Credit's asserted security interest in the Collateral, including Cash Collateral used by the Debtor, Ford Credit shall be granted a post-petition security interest in, and replacement lien (the "Replacement Lien") upon, subject only to prior non-avoidable liens, Debtor's assets and property of every kind whatsoever existing on or arising, acquired or created, after the Petition Date, save and except for any chapter 5 causes of action arising under the Bankruptcy Code, inclusive of all proceeds and products thereof, in the same priority and in the same nature, extent, and validity as such liens, if any, existed pre-petition. The Replacement Lien shall serve as adequate protection for the use of the Collateral to the extent of any diminution of the value of the Collateral.

**Effectiveness of Replacement Liens.**

5.    All liens and security interests granted pursuant to this Interim Order are hereby deemed effective, valid, and perfected as of the Petition Date, without the necessity of filing or recording by or with any entity of any documents or instruments otherwise required to be filed or

recorded under applicable non-bankruptcy law. Notwithstanding, the Debtor shall execute and deliver to Ford Credit any and all instruments or documents as may be reasonably requested by Ford Credit and deemed by it to be necessary to evidence or perfect such Replacement Liens, and the automatic stay of section 362 is hereby modified to the extent necessary to permit such execution, delivery, and filing.

**Administrative Expense Priority.**

6.     To the extent necessary, Ford Credit shall have an administrative expense pursuant to section 507(b) of the Bankruptcy Code in Debtor's Chapter 11 Case and against Debtor's bankruptcy estate for Debtor's use of Cash Collateral to the extent of any diminution in the value of Ford Credit's interest in the Collateral and this administrative claim shall have priority over and above all other costs and expenses of the kind specified in, or ordered pursuant to, sections 503(b) or 507(a) of the Bankruptcy Code except as provided herein.

**Audits.**

7.     Debtor shall permit Ford Credit and its authorized agents and employees to remain upon Debtor's premises during business operating hours. Ford Credit is authorized to continue to hold keys and titles to Vehicles and to conduct audits and inspections of the Collateral and Debtor's books and records, including all records concerning the Collateral.

**Reports.**

8.     Debtor shall keep current all of its books, records and accounts. Debtor agrees that Ford Credit or any person designated by Ford Credit shall be permitted to examine the Collateral and records and to copy any and all books and records, including but not limited to any computer software and hardware and other accounting programs, of Debtor. So long as this Interim Order is effective, Debtor shall provide Ford Credit with weekly reports of Debtor's

operations in a form and in accordance with a time table to be agreed upon by Ford Credit and Debtor. Debtor shall provide Ford Credit with copies of its monthly operating reports and any other reports and/or documents which the U.S. Trustee requires, which documents shall be served contemporaneously upon Ford Credit's counsel of record when filed with the U.S. Trustee. Debtor shall provide Ford Credit and Ford Credit's counsel of record with copies of its Schedules and Statement of Financial Affairs, as well as any Chapter 11 status reports, via regular mail contemporaneously with the filing of these documents.

**Events of Default.**

9. Debtor's authority to use Cash Collateral pursuant to this Interim Order shall terminate upon the occurrence and continuation of any of the following events past the applicable cure period, if any, each of which shall constitute an "Event of Default":

(a) Debtor's Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code;

(b) This Court authorizes the appointment of a Chapter 11 Trustee for Debtor's estate;

(c) Any default under, breach of or failure to comply with, any provisions of this Interim Order or any post-petition default under, breach of, or failure to comply with any provisions of the Loan Documents, which breach is not cured within five business days after Debtor's receipt of written notice thereof;

(d) Any lien, security interest or priority purported to be created by this Interim Order shall, for any reason other than to the extent the Court disallows any lien, security interest, or priority granted herein because the

Court determines Ford Credit did not hold valid, prepetition liens or security interests against the Debtor's assets, cease to be valid and enforceable in accordance with the original terms of this Interim Order, or subsequent orders are entered by this Court amending, modifying, supplementing, vacating or staying this Interim Order without the written consent of Ford Credit;

(e)    This Court enters an order contrary to the provisions of this Interim Order:

    (i)    granting any lien or security interest that is senior or *pari passu* to any lien held by Ford Credit in any Collateral or any assets subject to the Replacement Lien to any person or entity other than Ford Credit;

    (ii)    granting any lien or security interest that is subordinate to any lien held by Ford Credit in the Collateral or any assets subject to the Replacement Lien to any person or entity other than Ford Credit without the prior written consent of Ford Credit;

    (iii)    the confirmation of a Chapter 11 Plan of Reorganization by the Debtor which does not incorporate the provisions of this Interim Order; and

(f)    A change in the ownership, principals, directors or officers of the Debtor, as such exist as of the date of this Interim Order, including but not limited to any sale of the Debtor's business and/or any bankruptcy order confirming a Chapter 11 Reorganization by a party other than the Debtor which occurs without the agreement of the Debtor and Ford Credit.

