Mark E. Andrews (Tex. Bar No. 01253520)
mandrews@dykema.com
Jesse T. Moore (Tex. Bar No. 24056001)
jmoore@dykema.com
DYKEMA COX SMITH
1717 Main Street, Suite 4200
Dallas, TX  75201
Telephone:  (214) 462-6400
Facsimile:  (214) 462-6401

*Attorneys for General Motors, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | | |
|---|---|---|
| **IN RE:**<br>**REAGOR-DYKES MOTORS, LP**<br>　　　Debtor.<br>_____ | §<br>§<br>§<br>§<br>§ | **Case No. 18-50214-rlj-11**<br>**(Jointly Administered Under**<br>**Case No. 18-50214)** |
| **IN RE:**<br>**REAGOR-DYKES IMPORTS, LP**<br>　　　Debtor.<br>_____ | §<br>§<br>§<br>§<br>§ | **Case No. 18-50215-rlj-11**<br>**(Jointly Administered Under**<br>**Case No. 18-50214)** |
| **IN RE:**<br>**REAGOR-DYKES AMARILLO, LP**<br>　　　Debtor.<br>_____ | §<br>§<br>§<br>§<br>§ | **Case No. 18-50216-rlj11**<br>**(Jointly Administered Under**<br>**Case No. 18-50214)** |
| **IN RE:**<br>**REAGOR-DYKES AUTO COMPANY, LP**<br>　　　Debtor.<br>_____ | §<br>§<br>§<br>§<br>§ | **Case No. 18-50217-rlj11**<br>**(Jointly Administered Under**<br>**Case No. 18-50214)** |
| **IN RE:**<br>**REAGOR-DYKES PLAINVIEW, LP**<br>　　　Debtor.<br>_____ | §<br>§<br>§<br>§ | **Case No. 18-50218-rlj11**<br>**(Jointly Administered Under**<br>**Case No. 18-50214)** |

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-50219-rlj-11 |
| REAGOR-DYKES FLOYDADA, LP | § | (Jointly Administered Under |
| | § | Case No. 18-50214) |
| Debtor. | § | |
| | § | |

**AMENDED MOTION TO LIFT AUTOMATIC STAY OR OBTAIN ADEQUATE PROTECTION**

TO THE HONORABLE BANKRUPTCY JUDGE:

COMES NOW General Motors LLC ("GM") and makes and files this *Amended Motion to Lift the Automatic Stay or Grant Adequate Protection*, which seeks to lift the automatic stay to permit GM to terminate its *Dealer Sales and Service Agreement* (the "Dealer Agreement") with Reagor-Dykes Floydada, LP ("Debtor Floydada") and withhold certain funds potentially due by GM to Debtor Floydada for potential future offset (if allowed by further order of the Court). In the alternative, GM must be provided with adequate protection of its interests. In support of this Amended Motion, GM would show as follows:

### I. Jurisdiction

1. This Court has jurisdiction over the Motion and the Cases. 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding. *Id*. § 157(b)(2). Venue is proper before this Court. *Id*. §§ 1408 & 1409. The Court has constitutional authority to enter a final order under *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny. The bases for the relief requested herein are §§ 361 and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules,"), and Local Bankruptcy Rule 4001-1.

## II. Background

2. On or about August 1, 2018 (the "Petition Date"), Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP (each a "Debtor" and collectively, the "Debtors") commenced this case by filing a petition in bankruptcy and by reason of such filing an automatic stay was put in place by 11 U.S.C. § 362.

3. On or about August 3, 2018, Ford Motor Credit Company, LLC ("Ford Credit"), which asserts a security interest in Debtors' inventory, as well as proceeds, products, rents, issues and profit of such inventory, securing Ford Credit's claims, filed an objection to Debtors' request to use cash collateral asserting, among other things, that it is owed $116 million and that at least $41 million of its cars were sold without payment back to Ford Credit. *See* Ford Motor Credit Company LLC's Opposition to Emergency Motion for Authority to Use Cash Collateral, filed August 3, 2018, Docket No. 15. It quickly became apparent that the dispute between Ford and the Debtor was not limited only to Ford. There are allegations of fraud, check kiting, and other abuses. In addition, GM understood that threats were made by Debtor personnel, including Dealer Operator, Bart Reagor, of physical violence. GM was sufficiently concerned about the safety of their personnel that they have refrained from conducting and audit.

4. Debtors operate multiple car dealerships from different manufacturers, including GM. In the course of operating these GM-branded dealerships, Debtors use trademarks and other intellectual property owned by GM and licensed to Debtors. Debtors also use financing from various lenders including in some cases GM affiliate GM Financial, and in other cases, Ford Credit and various banks.

5. GM has entered a *Dealer Sales and Service Agreement* (the "Dealer Agreement") with Reagor-Dykes Floydada, LP ("Debtor Floydada"). Broadly speaking, the Dealer Agreement permits Debtor Floydada to use GM's trademarks, service marks, and other services. *See* Dealer Agreement, arts. 6-8; *id*. § 17.5. In exchange, Debtor Floydada made various promises, many of which have been breached, as discussed next.

