Sharon C. Jett (TX Bar 24010134
Jason T. Rodriguez (TX Bar 24042827)
Paul M. Lopez (TX Bar 24076516)
HIGIER ALLEN & LAUTIN, P.C.
The Tower at Cityplace
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899
sjett@higierallen.com
jrodriguez@higierallen.com
plopez@higierallen.com

ATTORNEYS FOR LIBERTY CAPITAL BANK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CASE NO.: 18-50214-RLJ |
| REAGOR-DYKES MOTORS, LP[1] | § | |
| | § | CHAPTER 11 |
| DEBTORS. | § | (JOINTLY ADMINISTERED) |
| | § | |

### LIMITED OBJECTION OF LIBERTY
### CAPITAL BANK TO USE OF CASH COLLATERAL

COMES NOW Liberty Capital Bank ("Liberty"), a party in interest, and files this, its

*Limited Objection of Liberty Capital Bank to Use of Cash Collateral* ("Objection"). In support

of the Objection, Liberty would respectfully show the Court as follows:

### BACKGROUND

A. The Debtors' Bankruptcy Case

1.      On August 1, 2018 (the "Petition Date"), the above-captioned debtors (the

"Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors continue to manage and operate their business and

---

[1]      The Debtors in these cases, along with each entity's case number, are: Reagor-Dykes Motors, LP (Case No.
18-50214-rlj11); Reagor-Dykes Imports, LP (Case No. 18-50215-rlj11); Reagor-Dykes Amarillo, LP (Case
No. 18-50216-rlj11); Reagor-Dykes Auto Company, LP (Case No. 18-50217-rlj11); Reagor-Dykes
Plainview, LP (Case No. 18-50218-rlj11); Reagor-Dykes Floydada, LP (Case No. 18-50219-rlj11)
(together, the "Debtors").

assets as debtors-in-possession under Bankruptcy Code § 1107 and 1108. No trustee or examiner has been appointed in the Debtors' above-captioned bankruptcy cases (the "Bankruptcy Cases"). The Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors.

2.     On August, 2, 2018, Debtors filed the *Debtors' Joint Emergency Motion for Authority to use Cash Collateral* (the "Motion").[2]

3.     On August 8, 2018, the Court entered the *Interim Order (I) Authorizing the Debtor to use Cash Collateral of Ford Motor Credit Company, (II) Granting Adequate Protection for use thereof, (III) Modifying the Automatic Stay to Allow for the Relief Requested Herein and (IV) Scheduling Final Hearing* (the "First Interim CC Order") [**Docket No. 30**].

4.     On August 17, 2018, the Court entered the *Second Interim Order (I) Authorizing the Debtor to use Cash Collateral of Ford Motor Credit Company, (II) Granting Adequate Protection for use thereof, (III) Modifying the Automatic Stay to Allow for the Relief Requested Herein and (IV) Scheduling Final Hearing* (the "Second Interim CC Order") [**Docket No. 134**].

5.     Pursuant the Second Interim CC Order, the Debtors were authorized to use cash collateral for an interim period ending on August 30, 2018. *See* Second Interim CC Order, at 3.

B. Liberty's Interest in the Cash Collateral Matter

6.     Liberty is a floor-plan lender for Reagor Auto Mall, Ltd. ("RAM"), which is an entity related to the Debtors.  RAM is not in bankruptcy.  Liberty is one of at least three (3) floor-plan lenders to RAM.  In general terms, the collateral for each of these floor-plan lenders was distinguished by dealership lot (*e.g*., Addison, Lubbock, Levelland).

---

[2]     The Debtors' Bankruptcy Cases were jointly administered by Order of this Court under the lead case (Case No. 18-50214-rlj11) on August 8, 2018. *See Order Regarding Filing of Pleadings and Directing Joint Administration of Cases* [Docket No. 34].

7.      Liberty's floor-plan financing covered primarily vehicles on the RAM lot in Addison, Texas (a town located within Dallas County, Texas). Liberty's relationship with RAM began in the summer of 2013 and has continued since then.

8.      In the days prior to the Petition Date, RAM continued to operate and draw on the floor-plan financing from Liberty. As with any floor-plan line, RAM would obtain cars by trade-in or from auction – in either case RAM would need funds to pay off the existing lien holder, or auction house, as the case may be. In order to satisfy those obligations RAM would draw on the Liberty floor-plan line.

9.      However, despite drawing and receiving funds on the Liberty floor-plan line to satisfy numerous trade-in purchases and auction purchases, some of those drawn funds never reached their intended recipient (the "Missing Title Funds"). Rather, those funds were provided to RAM by deposit into a Liberty account in the name of RAM and then were promptly transferred by RAM to an account (or accounts) at First Capital Bank in Lubbock, Texas.

10.     As the Court may be aware, First Capital Bank is known to have held accounts of the Debtors, and upon information and belief, at least one principal of the Debtors is a substantial shareholder of First Capital Bank.

11.     What occurred to the Missing Title Funds upon receipt by First Capital Bank is unknown to Liberty. Liberty has been able to discuss this matter with the Debtors' CRO only recently but has been unable to obtain any evidence that the Missing Title Funds were not obtained by the Debtors.

12.     Liberty's concern is that the Missing Title Funds were improperly obtained by the Debtors and may be funds which the Debtors are now seeking to use as cash collateral. If, in

fact, the funds were improperly obtained by the Debtor's there are several legal bases which would give Liberty an interest in those funds for the purposes of being cash collateral.

13.     Because of 1) Liberty's unresolved concern related to the Missing Title Funds and 2) the possibility of use of the Missing Title Funds as cash collateral, Liberty files this Objection.

