Andrew R. Stubblefield (TX SBN: 24068471)
**BRADLEY ARANT BOULT CUMMINGS, LLP**
Turtle Creek Centre, Suite 1400
3811 Turtle Creek Boulevard
Dallas, Texas 75219
Telephone: (214) 257-9800
Facsimile: (214) 257-9801
Email: astubblefield@bradley.com

Christopher L. Hawkins (*Pro Hac Vice* to be filed)
Andrew J. Shaver (*Pro Hac Vice* to be filed)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: chawkins@bradley.com
        ashaver@bradley.com

*Attorneys for U.S. Bank, National Association
and USB Leasing LT*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| In re: | § | Case Number: |
| | § | |
| **REAGOR-DYKES MOTORS, LP,** *et al.* | § | **18-50214-RLJ-11** |
| | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | |

**RESERVATION OF RIGHTS AND LIMITED OBJECTION TO NYLE
MAXWELL'S MOTION TO LIFT AUTOMATIC STAY AND REQUEST FOR
SHORTENED NOTICE PERIOD AND EXPEDITED HEARING**

U.S. Bank, National Association and USB Leasing LT (together, "U.S. Bank") hereby

submit this Reservation of Rights and Limited Objection (this "Objection") to the Motion to Lift

Automatic Stay and Request for Shortened Notice Period and Expedited Hearing [Doc. 131] (the

"Motion") filed by Nyle Maxwell of Taylor, LLC ("Nyle Maxwell"). The Motion seeks, among

other things, relief from the automatic stay to (i) recover vehicles in which Nyle Maxwell claims to have an ownership interest; (ii) pursue certain other unspecified contractual and statutory remedies; and (iii) require an accounting of any funds paid to the Debtors. [*See* Doc. 131.] In further support of this Objection, U.S. Bank states as follows:

## BACKGROUND

1.     On or about August 1, 2018 (the "Petition Date"), Reagor-Dykes Motors, LP; Reagor-Dykes Imports, LP; Reagor-Dykes Amarillo, LP; Reagor-Dykes Auto Company, LP; Reagor-Dykes Plainview, LP; and Reagor-Dykes Floydada, LP (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), initiating the above-captioned, jointly-administered bankruptcy cases (the "Bankruptcy Cases") in the Bankruptcy Court for the Northern District of Texas (the "Court").

2.     Prior to the Petition Date, U.S. Bank was a party to several indirect dealer agreements (collectively, the "Indirect Dealer Agreements") with the Debtors and non-debtor affiliates Reagor Auto Mall, Ltd. ("RAM") and Reagor-Dykes Snyder, LP ("R-D Snyder," and together with the Debtors and RAM, the "Dealerships"), whereby U.S. Bank would purchase retail leases and retail instalment sale contracts from the Dealerships from time to time. Pursuant to the Indirect Dealer Agreements, the Dealerships would then assign the purchased lease or contract, including the certificate of title to the subject vehicle, to U.S. Bank.

3.     In the Motion, Nyle Maxwell claims an ownership interest in six (6) vehicles (the "USB Vehicles") subject to leases purchased by U.S. Bank (the "USB Leases"). The USB Vehicles are as follows:

|   | LESSEE | YEAR/MAKE/MODEL | LESSOR |
|---|--------|-----------------|--------|
| 1 | Roger Vick | 2019 Jeep Grand Cherokee | Reagor-Dykes Imports, LP |

| 2 | Shane Harris | 2018 Jeep Grand Cherokee | RAM |
| 3 | Travis Benson | 2018 Dodge Challenger | RAM |
| 4 | Nora Diaz | 2018 Chrysler 300 | Reagor-Dykes Imports, LP |
| 5 | Mykee Flores | 2018 Dodge charger | Reagor-Dykes Imports, LP |
| 6 | Stephen Rowden | 2018 Jeep Wrangler | Reagor-Dykes Imports, LP |

The USB Leases are attached hereto as **Exhibit A**.

4.      Additionally, U.S. Bank holds legal title to Nos. 3 – 6 of the USB Vehicles. Evidence of U.S. Bank's perfected title to these USB Vehicles is attached hereto as **Exhibit B**.

### LIMITED OBJECTION

5.      At the outset, U.S. Bank objects to the Motion to the extent Nyle Maxwell seeks any relief related to USB Leases and USB Vehicles sold, assigned, and transferred to U.S. Bank by non-debtor RAM.  Even if any of the USB Vehicles transferred by a Debtor could constitute property of the Debtors' bankruptcy estates, the USB Vehicles transferred by non-debtor RAM would still not be property of the estates under 11 U.S.C. § 541(a)(1).  As a result, Nyle Maxwell has not alleged facts that give rise to the Bankruptcy Court's "related to" jurisdiction under 28 U.S.C. § 157(a) with respect to such USB Vehicles.

6.      U.S. Bank further objects to the Motion to the extent Nyle Maxwell seeks to exercise any purported legal or contractual remedy related to the USB Vehicles.  As described hereinabove, U.S. Bank has an ownership interest in the USB Vehicles superior to that of Nyle Maxwell.  *See* Exhibits A and B; Tex. Transp. Code Ann. § 501.001, *et seq.*; Tex. Bus. & Com. Code Ann. § § 2.401; 2.403.

7.      Additionally, U.S. Bank objects to the Motion to the extent Nyle Maxwell requests any affirmative relief, including without limitation to provide an accounting, *against U.S. Bank*.

Under Texas law, "[a] suit for an accounting is generally founded in equity." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). "An equitable accounting is proper when the facts and accounts presented are so complex adequate relief may not be obtained at law. *Id.* Nyle Maxwell has not alleged sufficient facts to demonstrate that it cannot "obtain adequate relief at law through the use of standard discovery procedures," whether in the Bankruptcy Case or an adversary proceeding. *Id.* at 717-18.

8.     U.S. Bank also objects to Nyle Maxwell's request for an accounting and any other affirmative relief related to its purported interest in non-estate property through a contested matter. Such requests are procedurally improper. *See* Fed R. Bankr. P. 7001(2); (7).

9.     In an abundance of caution, U.S. Bank hereby objects to the Motion to the extent it purports to request an adjudication of any right, remedy, claim, or defense of U.S. Bank relating to the Indirect Dealer Agreements, USB Leases, or USB Vehicles, which rights, remedies, claims, and defenses are expressly reserved to U.S. Bank. Furthermore, U.S. Bank opposes the Motion to the extent any party contends that any order of the Court thereon, or in this contested matter generally, would be entitled to collateral estoppel or res judicata effect against non-party U.S. Bank in this Bankruptcy Case or any other litigation or proceeding involving U.S. Bank.

## **RESERVATION OF RIGHTS**

10.     Without limitation, U.S. Bank expressly reserves the right pursue its own rights, remedies, claims and defenses related to the Indirect Dealer Agreements, USB Leases and USB Vehicles against RAM, R-D Snyder, the Debtors, Nyle Maxwell and/or any other interest party. U.S. Bank further expressly reserves all rights, remedies, claims, and defenses against all parties,

including but not limited to all rights, remedies, claims and defenses related to the Indirect Dealer Agreements, USB Leases, and USB Vehicles.

### **<u>CONCLUSION</u>**

WHEREFORE, U.S. Bank respectfully requests that any order of the Court on the Motion expressly recite that it is without prejudice to any rights, remedies, claims, or defenses of U.S. Bank. Alternatively, to the extent the Court intends to adjudicate any rights, remedies, claims, or defenses of U.S. Bank in this contested matter, U.S. Bank requests that it be afforded a reasonable opportunity to engage in discovery and to assert its substantive rights consistent with due process of law. U.S. Bank requests such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Andrew R. Stubblefield
Andrew R. Stubblefield (TX SBN: 24068471)
**BRADLEY ARANT BOULT CUMMINGS LLP**
Turtle Creek Centre, Suite 1400
3811 Turtle Creek Boulevard
Dallas, Texas 75219
Telephone: (214) 257-9800
Facsimile: (214) 257-9801
Email: astubblefield@bradley.com

Christopher L. Hawkins (*Pro Hac Vice* to be filed)
Andrew J. Shaver (*Pro Hac Vice* to be filed)
**BRADLEY ARANT BOULT CUMMINGS, LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Email: chawkins@bradley.com
           ashaver@bradley.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this date served the foregoing the following parties via regular mail or CM/ECF on this 13th day of September 2018:

Reagor-Dykes Motors, LP
1215 Ave. J
Lubbock, TX 79401
*Debtor*

Marcus Alan Helt
FOLEY & LARDNER LLP
2021 McKinney Avenue, STE 1600
Dallas, TX 75201
*Debtor's Attorney*

Joseph D. Martinec
MARTINEC WINN & VICKERS, PC
611 S. Congress Ave., Suite 450
Austin, TX 78704-1771
*Attorney for Nyle Maxwell of Taylor, LLC*

Alan Bartlett Padfield
John E. Johnson
Jeffrey V. Leaverton
PADFIELD & STOUT, L.L.P.
705 Ross Avenue
Dallas, TX 75202
*Attorneys for MUSA Auto Finance, LLC
and MUSA Auto Leasing*

United States Trustee
1100 Commerce Street Room 976
Dallas, TX 75242
*U.S. Trustee*

And on any other parties receiving notice through the Court's Electronic Noticing System.

