Bryan J. Wick
Texas State Bar No. 24003169
bryan.wick@wickphillips.com
Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Phone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR VISTA BANK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No.: 18-50214-rlj-11** |
| **REAGOR-DYKES MOTORS, LP, et al.,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |
| | § | |

---

## CREDITOR VISTA BANK'S AMENDED MOTION FOR
## RELIEF FROM THE AUTOMATIC STAY

---

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT GEORGE MAHON FEDERAL BUILDING, 1205 TEXAS AVENUE., RM 306, LUBBOCK, TEXAS 79401-4002 BEFORE CLOSE OF BUSINESS ON OCTOBER 2, 2018 WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE**

---

[1] The Debtors in these cases are Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada LP.

**SERVED UPON COUNSEL FOR THE MOVING PARTY
AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE
CASE. ANY RESPONSE SHALL INCLUDE A DETAILED
AND COMPREHENSIVE STATEMENT AS TO HOW THE
MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE
STAY IS TO BE CONTINUED.**

[This Motion Amends and Replaces Docket No. 266]

Vista Bank files this Motion for Relief from the Automatic Stay (the "Motion"), and
respectfully states as follows:

## I. PRELIMINARY STATEMENT

Vista seeks relief from the automatic stay to enforce its rights in a secured claim against
the Debtors based upon a promissory note executed on June 6, 2017 (the "Note").[2] The Note
reflects a loan for a principal amount of $2,000,000.00 ("Principal Amount"). Debtors agreed to
pay the Principal Amount, together with interest, in connection with the terms of the Note. The
Note is secured by the CD which is intended to satisfy Debtors' indebtedness in the event of
default.[3] Debtors have defaulted on the Note which accelerated upon the Debtors' bankruptcy
filing and is still accumulating daily interest and fees in conjunction with its satisfaction. The
outstanding Principal Amount due and owing is $1,957,227.52[4].

Vista respectfully submits that cause exists under Bankruptcy Code Section 362(d) to lift
the stay and allow Vista to apply the CD to the outstanding Principal Amount, interest and fees
associated with the Note.

---

[2] A true and correct copy of the Note is attached hereto as **Exhibit A**.

[3] A true and correct copy of the Certificate of Deposit is attached hereto as **Exhibit B**; a true and current copy of the Assignment of Deposit Account is attached hereto as **Exhibit C**.

[4] The principal amount of all claims against the debtor is accelerated upon the debtor's bankruptcy filing. *In re Am. Remanufacturers, Inc.*, 451 B.R. 349, 367 (Bankr. D. Del. 2011) (citing to *Nationwide Mut. Ins. Co. v. Optel, Inc.* (*In re Optel, Inc.*), 60 Fed.Appx. 390, 394 (3d Cir.2003) (" 'It is a basic tenet of the Bankruptcy Code that bankruptcy operates as the acceleration of the principal amount of all claims against the debtor.' "). A true and correct copy of the Loan Balance Information is attached hereto as **Exhibit D**.

---

## II.  JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief sought in this Motion is 11 U.S.C. § 362.

## III.  BACKGROUND FACTS

1.      On June 6, 2017, Reagor Dykes Auto Company, L.P., Reagor-Dykes Imports, LP, and Reagor-Dykes Plainview, L.P. (collectively the "Debtors") entered into a promissory note for loan number 73579.[5] The principal amount of the loan was $2,000,000.00 with a maturity date of June 6, 2018.[6]

3.      On June 6, 2017, Debtors additionally executed a certificate of deposit (the "CD").[7] The CD secured the Note as well as the Debtors' additional indebtedness with Vista.[8] The Assignment states, "Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise: Lender may take directly all funds in the Account and apply them to the Indebtedness."[9]

4.      On June 6, 2017, Vista provided the Debtors with a Collateral Receipt showing CD Account Number 6325371 served as collateral for Loan Number 73579, the Note.[10]

---

[5] *See* Exhibit A at pg. 1.

[6] *See id.*

[7] *See* Exhibit B; *see* Declaration of Toby Cecil attached hereto as **Exhibit E**.

[8] *See* Exhibit C.

[9] *See id* at pg. 3.

[10] *See* Collateral Receipt attached hereto as **Exhibit F**.

5.      On June 12, 2018, the Debtors executed a Change in Terms Agreement, extending the Note's maturity date to June 6, 2019.[11]

6.      On August 1, 2018, the Debtors filed these Chapter 11 cases, resulting in the acceleration of the Note pursuant to operation of law.  The Debtors have failed to repay the accelerated balance of the Note and are in  default.[12]  The Note further states, "The Post Maturity Rate on this Note is the lesser of (a) the maximum rate allowed by law or (b) 18.000% per annum based on a year of 360 days. Borrower will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at that rate."[13]

## IV.  REQUEST FOR RELIEF

7.      By this Motion, Vista requests the Court grant relief from the automatic stay under 11 U.S.C § 362(d) to allow Vista to recover its secured interest under the Note by applying the CD to the amount due and owing. Lifting the stay is appropriate in this instance under Bankruptcy Code § 362(d).

