

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 20, 2018**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP, *et al.*[1]** | § | **Case No. 18-50214-rlj-11** |
| | § | **Jointly Administered** |
| Debtor. | § | |

### ORDER (I) AUTHORIZING AND APPROVING: (A) BID PROCEDURES; (B) STALKING HORSE BIDDER AND OVERBID PROTECTIONS; AND (C) FORM AND MANNER OF NOTICES; AND (II) SCHEDULING AN AUCTION AND SALE HEARING

The matter having come before this Court on the *Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Overbid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (IV) Granting Related Relief* [Docket No. 222] (the "***Motion***")[2] filed by Reagor-Dykes Motors, LP; Reagor-Dykes Imports, LP; Reagor-Dykes

---

[1] The Debtors are Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), and Reagor-Dykes Floydada, LP (Case No. 18-50219).

[2] All capitalized terms not defined herein shall have the meaning given to them in the Motion.

Amarillo, LP; Reagor-Dykes Auto Company, LP; Reagor-Dykes Plainview, LP; Reagor-Dykes

Floydada, LP (collectively, "**Reagor-Dykes**" or the "**Debtors**").

Having reviewed the Motion and all matters brought to the Court's attention at the

hearing on September 18, 2018 (the "**Bid Procedures Hearing**"), and after due deliberation and

consideration, and it appearing that this Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334, that this is a core proceeding pursuant to 28 U.S.C. § 157(b), and that

venue of this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and

1409, the Court finds that:

a) It has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and

1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is

proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

b) The notice given of the Motion and the Bid Procedures Hearing thereon was

reasonable and sufficient in light of the circumstances and nature of the relief requested, and no

other or further notice of the Bid Procedures Hearing is necessary. A reasonable and fair

opportunity to object to the Motion and the relief granted in this Order has been afforded under

the circumstances.

c) The legal and factual bases set forth in the Motion and at the Bid Procedures

Hearing establish just cause for the relief granted herein; granting the relief is in the best interests

of the Debtors, the estates, and the creditors thereof.

d) The Debtors have articulated good and sufficient reasons for this Court to grant

the relief requested in the Motion as provided herein. Such good and sufficient reasons were set

forth in the Motion and on the record at the Bid Procedures Hearing and are incorporated by

reference herein and, among other things, form the basis for the findings of fact and conclusions

of law set forth herein. Specifically, the Debtors have demonstrated a sound business justification for the Court to approve (i) KamKad Automotive Holdings, LLC ("*KamKad*") as the Stalking Horse Bidder and (ii) the payment of the Break-Up Fee (as defined herein) to KamKad on the terms and conditions identified in the LOI, the Motion, and the Buy Sell ("*KamKad Proposal*").

e) The Debtors have also demonstrated a compelling and sound business justification for the relief granted herein and the timeline proposed by the Debtors set forth below is reasonable:

i. **Initial Good-Faith Deposit Deadline for the Stalking-Horse Bidder**: **<u>3:00 p.m. prevailing Central Time on September 21, 2018</u>**, as the deadline by which the Stalking-Horse Bidder will pay $200,000 as an initial deposit (the "*Initial Good-Faith Deposit*"), which deposit shall be treated in accordance with the terms of this Order.

ii. **APA Filing Deadline for the Stalking-Horse Bidder**: **<u>September 30, 2018</u>**, as the deadline by which the Stalking Horse Bidder and the Debtors will execute and file the Stalking Horse APA and the proposed form of the Sale Order.

iii. **Good-Faith Deposit Deadline for the Stalking-Horse Bidder**: **<u>3:00 p.m. prevailing Central Time on October 1, 2018</u>**, as the deadline by which the Stalking-Horse Bidder will pay the remaining balance of the $1,000,000 good-faith deposit, i.e., $800,000.

iv. **Assumption and Assignment Notice Deadline**: **<u>October 24, 2018</u>**, as the deadline by which the Debtors will file with the Court a notice identifying the proposed cure amounts for all unexpired leases and executory contracts.

v. **Bid Deadline**: **<u>4:00 p.m. prevailing Central Time on November 12, 2018</u>**, as the deadline (the "*Bid Deadline*") by which Qualified Bidders (as defined in the Bid Procedures) must deliver written copies of their bidding materials consistent with the Bid Procedures to the Debtors and others entitled to receive such copies.

vi. **Auction:** **10:00 a.m. prevailing Central Time on November 15, 2018,** as the date on which an auction for the Assets (the "*Auction*"), if one is necessary, will commence at the offices of Foley Gardere, 2021 McKinney Avenue, Suite 1600, Dallas, TX 75201.

vii. **Sale Objection Deadline:** **4:00 p.m. prevailing Central Time on November 23, 2018,** as the deadline (the "*Sale Objection Deadline*") by which objections, if any, to the entry of the order approving the Sale Order (defined below) must be filed and served consistent with the Bid Procedures.

viii. **Objections to Cure Amounts**: **4:00 p.m. prevailing Central Time on November 23, 2018**, as the deadline by which objections, if any, to the proposed cure amounts related to the assumption and assignment of unexpired leases and executory contracts must be filed and served consistent with the Bid Procedures.