**Remedies for Event of Default.**

10. Upon the occurrence and continuation of any Event of Default past the applicable cure period, Ford Credit shall be entitled to the following rights and remedies, which are cumulative in nature:

    (a) Ford Credit may immediately terminate its consent to the use of Ford Credit's Cash Collateral.

    (b) Ford Credit may seek relief from the automatic stay to exercise all rights and remedies with respect to all of its Collateral upon an expedited basis with at least 72 hours' notice of the hearing.

    (c) Upon entry of an order lifting the automatic stay under section 362, Debtor shall assemble and deliver all Collateral to Ford Credit at Debtor's place of business or such other location as acceptable to Ford Credit.

**No Prejudice and Reservation of Rights.**

11. Notwithstanding any provision of this Interim Order to the contrary, nothing in the Interim Order shall constitute or be deemed to constitute a waiver of any rights, remedies, claims or defenses Ford Credit may have pursuant to the Loan Documents, provided for by the Bankruptcy Code or applicable non-bankruptcy law, including the right to move for relief from the automatic stay or to seek a modification of this Interim Order. The rights and obligations of the Debtor and the rights and security interests of Ford Credit arising out of this Interim Order are in addition to, and are not intended as a waiver or substitution for any right, remedy, lien or security interest granted under the Loan Documents.

**Effective Date.**

12.     This Interim Order shall not be effective unless and until it is entered by the Bankruptcy Court. Regardless of the date and time that such order is entered by the Clerk of the Bankruptcy Court, this Interim Order shall take effect and be binding upon the parties as of the date of the execution of this Interim Order.

**Effect of Termination.**

13.     The rights and obligations of the Debtor and Ford Credit with respect to all transactions which occur prior to any termination of the authority of the Debtor to use Cash Collateral pursuant to the Interim Order, including, without limitation, the validity, priority and extent of the Replacement Liens and any administrative priority claims under Section 507(b) provided for herein, shall remain unimpaired and unaffected by, and shall survive any such termination.

**Reversal or Vacation of Court Order.**

14.     Any reversal, modification, or vacation of this Interim Order shall not affect the validity or priority of any obligation of the Debtor to Ford Credit incurred or arising by operation of law, or any security interest or lien granted to Ford Credit under the Interim Order, before the effective date of such reversal, modification or vacation. Notwithstanding the entry of any subsequent stay or any such reversal, modification or vacation, all uses of the Cash Collateral, and the security interest or liens granted to Ford Credit under this Interim Order before the effective date of any such stay, reversal, modification or vacation shall be governed in all respects by the original provisions of this Interim Order and Ford Credit shall be entitled to all the rights, privileges and benefits with respect to all such uses, obligations, security interests, and liens.

**No Admissions or Waivers.**

15. Notwithstanding any provisions of this Interim Order to the contrary:

    (a)    Nothing herein shall constitute or be deemed to constitute an admission by the Debtor, Ford Credit, any other creditor, or any party-in-interest, or constitute a wavier or estoppel of any legal position of any party.

    (b)    Nothing herein shall prejudice the rights of Ford Credit in any manner whatsoever, including without limitation to (i) object to the sufficiency of the terms of this Interim Order respecting Debtor's further use of Cash Collateral beyond the authorization provided for herein, (ii) seek further adequate protection under section 361 and 363 of the Bankruptcy Code, (iii) seek relief from the automatic stay under sections 362(d)(1), (d)(2) or (d)(3) of the Bankruptcy Code, (iv) oppose, contest, challenge or defend any motion, complaint or other pleading for relief filed by Debtor in this or any other Court, or to assert any defense, counterclaim or cross-claim cognizable under the Bankruptcy Code or applicable non-bankruptcy law, (v) seek a modification or termination of this Interim Order for cause, or (vi) seek any other relief whatsoever at any time;

    (c)    Conversely, nothing contained in this Interim Order shall prejudice the rights of Debtor in any manner whatsoever, including without limitation, to (i) seek continued use of Cash Collateral beyond any authorization set forth herein, (ii) oppose, contest, challenge or defend any motion, complaint or other pleading for relief filed by Ford Credit in this or any other Court, or to assert any defense, counter-claim or cross-claim

cognizable under the Bankruptcy Code or applicable non-bankruptcy law or (iii) seek any other relief whatsoever.

**Successors.**

16.     This Interim Order shall be binding upon and inure to the benefit of the parties, and their respective successors and assigns, including any successor trustee appointed in this case.

**Effect on Non-Signatories.**

17.     The representations and agreements of the parties set forth in this Interim Order shall not be binding upon or prejudice the rights of any party-in-interest not a signatory hereto, including, without limitation, any committee of unsecured creditors appointed in this case.