6. Minimum Working Capital Requirements Breached. Debtor Floydada promised to maintain minimum net working capital. *Dealer Agreement*, § 10.1. Debtor Floydada has breached its promise to maintain minimum net working capital.

7. Separate Line of Credit Requirements Breached. Debtor Floydada promised to maintain a "separate line of credit" to finance its purchase of new vehicles from GM in a form acceptable to GM. *Id*. at § 10.2. As set forth in the Dealer Agreement, this is "[t]o avoid damage to goodwill which could result if Dealer is financially unable to fulfill its commitments." *Id*.; *see also* § 13.1.11 (providing that not maintaining line of credit is separate grounds for termination). Debtor Floydada has breached its promise this satisfactory separate line of credit prior to the Petition Date, and now its bankruptcy case likely means that such lines of credit are unavailable.

8. Uniform Accounting System Requirements Breached. Debtor Floydada promised to maintain a uniform accounting system according to requirements of GM. *Id*. at § 11.1. GM wants to avoid monetary damages and reputational losses from accounting irregularities and fraud. It appears possible that Debtor Floydada has not maintained an accurate accounting system as it had promised to do—an accounting system maintained in accordance with GM's

standards would have alerted Debtor Floydada's insiders (and GM) about the alarming deterioration in the Debtor's financial condition long before the Petition Date.[1]

9. <u>Unauthorized Changes in Management</u>. In order to avoid (or delay) appointment of a chapter 11 trustee in these cases, Debtor Floydada has appointed a Chief Restructuring Officer that is "invested with complete and exclusive management and operation of the Debtors' businesses." *See* Order Interimly Granting Application to Employ BlackBriar Advisors LLC as Chief Restructuring Officer at 3, entered August 17, 2018, Docket No. 133. This Chief Restructuring Officer effectively constitutes a "Dealer Operator" under the Dealer Agreement, but is not the "Dealer Operator" approved by GM in the Dealer Agreement. Management of the dealership is an important issue, as emphasized by the Dealer Agreement:

> This is a Personal Services Agreement, entered into in reliance on the qualifications, integrity and reputation of Dealer Operator identified in the Dealer Operator Addendum, and on Dealer's assurance that Dealer Operator will provide personal services by exercising full managerial authority over Dealership Operations. Dealer Operator is responsible for developing and implementing policies, practices and procedures necessary for the Dealer to meet its obligations under this Agreement with respect to sales, service, customer satisfaction, facilities, and capitalization. Dealer Operator will have an unencumbered ownership interest in Dealer of at least 15 percent at all times. A Dealer Operator must be a competent business person, an effective manager, must have demonstrated a caring attitude toward customers, and should have a successful record as a merchandiser of automotive products and services or otherwise have demonstrated the ability to manage a dealership. The experience necessary may vary with the potential represented by each dealer location.

*Dealership Agreement*, art 2. The CRO does not meet these requirements to operate Debtor's GM dealership and has not been approved by GM to do so. GM has the right to terminate the Dealership Agreement due to this unauthorized change in control and other circumstances:

a) there has been a change in control without prior approval, *id.* §§ 12.2.1 & 13.1.1;

---

[1] The problems here may go beyond intentionally failing to implement proper accounting systems. At least one insider has refused to answer questions regarding the Debtors and these cases based on rights against self-incrimination under the Fifth Amendment of the United State Constitution.

b) the resulting dealership operations may not have acceptable capitalization, *id*. § 12.2.2; and

c) there are no arrangements to satisfy the indebtedness owed by Debtor Floydada to GM, *id*. § 12.2.6.

10. <u>Unauthorized Performance to Debtor-in-Possession</u>. Nothing in the Dealership Agreement permits Debtor Floydada from having a different entity perform under the Dealership Agreement; the Dealership Agreement instead prohibits Debtor Floydada from assignment the agreement to a third-party without consent of GM. *Id*. §§ 13.1.2 & 17.8. This limitation of course makes sense, given the well-placed sensitivity of GM to the particular personnel in control of GM-branded dealerships. The commencement of bankruptcy case creates a new entity—the debtor-in-possession—performing under the Dealership Agreement. This violates the Dealership Agreement.

11. <u>Additional Breaches of the Dealership Agreement</u>. Debtor Floydada has breached the Dealership Agreement in several other ways:

a) the ongoing disputes about management of the Debtors, including the loss of control by the equity owners of the Debtors, adversely affects dealership operations in breach of the Dealership Agreement, *id*. § 13.1.6;

b) the Debtors have failed to comply with several laws and regulations relating to Dealership Operations, *id*. § 13.1.0;

c) the Debtors may have submitted false applications or reports and engaged in other fraudulent conduct, *id*. §§ 13.1.10 & 13.1.14; and

d) the Debtors may have not timely paid obligations owed to General Motors, *id*. § 13.1.12.