## ARGUMENTS AND AUTHORITIES

A. Legal Standard

14.     Section 363(a) of the Bankruptcy Code defines cash collateral with a non-exhaustive list which includes, cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . .." 11 U.S.C. § 363(a).

15.     Section 363(c) provides that:

> (2) The Trustee may not use, sell, or lease cash collateral under paragraph
>     (1) of this subsection unless –
>         (A) each entity that has an interest in cash collateral consents; or
>         (B) the court, after notice and a hearing, authorizes such use, sale, or lease
>             in accordance with the provision of this section.

11 U.S.C. § 363(c)(2).

16.     Notwithstanding any objection, pursuant to § 363(e), the court may authorize the use of cash collateral if such creditor's interest in the cash collateral is adequately protected. 11 U.S.C. § 363(e); *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 108 S. Ct. 626 (1988) (discussing requirement of adequate protection); *In re Goode*, 235 B.R. 584 (Bankr. E.D. Tex. 1999) (denying the use of cash collateral where debtor could not protect creditor's interests in the cash collateral).

17.     In determining whether the adequate protection standard is met, courts consider (1) the value of the secured creditor's interest; (2) identify the risks to the collateral that flow from the debtor's proposed use; and (3) determine whether the debtor's proposal of adequate protection protects the secured creditor's interest to an extent consistent with the value of the

creditor's bargained for rights. *See In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985) (holding that the adequate protection standard should align with the concept of "indubitable equivalence").

B. Liberty's Request

18.     Liberty understands the exigencies of the first few weeks of a bankruptcy filing as well as the time required of representatives of a debtor in large bankruptcy filing. Regardless, Liberty has been unable to confirm or deny that Missing Title Funds transferred to First Capital Bank were obtained by the Debtors. In candor to the Court, Liberty is unable to presently prove with certainty where the money went at all after the money was received by First Capital Bank. However, the next hearing on cash collateral is rapidly approaching.

19.     In light of the foregoing, Liberty requests that if cash collateral usage is approved the order approving the use of cash collateral contain the following language:

> ITS IS THEREFORE…ORDERED, ADJUDGED AND DECREED, that if by subsequent Court order or agreement of the parties it is determined that the Debtors (either one or all of them) received Missing Title Funds related to Liberty Capital Bank then such funds are deemed to have been expended only after all other interest holder's cash collateral is expended. Notwithstanding the foregoing, nothing in this Order shall enlarge or diminish any parties' legal claim to the Debtors cash collateral.

20.     Liberty respectfully asserts that the foregoing language fairly balances the various parties' interest in cash collateral, the Debtors' need to use cash collateral, and adequately protects Liberty while it investigates the underlying issues of the Missing Title Funds.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Liberty respectfully requests that this Court sustain Liberty's Objection and provide for the relief requested herein and grant such other and further relief as it may be justly entitled.

Signed this 27th day of August, 2018.
Dallas, Texas.

<div style="margin-left: 50%;">

Respectfully submitted,

HIGIER ALLEN & LAUTIN, P.C.

/s/ Jason T. Rodriguez
Sharon C. Jett
  Texas Bar No. 24010134
Jason T. Rodriguez
  Texas State Bar No. 24042827
Paul M. Lopez
  Texas State Bar No. 24076516
The Tower at Cityplace
2711 N. Haskell Ave., Suite 2400
Dallas, Texas 75204
Telephone: (972) 716-1888
Facsimile: (972) 716-1899

**ATTORNEYS FOR LIBERTY CAPITAL BANK**

</div>

<div style="text-align: center;">

**CERTIFICATE OF SERVICE**

</div>

     I hereby certify that on the 27th day of August, 2018, a true and correct copy of the foregoing Objection was served *via* the Court's ECF system and by first class mail, postage pre-paid on the parties listed on the attached service list.

<div style="margin-left: 45%;">

/s/ Paul M. Lopez
Paul M. Lopez

</div>

**Service List**

| | |
|---|---|
| David R. Langston<br>Brad Odell<br>Mullin Hoard & Brown, LLP<br>PO Box 2585<br>Lubbock, Texas 79408-2585<br><br>Proposed Counsel for the Debtors | Marcus Helt<br>Foley & Lardner, LLP<br>2021 McKinney Ave., Suite 1600<br>Dallas, Texas 75201 |
| Duane M. Geck<br>Severson & Werson, PC<br>One Embarcadero Center, Suit 2600<br>San Francisco, CA 94111<br><br>Counsel for Ford Motor Credit Corp. | Tommy J. Swann<br>Abel Reyna McLesky, Harriger, Brazill &<br>Graf, LLP<br>5010 University Ave., 5th Floor<br>Lubbock, Texas 79413-4422<br><br>Counsel for Underwriters Service Corp. |
| Jason M. Rudd<br>Lauren K. Drawhorn<br>Wick Phillips Gould & Martin, LLP<br>3131 McKinney Ave., Suite 100<br>Dallas, Texas 75204<br><br>Counsel for Vista Bank | Roger S. Cox<br>Underwood<br>PO Box 9158<br>Amarillo, Texas 79105-9158<br><br>Counsel for Jack Morris Ford Lincoln<br>Mercury, Inc., and Patti Sue Noel, Independent<br>Executor of the Estate of M.I. (Jack) Morris,<br>Deceased |
| Keith Langley, Attorney<br>Langley LLP<br>1301 Solana Blvd., Building 1, Suite 1545<br>Westlake, TX 76262<br><br>Counsel for Ford Motor Credit Corp. | |