/s/ Andrew R. Stubblefield
Of Counsel

**EXHIBIT A**

# MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END

**US bank.**

### 1. LESSEE AND LESSOR

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: ROGER DALE VICK<br>Address:<br><br>County: LUBBOCK | Name: Reagor-Dykes Mitsubishi<br>Address: 5640 82nd St<br>Lubbock, TX 79424- |
| LEASE NUMBER | LEASE DATE  07/11/2018 |

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we," "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

### 2. VEHICLE DESCRIPTIONS

**A. LEASED VEHICLE**

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☒ New<br>☐ Used | 2019 | Ram Trucks | RAM 1500 4WD Crew Cab Lone Star/Bighorn | | 210 | 1C6SRFFT9KN568522 |

Primary Use of Vehicle: ☒ Personal, family or household purposes
☐ Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

**B. TRADE-IN VEHICLE:** Year ___2014___ Make LONE STAR Model _____

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY<br>(Itemized below)<br><br>$ 6,718.69 | 4. MONTHLY PAYMENTS<br>A. Your first Monthly Payment of $ 468.69 is due on the Lease Date, followed by 47 payments of $ 468.69 due on the 11 th of each month.<br>B. The total of your Monthly Payments is $ 22,497.12 | 5. OTHER CHARGES (Not part of your Monthly Payment)<br>A. Termination Fee (if you do not purchase the Vehicle) $ 395.00<br>B. Total $ 395.00 | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease)<br>$ 29,142.12<br>(Sections 3 plus 4(B) plus 5(B) minus Sections 7(A)(3) minus 7(A)(4)) |
|---|---|---|---|

### 7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 6,250.00 | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (1) Net Trade-in Allowance $ | 0.00 |
| (3) First Monthly Payment | 468.69 | (2) Rebates and Noncash Credits | 6,250.00 |
| (4) Refundable Security Deposit | 0.00 | (3) Amount to be Paid in Cash | 468.69 |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total $ | 6,718.69 | (4) Total $ | 6,718.69 |

### 8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:

A. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 47,728.50 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . . . . . . . . $ 48,715.00

B. Capitalized Cost Reduction. The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = 6,250.00

C. Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment . . . . . . . . . . . . . . . . . . . . . = 42,465.00

D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment . . . . . . . . . = 25,872.30

E. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = 16,592.70

F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts . . . . . . . . . . . . . . . . . + 5,904.42

G. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge . . . . . . . . . . . . . = 22,497.12

H. Lease Payments. The number of payments in your Lease (Lease Term 48 months) . . . . . . . . . . . . . . . . . . . ÷ 48

I. Base Monthly Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = 468.69

J. Monthly Sales/Use Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + 0.00

K. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + 0.00

L. Total Monthly Payment ("Monthly Payment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 468.69

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

9. **EXCESSIVE WEAR AND USE**
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of ___10,000___ miles per year at the rate of $ 0.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

10. **PURCHASE OPTION AT END OF LEASE TERM**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 26,222.30 , plus any taxes, official fees and other charges related to such purchase.

**Other Important Terms.** See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.**

© 2001 USB Leasing LT Form 30032PDF14, 5/16

(Page 1 of 5)

07/30/2018 19:03  #746 P.003/008

From:

07/30/2018 19:04 #746 P.004/008 From:

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 47,728.50 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees (only if included in the capitalized cost) | | 186.50 |
| G. Outstanding Prior Credit or Lease Balance | | 0.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance (Credit insurance is not required) | | 0.00 |
| J. Dealer Documentation Fee | | 125.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep. | | 0.00 |
| **M. Total = Gross Capitalized Cost** | $ | 48,715.00 |

**12. OPTIONAL INSURANCE: You are not required to buy any of the optional insurance listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.**

☐ **Credit Life Insurance**

Initial Coverage: $ ___N/A___   ☐ Single  Cost: $ ___N/A___  ☐ Joint  Cost: $ ___N/A___

☐ **Credit Disability Insurance**

Maximum Monthly Coverage: $ ___N/A___   ☐ Single  Cost: $ ___N/A___  ☐ Joint  Cost: $ ___N/A___

X _____   _____
Insured Signature                                  Date

X _____   _____
Joint Insured Signature                          Date

**13. OPTIONAL PRODUCTS: You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.**

☐ **Extended Warranty Contract (no-insurance product)**

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ 0.00 | 36 / 36000 |

X _____   _____
Lessee Signature                                  Date

X _____   _____
Co-Lessee Signature                              Date

☐ **Mechanical Breakdown Protection Contract**

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ N/A | N/A |

X _____   _____
Lessee Signature                                  Date

X _____   _____
Co-Lessee Signature                              Date

☐ **Maintenance or Service Contract**

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ 0.00 | 0 / 36000 |

X _____   _____
Lessee Signature                                  Date

X _____   _____
Co-Lessee Signature                              Date

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ ___$1,182.34___ . This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.

☐ _____

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 19).

**17. LESSOR'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

07/30/2018 19:04 #746 P.005/008 From:

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement fees.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 20B(6), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the Lease without our written consent.

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**21. PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (2) the Early Termination Liability set forth in Section

© 2001 USB Leasing LT Form 30032PDF14, 5/16

25(C), excluding the items set forth in Sections 25(C)(1), (C)(7) and (C)(8).

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**22. EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs. Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories (2) dented, scratched, chipped or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and upset insurance whether or not such insurance actually is in force, and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if solely so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

**23. VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstance can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:

(1) The Termination Fee;

(2) Any amounts owed for Excess Wear;

(3) Any amounts owed for Excess Mileage;

(4) All amounts due and unpaid under this Lease; and

(5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:

(1) The Termination Fee; plus

(2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired;

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(3) Plus all unpaid amounts that are due or past due under this Lease; plus

(4) Any official fees, taxes and other charges related to early termination; plus

(Page 3 of 5)

(5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; plus
(6) The Lease Balance; plus
(7) The Residual Value of the Vehicle; minus
(8) The Realized Value of the Vehicle.

D. LEASE BALANCE. The Lease Balance is equal to:
(1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus
(2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.
The term "Actuarial Method" means the method of allocating Base Monthly Payments between (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. REALIZED VALUE. The Realized Value will be determined in one of the following ways:
(1) By a written agreement between you and us;
(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section 8 to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

26. DEFAULT.
A. DEFAULT. The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:
(1) You fail to make any payment in full when due;
(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
(3) You fail to maintain insurance on the Vehicle as required by this Lease;
(4) You fail to return the Vehicle to us at the time and place we specify;
(5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
(6) You make any material misrepresentation on your credit application;
(7) This Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;
(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;
(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.
If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):
(1) You fail to make a payment within 10 days of the time required by this Lease;
(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. REMEDIES. If this Lease is in Default, we may take any one or more of the following actions:
(1) Terminate this Lease and your rights to use the Vehicle.
(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
(3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.
(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
(8) Use any remedy we have at law or in equity.

C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY): If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.
If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

### Louisiana Law permits repossession of motor vehicles without judicial process.

27. ATTORNEYS' FEES
If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees, (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

28. REIMBURSEMENT
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay us, we will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

29. WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; plus (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

30. REFUNDABLE SECURITY DEPOSIT
Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

07/30/2018  19:05          #746  P.006/008          From:

**31. GENERAL**

A. **SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

B. **ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

C. **OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

D. **RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

E. **ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

F. **WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

G. **EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

H. **TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

I. **ENTIRE AGREEMENT. Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION: (The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.**

**Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.**

**Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.**

**SIGNATURES**
YOU AGREE TO ALL THE PROVISIONS ON ALL FIVE PAGES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ ALL FIVE PAGES OF THIS LEASE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. OR SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.
**YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

| INDIVIDUAL LESSEE SIGNATURE(S) | | |
|---|---|---|
| Lessee Signature: X | | Co-Lessee Signature: X |

| BUSINESS LESSEE SIGNATURE | | |
|---|---|---|
| Authorized Signer's Name: | Title: | Signature: X |

**LESSOR SIGNATURE**
The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease, (2) acknowledging verification of the Lessee's insurance coverage (see Section 15), and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature: X

07/30/2018 19:06 #746 P.007/008 From:

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END



**1. LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: SHANE D HARRIS<br>Address: | Name: Prime Capital Auto Lease<br>Address: 1301 19th Street<br>Lubbock, TX 79401- |
| County: | |

| LEASE NUMBER | LEASE DATE 07/20/2018 |
|---|---|

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we," "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2. VEHICLE DESCRIPTIONS**
   A. LEASED VEHICLE

| ☒ New | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☐ Used | 2018 | Jeep | GRAND CHEROKEE 2WD 4dr Wgn Limited | | 10 | 1C4RJEBG7JC338958 |

| Primary Use of Vehicle: | ☒ Personal, family or household purposes |
|---|---|
| | ☐ Business, commercial or agricultural purposes |

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

   B. TRADE-IN VEHICLE: Year 2016    Make TAHOE    Model 4DR

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY<br>(Itemized below)*<br><br>$ 12,099.95 | 4. MONTHLY PAYMENTS<br>A. Your first Monthly Payment of $ 799.95 is due on the Lease Date, followed by 47 payments of $ 799.95 due on the 20 th of each month.<br>B. The total of your Monthly Payments is $ 38,397.60 | 5. OTHER CHARGES<br>(Not part of your Monthly Payment)<br><br>A. Termination Fee (if you do not purchase the Vehicle) $ 395.00<br><br>B. Total $ 395.00 | 6. TOTAL OF PAYMENTS<br>(The amount you will have paid by the end of the Lease)<br><br>$ 50,092.60<br><br>(Sections 3 plus 4(B) plus 5(B) minus Sections 7(A)(3) minus 7(A)(4)) |
|---|---|---|---|

**7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction $ | 11,300.00 | (1) Net Trade-in Allowance $ | 0.00 |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (2) Rebates and Noncash Credits | 9,800.00 |
| (3) First Monthly Payment | 799.95 | (3) Amount to be Paid in Cash | 2,299.95 |
| (4) Refundable Security Deposit | 0.00 | | |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total $ | 12,099.95 | (4) Total $ | 12,099.95 |

**8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | | |
|---|---|---|
| A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 55,502.86 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) | $ | 59,988.10 |
| B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | – | 11,300.00 |
| C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment | = | 48,688.10 |
| D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | – | 18,150.75 |
| E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term | = | 30,537.35 |
| F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts | + | 7,860.25 |
| G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge | | 38,397.60 |
| H. **Lease Payments.** The number of payments in your Lease (Lease Term 48 months) | ÷ | 48 |
| I. **Base Monthly Payment.** | = | 799.95 |
| J. **Monthly Sales/Use Tax.** | + | 0.00 |
| K. | + | 0.00 |
| L. **Total Monthly Payment ("Monthly Payment").** | = $ | 799.95 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**9. EXCESSIVE WEAR AND USE**
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10,000 miles per year at the rate of $ 0.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

**10. PURCHASE OPTION AT END OF LEASE TERM**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 18,500.75 , plus any taxes, official fees and other charges related to such purchase.

**Other Important Terms.** See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

© 2001 USB Leasing LT Form 30032PDF14, 5/16        (Page 1 of 5)

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | |
|---|---|
| A. Agreed Upon Value of Vehicle | $ 55,502.86 |
| B. Extended Warranty Contract | 3,425.00 |
| C. Mechanical Breakdown Protection | 0.00 |
| D. Maintenance or Service Contract | 0.00 |
| E. Sales/Use Tax | 0.00 |
| F. Initial Title, Registration, and License Fees (only if included in the capitalized cost) | 0.00 |
| G. Outstanding Prior Credit or Lease Balance | 0.00 |
| H. Lease Acquisition Fee | 695.00 |
| I. Credit Life and/or Disability Insurance (Credit insurance is not required) | 0.00 |
| J. Dealer Documentation Fee | 0.00 |
| K. Other: N/A | 0.00 |
| L. Other: Dealer Prep | 365.24 |
| **M. Total = Gross Capitalized Cost** | $ 59,988.10 |

**12. OPTIONAL INSURANCE:** You are not required to buy any of the optional insurance listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.

☐ **Credit Life Insurance**

Initial Coverage: $ ___N/A___ ☐ Single Cost: $ ___N/A___
                         ☐ Joint Cost: $ ___N/A___

☐ **Credit Disability Insurance**

Maximum Monthly         ☐ Single Cost: $ ___N/A___
Coverage: $ ___N/A___   ☐ Joint Cost: $ ___N/A___

X _____
    Insured Signature             Date

X _____
    Joint Insured Signature       Date

**13. OPTIONAL PRODUCTS:** You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and your decision not to do so by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.

☐ **Extended Warranty Contract** (non-insurance product)

ZURICH         $ 3,425.00   36 / 36000
Provider               Cost          mo./mileage

X _____
    Lessee Signature            Date

X _____
    Co-Lessee Signature        Date

☐ **Mechanical Breakdown Protection Contract**

N/A         $ N/A     N/A
Provider               Cost          mo./mileage

X _____
    Lessee Signature            Date

X _____
    Co-Lessee Signature        Date

☐ **Maintenance or Service Contract** N/A    N/A

N/A         $ 0.00    0 / 36000
Provider               Cost          mo./mileage

X _____
    Lessee Signature            Date

X _____
    Co-Lessee Signature        Date



**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ ___$986.44___ . This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.

☐ _____

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 19).

**17. LESSOR'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, insufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

**The insurance stated above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.**

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this *Section 20B(6)*, the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not **assign or sublease any interest in the Vehicle or the Lease without our written consent.**

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. **If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.**

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**21. PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in *Section 10* of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in *Section 10*; plus (2) the Early Termination Liability set forth in *Section*

© 2001 USB Leasing LT Form **30032PDF14**, 5/16

25(C), excluding the items set forth in *Sections 25(C)(1), (C)(7)* and *(C)(8)*.

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**22. EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs. Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped or rusted areas on the body, (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams, (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and upset insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if initially so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

**23. VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstance can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:
  (1) The Termination Fee;
  (2) Any amounts owed for Excess Wear;
  (3) Any amounts owed for Excess Mileage;
  (4) All amounts due and unpaid under this Lease; and
  (5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:
  (1) The Termination Fee; **plus**
  (2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired:

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

  (3) **Plus** all unpaid amounts that are due or past due under this Lease; **plus**
  (4) Any official fees, taxes and other charges related to early termination; **plus**

(Page 3 of 5)

(5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; **plus**

(6) The Lease Balance; **plus**

(7) The Residual Value of the Vehicle; **minus**

(8) The Realized Value of the Vehicle.

D. LEASE BALANCE. The Lease Balance is equal to:

(1) The Base Monthly Payment times the number of Monthly Payments not yet due; **minus**

(2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.

The term "Actuarial Method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. REALIZED VALUE. The Realized Value will be determined in one of the following ways:

(1) By a written agreement between you and us;

(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.

(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section 9 to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

## 26. DEFAULT

A. DEFAULT. The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:

(1) You fail to make any payment in full when due;

(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;

(3) You fail to maintain insurance on the Vehicle as required by this Lease;

(4) You fail to return the Vehicle to us at the time and place we specify;

(5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;

(6) You make any material misrepresentation on your credit application;

(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;

(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;

(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or

(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.

**If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):**

(1) You fail to make a payment within 10 days of the time required by this Lease;

(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. REMEDIES. If this Lease is in Default, we may take any one or more of the following actions:

(1) Terminate this Lease and your rights to use the Vehicle.

(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.

(3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.

(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.

(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.

(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.

(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.

(8) Use any remedy we have at law or in equity.

C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY): If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.

If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

**Louisiana Law permits repossession of motor vehicles without judicial process.**

## 27. ATTORNEYS' FEES

**If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.**

If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

## 28. REIMBURSEMENT

You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

## 29. WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.

If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; **plus** (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; plus (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

## 30. REFUNDABLE SECURITY DEPOSIT

Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

**31. GENERAL**

**A. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**B. ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

**C. OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

**D. RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

**E. ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

**F. WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in Vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

**G. EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

**H. TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

**I. ENTIRE AGREEMENT. Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION:** (The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us, or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

**SIGNATURES**

YOU AGREE TO ALL THE PROVISIONS ON **ALL FIVE PAGES OF THIS LEASE** AND REPRESENT THAT YOU HAVE READ **ALL FIVE PAGES OF THIS LEASE.**

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE TO LESSEE: **(1)** DO NOT SIGN THIS LEASE BEFORE YOU READ IT. **(2)** YOU ARE ENTITLED TO A COPY OF THIS LEASE. **OR** **SD Notice:** If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER. **YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

| INDIVIDUAL LESSEE SIGNATURE(S) | | |
|---|---|---|
| Lessee Signature: X | | Co-Lessee Signature: X |

| BUSINESS LESSEE SIGNATURE | | |
|---|---|---|
| Authorized Signer's Name: | Title: | Signature: X |

**LESSOR SIGNATURE**

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage (see Section 16); and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature: X _(signature)_