## V.  ARGUMENT AND AUTHORITIES

8.      Section 362(d) of the Code provides two avenues for the lifting, modifying or conditioning of a stay. The first is "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C.A. § 362(d)(1). The Bankruptcy Code does not define "cause."  *See In re Little Creek Dev.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Trust*, 526 B.R. 668, 673 n.11 (Bankr. N.D. Tex. 2015) (Houser, J.).  Cause "is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-sensitive situations."  *Mooney v. Gill*, 310 B.R. 543, 546-47 (Bankr. N.D. Tex. 2002).  This Court

---

[11] See Exhibit G.

[12] *See* Exhibit A at pg. 2.

[13] *See id.* at pg. 1.

therefore has discretion to determine what constitutes "cause" to grant stay relief. *See, In re Trust*, 526 B.R. at 673 n.11 ("The term 'cause' is not defined in the statute 'so as to afford flexibility to the bankruptcy courts'") (citing *In re Little Creek Dev.*, 779 F.2d at 1072).

9. The second avenue is if the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. §§ 362(d)(2). No limitations are placed on a secured creditor's ability to recover collateralized property, such as the Note, by obtaining relief from the automatic stay. *Delta Savs. & Loan Ass'n v. IRS*, 847 F.2d 248, 250 (5th Cir. 1988); *In re Timbers of Inwood Forest Assocs, Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986).

10. In this case, "cause" clearly exists to lift the automatic stay because Vista's security interest is not adequately protected, the Debtors do not have equity in the CD, and the CD securing the Note is not essential and necessary to the Debtors' reorganization.

**A. Vista is not Adequately Protected, and the Debtors cannot provide Adequate Protection.**

11. Section 362(d)(1) instructs courts to grant relief from the automatic stay where there exists cause to do so. The section explicitly includes lack of adequate protection as a ground for relief from stay, but "cause" is not otherwise defined in the Code. Therefore, determining whether cause exists involves case-by-case scrutiny. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988). As the Court is aware, the Debtors are accused of extensive financial deceit which includes mass indebtedness to multiple banking institutions. As such, the Debtors have no alternative assets available beyond the CD to apply to the outstanding Note balance. The Debtors carry the burden of proof on issues

of adequate protection. 11 U.S.C. §§ 362(g) and 363(p). The Debtors cannot meet their burden on the issue of adequate protection as the Debtors are unable to provide Vista adequate protection.

**B.      The Debtors do not have equity in the CD, which is not essential to the Debtors' reorganization.**

12.      The Bankruptcy Code provides that a bankruptcy court shall grant relief from the automatic stay with respect to property if (i) the debtor does not have equity in such property and (ii) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Equity as used in section 362(d) is the difference between the value of the subject property and the encumbrances against it." *Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327, 329 (5th Cir.1990) (citing *Stewart v. Gurley*, 745 F.2d 1194 (9th Cir.1984). It is undisputed that the note has accelerated and the Debtors have not made all or a significant portion of the payments on the Note. As of the Debtors' petition date, the outstanding Principal Amount, $1,957,227.52, was due and owing. The Note's Principal Amount has gained interest at a rate of $163.10 a day.[14] The Note's daily accruing interest and fees, as well as the Debtors' other liabilities to Vista secured by the CD, consume the full balance of the CD, leaving the Debtors no equity.

13.      In addition, the CD securing the Note is not necessary to the Debtors' effective reorganization. It is the Debtors' burden to establish the property is necessary for an effective reorganization. *In re Endrex Exploration Co.*, 101 B.R. 474, 476 (N.D. Tex. 1988). The Debtors are unable to apply the CD to satisfy any other obligations outside of those with Vista. The CD is not a transferable interest by its nature and was intended only to satisfy the Debtors' obligation on the Note. As such, it is clear the CD is not necessary for the Debtors' effective reorganization. *In re Plastech Engineered Products, Inc.,* 382 B.R. 90, 99 (Bankr. E.D. Mich. 2008) (establishing

---

[14] *See* Exhibit D.

that property is necessary to an effective reorganization so as to preclude stay relief as to property based on debtor's lack of equity in the property requires not merely a showing that, if there is conceivably to be an effective reorganization, then the property will be needed for that reorganization; rather, property must be essential for effective reorganization that is in prospect in sense that there is reasonable possibility of successful reorganization within reasonable time).

14. Because the Debtors have no equity in the CD, which is not essential to the Debtors' effective reorganization, "cause" exists to lift the automatic stay and allow Vista to apply the CD to the Debtors' defaulted upon Note.

## VI. CONCLUSION

WHEREFORE, Vista respectfully requests the Court grant relief from the automatic stay under 11 U.S.C. § 362(d) to allow Vista to recover its secured interest under the Note by applying the CD to the amount due and owing. Vista respectfully requests the Court lift the automatic stay and grant such other relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Jason M. Rudd*
Bryan J. Wick
Texas State Bar No. 24003169
bryan.wick@wickphillips.com
Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
**WICK PHILLIPS GOULD &MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**COUNSEL FOR VISTA BANK**

## CERTIFICATE OF CONFERENCE

I certify that, on September 17, 2018, I conferred with Marcus A. Helt, counsel for the Debtors. Mr. Helt indicated the Debtors are opposed to the relief requested at this time, and agreement could not currently be reached until Mr. Helt further reviewed the matter.