ix. **Sale Hearing**: **November 29, 2018, or such other date selected by the Court** on which the Sale Hearing will be held in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, 1205 Texas Avenue, Room 314, Lubbock, Texas, 79401.

f) The bid procedures (the "*Bid Procedures*") set forth in the attached **Exhibit 1** (i) were proposed by the Debtors in good faith with the goal of maximizing value of the Dealerships and the Assets for the benefit of all creditors of the estates and (ii) are fair, reasonable, and appropriate and are designed to maximize the value of the Assets to be sold.

g) Approval of the following bid protections (the "*Overbid Protections*") as part of the Bid Procedures is a necessary and appropriate inducement to the Stalking Horse Bidder to make an initial offer that will serve as a "floor" for further bidding, and to enter into the Stalking Horse APA and consummate the transactions contemplated thereby, which are as follows:

i. a break-up fee of $750,000 payable to KamKad (a) in cash upon consummation of a sale to another bidder at a higher or better offer or (b) as an allowed administrative expense claim under § 503(b) of the Bankruptcy Code if the Debtors fail to close under the Stalking Horse APA for any reason other than (x) a material breach by KamKad or (y) the termination of the

-4-

Stalking Horse APA or the LOI by KamKad (the "***Break-Up Fee***");

ii. an initial overbid requirement of the Break-Up Fee plus $250,000; and

iii. subsequent incremental bids must be at least $100,000 more than the previous bid.

h)      The form of notice (the "***Notice***") attached as **Exhibit 2** is adequate and reasonably calculated to provide due, proper, and timely notice to all interested parties of (i) the Bid Procedures; (ii) the objection deadline to the Motion and related transactions; (iii) the date and time set for the Auction, if necessary, (iv) the date and time set for the Sale Hearing in accordance with Bankruptcy Rule 2002 and the applicable provisions of the Bankruptcy Code, and (v) entry of this Order. Except as otherwise set forth herein, no other or further notice is necessary.

i)      If held, the Auction is necessary to determine which Qualified Bid represents the highest or otherwise best Qualified Bid.

j)      The Break-Up Fee and the Overbid Protections are fair and reasonable and were negotiated by the parties at arm's length and in good faith. The Debtors' obligation to pay the Break-Up Fee, consistent with terms of the LOI, is (i) an actual and necessary cost and expense of preserving the Debtors' bankruptcy estates, within the meaning of § 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, (iii) reasonable and appropriate, and (iv) necessary to ensure that KamKad will continue to pursue its proposed acquisition of the Dealerships and the Assets.

k)      The Bid Procedures were and are material inducements for, and the conditions of, KamKad's entering into the LOI. KamKad is unwilling to commit to hold open its offer to purchase the Assets under the terms of the LOI unless the Break-Up Fee and Overbid Protections

-5-

are approved. Assurance to KamKad of payment of the Break-Up Fee has promoted and will promote more competitive bidding by inducing KamKad's bid that otherwise would not have been made, and without which bidding would have been and would continue to be limited. Further, because the Break-Up Fee induced KamKad to submit a bid that will serve as a minimum floor bid on which other bidders and the Debtors may rely, KamKad has provided a substantial benefit to the Estates by increasing the likelihood that the price at which the Assets are sold will reflect the true value of the Assets.

l) The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted, and the Bid Procedures are hereby approved in their entirety to be used in connection with the proposed sale of the Assets. The Debtors are hereby granted the power and authority to take all steps necessary or appropriate to carry out the provisions of this Order and the Bid Procedures. The Bid Procedures are incorporated herein by reference as if fully set forth herein. Notwithstanding the foregoing, the consummation of the sale of the Assets shall remain subject to the entry of a Sale Order approving the sale of the Assets and related transactions as contemplated in the Motion.

2. The Bid Procedures and the Bid Protections are fair and reasonable, are reasonably calculated to produce the best or highest offers for the Assets, and will confer actual benefit on the Debtors and their estates. The Bid Procedures and the Bid Protections represent

an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

3.      The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.  As described in the Bid Procedures, if the Debtors do not receive any Qualified Bids, the Auction will not be held. If one or more Qualified Bids is timely received from a Qualified Bidder in accordance with the Bid Procedures, then the Debtors shall determine the Initial Bid and conduct the Auction as set forth therein. Any disputes as to the final selection of the highest or best Qualified Bid, or any other dispute arising from the implementation of the Bid Procedures, shall be resolved by this Court.

4.      KamKad is hereby approved as the Stalking Horse Bidder on the terms and conditions set forth in the LOI attached to the Motion and the Stalking Horse APA.

5.      The Break-Up Fee ($750,000) is approved.  KamKad shall be entitled to an allowed administrative expense in the amount of the Break-Up Fee under § 503(b) of the Bankruptcy Code in accordance with the terms of the LOI and may rely on this Order for such administrative-expense claim without the need to file a separate motion with the Court.