**Universal Underwriters Service Corporation**

18.     To the extent funds held by the Debtor are determined to be held by the Debtor on behalf of or in a fiduciary capacity for Universal as the sole property of Universal and not property of the Debtor's estates, then said funds ("Universal Claimed Funds") are expressly excluded from the scope and effect of this Interim Order. All parties with standing reserve all rights to investigate, and confirm or contest whether Debtor holds or will hold any Universal Claimed Funds.

**Notice.**

19.     Any notice required to be given pursuant to the terms of this Interim Order may be given by email, facsimile, first class mail or overnight delivery, and shall be valid on the date given if by email or facsimile at or before 5:00 p.m., Central Time, or the next business day if received thereafter, on the actual date of delivery if by overnight mail, or three (3) days after deposit in the mail if by first class mail, and shall be delivered as follows:

Reagor-Dykes Motors, LP
c/o David R. Langston
Mullin, Hoard & Brown
1500 Broadway, Suite 700
Lubbock, TX 79401
Facsimile: (806) 765-0553
Email: drl@mhba.com


Ford Motor Credit Company LLC
c/o Donald H. Cram
Severson & Werson, P.C.
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Facsimile: (415) 956-0439
Email: dhc@severson.com

Office of the United States Trustee
c/o Stephen McKitt
1100 Commerce Street, Room 976
Dallas, TX 75231
Facsimile: (214) 767-1075
Email: Stephen.McKitt@usdoj.gov

20.     With the approval of the U.S. Trustee, the Debtor and Ford Credit may extend the Interim Period, without further notice to creditors or other order of this Court; provided that a stipulation extending this Interim Order signed by the Debtor and Ford Credit is filed together with a copy of a budget if there are changes from the Interim Budget.

21.     Pursuant to Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry. To the extent applicable, the 14-day stay set forth in Bankruptcy Rule 4001(a)(1) is hereby waived.

22.     To the extent there is a conflict between the terms of this Interim Order and the terms of the Motion, this Interim Order shall control.

23.     This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**Final Hearing.**

24.     Pursuant to Bankruptcy Rule 4001, the final hearing (the "Final Hearing") on the Motion shall be held and is hereby scheduled for Thursday, August 30, 2018 at 9:00 a.m. before this Court in the U.S. Bankruptcy Courtroom located in Room 314, 1205 Texas Avenue, Lubbock, Texas. Objections to the requested relief shall be filed with the Court no later than Thursday, August 23, 2018 at 5:00 p.m. prevailing Central Time and served upon (i) the Debtor; (ii) the Debtor's counsel; (iii) the United States Trustee; (iv) Ford Credit; (v) all secured creditors of the Debtor; and (vi) any other party that has filed a notice of appearance in this Chapter 11 Case. The Debtor shall promptly mail copies of this Interim Order to each of the parties receiving notice of the Motion, as well as any other entity known to the Debtor that might have an interest in the Cash Collateral and any other party that has filed and served a special request for notice with this Court.

# # # END OF ORDER # # #

Agreed to by:

/s/ David R. Langston

David R. Langston
State Bar I.D. No. 11923800
Mullin, Hoard & Brown
1500 Broadway, Suite 700
Lubbock, TX 79401
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

**Proposed Attorneys for Debtors
and Debtors-in-Possession**

-and-

/s/ Donald H. Cram (w/ permission)

Donald H. Cram
CA Bar I.D. No. 160004
Texas Bar I.D. No. 05000300
**SEVERSON & WERSON**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

(415) 398-3344 telephone
dhc@severson.com

**Attorneys for Ford Motor Credit Company LLC**

-and-

/s/ Tommy J. Swann (w/ permission)

Tommy J. Swann
State Bar I.D. No. 19552820
McClesky, Harriger, Brazill & Graf, L.L.P.
5010 University Avenue, 5th Floor
Lubbock, Texas 79413
(806) 796-7340 Telephone
tswann@mhbg.com

**Attorneys for Universal Underwriters Service Corporation**

Exhibit A

1. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about June 22, 2015 between Ford Credit and RD Plainview.

2. Security Agreement dated on or about June 22, 2015 between Ford Credit and RD Plainview.

3. Security Agreement dated on or about June 19, 2015 between Ford Credit and RD III.

4. Limited Liability Certificate dated on or about October 12, 2015 and signed by Bart Reagor as president for RD III.

5. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Imports.

6. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Imports.

7. Limited Liability Certificate dated on or about October 13, 2014 and signed by Bart Reagor and Rick Dykes.

8. Continuing Guaranty dated November 13, 2014 between Ford Credit and RD Auto Co., RD Motors, and RD Amarillo.

9. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about March 3, 2008 between Ford Credit and RD Motors.

10. Security Agreement dated on or about March 3, 2008 between Ford Credit and RD Motors.

11. Master Security Agreement dated on or about December 15, 2011 between Ford Credit and RD Motors.

12. Master Loan and Security Agreement dated on or about November 21, 2011 between Ford Credit and RD Motors.



13. Loan Supplement to Master Loan and Security Agreement (Revolving Line of Credit) dated on or about November 21, 2011 between Ford Credit and RD Motors.