### III. Relief Requested & Applicable Arguments

12. GM requests that the Court modify the automatic stay for cause pursuant to § 362(d)(1) of the Bankruptcy Code to permit GM to continue the process for terminating its *Dealer Sales and Service Agreement* (the "<u>Dealer Agreement</u>") with Reagor-Dykes Floydada, LP

("Debtor Floydada") under the Texas motor vehicle franchise termination laws and withhold certain funds potentially due by GM to Debtor Floydada for potential future offset (if allowed by further order of the Court) or in the alternative grant adequate protection to GM under § 361 of the Bankruptcy Code. Relief from stay should be granted for several reasons.

    a. **There is cause for GM to continue the process for administration termination of the Dealership Agreement under Texas law due to Debtor Floydada's breaches of the Dealership Agreement and misconduct, and in the alternative GM is entitled to adequate protection.**

13. Due to Debtor Floydada's breaches of the Dealer Agreement, GM is entitled to terminate the Dealer Agreement with Debtor Floydada. GM sent Debtor Floydada a notice of termination under Texas law on August 10, 2018, with the termination to be effective as of October 15, 2018. However, Texas law provides Debtor Floydada with the option to protest the termination by initiating a protest with the Texas Motor Vehicle Board. *See* Tex. Occup. Code § 2301.453(a)(2). Although GM does not believe its defense against a potential protest of the termination by Debtor Floydada implicates the automatic stay, out of an abundance of caution GM submits that cause exists to modify the automatic stay under § 362(d)(1) of the Bankruptcy Code to permit the termination to continue to a conclusion under Texas law.

14. This modification of the stay does not unfairly prejudice Debtor Floydada—it can obtain a fair administrative hearing on this issue by protesting the termination notice within 60 days of receipt of the notice. *See* Tex. Occup. Code § 2301.453(e). The Texas Motor Vehicle Board will then decide whether GM "by a preponderance of the evidence that there is good cause for the proposed termination or discontinuance." *Id.* § 2301.453(g). Modifying the stay will therefore not deprive Debtor Floydada with a fair hearing on the merits of these issues.

15. On the other hand, refusing to modify the stay is unfair to GM because that denies GM the protections of the Dealer Agreement, which permit GM to terminate non-performing

dealers such as Debtor Floydada in circumstances such as these, which in turn protects existing and future GM customers. The value of GM's trademarks, reputation, and goodwill has already been irreparably harmed by the wrongful conduct of Debtor Floydada, and GM believes that further irreparable harm will result from GM being forced to forego the contractual protections that the Debtor breached. GM does not believe that Debtor Floydada can continue as a viable GM-branded going concern given the major problems in this entity's balance sheet, and GM does not believe that its customer loyalty and reputation should be further jeopardized in a futile chapter 11 reorganization attempt. Moreover, this reorganization attempt cannot be premised on the continuation of a GM dealership: neither the Dealership Agreement nor the rights or obligations related to the same is a property right of Debtor Floydada, and they cannot be assumed or assigned as part of an asset sale. *See e.g.* Dealer Agreement § 17.8. The Dealership Agreement accordingly provides no realizable value to the Debtor's estate, which also weighs in favor of permitting GM to seek termination.

16. Further, maintaining the automatic stay here of course not only puts the interests of GM at risk—GM has many other properly managed dealerships who all rely on GM's brand and reputation. Balancing these interests of other Texas GM dealerships against the Debtors' interests also requires modifying the automatic stay to permit a termination hearing before the Texas Motor Vehicle Board.

   **b. There is cause for GM to withhold funds due to Debtor Floydada, and in the alternative GM is entitled to adequate protection.**

17. GM and Debtor Floydada have claims against each other related to ongoing business operations. These amounts are subject to setoff and accordingly GM's claims are secured. *See* 11 U.S.C. §§ 506(a) & 553(a). While GM does not seek permission to effectuate this setoff, it does ask for relief from the automatic stay to permit GM to continue to withholding

these funds so that GM does not lose its secured status. GM will only effectuate that setoff or otherwise apply or remit those funds pursuant to further order of the Court or as permitted by applicable provisions of the Bankruptcy Code.

18. Indeed, as a secured creditor, those funds subject to setoff constitute GM's collateral, and the Debtors can only use those funds by providing GM with adequate protection of its interests in those funds. Again, real security is required, and merely allowing GM an administrative claim for those funds will not suffice, especially here where there is no post-petition financing for an entity that is deeply insolvent due to massive, previously undisclosed losses. *See* 11 U.S.C. § 361(3).

19. As part of GM's effort to further evaluate its position, it is anticipated that it will engage in an audit of transactions affecting GM at a future date and is in discussions with the CRO and Debtor's counsel regarding same.

WHEREFORE, GM requests that its Motion to Lift the Automatic Stay be granted and for such other and further relief as is just.

Dated: August 24, 2018          Respectfully submitted,

**DYKEMA COX SMITH**
1717 Main Street, Suite 4200
Dallas, TX 75201
Phone: (214) 462-6400
Fax: (214) 462-6401

By: /s/ *Mark E. Andrews*
Mark E. Andrews (Tex. Bar No. 01253520)
mandrews@dykema.com
Jesse T. Moore (Tex. Bar No. 24056001)
jmoore@dykema.com

**ATTORNEYS FOR GENERAL MOTORS, LLC**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served on all the parties in interest via ECF and or email on August 24, 2018.

                        */s/ Mark Andrews*
                        Mark Andrews