© 2001 USB Leasing LT Form 30032PDF14, 5/16

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END



**1.  LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name:  TRAVIS BENSON  <br>Address: ███████████ <br><br>County: | Name:  Prime Capital Auto Lease <br>Address:  1301 19th Street <br>  Lubbock, TX 79401- |
| **LEASE NUMBER** | **LEASE DATE**  07/06/2018 |

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we," "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2.  VEHICLE DESCRIPTIONS**
  A.  LEASED VEHICLE

| ☒ New | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☐ Used | 2018 | Dodge | CHALLENGER | 2dr Cpe R/T | 10 | 2C3CDZBTXJH229140 |

Primary Use of Vehicle:  ☒ Personal, family or household purposes
                          ☐ Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

  B.  TRADE-IN VEHICLE: Year  2017     Make  1500 LTZ     Model  4DR

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)* <br><br>$  14,652.81 | 4. MONTHLY PAYMENTS <br>A. Your first Monthly Payment of $  652.81  is due on the Lease Date, followed by  47  payments of $  652.81  due on the  6 th  of each month. <br>B. The total of your Monthly Payments is $  31,334.88 | 5. OTHER CHARGES (Not part of your Monthly Payment) <br>A. Termination Fee (if you do not purchase the Vehicle)  $  395.00 <br><br>B. Total  $  395.00 | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) <br>$  45,054.88 <br><br>(Sections 3 plus 4(B) plus 5(B) minus Sections 7(A)(3) minus 7(A)(4)) |
|---|---|---|---|

**7.  *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery is Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | 13,325.00 | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (1) Net Trade-in Allowance  $ | 0.00 |
| (3) First Monthly Payment | 652.81 | (2) Rebates and Noncash Credits | 8,500.00 |
| (4) Refundable Security Deposit | 675.00 | (3) Amount to be Paid in Cash | 6,152.81 |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total  $ | 14,652.81 | (4) Total  $ | 14,652.81 |

**8.  YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | |
|---|---|
| A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($  54,649.99  ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . . . . . . . . . . $ | 55,735.65 |
| B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – | 13,325.00 |
| C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment . . . . . . . . . . . . . . . . . . . . . . = | 42,410.65 |
| D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment . . . . . . . – | 20,604.00 |
| E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = | 21,806.65 |
| F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts . . . . . . . . . . . . . . . . . . . + | 9,528.23 |
| G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge . . . . . . . . . . . . . . = | 31,334.88 |
| H. **Lease Payments.** The number of payments in your Lease (Lease Term  48  months) . . . . . . . . . . . . . . . . . . . . . . . . . ÷ | 48 |
| I. **Base Monthly Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = | 652.81 |
| J. **Monthly Sales/Use Tax** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + | 0.00 |
| K. | 0.00 |
| L. **Total Monthly Payment ("Monthly Payment")** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 652.81 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**9.  EXCESSIVE WEAR AND USE**
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of  10,000  miles per year at the rate of $  0.25  per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

**10.  PURCHASE OPTION AT END OF LEASE TERM**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $  20,954.00  , plus any taxes, official fees and other charges related to such purchase.

**Other Important Terms.** See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

© 2001 USB Leasing LT Form 30032PDF14, 5/16                                (Page 1 of 5)

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---:|
| A. Agreed Upon Value of Vehicle | $ | 54,649.99 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees | | 0.00 |
| (only if included in the capitalized cost) | | |
| G. Outstanding Prior Credit or Lease Balance | | 0.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance | | 0.00 |
| (Credit insurance is not required) | | |
| J. Dealer Documentation Fee | | 0.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep | | 390.66 |
| M. Total = Gross Capitalized Cost | $ | 55,735.65 |

**12. OPTIONAL INSURANCE: You are not required to buy any of the optional insurance listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit.** This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.

☐ **Credit Life Insurance**

Initial Coverage: $ _____N/A_____

☐ Single  Cost: $ _N/A_
☐ Joint  Cost: $ _N/A_

☐ **Credit Disability Insurance**

Maximum Monthly
Coverage: $ _____N/A_____

☐ Single  Cost: $ _N/A_
☐ Joint  Cost: $ _N/A_

X_____
  Insured Signature                    Date

X_____
  Joint Insured Signature              Date

**13. OPTIONAL PRODUCTS: You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit.** These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.

☐ **Extended Warranty Contract** (non-insurance product)

_____  $ _____  _____
Provider              Cost          mo./mileage

X_____
  Lessee Signature                    Date

X_____
  Co-Lessee Signature                 Date

☐ **Mechanical Breakdown Protection Contract**

_____N/A_____  $ _N/A_  _N/A_
Provider              Cost          mo./mileage

X_____
  Lessee Signature                    Date

X_____
  Co-Lessee Signature                 Date

☐ **Maintenance or Service Contract**

_____N/A_____  $ _0.00_  _0 / 36000_
Provider              Cost          mo./mileage

X_____
  Lessee Signature                    Date

X_____
  Co-Lessee Signature                 Date

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ _____$1,011.86_____. This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:
☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.
☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.
☐ _____
We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.
**You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER.** If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 19).

**17. LESSOR'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

**The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.**

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 20B(6), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the **Lease without our written consent.**

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. **If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.**

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**21. PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (2) the Early Termination Liability set forth in Section

25(C), excluding the items set forth in Sections 25(C)(1), (C)(7) and (C)(8).

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**22. EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs. Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlights, lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electrical malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and upset insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if initially so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

**23. VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstance can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:

(1) The Termination Fee;

(2) Any amounts owed for Excess Wear;

(3) Any amounts owed for Excess Mileage;

(4) All amounts due and unpaid under this Lease; and

(5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:

(1) The Termination Fee; plus

(2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired:

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(3) Plus all unpaid amounts that are due or past due under this Lease; plus

(4) Any official fees, taxes and other charges related to early termination; plus

(5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; **plus**
(6) The Lease Balance; **plus**
(7) The Residual Value of the Vehicle; **minus**
(8) The Realized Value of the Vehicle.

D. **LEASE BALANCE.** The Lease Balance is equal to:
(1) The Base Monthly Payment times the number of Monthly Payments not yet due; **minus**
(2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.

The term "Actuarial Method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. **REALIZED VALUE.** The Realized Value will be determined in one of the following ways:
(1) By a written agreement between you and us;
(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section B to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

26. **DEFAULT**
A. **DEFAULT.** The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:
(1) You fail to make any payment in full when due;
(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
(3) You fail to maintain insurance on the Vehicle as required by this Lease;
(4) You fail to return the Vehicle to us at the time and place we specify;
(5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
(6) You make any material misrepresentation on your credit application;
(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;
(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;
(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.

**If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):**
(1) You fail to make a payment within 10 days of the time required by this Lease;
(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. **REMEDIES.** If this Lease is in Default, we may take any one or more of the following actions:
(1) Terminate this Lease and your rights to use the Vehicle
(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
(3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.
(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
(8) Use any remedy we have at law or in equity.

C. **ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY).** If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.

If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

**Louisiana Law permits repossession of motor vehicles without judicial process.**

27. **ATTORNEYS' FEES**
**If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.**
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

28. **REIMBURSEMENT**
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

29. **WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.**
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; **plus** (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; **plus** (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

30. **REFUNDABLE SECURITY DEPOSIT**
Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

**31. GENERAL**

**A. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**B. ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

**C. OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

**D. RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

**E. ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

**F. WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

**G. EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

**H. TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

**I. ENTIRE AGREEMENT. Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION: (The following arbitration provision does not apply to leases originated in Washington, D.C.)** You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

---

**SIGNATURES**

YOU AGREE TO ALL THE PROVISIONS ON **ALL FIVE PAGES OF THIS LEASE** AND REPRESENT THAT YOU HAVE READ ALL **FIVE PAGES OF THIS LEASE.**

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. OR AN SD Notice:** If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER. **YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

| INDIVIDUAL LESSEE SIGNATURE(S) | |
|---|---|
| Lessee Signature: <br> X | Co-Lessee Signature: <br> X |

| BUSINESS LESSEE SIGNATURE | | |
|---|---|---|
| Authorized Signer's Name: | Title: | Signature: <br> X |

| LESSOR SIGNATURE |
|---|
| The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage (see Section 16); and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee. |
| Authorized Signature: X |

© 2001 USB Leasing LT Form 30032PDF14, 5/16                                         (Page 5 of 5)

07/17/2018 13:04 #667 P.002/006

From:

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END

 **usbank.**

**1. LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: NORA LUCILLE DIAZ | Name: Reagor-Dykes Mitsubishi |
| Address: | Address: 6540 82nd St |
| | Lubbock, TX 79424 |
| County: LUBBOCK | |
| LEASE NUMBER | LEASE DATE 07/02/2018 |

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we", "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2. VEHICLE DESCRIPTIONS**
A. ☐ LEASED VEHICLE