_/s/ Jason M. Rudd_
Jason M. Rudd

## CERTIFICATE OF SERVICE

I certify that on September 17, 2018, a true and correct copy of the foregoing document was served by ECF electronic delivery upon all parties consenting to such service and/or by first class U.S. mail upon all parties:

Reagor-Dykes Auto Group
1215 Ave. J
Lubbock, Tx 79401
(via first class mail)

Marcus Allen Helt
Foley & Lardner, LLP
2021 McKinney Ave., Ste. 1600
Dallas, TX 75201
Attorney for Debtors
(via ECF)

United States Trustee
1100 Commerce Street, Room 9C60
Dallas, TX 75242

_/s/ Jason M. Rudd_
Jason M. Rudd

# EXHIBIT A

*000000000000073579095506062017*


## Vista Bank

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,000,000.00 | 06-06-2017 | 06-06-2018 | 73579 | 210107 / 04 | | TRC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Reagor Dykes Auto Company, L.P. (TIN: 27-1878703); Reagor-Dykes Imports, LP (TIN: 27-1878497); and Reagor-Dykes Plainview, L.P. (TIN: 46-3969779)
1215 Ave J
Lubbock, TX 79401

**Lender:** Vista Bank
50th Street Office
4621 50th Street
Lubbock, TX 79414

---

**Principal Amount: $2,000,000.00**          **Date of Note: June 6, 2017**

**PROMISE TO PAY.** Reagor Dykes Auto Company, L.P.; Reagor-Dykes Imports, LP; and Reagor-Dykes Plainview, L.P. ("Borrower") jointly and severally promise to pay to Vista Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.000% per annum based on a year of 360 days. Interest shall be calculated from the date of each advance until repayment of each advance or maturity, whichever occurs first. The interest rate may change under the terms and conditions of the "POST MATURITY RATE" section.

**CHOICE OF USURY CEILING AND INTEREST RATE.** The interest rate on this Note has been implemented under the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 6, 2018. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 6, 2017, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Notwithstanding any other provision of this Note, Lender will not charge interest on any undisbursed loan proceeds. No scheduled payment, whether of principal or interest or both, will be due unless sufficient loan funds have been disbursed by the scheduled payment date to justify the payment.

**MAXIMUM INTEREST RATE.** Under no circumstances will the interest rate on this Note exceed (except for any higher default rate shown below) the lesser of 18.000% per annum or the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Vista Bank, 50th Street Office, 4621 50th Street, Lubbock, TX 79414.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**POST MATURITY RATE.** The Post Maturity Rate on this Note is the lesser of (A) the maximum rate allowed by law or (B) 18.000% per annum based on a year of 360 days. Borrower will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at that rate.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

## PROMISSORY NOTE
### (Continued)

**Loan No: 73579**

Page 2

---

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change In Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable costs actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Texas.

**CHOICE OF VENUE.** If there is a lawsuit, and if the transaction evidenced by this Note occurred in Lubbock County, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Lubbock County, State of Texas.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: certificates of deposit described in an Assignment of Deposit Account dated June 6, 2017.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Bart Reagor, Manager of Reagor-Dykes II, L.L.C., General Partner of Reagor Dykes Auto Company, L.P.; Rick Dykes, Manager of Reagor-Dykes II, L.L.C., General Partner of Reagor Dykes Auto Company, L.P.; Bart Reagor, Manager of Reagor Auto Mall I, LLC, Partner of Reagor-Dykes Imports, LP; Rick Dykes, Manager of Reagor Auto Mall I, LLC, Partner of Reagor-Dykes Imports, LP; Bart Reagor, Manager of Reagor-Dykes III, LLC, General Partner of Reagor-Dykes Plainview, L.P. ; and Rick Dykes, Manager of Reagor-Dykes III, LLC, General Partner of Reagor-Dykes Plainview, L.P.** . Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. **This revolving line of credit shall not be subject to Ch. 346 of the Texas Finance Code.**

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Vista Bank 1508 Texas Avenue Lubbock, TX 79401-5139.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. NOTICE: Under no circumstances (and notwithstanding any other provisions of this Note) shall the interest charged, collected, or contracted for on this Note exceed the maximum rate permitted by law. The term "maximum rate permitted by law" as used in this Note means the greater of (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (b) the higher, as of the date of this Note, of the "Weekly Ceiling" or the "Quarterly

## PROMISSORY NOTE
### (Continued)

Loan No: 73579                  Page 3

Ceiling" as referred to in Sections 303.002, 303.003 and 303.006 of the Texas Finance Code. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party, partner, or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

REAGOR DYKES AUTO COMPANY, L.P.

REAGOR-DYKES II, L.L.C., General Partner of Reagor Dykes Auto Company, L.P.

By: _____      By: _____
Bart Reagor, Manager of Reagor-Dykes II, L.L.C.      Rick Dykes, Manager of Reagor-Dykes II, L.L.C.