6.      If an Auction is held and KamKad is not a Successful Bidder or any other conditions set forth in the LOI governing the Break-Up Fee are satisfied, then KamKad will be entitled to the benefits afforded by the Overbid Protections including payment of the Break-Up Fee, provided, however, that in the event that after KamKad is selected as a Successful Bidder but is denied approval by one or more Franchisor (as defined herein) as required by the LOI, KamKad shall not be entitled to the Break-Up Fee.  Every bid that KamKad submits during each round of any Auction shall include, as a credit against the total bid amount, the amount of the Break-Up Fee, and if KamKad is a Successful Bidder, the amount of consideration that KamKad provides in order to acquire the Assets shall equal the amount of the Successful Bid less the

amount of the Break-Up Fee.

7.     The Overbid Protections are approved.

8.     Within four (4) business days after the Court enters this Order, the Debtors shall serve a copy of the Notice (a) by first class United States mail, postage prepaid, as well as service via electronic mail where possible, including, without limitation, (i) all parties who have filed a written request for notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; (ii) the Office of the United States Trustee; (iii) counsel for the top twenty largest unsecured creditors (or on such creditors if counsel is unknown); (iv) the Internal Revenue Service; (v) all parties on the Debtors' master service list; (vi) all known parties who assert a lien or other interest in the Assets; and (vii) by publication in the Lubbock Avalanche Journal, the Amarillo Globe-News and the Dallas Morning News (each at KamKad's expense); and (b) by the Court's electronic filing system on those parties receiving electronic notice by such system.

9.     Within three (3) business days after the Court enters this Order, consistent with the terms of the LOI, as modified in open court, KamKad shall place the Initial Good Faith Deposit into an interest-bearing and segregated escrow account.  The Initial Good Faith Deposit shall be non-refundable and shall constitute property of the Debtors' Estates unless (a) KamKad executes the Stalking Horse APA/Buy-Sell Agreement with the Debtors on or before the Stalking Horse APA Deadline (as defined herein), (b) the Debtors fail to use reasonable efforts to negotiate and execute the Stalking Horse APA by the Stalking Horse APA Deadline, or (c) the Debtors' authority to use cash collateral terminates prior to October 18, 2018; in which case, the Initial Good Faith Deposit shall be refunded to KamKad.  The Stalking Horse APA shall materially conform to the terms set forth in the LOI.  If KamKad executes the Stalking Horse APA / Buy-Sell Agreement with the Debtors on or before September 30, 2018, KamKad shall be

4845-9689-5089.8

required to place an additional $800,000 into the same interest-bearing escrow account no later than October 1, 2018 (such additional deposit, together with the Initial Good Faith Deposit, the "**Good Faith Deposit**") and the entirety of the Good Faith Deposit, including the Initial Good Faith Deposit, shall be fully refundable in accordance with the terms of the LOI, Stalking Horse APA, the Bid Protections and this Order.  Provided that KamKad deposits the Initial Good Faith Deposit in accordance with this Order, the Debtors shall be barred from soliciting or filing any motion with this Court seeking to approve any competing/replacement stalking horse bidder for the sale of the Assets from the date of the entry of this Order through and including September 30, 2018.  For the avoidance of doubt, KamKad shall not be liable to the Debtors, the Estates, or any other party for any amount in excess of the Initial Good Faith Deposit in the event that the parties are unable to execute the Stalking Horse APA.

10.     The Sale Hearing shall be held on **November 29, 2018, at 2:00 p.m. prevailing Central Time** in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, 1205 Texas Avenue, Room 314, Lubbock, Texas,  79401.

11.     Any objections, if any, to the Motion must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the Federal Rules of Bankruptcy Procedure, and (d) be filed with this Court, on or before **4:00 p.m., prevailing Central time, on November 23, 2018** (the "*Objection Deadline*").

12.     Any person or entity failing to timely file an objection to the Motion shall be forever barred from objecting thereto, including (a) the sale of all of the Debtors' right, title and interest in, to, and in substantially all of its Assets free and clear of any and all liens, encumbrances, claims, and other interests; and (b) the assumption and assignment of certain specified executory contracts and unexpired leases related to and utilized in connection with the

Assets and will be deemed to consent to the sale of such Assets free and clear of any and all liens, encumbrances, claims and other interests and the assumption and assignment of certain specified executory contracts and unexpired leases.

13.     By September 30, the Debtors will file a copy of the executed Stalking Horse APA with this Court (the "***Stalking Horse APA Deadline***").  Within twenty-four (24) hours after the Stalking Horse APA is filed with the Court, Elm Tree shall provide written notice of such filed document to all parties with whom it has executed non-disclosure agreements concerning the marketing of the Assets and to Ford Motor Credit, c/o Severson & Werson, Attn:  Duane Geck and Donald Cram, One Embarcadero Center, Suite 2600, San Francisco, California 94111, and Langley LLP, Keith Langley, 1301 Solana Blvd., Building 1, Suite 1545, Westlake, Texas 76262, and it shall provide the Debtors with a certificate of such notice, which the Debtors shall promptly file on the Court's docket.

14.     By October 24, 2018, the Debtors will file with the Court and serve on each non-debtor party to an executory contract or unexpired lease a notice setting forth the amount of cure owed thereunder according to the Debtors' books and records (the "***Cure Notice***").  The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume such contract or lease pursuant to § 365 of the Bankruptcy Code (the "***Cure Amount***"), and notify each non-debtor party that such party's lease or contract may be assumed and assigned to the Stalking Horse Bidder or to the successful bidder identified at the conclusion of the Auction, if any.