14. Loan Supplement to Master Loan and Security Agreement (Revolving Line of Credit) dated on or about April 30, 2014 between Ford Credit and RD Motors.

15. Amendment (Master Loan and Security Agreement) dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports and RD Amarillo.

16. Loan Supplement (Master Loan and Security Agreement) (Revolving Line of Credit Increase) dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports and RD Amarillo.

17. Second Amendment (Master Loan and Security Agreement) dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview, and RD Floydada.

18. Fourth Loan Supplement (Master Loan and Security Agreement) (Revolving Line of Credit – Amendment) dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview and RD Floydada.

19. Cross-Default and Cross-Collateralization Agreement dated on or about November 21, 2011 between Ford Credit and RD Motors, Bart Reagor and Rick Dykes.

20. Cross-Default and Cross-Collateralization Agreement dated on or about November 24, 2014 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, Bart Reagor and Rick Dykes.

21. Amended and Restated Cross-Default and Cross-Collateralization Agreement dated on or about January 14, 2017 between Ford Credit and RD Motors, RD Auto, RD Imports, RD Amarillo, RD Plainview, RD Floydada, Bart Reagor and Rick Dykes.

22. Continuing Guaranty and Wholesale Financing Guaranty dated on or about April 5, 2007 between Ford Credit and Bart Reagor, Rick Dykes, and Reagor Auto Mall.

23. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and RD Auto and RD Amarillo.

24. Continuing Guaranty dated on or about October 12, 2015 between Ford Credit and RD Auto.

25. Limited Liability Certificate dated on or about September 29, 2016 signed by Bart Reagor.

26. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

27. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

28. Master Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Amarillo.

29. Continuing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor Auto Mall.

30. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and RD II, L.L.C., RD Motors, and RD Imports.

31. Limited Liability Certificate dated on or about October 1, 2014 signed by Bart Reagor and Rick Dykes.

32. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 1, 2015 between Ford Credit and RD Floydada.

33. Security Agreement dated on or about October 1, 2015 between Ford Credit and RD Floydada.

34. Continuing Guaranty dated on or about January 8, 2016 between Ford Credit and Bart Reagor, Rick Dykes and Reagor Auto Mall.

35. Limited Liability Certificate dated on or about October 1, 2015 signed by Bart Reagor and Rick Dykes.

36. Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

37. Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

38. Master Security Agreement dated on or about October 13, 2014 between Ford Credit and RD Auto.

39. Continuing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor-Dykes II, L.L.C.

40. Continuing Guaranty dated on or about November 13, 2014 between Ford Credit and Reagor-Dykes Amarillo, L.P., Reagor-Dykes Motors, L.P., and Reagor-Dykes Imports, L.P.

41. Limited Liability Certificate dated on or about October 13, 2014 signed by Bart Reagor and Rick Dykes.

42. Wholesale Financing Guaranty dated on or about October 13, 2014 between Ford Credit and Bart Reagor, Rick Dykes and Reagor-Dykes II, L.L.C.

43. UCC-1 Financing Statements filed with the Texas Secretary of State on October 14, 2014 as Document No. 14-0032742912 and all continuations, and amendments.

44. UCC-1 Financing Statements filed with the Texas Secretary of State on October 14, 2014 as Document No. 14-0032743660 and all continuations, and amendments.

45. UCC-1 Financing Statements filed with the Texas Secretary of State on March 4, 2008 as Document No. 08-0007673445 and all continuations, and amendments.

46. UCC-1 Financing Statements filed with the Texas Secretary of State on October 11, 2010 as Document No. 10-29340403 and all continuations, and amendments.

47. UCC-1 Financing Statements filed with the Texas Secretary of State on October 9, 2015 as Document No. 15-0032542032 and all continuations, and amendments.

48. UCC-1 Financing Statements filed with the Texas Secretary of State on June 25, 2015 as Document No. 15-0020004335 and all continuations, and amendments