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☒ New | 2018 | Chrysler | 300 4dr Sdn Touring | | 213 | 2C3CCAAG8JH306427 |
| ☐ Used | | | | | | |

Primary Use of Vehicle: ☒ Personal, family or household purposes
☐ Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

B. TRADE-IN VEHICLE: Year 2014 Make FUSION Model SEDAN

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)* | 4. MONTHLY PAYMENTS | 5. OTHER CHARGES (Not part of your Monthly Payments) | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | A. Your first Monthly Payment of $ 486.82 is due on the Lease Date, followed by 47 payments of $ 486.82 due on the 2nd of each month. | A. Termination Fee (if you do not purchase the Vehicle) $ 365.00 | $ 30,762.36 |
| | B. The total of your Monthly Payments is $ 23,367.36 | B. Total $ 365.00 | (Sections 3 plus 6(6) plus 5(6) minus Sections 7(A)(2) minus 7(A)(4)) |
| $ 7,896.82 | | | |

**7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | | |
|---|---|---|---|---|---|
| (1) Capitalized Cost Reduction | $ | 7,000.00 | | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | | 0.00 | (1) Net Trade-in Allowance | $ | 0.00 |
| (3) First Monthly Payment | | 486.82 | (2) Rebates and Noncash Credits | | 7,000.00 |
| (4) Refundable Security Deposit | | 500.00 | (3) Amount to be Paid in Cash | | 896.82 |
| (5) Title Fees | | 0.00 | | | |
| (6) Registration Fees | | 0.00 | | | |
| (7) | | 0.00 | | | |
| (8) N/A | | 0.00 | | | |
| (9) N/A | | 0.00 | | | |
| (10) N/A | | 0.00 | | | |
| (11) Total | $ | 7,986.82 | (4) Total | $ | 7,896.82 |

**9. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | |
|---|---|
| A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 31,729.56 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . $ | 36,900.06 |
| B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. . . . . . . . . . . . . . . . . . – | 7,000.00 |
| C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment . . . . . . . . . . . . . . . = | 29,900.06 |
| D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment . . . . . . – | 10,944.00 |
| E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. . . . . . . . . . . . . . . . . . = | 18,956.06 |
| F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts . . . . . . . . . . . . . . + | 4,411.30 |
| G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge . . . . . . . . . = | 23,367.36 |
| H. **Lease Payments.** The number of payments in your Lease Term 48 months) . . . . . . . . . . . . . . ÷ | 48 |
| I. **Base Monthly Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . = | 486.82 |
| J. **Monthly Sales/Use Tax** . . . . . . . . . . . . . . . . . . . . . . . . . + | 0.00 |
| K. . . . . . . . . . . . . . . . . . . . . . . . . . + | 0.00 |
| L. **Total Monthly Payment ("Monthly Payment")** . . . . . . . . . . . . . . . . . . = $ | 486.82 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

8. **EXCESSIVE WEAR AND USE**
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10,000 miles per year at the rate of $ .25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

10. **PURCHASE OPTION AT END OF LEASE TERM.**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 11,294.00 , plus any taxes, official fees and other charges related to such purchase.
Other Important Terms. See all the pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES: The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.**

© 2001 USB Leasing LT Form 3OC32PDF14, 5/18

(Page 1 of 5)

07/17/2018 13:05 #667 P.003/006 From:

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 31,729.56 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees (only if included in the capitalized cost) | | 165.50 |
| G. Outstanding Prior Credit or Lease Balance | | 4,184.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance (Credit insurance is not required) | | 0.00 |
| J. Dealer Documentation Fee | | 125.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep | | 0.00 |
| M. Total = Gross Capitalized Cost | $ | 36,500.06 |

**12. OPTIONAL INSURANCE:** You are not required to buy any of the optional insurance listed below to enter into this Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.

☐ **Credit Life Insurance**

Initial Coverage: $ _____ N/A _____ ☐ Single Cost: $ _____ N/A _____ ☐ Joint Cost: $ _____ N/A _____

☐ **Credit Disability Insurance**

Maximum Monthly _____ ☐ Single Cost: $ _____ N/A _____
Coverage: $ _____ N/A _____ ☐ Joint Cost: $ _____ N/A _____

X _____
Insured Signature                    Date

X _____
Joint Insured Signature

**13. OPTIONAL PRODUCTS:** You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.

☐ **Extended Warranty Contract** (non-insurance product)

Provider _____ N/A _____ $ _____ 0.00 _____ 0/0 _____
                              Cost              mo/mileage

X _____
Lessee Signature                    Date

X _____
Co-Lessee Signature                 Date

☐ **Mechanical Breakdown Protection Contract**

Provider _____ N/A _____ $ _____ N/A _____ N/A _____
                              Cost              mo-mileage

X _____
Lessee Signature                    Date

X _____
Co-Lessee Signature                 Date

☐ **Maintenance or Service Contract**

Provider _____ N/A _____ $ _____ 0.00 _____ 0/0 _____
                              Cost              mo/mileage

X _____
Lessee Signature                    Date

X _____
Co-Lessee Signature                 Date

PA Notice: If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ _____ $981.93 _____. This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below.
☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.
☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.
☐ _____

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF, WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 18).

**17. LESSOR'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE!**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

© 2001 UBB Leasing LT Form 30032PDF14, 5/16

(Page 2 of 5)

From: 07/17/2018 13:05 #667 P.004/006

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us.

A. Fire, theft, and comprehensive insurance with a maximum deductible of $500.

B. Collision insurance with a maximum deductible of $500.

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000.

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.

PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 20(B)), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the Lease without our written consent.

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**21. PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (2) the Early Termination Liability set forth in Section

© 2001 USB Leasing LT Form 30032PDF14, 5/16

---

25(C), excluding the items set forth in Sections 25(C)(1), (C)(3) and (C)(4).

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**22. EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs. Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) slight delay or a series of dents on other trim parts, including headlight and tail light facials; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) carpets which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and excess insurance whether or not such insurance actually is in force, and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (1) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if actually so equipped); (2) any tires with less than 1/8 inch of tread remaining at the scheduled point; (3) any tire with gouged, cut, torn or plugged sidewalls; (4) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (5) any parts which are not original manufacturer equipment or of equal quality and design.

**23. VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstances can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;
B. Return of the Vehicle;
C. Completion of a signed odometer statement; and
D. Payment of the following amounts:
(1) The Termination Fee;
(2) Any amounts owed for Excess Wear;
(3) Any amounts owed for Excess Mileage;
(4) All amounts due and unpaid under this Lease; and
(5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:
(1) The Termination Fee; plus
(2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term that have expired.

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(3) Plus all unpaid amounts that are due or past due under this Lease; plus
(4) Any official fees, taxes and other charges related to early termination; plus

(Page 3 of 5)

From: 07/17/2018 13:06 #667 P.005/006

(5) All expenses related to recovering, detailing, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; plus
(6) The Lease Balance; plus
(7) The Residual Value of the Vehicle; minus
(8) The Realized Value of the Vehicle.

**D.   LEASE BALANCE.** The Lease Balance is equal to:
(1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus
(2) Unearned Rent Charges included in the Base Monthly Payments and yet due calculated according to the Actuarial Method.
The term "Actuarial Method" means the method of allocating Base Monthly Payments between (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

**E.   REALIZED VALUE.** The Realized Value will be determined in one of the following ways:
(1) By a written agreement between you and us;
(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.
(5) If you terminate this Lease early pursuant to the Federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section B for the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

**26.   DEFAULT**

**A.   DEFAULT.** The following are events of default ("Default") to the extent permitted by state law if the Lease is governed by the laws of a state other than Iowa:
(1) You fail to make any payment required under this Lease;
(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
(3) You fail to maintain insurance on the Vehicle as required by this Lease;
(4) You fail to return the Vehicle to us at the time and place we specify;
(5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
(6) You make any material misrepresentation on your credit application;
(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy (or governmental or legal process);
(8) Your driver's license expires or is suspended, revoked cancelled or is otherwise restricted;
(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.
If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):
(1) You fail to make a payment within 10 days of the time required by this Lease;
(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease;

**B.   REMEDIES.** If this Lease is in Default, we may take any one or more of the following actions:
(1) Terminate this Lease and your rights to use the Vehicle.
(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

© 2001 USB Leasing ET Form 30032PDF14, 5/16

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
(3) Recover all expenses related to enforcing this Lease and collecting, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.
(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
(8) Use any remedy we have at law or in equity.