REAGOR-DYKES IMPORTS, LP

REAGOR AUTO MALL I, LLC, Partner of Reagor-Dykes Imports, LP

By: _____      By: _____
Bart Reagor, Manager of Reagor-Auto Mall I, LLC      Rick Dykes, Manager of Reagor Auto Mall I, LLC

REAGOR-DYKES PLAINVIEW, L.P.

REAGOR-DYKES III, LLC, General Partner of Reagor-Dykes Plainview, L.P.

By: _____      By: _____
Bart Reagor, Manager of Reagor-Dykes III, LLC      Rick Dykes, Manager of Reagor-Dykes III, LLC

# EXHIBIT B

**CERTIFICATE OF DEPOSIT**
**FIXED RATE**



VISTA BANK/50TH ST. LUBBOCK
4621 50TH STREET LUBBOCK TX 79414

---

**ACCOUNT TITLE AND ADDRESS**

REAGOR-DYKES IMPORTS, LP
6540 82ND ST
LUBBOCK, TX 79424

| ACCOUNT OPEN DATE | ACCOUNT NUMBER | OWNERSHIP TYPE | PRODUCT NAME | INITIAL DEPOSIT |
|---|---|---|---|---|
| June 6, 2017 | 6325371 | Limited Partnership | 364 DAY- 17 MO >100K | $2,000,000.00 |

| TERM | MATURITY DATE | RENEWAL OPTION | | |
|---|---|---|---|---|
| 12 Months | June 6, 2018 | Automatic at Maturity | | |

FIXED INTEREST RATE:       The deposit evidenced by this Certificate will earn interest at an annual rate of 1.000%.
ANNUAL PERCENTAGE YIELD:     1.00%

INTEREST PAYMENT:       Interest will be added monthly to the principal of this Certificate.

CALCULATION / COMPOUNDING:   Interest will be calculated on a basis of Actual (365/366). Interest will be compounded every 1 month
GRACE PERIOD:       The grace period for this Certificate is 10 calendar days following the Maturity Date.

**One Signer Required for Withdrawals.**

CERTIFICATE REDEMPTION. The Customer signing below acknowledges the receipt of funds/shares represented by this Certificate.

Name: _____      Date _____

**DEFINITIONS.** Throughout this Certificate, the terms "you," "your," and "account owner" refer to the Customer named on the account, and the terms "we," "our," and "us" refer to the Bank, VISTA BANK.

**BUSINESS ACCOUNTS.** Business accounts are those established by any partnership, corporation, association or other entity operated on a for-profit basis; all corporations and associations operated on a not-for-profit-basis; and any individual who intends to use the account for carrying on a trade or business. We reserve the right to require separate written authorization, in a form acceptable to us, telling us who is authorized to act on your behalf. We are authorized to follow the directions of a person designated as having authority to act on the entity's behalf until we receive written notice that the authority has been terminated and have had a reasonable time to act upon that notice.

In addition to the General Rules, your Certificate of Deposit ("Certificate") may be subject to the following:

**ACCOUNT TERMS.** The Certificate bears interest at the rate and basis as set forth on the Certificate. The terms of the Certificate, such as the interest rate(s), Annual Percentage Yield ("APY"), length of term period, renewability, and date of maturity are specified on the Certificate and in any documents provided to you at the time of account opening. Interest will not be compounded unless noted and will be paid to you at the frequency and in the method noted. Withdrawal of interest prior to maturity will affect the APY.

**WITHDRAWAL PRIOR TO MATURITY.** You have contracted to keep the account funds on deposit from the issue date until the maturity date. We may accept a request by you for withdrawal of some or all of the account funds prior to the maturity date at our discretion or as otherwise described in the provided documents, if any.

**ADDITIONAL DEPOSITS DURING THE TERM.** No additional deposits will be allowed to this account during its term unless otherwise described in the provided documents, if any.

**EARLY WITHDRAWAL PENALTY.** Unless provided otherwise in the provided documents, if any, we will assess an early withdrawal penalty on any withdrawal, either partial or in whole, that we allow you to make from your account prior to the account's maturity date. The method for determining that penalty is described in the provided documents, if any.

**RENEWAL.** Automatic Renewal Certificates will renew automatically on the stated maturity date of its term. Such renewal will be for a time period equal or similar to the original term and subject to these terms and conditions. Interest for that renewal term will be paid at the interest rate then in effect at this financial institution for similar accounts. If you close the Certificate within the grace period following the maturity date, we will not charge an early withdrawal penalty for that withdrawal. When applicable to your Certificate, the grace period following the maturity date is described in the provided documents, if any.

**LOST OR STOLEN CERTIFICATES.** We can refuse to allow withdrawals which you request without your Certificate. If your Certificate is lost or stolen, you agree to immediately notify us in writing.

**E-SIGNATURES AUTHORIZATION**
**ACKNOWLEDGMENT AND CONSENT**



VISTA BANK/50TH ST. LUBBOCK
4621 50TH STREET LUBBOCK TX 79414

| DATE | ACCOUNT NUMBER | |
|---|---|---|
| June 6, 2017 | 364 DAY- 17 MO >100K - TimeDeposit - 6325371 | |

This E-Signatures Authorization Acknowledgment And Consent will also be referred to in this document as the "Agreement" and constitutes the full agreement by and between VISTA BANK ("Financial Institution") and RICK F DYKES and BART W REAGOR (each a "Consenting Party"), with respect to the use of electronic signature.