15.     No later than five (5) days prior to the Sale Hearing, any objection to the Cure Amount must be filed with the Court (the "***Cure Amount Objection Deadline***").  Any objection to the Cure Amount must state with particularity what alternative cure amount the non-debtor party believes is required with appropriate supporting documentation.  If no objection is timely

received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any executory contract, unexpired lease or other document as of the date of the Cure Notice; the non-debtor party to the executory contract or unexpired lease shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any objection or defense to the assumption and assignment of such contract or lease, including any argument that there exist conditions to assumption and assignment that must be satisfied or that any required consent to assignment has not been given.

16.     Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

17.     The terms of this Order shall control to the extent of any conflict with the Motion.

18.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

19.     Nothing in this Order, the LOI, or the "Buy Sell" Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit arising from or related to the enforcement of any applicable police or regulatory law or regulation (including, without limitation, those of the Texas Department of Motor Vehicles) to which any entity would be subject to as the owner or operator of property from and after the date of the closing of the Sale.  Nothing in this Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the

discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police and regulatory law.

20. **Objections by Manufacturers.** Gulf States Toyota, Inc., General Motors LLC, and Ford Motor Company (collectively, the "***Franchisors***"), all filed or expressed orally objections to the Motion, arguing a number of rights related to their respective Dealer Agreements (collectively, "***Franchisor Objections***"). *See* Docket Nos. 252 (Toyota), 262 (GM), and Ford orally. Entry of this Order is without prejudice to such Franchisor Objections. The Debtors, on one hand, and the Franchisors, on the other hand, shall work in good faith to resolve the Franchisor Objections after entry of this Order. If the Debtors and the Franchisors resolve the Franchisor Objections, they shall submit an agreed order for this Court's review and entry. If the Debtors and the Franchisors are unable to resolve the Franchisor Objections, this Court shall hold a supplemental hearing on **October 5, 2018, at 10:00 a.m. prevailing Central Time** in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, 1205 Texas Avenue, Room 314, Lubbock, Texas, 79401.

### # # # END OF ORDER # # #

SUBMITTED BY:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
**FOLEY GARDERE**
**Foley & Lardner LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

PROPOSED COUNSEL TO DEBTORS
REAGOR-DYKES MOTORS, LP *et al.*

## EXHIBIT 1: Bid Procedures

Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**PROPOSED COUNSEL TO DEBTORS**
**REAGOR-DYKES MOTORS, LP** *et al.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP,** *et al.*[3] | § | **Case No. 18-50214-rlj-11** |
| | § | **Jointly Administered** |
| Debtor. | § | |

## BIDDING AND SALE PROCEDURES

Set forth below are the bid and sale procedures (the "***Bid Procedures***") to be employed with respect to the proposed disposition (the "***Sale***") of substantially all of the Assets of Reagor-Dykes Motors, LP; Reagor-Dykes Imports, LP; Reagor-Dykes Amarillo, LP; Reagor-Dykes Auto Company, LP; Reagor-Dykes Plainview, LP; Reagor-Dykes Floydada, LP (collectively, "***Reagor-Dykes***" or the "***Debtors***"), in the above-captioned, jointly administered Chapter 11 case (the "***Chapter 11 Case***").

## BID PROCEDURES MOTION

On September 10, 2018, the Debtors filed a *Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Overbid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (IV) Granting Related Relief* [Docket No. 222] (the "***Sale Motion***") in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division (the "***Bankruptcy Court***") seeking the entry of an order: (a) approving the Bid

---

[3] The Debtors are Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), and Reagor-Dykes Floydada, LP (Case No. 18-50219).

Procedures, (b) approving the Stalking Horse Bidder and Overbid Protections, (c) approving form and manner of notices, (d) scheduling an auction and sale hearing, (e) approving the sale of substantially all of the assets of the Debtors free and clear of all liens, claims, encumbrances and interests pursuant to an asset purchase agreement consistent with the terms and conditions set forth on the LOI (as defined below), (f) approving the assumption and assignment of the "Assigned Contracts" as defined in the LOI, and (g) granting related relief.

These Bid Procedures were approved and authorized by the Bankruptcy Court's *Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Overbid Protections; and (C) Form and Manner of Notices; and (II) Scheduling an Auction and Sale Hearing* [Docket No. ___] (the "***Bid Procedures Order***") in the Chapter 11 Case.