| Reagor-Dykes Debtor in Possession Case 18-50214 | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| BK6+Corp(prorated) Budget | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | Projected | Projected | Projected | Projected |
| | | | | | |
| | | | | | |
| **BEGINNING CASH BALANCE** | 468,000 | 673,377 | 272,344 | 292,397 | (264,872) |
| GROSS PROFIT | 171,186 | 47,000 | 47,000 | 47,000 | 47,000 |
| SERVICE INCOME | 68,313 | 71,250 | 71,250 | 71,250 | 71,250 |
| GROSS SALES PROCEEDS | 257,941 | - | - | - | - |
| FLOOR PLAN PAYMENTS | - | (257,941) | - | - | - |
| **Total Cash Receipts** | 497,440 | (139,691) | 118,250 | 118,250 | 118,250 |
| | | | | | |
| EXPENDITURES | | | | | |
| OFFICE COMPENSATION | 275,133 | 14,709 | 36,611 | 14,709 | 36,611 |
| SALES AND COMMISSIONS | - | 150,095 | - | - | - |
| SERVICE COMPENSATION | - | 39,667 | - | 39,667 | - |
| ADVERTISING | - | 14,306 | - | - | - |
| TOOLS & SUPPLIES | 13,292 | 21,375 | 21,375 | 21,375 | 21,375 |
| PAYROLL TAXES | 3,410 | 17,687 | 3,167 | 4,703 | 3,167 |
| EMPLOYEE BENEFITS | - | - | - | - | - |
| WORKMAN'S COMP | - | - | - | 6,922 | 3,223 |
| MISCELLANEOUS | 228 | 1,768 | 3,018 | 1,768 | 1,768 |
| PROFESSIONAL FEES | - | - | - | 89,411 | - |
| PHONE | - | - | 5,950 | 1,073 | - |
| POSTAGE | - | 155 | 155 | 155 | 155 |
| REPAIRS/MAINTENCE - BLDG | - | 1,581 | 1,581 | 1,894 | 1,894 |
| INSURANCE - GL AND PROPERTY | - | - | 26,340 | 207,137 | - |
| UTILITIES | - | - | - | 2,504 | 32,105 |
| TAXES | - | - | - | - | - |
| RENT-BLG | - | - | - | 284,201 | - |
| **TOTAL OPERATING EXPENSES** | 292,062 | 261,342 | 98,197 | 675,519 | 100,298 |
| | | | | | |
| **ENDING CASH BALANCE** | 673,377 | 272,344 | 292,397 | (264,872) | (246,920) |



EXHIBIT
B

| Reagor-Dykes Debtor in Possession Case 18-50214 | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| Corporate Prorated | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | Projected | Projected | Projected | Projected |
| | Employee Count | | | | |
| **BEGINNING CASH BALANCE** | 8 | (42,829) | (57,447) | (123,878) | (274,269) |
| GROSS PROFIT | - | - | - | - | - |
| SERVICE INCOME | - | - | - | - | - |
| GROSS SALES PROCEEDS | - | - | - | - | - |
| FLOOR PLAN PAYMENTS | - | - | - | - | - |
| **Total Cash Receipts** | - | - | - | - | - |
| | | | | | |
| **EXPENDITURES** | - | - | - | - | - |
| OFFICE COMPENSATION | 39,419 | - | 36,611 | - | 36,611 |
| SALES AND COMMISSIONS | - | - | - | - | - |
| SERVICE COMPENSATION | - | - | - | - | - |
| ADVERTISING | - | 14,306 | - | - | - |
| TOOLS & SUPPLIES | - | - | - | - | - |
| PAYROLL TAXES | 3,410 | - | 3,167 | - | 3,167 |
| EMPLOYEE BENEFITS | - | - | - | - | - |
| WORKMAN'S COMP | - | - | - | - | - |
| MISCELLANEOUS | - | 268 | 268 | 268 | 268 |
| PROFESSIONAL FEES | - | - | - | 89,411 | - |
| PHONE | - | - | - | 1,073 | - |
| POSTAGE | - | 45 | 45 | 45 | 45 |
| REPAIRS/MAINTENCE - BLDG | - | - | - | 313 | 313 |
| INSURANCE - GL AND PROPERTY | - | - | 26,340 | - | - |
| UTILITIES | - | - | - | 2,504 | - |
| TAXES | - | - | - | - | - |
| RENT-BLG | - | - | - | 56,777 | - |
| **TOTAL OPERATING EXPENSES** | 42,829 | 14,619 | 66,431 | 150,391 | 40,404 |
| | | | | | |
| **ENDING CASH BALANCE** | (42,829) | (57,447) | (123,878) | (274,269) | (314,672) |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-50214 | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| CORPORATE TOTAL | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| MONTHLY BUDGET | | Projected | Projected | Projected | Projected |
| | | | | | |
| | Employee Count | | | | |
| BEGINNING CASH BALANCE | 8 | | | | |
| GROSS PROFIT | | | | | |
| SERVICE INCOME | | | | | |
| GROSS SALES PROCEEDS | | | | | |
| FLOOR PLAN PAYMENTS | | | | | |
| Total Cash Receipts | | | | | |
| | | | | | |
| EXPENDITURES | | | | | |
| OFFICE COMPENSATION | 55,109 | | 51,183 | | 51,183 |
| SALES AND COMMISSIONS | | | | | |
| SERVICE COMPENSATION | | | | | |
| ADVERTISING | | 20,000 | | | |
| TOOLS & SUPPLIES | | | | | |
| PAYROLL TAXES | 4,767 | - | 4,427 | - | 4,427 |
| EMPLOYEE BENEFITS | | | | | |
| WORKMAN'S COMP | | | | | |
| MISCELLANEOUS | | 375 | 375 | 375 | 375 |
| PROFESSIONAL FEES | | | | 125,000 | |
| PHONE | | | | 1,500 | |
| POSTAGE | | 63 | 63 | 63 | 63 |
| REPAIRS/MAINTENCE - BLDG | | | | 438 | 438 |
| INSURANCE - GL AND PROPERTY | | | 36,824 | | |
| UTILITIES | | | | 3,500 | |
| TAXES | | | | | |
| RENT-BLG | | | | 79,377 | |
| TOTAL OPERATING EXPENSES | 59,876 | 20,438 | 92,873 | 210,252 | 56,486 |
| | | | | | |
| ENDING CASH BALANCE | (59,876) | (20,438) | (92,873) | (210,252) | (56,486) |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| DEBTOR STORES CONSOLIDATED | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | | | | | | |
| | | | | | | |
| | Employee Count | | 716,206 | 329,791 | 416,275 | 9,396 |
| BEGINNING CASH BALANCE | 45 | 468,000 | 716,206 | 329,791 | 416,275 | 9,396 |
| GROSS PROFIT | | 171,186 | 47,000 | 47,000 | 47,000 | 47,000 |
| SERVICE INCOME | | 68,313 | 71,250 | 71,250 | 71,250 | 71,250 |
| GROSS SALES PROCEEDS | | 257,941 | - | | | |
| FLOOR PLAN PAYMENTS | | - | (257,941) | - | - | - |
| Total Cash Receipts | | 497,440 | (139,691) | 118,250 | 118,250 | 118,250 |
| | | | | | | |
| EXPENDITURES | | | | | | |
| OFFICE COMPENSATION | 7 | 235,714 | 14,709 | - | 14,709 | - |
| SALES AND COMMISSIONS | 17 | - | 150,095 | - | - | - |
| SERVICE COMPENSATION | 21 | - | 39,667 | - | 39,667 | - |
| ADVERTISING | | - | - | - | | |
| TOOLS & SUPPLIES | | 13,292 | 21,375 | 21,375 | 21,375 | 21,375 |
| PAYROLL TAXES | | - | 17,687 | - | 4,703 | - |
| EMPLOYEE BENEFITS | | - | - | - | | |
| WORKMAN'S COMP | | - | - | - | 6,922 | 3,223 |
| MISCELLANEOUS | | 228 | 1,500 | 2,750 | 1,500 | 1,500 |
| PROFESSIONAL FEES | | - | - | - | - | |
| PHONE | | - | - | 5,950 | - | - |
| POSTAGE | | - | 110 | 110 | 110 | 110 |
| REPAIRS/MAINTENCE - BLDG | | - | 1,581 | 1,581 | 1,581 | 1,581 |
| INSURANCE - GL AND PROPERTY | | - | - | - | 207,137 | - |
| UTILITIES | | - | - | - | - | 32,105 |
| TAXES | | - | - | - | - | |
| RENT-BLG | | - | - | - | 227,424 | - |
| TOTAL OPERATING EXPENSES | | 249,234 | 246,723 | 31,766 | 525,129 | 59,894 |
| | | | | | | |
| ENDING CASH BALANCE | | 716,206 | 329,791 | 416,275 | 9,396 | 67,752 |