**C.   ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY).** If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.
If you fail to make two consecutive monthly payments, or fail to make a payment for 90 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

## Louisiana Law permits repossession of motor vehicles without judicial process.

**27.   ATTORNEYS' FEES**
If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

**28.   REIMBURSEMENT**
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

**29.   WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.**
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss. Any rebate of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Once the Vehicle is insured you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

**30.   REFUNDABLE SECURITY DEPOSIT**
Your Refundable Security Deposit may be used to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

(Page 4 of 6)

**31. GENERAL**

A. **SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

B. **ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement thereon may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

C. **OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

D. **RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

E. **ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

F. **WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay/assure the excess amount upon demand.

G. **EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

H. **TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

I. **ENTIRE AGREEMENT; Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION:** (The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or those arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

**SIGNATURES**

YOU AGREE TO ALL THE PROVISIONS ON ALL FIVE PAGES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ ALL FIVE PAGES OF THIS LEASE.

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. OR and SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER. YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.

| INDIVIDUAL LESSEE SIGNATURE(S) | |
|---|---|
| Lessee Signature: | Co-Lessee Signature: |
| X | X |

| BUSINESS LESSEE SIGNATURE | | |
|---|---|---|
| Authorized Signer's Name: | Title: | Signature: |
| | | X |

**LESSOR SIGNATURE**

The authorized signature of the Lessor below has the effect of (1) accepting this terms and conditions of this Lease, (2) acknowledging verification of the Lessee's insurance coverage (see Section 10), and (3) assigning to U3G Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature: X

© 2001 U3G Leasing L™ Form 30032PDF14, 5/16

(Page 5 of 5)

07/17/2018 13:07 #667 P-006/006 From:

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END



**1. LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: MYKEE ALEXANDER FLORES | Name: Reagor-Dykes Mitsubishi |
| Address: | Address: 6540 82nd St |
| | Lubbock, TX 79424- |
| County: LUBBOCK | |
| **LEASE NUMBER** | **LEASE DATE** 07/05/2018 |

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we," "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2. VEHICLE DESCRIPTIONS**

A. LEASED VEHICLE

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☒ New | 2018 | Dodge CHARGER 4dr Sdn SXT Plus | | | 210 | 2C3CDXHG2JH273356 |
| ☐ Used | | | | | | |

Primary Use of Vehicle: ☒ Personal, family or household purposes
☐ Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

B. TRADE-IN VEHICLE: Year _2014_   Make OPTIMA    Model SEDAN

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)* | 4. MONTHLY PAYMENTS | 5. OTHER CHARGES (Not part of your Monthly Payment) | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | A. Your first Monthly Payment of $ 597.66 is due on the Lease Date, followed by 47 payments of $ 597.66 due on the 5 th of each month. | A. Termination Fee (if you do not purchase the Vehicle) $ 395.00 | 37,082.68 |
| | B. The total of your Monthly Payments is $ 28,687.68 | B. Total 395.00 | (Sections 3 plus 4(B) plus 5(B)) minus Sections 7(A)(3) minus 7(A)(4)) |
| $ 9,197.66 | | | |

**7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 8,000.00 | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (1) Net Trade-In Allowance $ | 0.00 |
| (3) First Monthly Payment | 597.66 | (2) Rebates and Noncash Credits | 8,000.00 |
| (4) Refundable Security Deposit | 600.00 | (3) Amount to be Paid in Cash | 1,197.66 |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total $ | 9,197.66 | (4) Total $ | 9,197.66 |

**8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | | |
|---|---|---|
| A. | **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 33,222.00 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) | $ 43,740.50 |
| B. | **Capitalized Cost Reduction.** The amount of any Net Trade-In Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | − 8,000.00 |
| C. | **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment | = 35,740.50 |
| D. | **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | − 14,675.90 |
| E. | **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term | = 21,064.60 |
| F. | **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts | + 7,623.08 |
| G. | **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge | = 28,687.68 |
| H. | **Lease Payments.** The number of payments in your Lease (Lease Term 48 months) | ÷ 48 |
| I. | **Base Monthly Payment** | = 597.66 |
| J. | **Monthly Sales/Use Tax** | + 0.00 |
| K. | | + 0.00 |
| L. | **Total Monthly Payment ("Monthly Payment")** | = $ 597.66 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**9. EXCESSIVE WEAR AND USE**

You may be charged for excessive wear based on our standards for normal use and for mileage in excess of _10,000_ miles per year at the rate of $ 0.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

**10. PURCHASE OPTION AT END OF LEASE TERM**

If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 15,025.90 , plus any taxes, official fees and other charges related to such purchase.

**Other Important Terms.** See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

© 2001 USB Leasing LT form 30032PDF14, 5/16                        (Page 1 of 5)

07/10/2018 12:24 #628 P.004/016

From:

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 33,222.00 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees | | 169.50 |
| (only if included in the capitalized cost) | | |
| G. Outstanding Prior Credit or Lease Balance | | 9,532.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance | | 0.00 |
| (Credit Insurance is not required) | | |
| J. Dealer Documentation Fee | | 125.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep | | 0.00 |
| M. Total = Gross Capitalized Cost | $ | 43,740.50 |

**12. OPTIONAL INSURANCE:** You are not required to buy any of the optional insurance listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.

☐ **Credit Life Insurance**

Initial Coverage: $ N/A ☐ Single Cost: $ N/A
☐ Joint Cost: $ N/A

☐ **Credit Disability Insurance**

Maximum Monthly ☐ Single Cost: $ N/A
Coverage: $ N/A ☐ Joint Cost: $ N/A

X _____
Insured Signature Date

X _____
Joint Insured Signature Date

**13. OPTIONAL PRODUCTS:** You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.

☐ **Extended Warranty Contract** (non-insurance product)

| N/A | $ 3,233.00 | 36/36000 |
|---|---|---|
| Provider | Cost | mo./mileage |

X _____
Lessee Signature Date

X _____
Co-Lessee Signature Date

☐ **Mechanical Breakdown Protection Contract**

| N/A | $ N/A | N/A |
|---|---|---|
| Provider | Cost | mo./mileage |

X _____
Lessee Signature Date

X _____
Co-Lessee Signature Date

☐ **Maintenance or Service Contract**

| N/A | $ 0.00 | 0/00000 |
|---|---|---|
| Provider | Cost | mo./mileage |

X _____
Lessee Signature Date

X _____
Co-Lessee Signature Date

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**

The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included in your Monthly Payments or assessed otherwise: $ $829.70 . This is an estimate based on current tax rates. The actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**

If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below.

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.

☐

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. **You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER.** If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**

The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 19).

**17. LESSOR'S RIGHT TO CANCEL**

If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease signing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**

If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

© 2001 US Leasing LT Form 30032PDF14 5/16

(Page 2 of 5)

07/10/2018 12:25 #628 P.005/016

From:

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below, at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS.

B. VEHICLE USE.

C. TAXES, REGISTRATION AND TITLING.

D. RELEASE OF INFORMATION.

**21. PURCHASE OPTION**

A. END OF LEASE TERM.

B. PRIOR TO END OF LEASE TERM.

**22. EXCESS WEAR AND USE**

**23. VEHICLE RETURN**

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate at or upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:
(1) The Termination Fee;
(2) Any amounts owed for Excess Wear;
(3) Any amounts owed for Excess Mileage;
(4) All amounts due and unpaid under this Lease; and
(5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY.

B. LESSOR'S RIGHT TO TERMINATE EARLY.

C. EARLY TERMINATION LIABILITY.

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(Page 3 of 5)

© 2014 2015 Lending LT Form 30032PDF14, 5/16

(5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; plus
(6) The Lease Balance; plus
(7) The Residual Value of the Vehicle; minus
(8) The Realized Value of the Vehicle.

D. **LEASE BALANCE.** The Lease Balance is equal to:
(1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus
(2) Unearned Rent Charges included in the Base Monthly Payments not yet due refunded according to the Actuarial Method.

The term "Actuarial Method" means the method of allocating Base Monthly Payments between (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. **REALIZED VALUE.** The Realized Value will be determined in one of the following ways:
(1) By a written agreement between you and us;
(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any applicable provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section 3 to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

28. **DEFAULT.**
A. **DEFAULT.** The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:
(1) You fail to make any payment in full when due;
(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
(3) You fail to maintain insurance on the Vehicle as required by this Lease;
(4) You fail to return the Vehicle to us at the time and place we specify;
(5) You are, are declared or become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
(6) You make any material misrepresentation on your credit application;
(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;
(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;
(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.

If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):
(1) You fail to make a payment within 10 days of the time required by this Lease;
(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. **REMEDIES.** If this Lease is in Default, we may take any one or more of the following actions:
(1) Terminate this Lease and your right to use the Vehicle.
(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle and return it to you, but we will hold personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
(3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
(4) Take any reasonable action to contest the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of this Lease and apply any amount received to the amount you owe.
(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
(8) Use any remedy we have at law or in equity.

C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY): If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.