Financial Institution and Consenting Party agree to the following:

1. Each Consenting Party authorizes Financial Institution to use an electronic signature of the Consenting Party for all documents, agreements, attachments, addendums including, without limitation, all deposit and lending related documents such as account agreements, loan agreements, security agreements, mortgages, deeds of trust, guaranties and hypothecations (collectively, the "Documents") in any way connected to the transaction ("Transaction") being entered into between the Consenting Party and the Financial Institution. This consent is specifically to permit an electronic signature (as of the nature then in use by the Financial Institution) in lieu of hand-written signatures on any one or more of the Documents.

2. Financial Institution consents to accept such signatures as true, correct and binding signatures of the Consenting Party and to enter into the Transaction in reliance thereon.

3. Each Consenting Party agrees that its electronic signature will be enforceable as and to the full extent of a hand-written signature as an original for enforcement/enforceability of the Documents containing the electronic signature(s), whether in court (state or federal), arbitration or otherwise. Consenting Party will not raise any defenses or invoke regulatory or statutory claim attempting to invalidate the enforceability of the Documents to which the electronic signature is affixed.

**NOTICES.** Any notice from Financial Institution to Consenting Party shall be deemed given when mailed, postage paid, and addressed to any Consenting Party at the last address furnished by any Consenting Party to the Financial Institution. Any notice from Consenting Party to Financial Institution shall be deemed given when mailed, postage paid, and addressed to the Financial Institution at its principal place of business.

**ENTIRE AGREEMENT.** This Agreement contains and constitutes the entire understanding between Financial Institution and each Consenting Party regarding the subject matter hereof and may not be modified, amended, or terminated except by written agreement signed by Financial Institution and each Consenting Party that such modification, amendment or termination affects. All prior or subsequent oral agreements and/or discussions relating to this Agreement are superseded by this Agreement. Further, in the event of any conflict between the terms and provisions contained in this Agreement and any other document(s) relating to use of electronic signatures, the terms and provisions of this Agreement shall control.

**BINDING EFFECT.** The obligations hereof shall bind the heirs, executors, administrators, successors and assigns of each Consenting Party, and all rights, benefits and privileges hereby conferred on Financial Institution shall be and hereby are extended to and conferred upon and may be enforced by its successors and assigns. Further, if any Consenting Party is a partnership, the obligations hereof shall continue in force, and apply, notwithstanding any change in the membership of such partnership, whether arising from the death or retirement of one or more partners or the accession of one or more new partners.

**ENFORCEABILITY.** Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**HEADINGS.** Section headings/titles are for convenience only and are not to be used in construing or interpreting this Agreement.

**GOVERNING LAW.** This Agreement shall be governed by the laws of the state of Texas except to the extent that federal law is controlling.

By signing this Agreement, Financial Institution and each Consenting Party acknowledge reading, understanding and agreeing to all of its provisions.

CONSENTING PARTIES:

RICK F DYKES                          Date          BART W REAGOR                          Date
MANAGER                                             MANAGER

ACCOUNT INFORMATION
CERTIFICATE OF DEPOSIT



VISTA BANK/50TH ST. LUBBOCK
4621 50TH STREET LUBBOCK TX 79414

## ACCOUNT TITLE AND ADDRESS

REAGOR-DYKES IMPORTS, LP
6540 82ND ST
LUBBOCK, TX 79424

| ACCOUNT OPEN DATE | ACCOUNT NUMBER | OWNERSHIP TYPE | PRODUCT NAME | INITIAL DEPOSIT |
|---|---|---|---|---|
| June 6, 2017 | 6325371 | Limited Partnership | 364 DAY- 17 MO >100K | $2,000,000.00 |

| TERM | MATURITY DATE | RENEWAL OPTION | | |
|---|---|---|---|---|
| 12 Months | June 6, 2018 | Automatic at Maturity | | |

## BUSINESS ENTITY INFORMATION

Name: REAGOR-DYKES IMPORTS, LP
Address: 6540 82ND ST
LUBBOCK, TX 79424
Contact Name: RANDON BLACKLOCK
Contact Title: AUTHORIZED SIGNER
Contact Phone: (806)687-7771
MOBILE (806)778-8830
PHONE:
E-Mail Address:

Business Filing State: TX
Date Established: February 3, 2010
Nature of Business: AUTO DEALERSHIP
Resolution Date: February 3, 2010
**Business does not engage in Internet Gambling.**

**DEFINITIONS.** "You," "your," and "account owner" refer to the Customer, whether or not there are one or more Customers named on the account, and the terms "we," "us," and "our" refer to the Bank, VISTA BANK.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**ACKNOWLEDGMENT.** By signing this document, you acknowledge that you have opened the type of account designated above. The undersigned certify that all information provided to the Bank is true and accurate. As the account is in the name of a business entity, you acknowledge that you are acting on behalf of the business entity, and with respect to which you have legal authority to transact business. Your signature acknowledges the receipt of the appropriate Account Agreement for the type of account designated above and that you agree to be bound by the Account Agreement.