## THE BIDDING PROCESS

1.     **Bidding Process**.  Set forth below is the general process to be employed by the Debtors with respect to the Sale of substantially all of their Assets, such Assets consisting primarily of the Dealerships and certain related assets used in the operation of the Dealerships (as defined in the Sale Motion):

a)     With the assistance of their Chief Restructuring Officer firm BlackBriar Advisors, L.L.P., the Debtors shall market the Assets to those parties reasonably known to have a potential interest in purchasing such Assets.

b)     The Debtors have obtained a "stalking-horse" bid from KamKad Automotive Holdings, LLC (the "***Stalking Horse Bidder***").  The Debtors and the Stalking Horse Bidder have entered into a nonbinding letter of intent (the "***LOI***") attached to the Sale Motion, which contemplates the sale of the Assets to the Stalking Horse Bidder for (i) a cash purchase price of $25,321,520.00, (ii) the assumption of certain liabilities, and (iii) the payoff of existing-inventory liens.

c)     Any person interested in making an offer to purchase the Assets shall comply with these Bidding Procedures.  Only Qualified Bids (as defined below) shall be considered by the Debtors.

d)     If the Debtors do not receive another Qualified Bid prior to the Bid Deadline (as defined below), then the Stalking Horse Bidder's offer to acquire the Assets under the letter of intent shall constitute the Successful Bid (as defined below).

e)    If the Debtors receive another Qualified Bid prior to the Bid Deadline, then the Debtors, after consultation with their counsel and professionals, shall select the highest or otherwise best Qualified Bid as the Successful Bid after the Auction (as defined below) considering, among other things, the financial and contractual terms relevant to the Sale, including those factors affecting speed and certainty of consummating the Sale or the overall value to be provided thereby.

f)    Upon failure to consummate the Sale because of a breach on the part of the Successful Bidder (as defined below) after an order entered at the Sale Hearing, the Debtors shall be permitted to (i) retain the Successful Bidder's Deposit (as defined below) as liquidated damages and (ii) select the next highest or otherwise best Qualified Bid to be the Successful Bid and to consummate such transaction without further order of the Bankruptcy Court.

g)    All Qualified Bidders (as defined below) at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated transaction documents, as applicable.

## PARTICIPATION REQUIREMENTS

2.    **Potential Bidder**.  Any person other than the Stalking Horse Bidder desiring to participate in the bidding process (each, a "***Potential Bidder***") will be required to deliver (unless previously delivered) to the Notice Parties (defined below), on or before the Bid Deadline, a Qualified Bid inclusive of a complete Bid Package (defined below).

3.    **Qualified Bid Requirements**.  "***Qualified Bid***" means (a) the Stalking Horse Bidder's offer to acquire the Assets pursuant to the Stalking Horse APA (b) a competing bid from a Potential Bidder if (i) the Debtors determine that such bid is higher or otherwise better than the bid set forth in the Stalking Horse APA and would be consummated if selected as the Successful Bid and (ii) such bid was received prior to the Bid Deadline and included each of the

-3-

following (collectively, a "***Bid Package***"):

    a)    An unqualified and binding bid in an amount of total consideration that exceeds the consideration offered by the Stalking Horse Bidder, <u>plus</u> the Break-Up Fee and <u>plus</u> $250,000 (provided, however, if the bid is for less than the total Assets contemplated by the Stalking Horse Agreement, such consideration shall reasonably represent a premium to an approximate allocation of such Stalking Horse Agreement; provided further, that in determining the value of the Bid, the Debtors will not be limited to evaluating the dollar value of the consideration but may also consider other factors including the speed, certainty and value of the proposed transaction);

    b)    A form of asset purchase agreement, based on the Stalking Horse APA and substantially identical to such Stalking Horse APA, marked to show changes from the Stalking Horse APA, inclusive of all schedules and exhibits thereto;

    c)    An earnest-money deposit (the "***Deposit***") in cash or in other form of immediately available U.S. funds equal to $1,000,000 to be held in the Debtor's counsel's trust account, which be refundable as set forth herein; and

    d)    Current financial statements of the Potential Bidder, or if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial statements of the equity holder(s) of the Potential Bidder and such other information as required by the Debtors, in their sole discretion sufficient to allow the Debtors to make a reasonable determination as to such bidder's ability to consummate the submitted asset purchase agreement.

To be considered a Qualified Bid, each Potential Bidder's APA shall remain open, enforceable, and irrevocable in accordance with its terms until after the Debtors close the purchase and sale of the Assets and shall:

    a)    Fully disclose the identity of the entity that will be bidding or participating in connection with such Bid, including any terms regarding or restricting such participation, and provide proof the Potential Bidder is legally empowered, by power of attorney or otherwise, to legally bind such Bidder to an enforceable Bid;

b)      Provide that the Assets are being purchased "as is, where is," and that such Potential Bidder is not relying on any representation or warranty from the Debtors, or its bankruptcy estate or any person or entity, except as otherwise provided in the Stalking Horse APA, if any;

c)      Contain no (i) contingencies of any kind or character, (ii) indemnities, (iii) purchase price adjustments, or (iv) qualifications relating to due diligence, financing or board approval;

d)      Contain no conditions to closing of the Sale on the receipt of any third-party approvals (excluding required Bankruptcy Court approval);

e)      Provide that the offer is irrevocable through thirty (30) days after the entry of the Sale Order approving the Sale.

f)      Provide an express statement that: (i) the Potential Bidder agrees to all terms of the Sale Procedures; and (ii) the Potential Bidder has not engaged in any collusive discussion with any other Potential Bidder.