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Amarillo Mitsubishi | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | | | | | | |
| | Employee Count | | | | | |
| **BEGINNING CASH BALANCE** | 5 | *78,000* | *90,198* | *42,346* | *45,471* | *151* |
| GROSS PROFIT | | | 1,000 | 1,000 | 1,000 | 1,000 |
| SERVICE INCOME | | 3,783 | 3,750 | 3,750 | 3,750 | 3,750 |
| GROSS SALES PROCEEDS | | 32,528 | | | | |
| FLOOR PLAN PAYMENTS | | | (32,528) | | | |
| **Total Cash Receipts** | | 36,311 | (27,778) | 4,750 | 4,750 | 4,750 |
| | | | | | | |
| **EXPENDITURES** | | | | | | |
| OFFICE COMPENSATION | 1 | 24,073 | 1,040 | | 1,040 | |
| SALES AND COMMISSIONS | 2 | | 11,669 | | | |
| SERVICE COMPENSATION | 2 | | 4,410 | | 4,410 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | | 1,125 | 1,125 | 1,125 | 1,125 |
| PAYROLL TAXES | | | 1,481 | - | 471 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | 1,045 | |
| MISCELLANEOUS | | 40 | 250 | 250 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 150 | | |
| POSTAGE | | | 25 | 25 | 25 | 25 |
| REPAIRS/MAINTENCE - BLDG | | | 75 | 75 | 75 | 75 |
| INSURANCE - GL AND PROPERTY | | | | | 23,015 | |
| UTILITIES | | | | | | 8,915 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 18,613 | |
| **TOTAL OPERATING EXPENSES** | | 24,113 | 20,075 | 1,625 | 50,070 | 10,390 |
| | | | | | | |
| **ENDING CASH BALANCE** | | 90,198 | 42,346 | 45,471 | 151 | (5,489) |