If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

## Louisiana Law permits repossession of motor vehicles without judicial process.

27. **ATTORNEYS' FEES**
If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

28. **REIMBURSEMENT**
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

29. **WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.**
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(G) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss, plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss, plus (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

30. **REFUNDABLE SECURITY DEPOSIT**
Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

(Page 4 of 5)

**31. GENERAL**

**A. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**B. ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

**C. OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

**D. RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on whom your name appears as owner or co-owner to the payment of amounts you owe to us.

**E. ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

**F. WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

**G. EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

**H. TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

**I. ENTIRE AGREEMENT. Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION: (The following arbitration provision does not apply to leases originated in Washington, D.C.)** You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

**SIGNATURES**

YOU AGREE TO ALL THE PROVISIONS ON ALL FIVE PAGES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ ALL FIVE PAGES OF THIS LEASE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. OR and SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.
YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.

**INDIVIDUAL LESSEE SIGNATURES**

| Lessee Signature: X | Co-Lessee Signature: X |
|---|---|

**BUSINESS LESSEE SIGNATURE**

| Authorized Signer's Name: | Title: | Signature: X |
|---|---|---|

**LESSOR SIGNATURE**

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage (see Section 16); and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease upon completion of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature X

© 2X1 USB Leasing LT Form S0032PDF14, 5/16

(Page 5 of 5)

From:

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

6080222100110920104

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902-6197

▼ DETACH HERE ▼

mld
139

# TEXAS CERTIFICATE OF

TEXAS DEPARTMENT OF MOTOR VEHICLES

TxDMV

**141543325**

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1C4HJXFGXJW205790 | 2018 | JEEP | LL |

TITLE/DOCUMENT NUMBER          DATE TITLE ISSUED

**24625043312250080 08/10/2018**

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| WRA | | 4500 | LCC2162 |

PREVIOUS OWNER

MAXWELL CHRYSLER DODGE J TAYLOR TX

ODOMETER READING
**210**

OWNER                                    REMARK(S)

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902

**ACTUAL MILEAGE**

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN                    1ST LIENHOLDER

NONE

1ST LIEN RELEASED _____
                                   DATE

BY _____
          AUTHORIZED AGENT

DATE OF LIEN                    2ND LIENHOLDER

2ND LIEN RELEASED _____
                                   DATE

BY _____
          AUTHORIZED AGENT

DATE OF LIEN                    3RD LIENHOLDER

3RD LIEN RELEASED _____
                                   DATE

BY _____
          AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE          DATE

SIGNATURE          DATE

SIGNATURE          DATE

FORM 30-C REV. 05/2016          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification** online at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**  141543325

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

► ODOMETER READING (No Tenths)

Date of Sale

Signature of Seller/Agent    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

► ODOMETER READING (No Tenths)

Date of Sale    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

► ODOMETER READING (No Tenths)

Date of Sale    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

► ODOMETER READING (No Tenths)

Date of Sale    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

#629 P.004/014

07/10/2018 12:42

From:

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END



**1. LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: STEPHEN WADE ROWDEN | Name: Reagor-Dykes Mitsubishi |
| Address: | Address: 6340 82nd St. |
| | Lubbock, TX 79424- |
| County: LUBBOCK | |
| LEASE NUMBER | LEASE DATE 07/04/2018 |

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we", "us" and "our" mean the Lessor named above and USB Leasing L1 or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2. VEHICLE DESCRIPTIONS**

A. LEASED VEHICLE

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☒ New | 2018 | Jeep | WRANGLER 4dr Crew Unlimited Rubicon | | 210 | 1C4HJXFGXJW205790 |
| ☐ Used | | | | | | |

Primary Use of Vehicle: ☒ Personal, family or household purposes
☐ Business, commercial or agricultural purposes.

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

B. TRADE-IN VEHICLE Year 2015 Make F-150 Model CREW CAB

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (itemized below)* | 4. MONTHLY PAYMENTS | 5. OTHER CHARGES (Not part of your Monthly Payment) | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | A. Your first Monthly Payment of $ 240.56 is due on the Lease Date, followed by 35 payments of $ 240.56 then on the 4th of each month | A. Termination Fee $ 395.00 (if you do not purchase the Vehicle) | $ 34,865.16 |
| | B. The total of your Monthly Payments is $ 8,963.16 | B. Total $ 395.00 | (Sections 3 plus 4(B) plus 5(B)) minus Sections 7(A)(3) minus 7(A)(4) |
| $ 26,040.56 | | | |

**7. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | 25,800.00 | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (1) Net Trade-in Allowance $ | 25,800.00 |
| (3) First Monthly Payment | 240.56 | (2) Rebates and Noncash Credits | 0.00 |
| (4) Refundable Security Deposit | 0.00 | (3) Amount to be Paid in Cash | 240.56 |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total $ | 26,040.56 | (4) Total $ | 26,040.56 |

**8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | | |
|---|---|---|
| A. | Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 59,965.95 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) | 60,972.45 |
| B. | Capitalized Cost Reduction. The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | 25,800.00 |
| C. | Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment | 35,172.45 |
| D. | Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | 30,660.00 |
| E. | Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term | 4,512.45 |
| F. | Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts | 4,147.71 |
| G. | Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge | 8,660.16 |
| H. | Lease Payments. The number of payments in your Lease (Lease Term 36 months) | 36 |
| I. | Base Monthly Payment | 240.56 |
| J. | Monthly Sales/Use Tax | 0.00 |
| K. | | 0.00 |
| L. | Total Monthly Payment (Monthly Payment) | $ 240.56 |

**9. Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**II. EXCESSIVE WEAR AND USE**
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 30,000 miles per year at the rate of $ 0.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

**10. PURCHASE OPTION AT END OF LEASE TERM**
If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 30,660.00 , plus any taxes, official fees and other charges related to such purchase.

**Other Important Terms.** See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

© 2001 USB Leasing L1 Form 30032PDF14, 5/16 (Page 1 of 5)

07/10/2018 12:43 #629 P.005/014

From:

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 59,985.95 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees (only if included in the capitalized cost) | | 166.50 |
| G. Outstanding Prior Credit or Lease Balance | | 0.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance (Credit insurance is not required) | | 0.00 |
| J. Dealer Documentation Fee | | 125.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep | | |
| M. Total = Gross Capitalized Cost | $ | 60,972.45 |

**12. OPTIONAL INSURANCE:** You are not required to buy any of the optional Insurance listed below to enter into this Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premiums shown.

☐ Credit Life Insurance

Initial Coverage: $ _____ ☐ Single Cost: $ N/A
 ☐ Joint Cost: $ N/A

☐ Credit Disability Insurance

Maximum Monthly _____ ☐ Single Cost: $ N/A
Coverage: $ _____ N/A ☐ Joint Cost: $ N/A

X _____
 Insured Signature              Date

X _____
 Joint Insured Signature        Date

**13. OPTIONAL PRODUCTS:** You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.

☐ Extended Warranty Contract (non-insurance product)

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ 0.00 | 0/0 |

X _____
 Lessee Signature              Date

X _____
 Co-Lessee Signature           Date

☐ Mechanical Breakdown Protection Contract

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ N/A | 0/0 |

X _____
 Lessee Signature              Date

X _____
 Co-Lessee Signature           Date

☐ Maintenance or Service Contract

| Provider | Cost | mo./mileage |
|---|---|---|
| N/A | $ 0.00 | 0/0 |

X _____
 Lessee Signature              Date

X _____
 Co-Lessee Signature           Date

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise is $_____ $704.50 . This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below.

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.

☐ _____

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF, WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 18).

**17. LESSOR'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**
If at or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, insufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

© 2005 Use Leasing LLC Form 30032PDF14, 5/16

(Page 2 of 6)

07/10/2018 12:43 #629 P.006/014

From:

**19. INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or encumbrance of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.

PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.

**20. VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 20(b)(6), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the Lease without our written consent.

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, the Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**21. PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (3) the Early Termination Liability set forth in Section

© 2001 UES Leasing L™ Form 30032.PDF14, 5/16

25(C), excluding the items set forth in Sections 25(C)(1), 25(C)(3) and (C)(5).

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**22. EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs. Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or fire; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and uninsured insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five that (or four with emergency "doughnut" spare if fully so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

**23. VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstances can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**24. SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:

(1) The Termination Fee;

(2) Any amounts owed for Excess Wear;

(3) Any amounts owed for Excess Mileage;

(4) All amounts due and unpaid under this Lease; and

(5) Any official fees and taxes due in connection with Lease termination.

**25. EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:

(1) The Termination Fee; plus

(2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired:

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(3) Plus all unpaid amounts that are due or past due under this Lease; plus

(4) Any official fees, taxes and other charges related to early termination; plus

(Page 3 of 5)

(b) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; plus

(6) The Lease Balance, plus

(7) The Realized Value of the Vehicle; minus

(8) The Realized Value of the Vehicle.

D. **LEASE BALANCE.** The Lease Balance is equal to:

(1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus

(2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.