**One Signer Required for Withdrawals**

REAGOR-DYKES IMPORTS, LP

SIGNATURE HERE                                    SIGNATURE HERE

By: RICK F DYKES             Date            By: BART W REAGOR            Date
Its: MANAGER                                 Its: MANAGER

| | | | |
|---|---|---|---|
| Signer: | RICK F DYKES | Tax ID Number: | XXX-XX-5345 |
| Address: | 2106 VICKSBURG | Date of Birth: | January 12, 1960 |
| | LUBBOCK, TX 79407 | Work Phone: | (806)687-7771 |
| Title/Capacity: | MANAGER | Home Phone: | (806)792-5825 |
| Employer: | REAGOR AUTO | Unique Identifier: | |

Identification Document
Driver's License/State ID: XXXXX178
ID Issued By: TX
ID Issuing Location: TX
ID Expiration: January 12, 2018
Verification Notation: Valid Social Security Number by JO'ELDA LUMAN

| | | | |
|---|---|---|---|
| Signer: | BART W REAGOR | Tax ID Number: | XXX-XX-7636 |
| Address: | 4811 115TH ST | Date of Birth: | February 1, 1966 |
| | LUBBOCK, TX 79424 | Work Phone: | (806)687-8933 |
| Title/Capacity: | MANAGER | Home Phone: | (806)790-4593 |
| Employer: | REAGOR AUTO | Unique Identifier: | |

Identification Document
Driver's License/State ID: XXXXX650
ID Issued By: TX
ID Issuing Location: TX
ID Expiration: February 1, 2018
Verification Notation: Valid Social Security Number by JO'ELDA LUMAN

**TAXPAYER IDENTIFICATION NUMBER (T.I.N.) CERTIFICATION**      27-1878497

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined in the instructions for the IRS Form W-9), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN.

**Signature of U.S. person:**

Exemptions (see IRS Form W-9 instructions):

Exempt payee code (if any) _____
Exemption from FATCA reporting code (if any) _____

SIGNATURE HERE

RICK F DYKES                    Date

**ADDITIONAL COMMENTS.** REAGOR-DYKES AUTO CO LP REAGOR-DYKES IMPORTS LP REAGOR-DYKES PLAINVIEW LP

# EXHIBIT C

*00000000000073579009006062017*



## ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,000,000.00 | 06-06-2017 | 06-06-2018 | 73579 | 210107 / 04 | | TRC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Reagor Dykes Auto Company, L.P. (TIN: 27-1878703); Reagor-Dykes Imports, LP (TIN: 27-1878497); and Reagor-Dykes Plainview, L.P. (TIN: 46-3969779)
1215 Ave J
Lubbock, TX 79401

**Lender:** Vista Bank
50th Street Office
4621 50th Street
Lubbock, TX 79414

**Grantor:** Reagor-Dykes Imports, LP (TIN: 27-1878497)
1215 Ave J
Lubbock, TX 79401

---

**THIS ASSIGNMENT OF DEPOSIT ACCOUNT** dated June 6, 2017, is made and executed among Reagor-Dykes Imports, LP ("Grantor"); Reagor Dykes Auto Company, L.P.; Reagor-Dykes Imports, LP; and Reagor-Dykes Plainview, L.P. ("Borrower"); and Vista Bank ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit account(s) described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit account(s) ("Account"):

**CD Account Number 6325371 with Lender with an approximate balance of $2,000,000.00**

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

**(A)** All property to which Lender acquires title or documents of title.

**(B)** All property assigned to Lender.

**(C)** All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

**(D)** All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise. However, this Agreement shall not secure, and the "Indebtedness" shall not include, any obligations arising under Subchapters E and F of Chapter 342 of the Texas Finance Code, as amended.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

**Loan No: 73579**                                                    Page 2

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business or the death of any partner, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

Loan No: 73579                                                               **Page 3**

benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Borrower to Lender immediately due and payable, without notice of any kind to Borrower or Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Borrower or Grantor as the interests of Borrower or Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Texas Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Texas Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.**

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in Lubbock County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Lubbock County, State of Texas.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Agreement or any provision of any Related Document, Grantor does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Indebtedness which would in any way or event (including interest, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Indebtedness than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Indebtedness, and when the principal has been paid in full, be refunded to Grantor.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means the deposit account(s) described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means Reagor Dykes Auto Company, L.P.; Reagor-Dykes Imports, LP; and Reagor-Dykes Plainview, L.P. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Reagor-Dykes Imports, LP.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

## ASSIGNMENT OF DEPOSIT ACCOUNT
## (Continued)

Loan No: 73579            Page 5

---

**Lender.** The word "Lender" means Vista Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated June 6, 2017 and executed by Reagor Dykes Auto Company, L.P.; Reagor-Dykes Imports, LP; and Reagor-Dykes Plainview, L.P. in the principal amount of $2,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 6, 2017.