For the avoidance of doubt, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and shall not be required to submit a Bid Package. Ford Motor Credit Company ("**FMCC**") or any other lien holder shall be entitled to attend the Auction and credit bid, to the extent allowed by applicable law or any order of this Court, provided that, if FMCC or such other lien holder desires to credit bid its debt and is the ultimate buyer of the Assets, FMCC or such other lien holder must pay $750,000 of cash to the Estates in addition to its credit bid to satisfy payment of the Break-Up Fee to the Stalking Horse Bidder.

4.      **Qualified Bidder**. Only Qualified Bidders may participate in the bidding process. A Potential Bidder who delivers the documents described above (including all subparagraphs) and who the Debtors determine, in their sole and absolute discretion, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale will be deemed to be a "*Qualified Bidder*." The Debtors shall, in

-5-

consultation with Ford Motor Credit, determine whether a Potential Bidder is a Qualified Bidder and shall provide written notice of its determination to such Potential Bidder and to each then existing Qualified Bidder.

## NOTICE PARTIES

5. **Notice Parties**. The following parties are referred to herein and defined as the "Notice Parties" for the purpose of these Bid Procedures:

> Counsel for the Debtors:
> Marcus A. Helt
> C. Ashley Ellis
> **Foley Gardere**
> 2021 McKinney Avenue, Suite 1600
> Dallas, TX 75201
>
> Counsel for the Stalking Horse Bidder:
> Gregory M. Wilkes
> **Norton Rose Fulbright US LLP**
> 2200 Ross Avenue, Suite 3600
> Dallas, TX 75201
>
> Counsel for Ford Motor Credit Company LLC:
> Duane M. Geck
> Donald H. Cram
> **Severson & Werson**
> A Professional Corporation
> One Embarcadero Center, Suite 2600
> San Francisco, CA 94111
>
> United States Trustee:
> Stephen McKitt
> **United States Trustee**
> 1100 Commerce Street, Room 976
> Dallas, TX 75242

## BID DEADLINE AND REQUIREMENTS

6. **Bid Deadline**. A Qualified Bidder, other than the Stalking Horse Bidder, that desires to make a bid shall deliver written copies of its Bid Package by email so that such is **actually received** by counsel for the Debtors no later than **4:00 p.m. prevailing Central Time**

**on November 12, 2018** (the "*Bid Deadline*").   The Debtors shall then distribute any Bid Packages received prior to the Bid Deadline to the Notice Parties.

7.     **Bid Rejection**.  In determining whether a bid is a Qualified Bid, the Debtors shall reject any bid that: (a) is on terms that are materially more burdensome or conditional than the terms of the Stalking Horse APA; (b) requires the Debtors to indemnify the Qualified Bidder or any other person; (c) includes non-cash consideration that is not freely marketable; or (d) is subject to any due-diligence condition, financing condition, or other contingencies or conditions that are not included in the Stalking Horse APA.

8.     **Initial Bid**.  After the Bid Deadline, the Debtors shall determine which Qualified Bid represents the then highest or otherwise best value to the Debtors (the "*Initial Bid*").   No later than 12:00 p.m. prevailing Central Time on the day prior to the Auction, if any, the Debtors shall distribute copies of the Initial Bid to each Qualified Bidder.

## AUCTION

9.     **Auction**.  If the Debtors receive at least one Qualified Bid (other than that of the Stalking Horse Bidder) on or prior to the Bid Deadline, the Debtors will conduct an auction (the "*Auction*") for the sale of the Assets.  **If necessary, the Auction will commence at 10:00 a.m. prevailing Central Time on November 15, 2018 at the offices of Foley Gardere, 2021 McKinney Avenue, Suite 1600, Dallas, TX 75201.**

10.     **Participation**.  Only Qualified Bidders and Ford Motor Credit are eligible to participate in the Auction.  No later than 5:00 p.m. prevailing Central Time on the day prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to participate in the Auction.  The Debtors will promptly thereafter inform in writing each Qualified Bidder who has expressed its intent to participate in the Auction of the identity of all other Qualified Bidders

that have indicated their intent to participate in the Auction. If the Debtors do not receive any

Qualified Bids other than the Stalking Horse APA or if no Qualified Bidder other than the

Stalking Horse Bidder has indicated its intent to participate in the Auction, the Debtors will not

hold an auction and the Stalking Horse Bidder will be named the Successful Bidder.

11. **Auction Procedures**. The Auction shall be governed by the following

procedures:

a) <u>Attendance</u>. Only the Debtors, Stalking Horse Bidder, Ford Motor Credit and any other Qualified Bidder who has submitted a Qualified Bid and each of their respective advisors will be entitled to attend the Auction, and only the Stalking Horse Bidder and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction;

b) <u>No Collusion</u>. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

c) <u>Minimum Overbid</u>. The Auction shall begin with the Initial Bid and proceed therefrom in minimum additional cash increments of $100,000;

d) <u>Credit for Break-Up Fee</u>. Every bid that KamKad submits during each round of any Auction shall include, as a credit against the total bid amount, the amount of the Break-Up Fee; and if KamKad is the Successful Bidder, the amount of consideration that KamKad provides to acquire the Assets shall equal the amount of the Successful Bid less the amount of the Break-Up Fee;

e) <u>Bidding Disclosure</u>. The Auction shall be conducted such that all bids will be made and received in one room, on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each subsequent bid will be fully disclosed to all other bidders throughout the entire Auction;

f) <u>Bidding Conclusion</u>. The Auction shall continue in one or more rounds of bidding and will conclude after (i) each

-8-

participating Qualified Bidder has had the opportunity to submit one or more additional bids with full knowledge and written confirmation of the then-existing highest bid or bids and (ii) there is only one offer that the Debtors determine is the Successful Bid; and,

g)    <u>No Post-Auction Bids</u>.  No bids will be considered for any purpose after the Auction has concluded.