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Lubbock Mitsubishi | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | Employee Count | | | | | |
| **BEGINNING CASH BALANCE** | 8 | *78,000* | *117,519* | *3,313* | *10,935* | *(86,261)* |
| GROSS PROFIT | | | 4,500 | 4,500 | 4,500 | 4,500 |
| SERVICE INCOME | | 7,633 | 6,250 | 6,250 | 6,250 | 6,250 |
| GROSS SALES PROCEEDS | | 84,161 | | | | |
| FLOOR PLAN PAYMENTS | | | (84,161) | | | |
| **Total Cash Receipts** | | 91,794 | (73,411) | 10,750 | 10,750 | 10,750 |
| | | | | | | |
| <u>EXPENDITURES</u> | | | | | | |
| OFFICE COMPENSATION | 1 | 42,592 | 2,083 | | 2,083 | |
| SALES AND COMMISSIONS | 3 | | 24,448 | | | |
| SERVICE COMPENSATION | 4 | | 8,828 | | 8,828 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | 9,656 | 1,875 | 1,875 | 1,875 | 1,875 |
| PAYROLL TAXES | | | 3,059 | - | 944 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | 1,889 | |
| MISCELLANEOUS | | 28 | 250 | 500 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 500 | | |
| POSTAGE | | | 15 | 15 | 15 | 15 |
| REPAIRS/MAINTENCE - BLDG | | | 238 | 238 | 238 | 238 |
| INSURANCE - GL AND PROPERTY | | | | | 36,824 | |
| UTILITIES | | | | | | 7,089 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 55,000 | |
| **TOTAL OPERATING EXPENSES** | | 52,275 | 40,795 | 3,128 | 107,946 | 9,467 |
| | | | | | | |
| **ENDING CASH BALANCE** | | 117,519 | 3,313 | 10,935 | (86,261) | (84,977) |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Plainview Ford | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | Employee Count | | | | | |
| **BEGINNING CASH BALANCE** | 9 | *78,000* | *139,438* | *111,280* | *137,080* | *80,218* |
| GROSS PROFIT | | 88,606 | 15,000 | 15,000 | 15,000 | 15,000 |
| SERVICE INCOME | | 31,358 | 18,750 | 18,750 | 18,750 | 18,750 |
| GROSS SALES PROCEEDS | | | | | | |
| FLOOR PLAN PAYMENTS | | | | | | |
| **Total Cash Receipts** | | 119,964 | 33,750 | 33,750 | 33,750 | 33,750 |
| | | | | | | |
| EXPENDITURES | | | | | | |
| OFFICE COMPENSATION | 1 | 55,364 | 2,708 | | 2,708 | |
| SALES AND COMMISSIONS | 4 | | 41,583 | | | |
| SERVICE COMPENSATION | 4 | | 6,982 | | 6,982 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | 3,147 | 5,625 | 5,625 | 5,625 | 5,625 |
| PAYROLL TAXES | | | 4,435 | - | 838 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | 1,968 | |
| MISCELLANEOUS | | 15 | 250 | 500 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 1,500 | | |
| POSTAGE | | | 25 | 25 | 25 | 25 |
| REPAIRS/MAINTENCE - BLDG | | | 300 | 300 | 300 | 300 |
| INSURANCE - GL AND PROPERTY | | | | | 41,427 | |
| UTILITIES | | | | | | 1,600 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 30,488 | |
| **TOTAL OPERATING EXPENSES** | | 58,526 | 61,908 | 7,950 | 90,612 | 7,800 |
| | | | | | | |
| **ENDING CASH BALANCE** | | 139,438 | 111,280 | 137,080 | 80,218 | 106,168 |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Plainview Toyota | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | | | | | | |
| | | Employee Count | | | | |
| **BEGINNING CASH BALANCE** | 6 | *78,000* | *67,373* | *41,041* | *46,341* | *(11,130)* |
| GROSS PROFIT | | 14,457 | 4,000 | 4,000 | 4,000 | 4,000 |
| SERVICE INCOME | | 2,381 | 5,000 | 5,000 | 5,000 | 5,000 |
| GROSS SALES PROCEEDS | | | | | | |
| FLOOR PLAN PAYMENTS | | | | | | |
| **Total Cash Receipts** | | 16,838 | 9,000 | 9,000 | 9,000 | 9,000 |
| | | | | | | |
| EXPENDITURES | | | | | | |
| OFFICE COMPENSATION | 2 | 27,465 | 3,489 | | 3,489 | |
| SALES AND COMMISSIONS | 2 | | 24,005 | | | |
| SERVICE COMPENSATION | 2 | | 3,231 | | 3,231 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | | 1,500 | 1,500 | 1,500 | 1,500 |
| PAYROLL TAXES | | | 2,658 | - | 581 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | 1,063 | |
| MISCELLANEOUS | | | 250 | 500 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 1,500 | | |
| POSTAGE | | | - | - | - | - |
| REPAIRS/MAINTENCE - BLDG | | | 200 | 200 | 200 | 200 |
| INSURANCE - GL AND PROPERTY | | | | | 27,618 | |
| UTILITIES | | | | | | 2,294 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 28,538 | |
| **TOTAL OPERATING EXPENSES** | | 27,465 | 35,332 | 3,700 | 66,471 | 4,244 |
| | | | | | | |
| **ENDING CASH BALANCE** | | 67,373 | 41,041 | 46,341 | (11,130) | (6,374) |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-50214 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Floydata Chevy, GMC | | 8/11/2018 | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | | | | | | |
| | | Employee Count | | | | |
| **BEGINNING CASH BALANCE** | 7 | *78,000* | *53,494* | *39,530* | *53,519* | *(2,865)* |
| GROSS PROFIT | | | 2,500 | 2,500 | 2,500 | 2,500 |
| SERVICE INCOME | | 2,568 | 18,750 | 18,750 | 18,750 | 18,750 |
| GROSS SALES PROCEEDS | | | | | | |
| FLOOR PLAN PAYMENTS | | | | | | |
| **Total Cash Receipts** | | 2,568 | 21,250 | 21,250 | 21,250 | 21,250 |
| | | | | | | |
| **EXPENDITURES** | | | | | | |
| OFFICE COMPENSATION | 1 | 26,533 | 3,138 | | 3,138 | |
| SALES AND COMMISSIONS | 1 | | 14,279 | | | |
| SERVICE COMPENSATION | 5 | | 9,277 | | 9,277 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | 489 | 5,625 | 5,625 | 5,625 | 5,625 |
| PAYROLL TAXES | | | 2,309 | - | 1,074 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | 956 | |
| MISCELLANEOUS | | 52 | 250 | 500 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 800 | | |
| POSTAGE | | | 5 | 5 | 5 | 5 |
| REPAIRS/MAINTENCE - BLDG | | | 331 | 331 | 331 | 331 |
| INSURANCE - GL AND PROPERTY | | | | | 32,221 | |
| UTILITIES | | | | | | 2,392 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 24,756 | |
| **TOTAL OPERATING EXPENSES** | | 27,074 | 35,214 | 7,261 | 77,634 | 8,603 |
| | | | | | | |
| **ENDING CASH BALANCE** | | 53,494 | 39,530 | 53,519 | (2,865) | 9,782 |