The term "Actuarial Method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost for the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. **REALIZED VALUE.** The Realized Value will be determined in one of the following ways:

(1) By a written agreement between you and us;

(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner;

(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your recovered insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act, our remaining obligations under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section 3 by the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

26. **DEFAULT**

A. DEFAULT. The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:

(1) You fail to make any payment in full when due;

(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;

(3) You fail to maintain insurance on the Vehicle as required by this Lease;

(4) You fail to return the Vehicle to us at the time and place we specify;

(5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;

(6) You make any material misrepresentation on your credit application;

(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy for governmental or legal process;

(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;

(9) The Vehicle is subject to a total loss due to collision, destruction or unknown theft; or

(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.

If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):

(1) You fail to make a payment within 10 days of the time required by this Lease;

(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. REMEDIES. If a Default occurs, to the extent permitted by law, we may take any one or more of the following actions:

(1) Terminate this Lease and your rights to use the Vehicle;

(2) Take possession of the Vehicle without demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.

(2) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law;

(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default;

(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner;

(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe;

(7) Address interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full;

(8) Use any remedy we have at law or in equity.

C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY). If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.

If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

## Louisiana Law permits repossession of motor vehicles without judicial process.

27. **ATTORNEYS' FEES**

If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.

If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referred to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

28. **REIMBURSEMENT**

You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

29. **WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.**

If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount, and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; plus (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

30. **REFUNDABLE SECURITY DEPOSIT**

Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

From: 07/10/2018 12:44 #629 P.007/014

**31. GENERAL**

A. SECURITY INTEREST. You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loan proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

B. ODOMETER STATEMENT/OTHER DOCUMENTS. Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the formation of this Lease or otherwise.

C. OWNERSHIP. This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

D. RIGHT OF SET-OFF. We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

E. ENFORCEABILITY. This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Page 1. Each Lessee is reasonably, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

F. WARRANTY OR AMOUNT OWED. You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

G. EXPRESS CONSENT TO CONTACT YOU. By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

H. TOLL VIOLATION NOTICE (COLORADO ONLY). Pursuant to the requirements of C.R.S.A. § 40-5-302, you are liable for payment of a toll violation violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

I. ENTIRE AGREEMENT. Important: Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION:** The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) this credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

**SIGNATURES**

YOU AGREE TO ALL THE PROVISIONS ON ALL FIVE PAGES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ ALL FIVE PAGES OF THIS LEASE.

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT, (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE, OR and SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER. YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.

| INDIVIDUAL LESSEE SIGNATURE(S) | |
|---|---|
| Lessee Signature: | Co-Lessee Signature: |
| X | X |

| BUSINESS LESSEE SIGNATURE | | | |
|---|---|---|---|
| Authorized Signer's Name: | Title: | Signature: | |
| | | X | |

**LESSOR SIGNATURE**

The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease, (2) acknowledging verification of the Lessee's insurance coverage (see Section 16), and (3) assigning to USB Leasing L.T. or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature: X

© 2001 USB Leasing LT Form 30032PDF14, 5/16

(Page 5 of 5)

**EXHIBIT B**

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902-6197

0
0
2
5
7
6

↓ DETACH HERE ↓

- - -

mld
139

# TEXAS CERTIFICATE OF

TEXAS DEPARTMENT OF MOTOR VEHICLES

**141543329**

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 2C3CDZBTXJH229140 | 2018 | DODG | 2D |

TITLE/DOCUMENT NUMBER     DATE TITLE ISSUED

**24625043312250084**   **08/10/2018**

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| CHA | 4200 | | LCC2165 |

PREVIOUS OWNER     ODOMETER READING

MAXWELL CHRYSLER DODGE J TAYLOR TX     **746**

OWNER     REMARK(S)

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902

**ACTUAL MILEAGE**

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN     1ST LIENHOLDER

**NONE**

1ST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN     2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN     3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE     DATE

SIGNATURE     DATE

SIGNATURE     DATE

FORM 30-C REV. 05/2016     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification online** at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**

141543329

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

### ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale

Signature of Seller/Agent — Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

### FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale
Dealer No.

Dealer's Name

Agent's Signature — Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

### SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale
Dealer No.

Dealer's Name

Agent's Signature — Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

### THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale
Dealer No.

Dealer's Name

Agent's Signature — Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent — Printed Name (same as signature)

### LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.



USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902-6197

002575

↓ DETACH HERE ↓

## TEXAS CERTIFICATE OF ~~TITLE~~
mld
139

**TxDMV**

TEXAS DEPARTMENT OF MOTOR VEHICLES

141543328

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 2C3CCAAG8JH308427 | 2018 | CHRY | 4D |

TITLE/DOCUMENT NUMBER — DATE TITLE ISSUED
24625043312250078   08/10/2018

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| 300 | | 4000 | LCC2159 |

PREVIOUS OWNER
MAXWELL CHRYSLER DODGE J TAYLOR TX

ODOMETER READING
210

OWNER
USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902

REMARK(S)
ACTUAL MILEAGE

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN          1ST LIENHOLDER

**NONE**

1ST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN          2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN          3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE          DATE
SIGNATURE          DATE
SIGNATURE          DATE

FORM 30-C REV. 05/2016      DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification** online at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

| | |
|---|---|
| **WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.** | 141543328 |

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ _____
ODOMETER READING (No Tenths)

Date of Sale _____

Signature of Seller/Agent    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ _____
ODOMETER READING (No Tenths)

Date of Sale _____    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ _____
ODOMETER READING (No Tenths)

Date of Sale _____    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser    Street    City    State    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

▶ _____
ODOMETER READING (No Tenths)

Date of Sale _____    Dealer No.

Dealer's Name

Agent's Signature    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent    Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS) _____

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.



6080214100110601104

0025 8 6

**USB LEASING LT**
**1850 OSBORN AVE**
**OSHKOSH, WI 54902-6197**

▼ DETACH HERE ▼



# TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

**TxDMV**

141399483

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 2C3CDXHG2JH273356 | 2018 | DODG | 4D |

TITLE/DOCUMENT NUMBER · DATE TITLE ISSUED
**24632843304250014  08/02/2018**

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| CHA | | 4100 | LCC0761 |

PREVIOUS OWNER
**MAXWELL CHRYSLER DODGE J TAYLOR TX**

ODOMETER READING
**4284**

OWNER
**USB LEASING LT**
**1850 OSBORN AVE**
**OSHKOSH, WI 54902**

REMARK(S)
**ACTUAL MILEAGE**

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER |
|---|---|
| **NONE** | |

1ST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 2ND LIENHOLDER |
|---|---|

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 3RD LIENHOLDER |
|---|---|

3RD LIEN RELEASED _____ / DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

**R I G H T S   O F   S U R V I V O R S H I P   A G R E E M E N T**
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____ DATE

SIGNATURE _____ DATE

SIGNATURE _____ DATE

FORM 30-C REV. 05/2016          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification** online at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.** 141543325

▶ FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser — Street — City — State — Zip
I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.
ODOMETER READING (No Tenths) — Date of Sale
Signature of Seller/Agent — Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent — Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY** (same fields as above, with Dealer No.)

**SECOND REASSIGNMENT DEALER ONLY** (same fields)

**THIRD REASSIGNMENT DEALER ONLY** (same fields)

**LIEN** — LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE: 1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902-6197

↓ DETACH HERE ↓

**TEXAS CERTIFICATE OF**

TEXAS DEPARTMENT OF MOTOR VEHICLES

TxDMV

141543325

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1C4HJXFGXJW205790 | 2018 | JEEP | LL |

TITLE/DOCUMENT NUMBER  DATE TITLE ISSUED

24625043312250080  08/10/2018

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| WRA | 4500 | | LCC2162 |

PREVIOUS OWNER

MAXWELL CHRYSLER DODGE J TAYLOR TX

ODOMETER READING

210

OWNER

USB LEASING LT
1850 OSBORN AVE
OSHKOSH, WI 54902

REMARK(S)

**ACTUAL MILEAGE**

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN  1ST LIENHOLDER

NONE

1ST LIEN RELEASED _____ DATE _____

BY _____
AUTHORIZED AGENT

DATE OF LIEN  2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE _____

BY _____
AUTHORIZED AGENT

DATE OF LIEN  3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE _____

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

R I G H T S  O F  S U R V I V O R S H I P  A G R E E M E N T
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE  DATE

SIGNATURE  DATE

SIGNATURE  DATE

FORM 30-C REV. 05/2016  DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification** online at www.TxDMV.gov. The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to www.TxDMV.gov and click on the "Title Check" icon.

---

| | |
|---|---|
| **WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.** | 141399483 |

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale

Signature of Seller/Agent | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale | Dealer No.

Dealer's Name

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale | Dealer No.

Dealer's Name

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)
Date of Sale | Dealer No.

Dealer's Name

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)