**GRANTOR:**

**REAGOR-DYKES IMPORTS, LP**

**REAGOR AUTO MALL I, LLC, Partner of Reagor-Dykes Imports, LP**

By: _____     By: _____
    Bart Reagor, Manager of Reagor Auto Mall I, LLC     Rick Dykes, Manager of Reagor Auto Mall I, LLC

**BORROWER:**

**REAGOR DYKES AUTO COMPANY, L.P.**

**REAGOR-DYKES II, L.L.C., General Partner of Reagor Dykes Auto Company, L.P.**

By: _____     By: _____
    Bart Reagor, Manager of Reagor-Dykes II, L.L.C.     Rick Dykes, Manager of Reagor-Dykes II, L.L.C.

**REAGOR-DYKES IMPORTS, LP**

**REAGOR AUTO MALL I, LLC, Partner of Reagor-Dykes Imports, LP**

By: _____     By: _____
    Bart Reagor, Manager of Reagor Auto Mall I, LLC     Rick Dykes, Manager of Reagor Auto Mall I, LLC

**REAGOR-DYKES PLAINVIEW, L.P.**

**REAGOR-DYKES III, LLC, General Partner of Reagor-Dykes Plainview, L.P.**

By: _____     By: _____
    Bart Reagor, Manager of Reagor-Dykes III, LLC     Rick Dykes, Manager of Reagor-Dykes III, LLC

**LENDER:**

**VISTA BANK**

X _____
    Toby Cecil, President

EXHIBIT D

# VISTA BANK (1457)

## Loan Balance Information

REAGOR DYKES AUTO COMPANY LP

REAGOR-DYKES IMPORTS, LP

REAGOR-DYKES PLAINVIEW, LP

| | |
|---|---|
| Business Loan | 73579 |
| 30 COM RLOC  OTHER | |
| As of | 09/14/2018 |

## Account Information

| | | | |
|---|---|---|---|
| Officer Code | TOBY R. CECIL | Account Status | Active |
| Collateral Code | 04 | Non-Accrual Status | Normal Accruals |
| Revolve Code | Revolving Loan | Regulation O Code | Not Applicable |
| Interest Rate Code | Fixed Single Rate | Interest Type | Simple Run-To Interest |
| Accrual Balance | Actual Balance | Effective Date of Current Interest Rate | 06/12/2018 |
| Current Interest Rate | 3.0 % | Current Loan Amount | $2,000,000.00 |
| Current Balance | $1,957,227.52 | Current Loan Contract Date | 06/06/2017 |
| Unadvanced Amount | $42,772.48 | Current Loan Maturity Date | 06/06/2019 |
| Current Payoff Amount | $1,968,897.48 | Payoff Valid Through | 09/14/2018 |
| Amount of Interest Due | $11,417.16 | Daily Accrued Interest | $163.102293333 |
| Late Fees Due | $252.80 | Accrued Through Date | 09/13/2018 |
| Loan Fees Due | $0.00 | Interest Paid YTD | $38,874.33 |
| Other Charges Due | $0.00 | Interest Paid LTD | $67,519.34 |
| Escrow Balance | $0.00 | Principal Paid LTD | $472,772.48 |
| Escrow Interest | $0.00 | | |
| Repayment Method | Summary Billing | | |

## Activity Controls

| | |
|---|---|
| Activity Control 1 | Normal |

## Payment Information

| | | | |
|---|---|---|---|
| Next Payment is Due on | 08/06/2018 | Number of Days Loan is Past Due | 38 |
| For a Total of | $5,056.17 | Total Amount Past Due | $10,112.34 |
| of which Principal is | $0.00 | of which Principal is | $0.00 |
| of which Interest is | $5,056.17 | of which Interest is | $10,112.34 |
| Escrow Payment Amount | $0.00 | | |
| Number of Extensions | 1 | Number of Times Past Due | |
| Number of Renewals | 0 | 10  Days - 1 | 60  Days - 0 |
| Number of Payments Paid | 1 | 20  Days - 1 | 90  Days - 0 |
| Number of Payments Remaining | 11 | 30  Days - 1 | 120  Days - 0 |

# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No.: 18-50214-rlj-11 |
| **REAGOR-DYKES MOTORS, LP, et al.,** | § | |
| | § | **(Jointly Administered)** |
| Debtors. | § | |
| | § | |

## DECLARATION OF TOBY CECIL

1.     My name is Toby Cecil. I am over 18 years of age, of sound mind, competent, and authorized to make this declaration. I am currently President of Vista Bank and as such have personal knowledge, or have gained personal knowledge through review of internal documents, of the relevant facts discussed below and in the Motion to Lift Stay:

2.     On June 6, 2017, Reagor Dykes Auto Company, L.P., Reagor-Dykes Imports, LP, and Reagor-Dykes Plainview, L.P. (collectively the "Borrowers" or "Reagor-Dykes Entities") entered into a promissory note (the "Note") for loan number 73579. The principal amount of the loan was $2,000,000.00 (the "Principal Amount") with a maturity date of June 6, 2018.

3.     On June 6, 2017, the Reagor-Dykes Entities additionally executed a certificate of deposit (the "Cash Collateral") in the amount of $2,000,000.00. The Cash Collateral was assigned to the Note as well as other Reagor-Dykes indebtedness with Vista.