## <u>SELECTION OF SUCCESSFUL BID</u>

12.    **Successful Bid Selection**.  At the conclusion of the Auction, or as soon as practicable thereafter, the Debtors, in consultation with their advisors and Ford Motor Credit, will: (a) review each Qualified Bid, considering, among other things, in their sole discretion, (i) the amount of the purchase price, (ii) the form of consideration being offered, (iii) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof and (iv) the net benefit to the estates; and (b) identify the highest or otherwise best offer for the Assets received at the Auction (the "***Successful Bid***" and the bidder making such bid, the "***Successful Bidder***").

13.    **Successful Bid Acknowledgement**.  Within one business day after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

## <u>THE SALE HEARING</u>

14.    **Sale Hearing**.  On **November 29, 2018 at 2:00 p.m. prevailing Central Standard Time**, the Debtors will seek entry of an order from the bankruptcy court at a hearing (the "***Sale Hearing***") to approve and authorize a Sale to the Successful Bidder pursuant to the Successful Bid (the "***Sale Order***").  With the consent of the Successful Bidder, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or otherwise.

**BACK-UP BIDDER**

15. **Back-Up Bidding**. At the conclusion of the Auction, the Debtors may, in their sole discretion, require the second highest Qualified Bidder to serve as a "Back-Up Bidder" and remain obligated to close the Sale at the terms set forth in its last Bid the ("***Back-Up Bid***") in the event that the Sale to the Successful Bidder does not close. The Back-Up Bidder shall be obligated until ten (10) business days after the Sale Order becomes final and non-appealable, or such other time period as agreed to by the Back-Up Bidder and Sellers (the "***Back-Up Release Date***").

**RETURN OF DEPOSITS**

16. **Return Date**. The Deposits of all Qualified Bidders – including the Good Faith Deposit – will be held in an interest-bearing escrow account and all Qualified Bids (other than the Back-Up Bid and the Successful Bid) will remain open until two (2) business days following the Sale Hearing (the "***Return Date***"). The Deposit of the Back-Up Bidder will be held in an interest- bearing account until the earlier of (a) the next business day following the closing with the Successful Bidder and (b) the Back-Up Release Date. The Deposit submitted by the Successful Bidder, together with interest thereon, will be applied against the payment of the Purchase Price upon the closing of the Sale to the Successful Bidder. On the Return Date, the Debtors will return the Deposits of all other Qualified Bidders, including the Good Faith Deposit, together with the accrued interest thereon.

**RESERVATION OF RIGHTS**

17. **Sellers' Reservation of Rights**. The Debtors have the right to adopt such other rules for the Auction that the Debtor believes in its business judgment will promote the goals of the Auction, including, without limitation, that the Debtor can continue to take and negotiate bids

in lot or in bulk until the Successful Bid(s) have been selected. Further, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer(s); and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid(s), any bid that, in the discretion of the Debtor, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of Debtors' estates and their creditors. At or before the conclusion of the Auction, the Debtors may impose such other terms and conditions on Qualified Bidders as the Debtors determines to be in the best interests of the Debtors' estate. Further, the Debtors may (a) determine, which Qualified Bid is the highest or otherwise best offer, (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale or (iii) contrary to the best interests of the Debtors, their estates and creditors, and (c) change the Bid Procedures to maximize the value of the Dealerships and Assets and in the best interests of the bankruptcy estates and the stakeholders thereof.

## SALE OF THE ASSETS FREE OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS

18.     **Assets to be Sold.**  The Debtors seek to sell substantially all of their Assets, inclusive of the Dealerships, in one or more Asset Package(s) (the "***Purchased Assets***").  The Debtors are considering all bid proposals but are seeking a comprehensive sale of their Assets and therefore encourage bidders to provide flexibility with regard to the Assets included in proposals.

19.     **Sale Free and Clear**.  Except as otherwise provided in the Sale Motion and any exhibits thereto, all of the Debtors' rights, title, and interest in and to the Purchased Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances,

claims, charges, options and interests thereon and there against (collectively, the "***Interests***") in accordance with § 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.  However, notwithstanding anything contained in these Bid Procedures or the Sale Motion to the contrary, no sale under 11 U.S.C. § 363 shall occur without approval by the Bankruptcy Court.