Prepared by BlackBriar

| Reagor-Dykes Debtor in Possession Case 18-502 | | Actual | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| Spike Dykes Ford - LaMesa | | | 8/18/2018 | 8/25/2018 | 9/1/2018 | 9/8/2018 |
| | | | Projected | Projected | Projected | Projected |
| | | | | | | |
| | | | | | | |
| | Employee Count | | | | | |
| BEGINNING CASH BALANCE | 10 | 78,000 | 248,183 | 92,282 | 122,929 | 29,283 |
| GROSS PROFIT | | 68,123 | 20,000 | 20,000 | 20,000 | 20,000 |
| SERVICE INCOME | | 20,590 | 18,750 | 18,750 | 18,750 | 18,750 |
| GROSS SALES PROCEEDS | | 141,252 | | | | |
| FLOOR PLAN PAYMENTS | | | (141,252) | | | |
| Total Cash Receipts | | 229,965 | (102,502) | 38,750 | 38,750 | 38,750 |
| | | | | | | |
| EXPENDITURES | | | | | | |
| OFFICE COMPENSATION | 1 | 59,689 | 2,250 | | 2,250 | |
| SALES AND COMMISSIONS | 5 | | 34,111 | | | |
| SERVICE COMPENSATION | 4 | | 6,940 | | 6,940 | |
| ADVERTISING | | | | | | |
| TOOLS & SUPPLIES | | | 5,625 | 5,625 | 5,625 | 5,625 |
| PAYROLL TAXES | | | 3,746 | - | 795 | - |
| EMPLOYEE BENEFITS | | | | | | |
| WORKMAN'S COMP | | | | | | 3,223 |
| MISCELLANEOUS | | 93 | 250 | 500 | 250 | 250 |
| PROFESSIONAL FEES | | | | | | |
| PHONE | | | | 1,500 | | |
| POSTAGE | | | 40 | 40 | 40 | 40 |
| REPAIRS/MAINTENCE - BLDG | | | 438 | 438 | 438 | 438 |
| INSURANCE - GL AND PROPERTY | | | | | 46,030 | |
| UTILITIES | | | | | | 9,815 |
| TAXES | | | | | | |
| RENT-BLG | | | | | 70,028 | |
| TOTAL OPERATING EXPENSES | | 59,782 | 53,399 | 8,103 | 132,396 | 19,390 |
| | | | | | | |
| ENDING CASH BALANCE | | 248,183 | 92,282 | 122,929 | 29,283 | 48,643 |