4.     The Reagor-Dykes Entities have defaulted on the Note. The current outstanding Principal Amount is $1,957,227.52, with a daily accruing interest of $163.10 as well as legal fees. While it appears Vista is over-secured, the Cash Collateral was cross-collateralized and will need to be applied to other Reagor-Dykes Entities indebtedness and liability.

5.     Applying the Cash Collateral to satisfy the outstanding amount owed on the Note is standard operating procedure for Vista.

6.      My date of birth is December 26, 1980, and my work address is 4621 50th Street,

Lubbock, Texas 79414.

7.      I declare under the penalties of perjury that the foregoing is true and correct.

Executed in Lubbock County, Texas, on September 14, 2018.



_____
Toby Cecil

SWORN TO AND SUBSCRIBED TO on this 14 day of September 2018, to certify which

witness my hand and seal of office.

CHAMA SCHAEFER
Notary Public, State of Texas
Notary ID# 131667819
My Commission Expires 08-02-2022

_____
Notary Public In and For the State of Texas

EXHIBIT F





Number: 11857

*00000000000073579021506062017*

Vista Bank

# COLLATERAL RECEIPT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 06-06-2017 | 06-06-2018 | 73579 | 210107 / 04 | | TRC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Reagor Dykes Auto Company, L.P. (TIN: 27-1878703); Reagor-Dykes Imports, LP (TIN: 27-1878497); and Reagor-Dykes Plainview, L.P. (TIN: 46-3969779)
1215 Ave J
Lubbock, TX 79401

**Lender:** Vista Bank
50th Street Office
4621 50th Street
Lubbock, TX 79414

**Grantor:** Reagor-Dykes Imports, LP (TIN: 27-1878497)
1215 Ave J
Lubbock, TX 79401

| Description of Collateral | Custody Control Signatures | Date Released |
|---|---|---|
| CD Account Number 6325371 with Lender with an approximate balance of $2,000,000.00 | | |

**Initial Delivery Acknowledgments:**

Grantor: ______________________
(Grantor's Signature)

Vista Bank
By: ______________________
(Authorized Officer)

**Return Receipt Acknowledgment:**

Grantor acknowledges the receipt of all collateral, including all unmatured coupons, if any.

X ______________________
(Grantor's Signature)

**Instructions for Returning Collateral and Disposition of Coupons:** ______________________

LaserPro, Ver. 16.3.10.005 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - TX H:\CFI\LPL\G50.FC TR-31182 PR-20

EXHIBIT G



*00000000000073579096006122018*


Vista Bank

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 06-06-2017 | 06-06-2018 | 73579 | 210107 / 04 | *** | TRC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| **Borrower:** | Reagor Dykes Auto Company, L.P. (TIN: 27-1878703); Reagor-Dykes Imports, LP (TIN: 27-1878497); and Reagor-Dykes Plainview, L.P. (TIN: 46-3969779) 1215 Ave J Lubbock, TX 79401 | **Lender:** | Vista Bank 50th Street Office 4621 50th Street Lubbock, TX 79414 |
|---|---|---|---|

**Principal Amount: $2,000,000.00**　　　　　　　　　　　　　**Date of Agreement: June 12, 2018**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That one certain Promissory Note in the amount of $2,000,000.00 between Borrower(s) and Lender dated June 06, 2017.

**DESCRIPTION OF COLLATERAL.** Possessory Security Agreement between Borrower(s) and Lender dated June 06, 2017.

**DESCRIPTION OF CHANGE IN TERMS.** The maturity date of above-mentioned Promissory Note is hereby extended from June 06, 2018 is hereby extended to June 06, 2019 at which point all principal and interest not yet paid shall be due. Monthly interest only payments shall resume July 06, 2018. However, this maturity date extension shall not be construed to constitute a waiver by Lender of its right to collect previously assessed or collected post-maturity interest using the pre-existing maturity date. Bank retains the right to assess and collect interest at the post-maturity rate on amounts past due during the period of time from the preexisting maturity date to the effective date of this Change in Terms Agreement. All other terms and conditions shall remain the same.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 73579                                                                                                          Page 2

---

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

REAGOR DYKES AUTO COMPANY, L.P.

REAGOR-DYKES II, L.L.C., General Partner of Reagor Dykes Auto Company, L.P.

By: _____            By: _____
Bart Reagor, Manager of Reagor-Dykes II, L.L.C.        Rick Dykes, Manager of Reagor-Dykes II, L.L.C.

REAGOR-DYKES IMPORTS, LP

REAGOR AUTO MALL I, LLC, Partner of Reagor-Dykes Imports, LP

By: _____            By: _____
Bart Reagor, Manager of Reagor Auto Mall I LLC         Rick Dykes, Manager of Reagor Auto Mall I, LLC

REAGOR-DYKES PLAINVIEW, L.P.

REAGOR-DYKES III, LLC, General Partner of Reagor-Dykes Plainview, L.P.

By: _____            By: _____
Bart Reagor, Manager of Reagor-Dykes III, LLC          Rick Dykes, Manager of Reagor-Dykes III, LLC

LENDER:

VISTA BANK

X _____
Toby Cecil, President