4845-9689-5089.8

**EXHIBIT 2: Form of Notice**

Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**PROPOSED COUNSEL TO DEBTORS**
**REAGOR-DYKES MOTORS, LP** *et al.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP,** *et al.*[4] | § | **Case No. 18-50214-rlj-11** |
| | § | **Jointly Administered** |
| Debtor. | § | |

**NOTICE OF (I) SALE OF SUBSTANTIALLY**
**ALL ASSETS OF THE DEBTORS AND (II) SALE HEARING**

**PLEASE TAKE NOTICE** that, on September 10, 2018, Reagor-Dykes Motors, LP; Reagor-Dykes Imports, LP; Reagor-Dykes Amarillo, LP; Reagor-Dykes Auto Company, LP; Reagor-Dykes Plainview, LP; Reagor-Dykes Floydada, LP (collectively, "***Reagor-Dykes***" or the "***Debtors***") filed a *Motion for Entry of an Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Overbid Protections; and (C) Form and Manner of Notices; (II) Scheduling an Auction and Sale Hearing; (III) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (IV) Granting Related Relief* [Docket No. 222] (the "***Sale Motion***") in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division (the "***Bankruptcy Court***") seeking the entry of an order: (a) approving the Bid Procedures, (b) approving the Stalking Horse Bidder and Overbid Protections, (c) approving form and manner of notices, (d) scheduling an auction and sale hearing, (e) approving the sale of substantially all of the assets of the Debtors free and clear of all liens, claims, encumbrances and interests pursuant to an asset purchase agreement consistent with the terms and conditions set forth on the LOI (as defined below), (f) approving the assumption and assignment of the "Assigned Contracts" as defined in

---

[4] The Debtors are Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), and Reagor-Dykes Floydada, LP (Case No. 18-50219).

-1-

the LOI, and (g) granting related relief. The Sale Motion set forth the Debtors' intent to sell substantially all of its assets to KamKad Automotive Holdings, LLC or one of its affiliates (the "**Purchaser**").

On September ___, 2018, the Court entered its *Order (I) Authorizing and Approving: (A) Bid Procedures; (B) Stalking Horse Bidder and Overbid Protections; and (C) Form and Manner of Notices; and (II) Scheduling an Auction and Sale Hearing* [Docket No. ___] (the "**Bid Procedures Order**") in the Chapter 11 Case.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bid Procedures, a Potential Bidder that desires to make a bid shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received **no later than November 12, 2018 (the "Bid Deadline") and otherwise comply with the Bid Procedures. FAILURE TO ABIDE BY THE BID PROCEDURES MAY RESULT IN A BID BEING REJECTED. <u>Any party interested in the proposed Sale process should contact Elm Tree, c/o Mr. Thompson, at the following email address and phone number: 512.423.1243, jthompson@elmfund.com, and Elm Tree Advisors V, LLV, c/o John Thompson, 3112 Windsor Road, A-365, Austin, Texas 78703</u>**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Bid Procedures, if the Debtors receive at least one Qualified Bid (other than that of the Stalking Horse Bidder) on or prior to the Bid Deadline, the Debtors will conduct an auction (the "*Auction*") for the sale of the Assets. **If necessary, the Auction will commence at 10:00 a.m. prevailing Central Time on November 15, 2018 at the offices of Foley Gardere, 2021 McKinney Avenue, Suite 1600, Dallas, TX 75201. Only Qualified Bidders (including the Stalking Horse Bidder) and Ford Motor Credit, shall be entitled to participate in the Auction.**

**PLEASE TAKE FURTHER NOTICE THAT** if the Debtors do not receive any Qualified Bids other than the Stalking Horse APA or if no Qualified Bidder other than the Stalking Horse Bidder has indicated its intent to participate in the Auction, the Debtors will not hold an auction and the Stalking Horse Bidder will be named the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "*Sale Hearing*") to approve the Motion will be held on **November 29, 2018 at 2:00 p.m.** in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, 1205 Texas Avenue, Room 314, Lubbock, Texas, 79401.

**PLEASE TAKE FURTHER NOTICE that the deadline for filing an objection to the Sale(s) is <u>November 23, 2018 at 4:00 P.M. CST.</u> Any such objection must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the Federal Rules of Bankruptcy Procedure and the Bid Procedures, and (d) be filed with the Court and served on undersigned counsel for the Debtors and the Notice Parties as set forth in the Bid Procedures.**

**PLEASE TAKE FURTHER NOTICE that the deadline for filing an objection to the Debtors' proposed cure amounts related to the assumption and assignment of unexpired leases and executory contracts is November 23, 2018 at 4:00 P.M. CST. Any such objection**

4845-9689-5089.8

**must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the Federal Rules of Bankruptcy Procedure and the Bid Procedures, and (d) be filed with the Court and served on undersigned counsel for the Debtors and the Notice Parties as set forth in the Bid Procedures. PLEASE TAKE FURTHER NOTICE** that copies of pleadings related to the proposed sale, including the Sale Procedures Order (and attached bid procedures) approved by the Court, are available on the Bankruptcy Court's website at https://ecf.txnb.uscourts.gov/. You can also request any pleading you need from the proposed counsel for the Debtors listed below.

DATED: September 18, 2018

Respectfully submitted by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
FOLEY GARDERE
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**PROPOSED COUNSEL TO DEBTORS**
**REAGOR-DYKES MOTORS, LP** *et al.*