Joseph D. Martinec
State Bar No. 13137500
**MARTINEC, WINN & VICKERS, P.C.**
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com
ATTORNEYS FOR NYLE MAXWELL OF TAYLOR, LLC

Joe L. Lovell, State Bar No. 12609100
joe@lovell-law.net
Matthew S. Merriott, State Bar No. 24100846
matthew@lovell-law.net
**LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.**
112 West 8th Avenue, Suite 1000
Amarillo, TX 79101-2314
(806) 373-1515/FAX: (806) 379-7176
LOCAL COUNSEL FOR NYLE MAXWELL OF TAYLOR, LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| REAGOR-DYKES MOTORS, LP, et al. | § | Case No. 18-50214-rlj |
| Debtors. | § | (Jointly Administered) |
| | § | |
| NYLE MAXWELL OF TAYLOR, LLC, | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | ADVERSARY NO. |
| REAGOR AUTO MALL, LTD., | § | |
| MUSA AUTO LEASING, MUSA AUTO | § | |
| FINANCE, LLC, VISTA BANK, and | § | |
| USB LEASING LT, | § | |
| Defendants. | § | |

### COMPLAINT TO DETERMINE RESCISSION OF AGREEMENT, PROPERTY OF THE ESTATE, CONVERSION, VALIDITY AND EXTENT OF LIEN, AND FOR ACCOUNTING AND DISGORGEMENT

**COMES NOW** NYLE MAXWELL OF TAYLOR, LLC, a creditor and party in interest,

Plaintiff herein, and for cause would show the Court as follows:

1.      On November 2, 2018, Debtor, Reagor Auto Mall, Ltd. (Chapter 11 No. 18-50324-RLJ11), and affiliated related parties filed Chapter 11 proceedings in this Court.  On December 3, 2018, an Order Granting Motion for Joint Administration with Existing Reagor-Dykes Cases (Docket No. 72) was entered in Reagor Auto Mall, Ltd.

## I.      JURISDICTION AND CORE ALLEGATION

2.      This matter is a core proceeding and this Court has jurisdiction under 28 U.S.C. Section 1334, Section 157(b)(2)(K), 11 U.S.C. Section 105, and 11 U.S.C. Section 541.

3.       This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

## II.      VENUE

4.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1409(a).

## III.      PARTIES

5.      Plaintiff, Nyle Maxwell of Taylor, LLC ("NMOT"), is a Limited Liability Company duly established under the laws of the State of Texas whose principal place of business is in Williamson County, Texas.

6.      Defendant, Reagor Auto Mall, Ltd. ("RAM"), also doing business as Prime Capital Auto Leasing ("PCAL"), is a Limited Partnership organized under the laws of Texas, with a principal place of business located at 1215 Avenue J, Lubbock, Texas 79401. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9), after a petition has been filed by or served upon the debtor and until the case is dismissed or closed, a debtor may be served by mailing a copy of the summons and complaint to the debtor at the address shown in the petition, to wit: 1215 Avenue J, Lubbock, TX 79401.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(g), if the debtor is represented by an attorney, whenever service is made upon the debtor

under this Rule, service shall also be made upon the debtor's attorney by any means authorized under Fed. R. Civ. P. 5(b).

7.  Defendant, MUSA Auto Leasing ("MUSA"), a Business Trust existing under the laws of Delaware, whose principal place of business is located at 4455 LBJ Freeway, Suite 1200, Dallas, Texas 75244, is authorized to do business in Texas and may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

8.  Defendant, MUSA Auto Finance, LLC ("MUSA Finance"), a Texas limited liability company with its principal place of business located at 4455 Lyndon B. Johnson Fwy., Ste. 1200, Dallas, Texas 75244-5919, is authorized to do business in Texas and may be served with process by serving its registered agent, Jeff Morgan, 4455 Lyndon B. Johnson Fwy., Ste. 1200, Dallas, Texas 75244-5919.

9.  Upon information and belief, Defendant, Vista Bank, is a depository banking and lending institution domiciled in the State of Texas. In the State of Texas, Defendant maintains a registered agent located at: Attention: Gene McLaughlin, 901 Main Street, Ralls, Texas 79357, which Defendant may be served with process at such location. Defendant operates as an insured financial depository institution with its principal place of business in the State of Texas. Pursuant to Rule 7004(h) of the Bankruptcy Rules, service of process in this adversary proceeding may be made on Defendant, Vista Bank, by mailing a copy of the summons and Complaint via first class mail prepaid to Defendant's attorney of record appearing on behalf of Defendant in the Bankruptcy Cases. By the nature of Plaintiffs' claims against Defendant, the Court has personal jurisdiction over Defendant in this adversary proceeding. Defendant is named as a party in this action in the proper capacity as a member of the Federal Reserve

System registered with the Federal Deposit Insurance Corporation as an insured financial depository institution.

10.    Defendant, USB Leasing LT ("USB"), a Delaware limited liability company with its principal place of business located at 1850 Osborn Avenue, Oshkosh, Wisconsin 54902, is authorized to do business in Texas and may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## IV.    FACTUAL BACKGROUND

11.    Between 2015 and the Chapter 11 petition date, Plaintiff, Nyle Maxwell of Taylor, LLC, had sold 556 vehicles to Reagor-Dykes car dealerships and related companies, including Defendant RAM, d/b/a PCAL, in the ordinary course of business.  In each instance, a RAM employee would contact NMOT and arrange for the sale of a vehicle for a specific sale price, consideration for the sale being paid by draft against a bank account designated by RAM. After agreeing to the sale, NMOT would begin the process of registering the transfer of title to the vehicle as instructed by the RAM employee in charge of the transaction.  In many instances, the RAM-originated sale would be consummated by transfer of title to the vehicle to MUSA or USB and assignment of a lease, a copy of which was provided to NMOT.[1]  The leases each listed PCAL as the lessor and were then contemporaneously assigned to MUSA or USB.  On information and Belief MUSA or USB's funding of the transaction was deposited into a RAM bank account which was used by RAM to pay NMOT.  MUSA and USB employees openly participated in and guided some of the transactions[2].  Reagor-Dykes entities, including RAM, had not defaulted on any such transactions until immediately prior to and after the filing of the Chapter 11.

---

[1]    MUSA and USB each provided a form of lease to NMOT, examples of which are attached as Exhibit C.
[2]    The leases were on forms approved or provided by MUSA or USB.  RAM's employee notified NMOT of the name of the ultimate buyer/lease assignee..

12.     As of the petition date, there were seven pending sales of NMOT vehicles to MUSA or USB arranged by RAM[3].  MUSA and USB were fully aware of NMOT's involvement in the transactions.  The details of those transactions are shown on Exhibit A, which is attached and incorporated by reference.  Except for one direct sale to RAM, Vehicle Stock Number JF221162, the transactions involved seven sales arranged by RAM, with the approval of and involvement of MUSA or USB, which then became the assignee of a PCAL lease and one direct sale to RAM.  RAM at the same time flipped the unpaid-for vehicles to MUSA or USB by designating either as buyer and lease assignee. Neither RAM nor MUSA nor USB paid NMOT for the vehicles. On information and belief, those cars are being driven by MUSA or USB customers and MUSA or USB is receiving lease payments under its purported leases.  Even though the RAM employee was the contact person with regard to NMOT, he acted in concert with and was complicit with MUSA and USB. NMOT is the third party beneficiary to the agreements between RAM and MUSA or RAM and USB.

13.     The above described transactions were initiated on various dates, as shown on Exhibit A, but none of the subject vehicles were paid for by RAM, MUSA or USB as of the petition date, November 2, 2018. By August of 2018, the RAM-designated banks which were to honor drafts submitted or to be submitted by NMOT for payment of the vehicles had ceased honoring any such drafts.  The agreed but unpaid amount for the five MUSA transactions was $191,351.80, $61,807.36 for the two USB transactions, and $53,500.00 for the RAM purchase.

14.     <u>Vista Bank</u>.  Vista Bank has not formally and affirmatively asserted that it has a lien on the vehicles described in Exhibit A, attached. However, Vista Bank has characterized itself as a secured creditor with very broad reservations of the possible claims which would or

---

[3]     RAM was not a franchised dealer authorized to sell Chrysler, Dodge and Jeep vehicles as required by Texas Occupations Code Sec. 2301.252. MUSA and USB were aware that a franchised dealer was a necessary party to these transactions.

have triggered Vista's collateral position. On information and belief, Vista asserts lien rights with regard to vehicles to be sold by NMOT to MUSA and USB by and through RAM. Consideration for the sale of the subject vehicles failed totally, such sales having been rescinded by NMOT. . Vista Bank has no valid basis for asserting liens on vehicles which are not property of the estate.

15.      MUSA Auto Finance, LLC.  MUSA Finance has not formally and affirmatively asserted that it has a lien on the vehicles described in Exhibit A, attached. However, MUSA Finance has characterized itself as a secured creditor with very broad reservations of the possible claims which would or have triggered Vista's collateral position. On information and belief, MUSA Finance asserts lien rights with regard to vehicles to be sold by NMOT to MUSA and USB by and through RAM. Consideration for the sale of the subject vehicles failed totally, such sales having been rescinded by NMOT. MUSA Finance has no valid basis for asserting liens on vehicles which are not property of the estate.

16.      On November 2, 2018, RAM, along with associated entities, filed a Chapter 11 case in the Bankruptcy Court for the Northern District of Texas, Lubbock Division, under Chapter 11 No. 18-50324. An order administratively consolidating those entities has recently been entered.

17.      On September 10, 2018, NMOT filed its Notice of Rescission of the sale agreement between NMOT and RAM and other related entities, and a Supplemental Notice of Rescission (Docket No. 646), a copy of which is attached as Exhibit B, after RAM filed Chapter 11.  Rescission is based on total failure of consideration and unjust enrichment.

## V.  Cause of Action One
### (Rescission/Not Estate Property)

18.      Paragraphs 1 through 17 are incorporated by reference.

19.     NMOT seeks an order of this court declaring that the sale agreements between NMOT and RAM were rescinded by NMOT (See Paragraph 17, above) and that due to the total failure of consideration and unjust enrichment, none of the eight vehicles described in Exhibit A became and are not property of the bankruptcy estate.

## VI.  Cause of Action Two
## (Unjust Enrichment)

20.     Paragraphs 1 through 19 are incorporated by reference.

21.     RAM, knowing that it could not pay for the subject vehicles, or having no intention of paying for the vehicles, but desperate for funding from MUSA and USB, took possession of the subject vehicles under false pretenses and, with respect to the MUSA and USB transactions, assigned the vehicle leases and instructed NMOT to apply for transfer of title to the vehicles to MUSA or USB. On information and belief, MUSA and USB, although aware of RAM's financial struggles, made no inquiry, failing to even check the recorded title on the vehicles (even though PCAL was listed as lessor on the leases assigned to MUSA and USB). RAM, MUSA and USB have been unjustly enriched at NMOT's expense.  The lessees under the PCAL leases are likely to have understood that the vehicles were owned by PCAL, and, on the last page of the lease, were notified in text of the lease of the assignment of the lease to MUSA or USB.

22.     NMOT is entitled to judgment against RAM, MUSA and USB for all damages suffered by NMOT and caused by Defendants' appropriation of subject vehicles without payment of consideration.

23.     NMOT requests the court to declare the right to possession asserted by RAM, MUSA and USB to be invalid.

### VII. Cause of Action Three
### (Conversion)

24.     Paragraphs 1 through 23 are incorporated by reference.

25.     RAM, MUSA and USB failed to pay the required consideration for seven NMOT vehicles identified in Exhibit A.  Nonetheless, RAM, acting as agent for MUSA and USB, took possession of and exercised dominion and control over the vehicles and then turned those vehicles over to lessees under leases to MUSA and USB, or took possession and denied possession to NMOT, the rightful owner of the vehicles.

26.     The vehicle purportedly sold directly to RAM (Stock No. JF221162) was converted by RAM for its own benefit.

27.     NMOT requests that the court order return of the subject vehicles to NMOT and grant judgment against RAM, MUSA and USB under the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001, for any and all damages suffered by NMOT as a result of the conversion.

### VIII. Cause of Action Four
### (Disgorgement and Accounting)

28.     Paragraphs 1 through 27 are incorporated by reference.

29.     On information and belief RAM, MUSA and USB have sold or leased the eight vehicles described in Exhibit A.

30.     For the reasons set forth above, RAM, MUSA and USB do not own and have converted the subject vehicles to their own use and benefit.

31.     NMOT requests the Court to order an accounting by RAM, MUSA and USB, respectively, of any funds received by the Defendants from the sale or lease of said vehicles and disgorgements of all such funds to NMOT.

### IX. Cause of Action Five
### (Invalid Vista Bank and MUSA Auto Finance, LLC Lien Claims)

32.     Paragraphs 1 through 31 are incorporated by reference.

33.     The lien claims of Vista Bank and MUSA Finance with respect to the vehicles described in Exhibit A is invalid. Neither RAM nor USB nor MUSA had ownership rights in the vehicles and could not therefore convey any such interest or a lien on such interest to Vista Bank or MUSA Auto Finance, LLC.

### X.  ARGUMENT AND AUTHORITY

34.     **Rescission resulting from total failure of consideration.**  With respect to the agreed sale transactions described in Exhibit A, attached, Notice of Rescission of each such agreement was given to the purported purchasers based on a total failure of consideration.  See Paragraph 17, above.  Reagor Auto Mall agreed to pay to Nyle Maxwell of Taylor, LLC, the third party beneficiary to the agreement between RAM and MUSA and RAM and USB, the agreed upon consideration, presumably from funds provided by MUSA and USB. RAM, MUSA and USB have paid nothing and have offered to pay nothing for the subject vehicles while presumably claiming ownership to the vehicles[4] and the proceeds from the disposition of such vehicles.

35.     In analyzing the effect of *total failure of consideration* on a contract, Judge Jeff Bohm cited the prevailing authority under Texas law in *Quinlan v. AFI Services, LLC (In re AFI Services, LLC)*,, 486 B.R. 827 (Bankr. S.D. Tex. 2013).  Under Texas law *total failure of consideratio*n is a basis for rescission of the contract, citing *Food Machinery Corp. v. Moon,* 165 S.W.2d 773 (Tex. Civ. App.--Amarillo 1942). See also *Matter of Topco, Inc.* 894 F.2d 727, 742

---

[4]     RAM has not yet filed schedules.

(5th Cir. 1990). *Total failure of consideration* causes automatic rescission of the contract. *Parsley v. Rowley*, 1992 WL 45791 (Tex. Civ. App.--Houston [14th Dist.] Mar. 12, 1992), citing and interpreting *Food Machinery Corp. v. Moon*, supra.

36.     If the contracts are rescinded, the subject vehicles are not property of the bankruptcy estate[5]. "...the estate does not receive more rights than those that the debtor has in property as of the commencement of the case—in other words, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited, *e.g., In re Dolphin Titan Int'l, Inc.,* 93 B.R. 508, 512 (Bankr. S.D.Tex. 1988) (citing *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)); *N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir. 1985); 5–541 Collier on Bankruptcy § 541.03. The nature and extent of a debtor's interest in property is determined by reference to applicable state law—here, the laws of the State of Texas. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)." *Quinlan v. AFI Services, LLC (In re AFI Services, LLC)*, supra at 835.

37.     **Conversion.**  A conversion of personal property occurs upon the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Pipes v. Hemingway*, 358 S.W.3d 438, 449-50 (Tex. App.--Dallas 2012, no pet.). There is a common law claim for conversion as well as a Texas statutory cause of action.

38.     **Common Law Civil Conversion.**  There are four elements to the claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2)

---

[5]     Until the recent Chapter 11 filing by RAM, the transactions involving Reagor Auto Mall, Ltd. were not subject to the bankruptcy court's jurisdiction. A great deal of confusion regarding certain "dba"s of related entities of the debtor entities has not been resolved. The Notice of Rescission applies as well to transactions listed in Exhibit A to the Notice that do not previously involve debtor entities.

Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.--Austin 1997, writ denied); *see also Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.--El Paso 1993, no writ).

39. **Texas Theft Liability Act**. The Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001, provides that a person who commits a theft is liable for damages resulting from the theft. Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a).

WHEREFORE, Plaintiff prays that the Court will enter an order declaring the following:

a.  that the purported agreements between Nyle Maxwell of Taylor, LLC and Reagor Auto Mall, Ltd. were rescinded and not valid as to the vehicles described in Exhibit A, herein,

b.  that the vehicles are not property of the bankruptcy estate and must be turned over to NMOT,

c.  that there are no valid liens securing any indebtedness of Vista Bank or MUSA Finance on the vehicles,

d.  that NMOT is entitled to a judgment for damages suffered by NMOT as a result of the conversion of the vehicles by RAM, MUSA and USB, which judgment shall be joint and several as to RAM, MUSA and USB,

e.  that NMOT is entitled to an accounting for and disgorgement of any sale or lease of the NMOT vehicles and the proceeds of any such sale or lease,

f.  and for such other relief to which Plaintiff may be entitled.

Respectfully submitted,

MARTINEC, WINN & VICKERS, P.C.
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com


By:  _____
     Joseph D. Martinec
     State Bar No. 13137500
     ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint has been sent to the person(s) listed below, by first class mail, postage prepaid, on this 26th day of December, 2018.

Reagor Auto Mall, Ltd.
1215 Ave. J
Lubbock, TX 79401
(Via First Class Mail)

Marcus Alan Helt
Ashley Ellis
Foley & Lardner LLP
2021 McKinney Ave., Ste. 1600
Dallas, TX 75201
Attorneys for Debtors
(Via ECF)

U.S. Trustee
1100 Commerce St., Room 9C60
Dallas, TX 75242
(Via ECF)

_____
Joseph D. Martinec

*Nyle Maxwell of Taylor, LLC*
*Detail of Outstanding Payments*

= title Transferred

| LESSEE | STK# | VIN NUMBER | DATE | BANK | | LESSOR | LEGAL NAME | AMOUNT | | Title Applicant Name (Lessor) | Lienholder | TTL-OWNER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DRAFTS NOT DEPOSITED** | | | | | | | | | | | | |
| **Lease Contracts** | | | | | | | | | | | | |
| DUSTY REID | JC316840 | 1C4RDHDG9JC316840 | 5/19/2018 | FirstCapital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 33,230.59 | | MUSA Auto Leasing | MUSA Auto Finance | |
| GENEVIEVE DORN | JC392091 | 1C4RJEBG8JC392091 | 7/3/2018 | FirstCapital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 30,955.25 | | MUSA Auto Leasing | MUSA Auto Finance LLC | |
| DAKOTA GRIFFITH | JG290717 | 3C6URSJLXJG290717 | 7/16/2018 | FirstCapital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 53,981.20 | | MUSA Auto Leasing | MUSA Auto Finance | |
| SHANE HARRIS | JC338958 | 1C4RJEBG7JC338958 | 7/20/2018 | FirstCapital Bank of Texas | US BANK Contract | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 30,119.00 | | USB Leasing LT | | |
| KYLAR ESCHENBACHER | JS135994 | 1C6RR7YT7JS135994 | 6/19/2018 | FirstCapital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 39,494.69 | | MUSA Auto Leasing | MUSA Auto Finance | |
| SETH DOEGE | JC440770 | 1C4RJFAG7JC440770 | 7/11/2018 | FirstCapital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 33,690.07 | Title Transferred | MUSA Auto Leasing | MUSA Auto Finance | MUSA Auto Leasing |
| TRAVIS BENSON | JH229140 | 2C3CDZBTXJH229140 | 7/6/2018 | FirstCapital Bank of Texas | US BANK Contract | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 31,688.36 | DRAFT KICKED 8-14 | USB Leasing LT | | USB Leasing LT |
| | | | | | | | | | | | | |
| **Wholesales-Used Vehicle Purchased by Reagor Auto Mall Ltd** | | | | | | | | | | | | |
| NAME | STK# | | | | | | | | | | | |
| Reagor Auto Mall LTD | JF221162 | 1GC1KXEY5JF221162 | 6/23/2018 | First Capital Bank of Texas | | | | $ 53,500.00 | | | | |
| | | | | | | | TOTAL OUTSTANDING | **$ 306,659.16** | | | | |

EXHIBIT A - Page 1 of 1

Joseph D. Martinec
State Bar No. 13137500
**MARTINEC, WINN & VICKERS, P.C.**
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com
ATTORNEYS FOR NYLE MAXWELL OF TAYLOR, LLC

Joe L. Lovell, State Bar No. 12609100
joe@lovell-law.net
Matthew S. Merriott, State Bar No. 24100846
matthew@lovell-law.net
LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.
112 West 8th Avenue, Suite 1000
Amarillo, TX 79101-2314
(806) 373-1515/FAX: (806) 379-7176
LOCAL COUNSEL FOR NYLE MAXWELL OF TAYLOR, LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| REAGOR-DYKES MOTORS, LP, et al., | § | Case No. 18-50214-rlj11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

### SUPPLEMENTAL NOTICE OF RESCISSION BY
### NYLE MAXWELL OF TAYLOR, LLC
### [REAGOR-DYKES IMPORTS, LP and REAGOR AUTO MALL, LTD]

A Notice of Rescission by Nyle Maxwell of Taylor, LLC was previously filed in Reagor-Dykes Motors, LP, et al., Chapter 11 Case No. 18-50214-rlj (Jointly Administered) on September 10, 2018 (Doc 221), and mailed to Reagor Auto Mall, Ltd. At that time the Reagor Auto Mall, Ltd. Chapter 11 Case No. 18-50324 had not been filed.

With respect to the agreed sale transactions listed on the attached Exhibit A, notice of rescission of each such agreement is given to the purported purchasers as a result of a total failure of consideration and unjust enrichment. The entities listed in Exhibit A agreed to pay to Nyle Maxwell of Taylor, LLC the agreed upon consideration, but paid nothing and have offered to pay nothing for the subject vehicles while claiming ownership to the vehicles and the proceeds from the disposition of such vehicles.

```
EXHIBIT

B
```

In analyzing the effect of total failure of consideration on a contract, Judge Jeff Bohm cited the prevailing authority under Texas law in *Quinlan v. AFI Services, LLC (In re AFI Services, LLC),*, 486 BR 827 (Bankr. S.D. Tex. 2013).   Under Texas law total failure of consideration is a basis for rescission of the contract, citing *Food Machinery Corp. v. Moon,* 165 S.W.2d 773 (Tex. Civ. App.-Amarillo 1942). See also *Matter of Topco, Inc.* 894 F.2d 727, 742 (5th Cir. 1990).   Total failure of consideration causes rescission of the contract. *Parsley v. Rowley*, 1992 WL 45791 (Tex. Civ. App.-Houston [14th Dist.] Mar. 12, 1992), citing and interpreting *Food Machinery Corp. v. Moon*, supra.

If the contracts are rescinded, the subject vehicles are not property of the bankruptcy estate. "...the estate does not receive more rights than those that the debtor has in property as of the commencement of the case—in other words, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited, *e.g., In re Dolphin Titan Int'l, Inc.,* 93 B.R. 508, 512 (Bankr.S.D.Tex.1988) (citing *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)); *N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir.1985); 5–541 Collier on Bankruptcy § 541.03. The nature and extent of a debtor's interest in property is determined by reference to applicable state law—here, the laws of the State of Texas. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)." *Quinlan v. AFI Services, LLC (In re AFI Services, LLC),* supra at 835.

Respectfully submitted,

MARTINEC, WINN & VICKERS, P.C.
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com


By: _____
Joseph D. Martinec
State Bar No. 13137500
ATTORNEYS FOR NYLE MAXWELL OF TAYLOR, LLC

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Supplemental Notice of Rescission by Nyle Maxwell of Taylor, LLC* has been served via the Court's ECF Noticing System to the creditors and parties in interest receiving electronic notice, by First Class Mail, postage prepaid, or by facsimile transmission, if so indicated, to the creditors and parties in interest on the attachment, and to the following on December 5 , 2018.

Reagor Auto Mall, Ltd. et al.
1215 Ave. J
Lubbock, TX 79401
(Via First Class Mail)

U.S. Trustee
1100 Commerce St., Room 9C60
Dallas, TX 75242
(Via ECF)

Marcus Alan Helt
Ashley Ellis
Foley & Lardner LLP
2021 McKinney Ave., Ste. 1600
Dallas, TX 75201
Attorneys for Debtors
(Via ECF)

_____
Joseph D. Martinec

*Nyle Maxwell of Taylor, LLC*
*Detail of Outstanding Payments*

| LESSEE | STK# | SALE DATE | DRAFTING BANK | | LESSOR | LEGAL NAME | AMOUNT | Title Applicant Name (Lessor) |
|---|---|---|---|---|---|---|---|---|
| **Lease Contracts** | | | | | | | | |
| DUSTY REID | JC316840 | 5/19/2018 | First Capital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 33,230.59 | MUSA Auto Leasing |
| GENEVIEVE DORN | JC392091 | 7/3/2018 | First Capital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 30,955.25 | MUSA Auto Leasing |
| ROGER VICK | KN586522 | 7/11/2018 | Vista Bank | US BANK Contract | Reagor Dykes Mitsibishi | Reagor-Dykes Imports, L.P. | $ 41,708.95 | |
| DAKOTA GRIFFITH | JG290717 | 7/16/2018 | First Capital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 53,981.20 | MUSA Auto Leasing |
| WILLIAM WOODRING | JC437590 | 7/19/2018 | First Capital Bank of Texas | US BANK Contract | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 43,294.89 | |
| SHANE HARRIS | JC338958 | 7/20/2018 | First Capital Bank of Texas | US BANK Contract | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 30,119.00 | USB Leasing LT |
| CHARLOTTE MOTLEY | JC359132 | 7/26/2018 | Vista Bank | US BANK Contract | Reagor Dykes Mitsibishi | Reagor-Dykes Imports, L.P. | $ 29,431.02 | USB Leasing LT |
| KYLAR ESCHENBACHER | JS135994 | 6/19/2018 | First Capital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 39,494.69 | MUSA Auto Leasing |
| | | | | | | | | |
| **Wholesales-Used Vehicle Purchased by Reagor Dykes Mitsibishi** | | | | | | | | |
| NAME | STK# | | | | | | | |
| Reagor Dykes Mitsibishi | GE884685 | 7/2/2018 | Vista Bank | | | | $ 26,800.00 | |
| Reagor Dykes Mitsibishi | FH726406 | 7/2/2018 | Vista Bank | | | | $ 15,000.00 | |
| Reagor Auto Mall LTD | JF221162 | 6/23/2018 | First Capital Bank of Texas | | | | $ 53,500.00 | |
| | | | | | | | | |
| | | | | | | | | |
| SETH DOEGE | JC440770 | 7/11/2018 | First Capital Bank of Texas | | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 33,690.07 | MUSA Auto Leasing |
| MYKEE FLORES | JH273356 | 7/5/2018 | Vista Bank | US BANK Contract | Reagor Dykes Mitsubishi | Reagor-Dykes Imports, L.P. | $ 25,643.12 | |
| STEPHEN ROWDEN | JW205790 | 7/4/2108 | Vista Bank | US BANK Contract | Reagor Dykes Mitsubishi | Reagor-Dykes Imports, L.P. | $ 54,388.80 | |
| NORA DIAZ | JH308427 | 7/2/2018 | Vista Bank | US BANK Contract | Reagor Dykes Mitsubishi | Reagor-Dykes Imports, L.P. | $ 24,291.94 | |
| TRAVIS BENSON | JH229140 | 7/6/2018 | First Capital Bank of Texas | US BANK Contract | Prime Capital Auto Lease | Reagor Auto Mall LTD | $ 31,688.36 | USB Leasing LT |

$ 567,217.88

**EXHIBIT**

**A**

**Nyle Maxwell of Taylor, LLC**
Reagor-Dykes Motors, LP, et al.,
Case No. 18-50214-rlj11 (Jointly
Administered) filed 8/1/2018
**Leaseholders & Related**

Dusty Reid
~~1605 N. San Andres~~
~~Hobbs, NM 88240~~
(MAIL RET'D 10/1/2018)

Travis Benson
~~2817 Little Elm Trail~~
~~Cedar Park, TX 78613~~
(MAIL RET'D 9/24/2018)

Nora Lucille Diaz
2720 53rd St.
Lubbock, TX 79413

Seth C. Doege
14940 Trails End Dr.
Perrysburg, OH 43551

Genevieve M. Dorn
2311 92nd Street
Lubbock, TX 79423

Dakota S. Griffith
200 Vikki Rd.
Big Spring, TX 79720

Shane D. Harris
393 CR 384
Childress, TX 79201

Charlotte Marie Motley
8701 151st St. B
Wolfforth, TX 79382

Stephen Wade Rowden
8304 CR 6940
Lubbock, TX 79407

Roger Dale Vick
10108 #2 Evanston Ave.
Lubbock, TX 79424

William K. Woodring
956 E. 36th St.
Tulsa, OK 74105

Kylar Eschenbacher
4421 82nd St. #141
Lubbock, TX 79424

Mykee Flores
2406 40th St.
Lubbock, TX 79412-1538

**Attorneys for Leaseholders**

Earl Griffin, Jr. (Shane Harris)
Williams & Griffin
P.O. Box 730
Childress, TX 79201

**Related Parties**

Reagor Auto Mall, Ltd. d/b/a
Prime Capital Auto Lease
1215 Ave. J
Lubbock, TX 79401

David R. Langston
Attorneys for Reagor Auto Mall, Ltd.
(Via ECF)

MUSA Auto Leasing
c/o John E. Johnson (Via ECF)

Reagor-Dykes Imports, LP d/b/a
Reagor-Dykes Mitsubishi
6540 82nd St.
Lubbock, TX 79424

U.S. Bank N.A.
c/o Andrew Shaver (Via ECF)

Vista Bank
c/o Jason M. Rudd (Via ECF)

First Capital Bank of Texas
c/o John F. Massouh (Via ECF)

Midland CAD/Floyd CAD
c/o Tara LeDay (Via ECF)
c/o Laura Monroe (Via ECF)

Williamson CAD
625 FM 1460
Georgetown, TX 78626

Amended 10/2/18

**Nyle Maxwell of Taylor, LLC**
**Service List**
Reagor Auto Mall, Ltd.
Case No. 18-50324-rlj11 filed 11/2/2018

Reagor Auto Mall, Ltd.
1215 Ave. J
Lubbock, TX 79401
Debtor
(Via First Class Mail)

Marcus Alan Helt
Foley & Lardner LLP
2021 McKinney Ave., Ste. 1600
Dallas, TX 75201
Attorneys for Debtors (Via ECF)

U.S. Trustee
1100 Commerce St., Room 9C60
Dallas, TX 75242
(Via ECF)

**Reagor Auto Mall, Ltd.**
**Top 20 Unsecured Creditors**
**(Via First Class Mail)**

Advanced Graphix
5220 23rd St.
Lubbock, TX 79404

ATD American Tire Distributors
1701 Vantage Dr. #103
Carrollton, TX 75006

Autotrader
P.O. Box 932207
Atlanta, GA 31193-2207

Autozone
P.O. Box 116067
Atlanta, GA 30368

Cargurus
2 Canal Park #4
Cambridge, MA 02141

Coindata
Dept. 716
P.O. Box 4346
Houston, TX 77210

De Lage Landen Financial Services
P.O. Box 41602
Philadelphia, PA 19101

Finishmaster
P.O. Box 744316
Atlanta, GA 30374

Gene Messer
6161 Rothway St.
Houston, TX 77040

Johnson's Auto Glass
P.O. Box 94182
Lubbock, TX 79493

KCBD
5600 Ave. A
Lubbock, TX 79404

Lamar
P.O. Box 96030
Baton Rouge, LA 70896

Midland Reporter
P.O. Box 80074
Prescott, AZ 86304

Morris Publishing
P.O. Box 1486
Augusta, GA 30903

National Credit
P.O. Box 740285
Los Angeles, CA 90074

Reyna capital
P.O. Box 674275
Dallas, TX 75267-4275

Reynolds
P.O. Box 182206
Columbus, OH 43218-2206

Texas Car Worx
1000 N. 127
Plainview, TX 79072

V Auto
P.O. Box 935202
Atlanta, GA 31193

WTG Fuels
P.O. Box 51140
Midland, TX 7910-1140

**Parties Requesting Notice**
**(Via ECF)**

# Motor Vehicle Lease Agreement - Closed End

[X] Monthly Payment Lease   [ ] Single Payment Lease

| Lessor Name and Address | Lessee(s) Name(s) and Address(es) |
|---|---|
| Prime Capital Auto Lease<br>1301 19th Street<br>Lubbock, TX 79401- | ███████████ |

No.

County

Date  07/16/2018

[ ] Refer to the attached addendum for additional Lessees and their signatures.

If this Lease is for a consumer purpose, then this Lease is consumer paper.

[ ] Business, commercial or agricultural purpose lease.

## Description of the Leased Property (Vehicle)

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2018 | Ram Trucks RAM 2500 4WD Crew Cab SLT | | | 3C6UR5JLXJG290717 | 10 |

[X] New
[ ] Used
[ ] Demo

Equipped With:

## Trade-In Vehicle and Its Allowance

| | | |
|---|---|---|
| Trade  2014 Ram Trucks 2500 4DR | Gross Amount of Trade-In Allowance $ | 40,000.00 |
| Prior Credit or Lease Balance - $  37,300.00 | **Net Trade-In Allowance = $  2,700.00 | (if less than zero, enter zero). |

## Federal Consumer Leasing Act Disclosures

| Amount Due at Lease Signing or Delivery (Itemized below) * | Payments | Other Charges (Not part of your monthly or single payment) | Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $  8,894.65 | a. Monthly Payments. Your first monthly payment of<br>$  944.65  is due on<br>7/16/18  followed by  59<br>payments of $  944.65  due on the<br>16 th  of each month. The total of your monthly<br>payments is $  56,679.00 .<br>b. Single Payment. Your payment of<br>$  N/A  is due on<br>N/A . | Disposition fee (if you do not purchase the Vehicle) $  495.00<br>N/A  $  N/A<br>N/A  $  N/A<br>N/A  $  N/A<br>N/A  $  N/A<br>N/A  $  N/A<br>N/A  $  N/A<br>Total  $  495.00 | $  65,124.00 |

### * Itemization of Amount Due at Lease Signing or Delivery:

| Amount due at Lease signing or delivery: | | | | | |
|---|---|---|---|---|---|
| Capitalized Cost Reduction | $  7,950.00 | N/A | + $  N/A | | |
| First Monthly Payment | + $  944.65 | N/A | + $  N/A | | How the amount due at Lease signing will be paid: |
| Single Payment | + $  N/A | N/A | + $  N/A | | |
| Refundable Security Deposit(s) | + $  0.00 | N/A | + $  N/A | Net Trade-in allowance** | $  2,700.00 |
| Title and Registration | + $  0.00 | N/A | + $  N/A | Rebates and non-cash | |
| Sales Tax | + $  0.00 | N/A | + $  N/A | credits | + $  4,250.00 |
| Tax on Cap Cost Reduction | + $  0.00 | N/A | + $  N/A | Amount to be paid in cash | + $  1,944.65 |
| Documentation fees | + $  N/A Total | | = $  8,894.65 <----> Total | = $  8,894.65 |

### Your Payment is Determined as Shown Below:

| | | | |
|---|---|---|---|
| Gross capitalized cost. The agreed upon value of the Vehicle ($  67,792.00 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). | $  69,549.00 | Rent charge. The amount charged in addition to the depreciation and any amortized amounts. | + $  16,608.98 |
| Capitalized cost reduction. The amount of any net trade-in allowance, rebate, non-cash credit, or cash you pay that reduces the gross capitalized cost. | - $  7,950.00 | Total of base payments. The depreciation and any amortized amounts plus the rent charge.<br>Lease Term. The number of months in your Lease. | = $  56,679.00 |
| Adjusted capitalized cost. The amount used in calculating your base payment. | = $  61,599.00 | Lease payments. The number of payments in your Lease. | 60 |
| Residual Value. The value of the Vehicle at the end of the Lease used in calculating your base payment. | - $  21,528.98 | Base Payment | + 60 |
| Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal wear and for other items paid over the Lease term. | = $  40,070.03 | Sales/use tax | = $  944.65 |
| | | | + $  0.00 |
| | | Total payment | + $  0.00 |
| | | | = $  944.65 |

Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and mileage in excess of  15,000  miles per year at the rate of $  0.25  per mile. (Excess Mileage Charge)

[X] Purchase Option at End of Lease Term. If the box in this line is checked, you have the option to purchase the Vehicle at the end of the Lease Term for $  22,278.98  and a purchase option fee of $  N/A . The purchase option price does not include official fees such as those for taxes, tags, license and registration which you will also be required to pay.

Other Important Terms. See Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

EXHIBIT C - Page 1 of 9

## Itemization of Gross Capitalized Cost

| | | | | | | |
|---|---|---|---|---|---|---|
| Agreed upon value of the Vehicle | $ 67,792.00 | Extended Warranty and Service Contract | $ 0.00 | Acquisition fee | $ | 995.00 |
| | | | | Lessor Services | $ | 0.00 |
| Sales or Use Tax and any other applicable taxes | $ 762.00 | Documentation fee | $ 0.00 | Credit/Life A/H | $ | 0.00 |
| | | Outstanding Prior Credit or Lease Balance and Negative Equity | $ 0.00 | Dealer Prep | $ | 0.00 |
| Title, License and Registration fees | $ 0.00 | | | N/A | $ | 0.00 |
| | | | | Total | $ | 69,549.00 |

If you do not meet your Contract obligations, you may lose the right to use the Vehicle under this Lease.

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required as part of this Lease and will not be a factor in our decision to lease the Vehicle to you.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ Service Contract

| Term | | N/A | |
|---|---|---|---|
| Price | $ | 0.00 | |
| Coverage | | 0 / 0 | Months / Miles |

☐ Gap Waiver or Gap Coverage

| Term | | N/A |
|---|---|---|
| Price | $ | N/A |
| Coverage | | N/A |

☐ Mechanical Breakdown Protection (MBP)

| Term | | N/A | |
|---|---|---|---|
| Price | $ | 0.00 | |
| Coverage | | 0 / 0 | Months / Miles |

☐ Extended Warranty

| Term | | N/A |
|---|---|---|
| Price | $ | N/A |
| Coverage | | N/A |

07/16/2018
Date

▬▬▬▬▬▬▬▬▬▬

Date

### Additional Terms

Additional Fees and Charges. Information about a Security Deposit and a Late Charge can be found in the Additional Lease Terms section. In addition to the other amounts promised in this Lease, you agree to pay the following.

• Vehicle Return Fee. You will pay us a Vehicle Return Fee of $ $995.00 if this Lease is terminated before the end of the scheduled Lease Term and the Vehicle is returned to us or to our agents. This Fee will not apply if the Lease ends early by your purchase of the Vehicle.

• Disposition Fee. You will pay us a Disposition Fee of $ 495.00 when you return the Vehicle at the end of the scheduled Lease Term. This Fee will not apply if the Lease ends early or if you buy the Vehicle at the end of the Lease Term (if you have that option).

• Official Fees and Taxes. The estimated total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your monthly (or single) payment or assessed otherwise is $ $1,538.50 . The actual total of fees and taxes may be higher or lower, depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

☐ Service Charge for Unclaimed Security Deposit Refunds. Unless prohibited, if we send you a check after this Lease ends to refund the remaining portion of any Security Deposit and you do not collect that check within six months, you agree that we may deduct a monthly service charge of $ N/A from the remaining portion of any Security Deposit until it is gone or otherwise refunded to you.

Warranties. The Vehicle is subject to the following express warranties that apply to this Lease.

☐ The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor.

☐

By signing this Lease, you acknowledge receiving a copy of the above written warranties. You understand that we (the Lessor) make no express or implied warranties other than those described above (if any). Except as required by law, the Lessor makes no implied warranty of merchantability and no warranty that the Vehicle is fit for a

particular purpose. Except as provided above, you will take the Vehicle as is and with all faults. We do not exclude any warranties of merchantability and fitness for a particular purpose if this Lease is subject to Massachusetts or Vermont law.

### Other Terms

### Additional Lease Terms

Definitions. "You", "your" and "Lessee" mean each person or legal entity, jointly and individually, who signs this Lease and its successors and assigns. "We", "our", "us" and "Lessor" mean the Lessor who signs this Lease and its successors and assigns.

Agreement to Lease. You agree to lease the motor vehicle described in this Lease ("Vehicle") from us under the terms of this Lease. You agree to pay all amounts due and to perform all your obligations under this Lease. You intend to use the Vehicle primarily for personal, family or household purposes, unless the "Business, commercial or agricultural purpose lease" box is checked. Applicable provisions of the Federal Consumer Leasing Act are part of this Lease.

General Terms. You agree that the law of the state where this Lease is signed will govern this Lease, unless prohibited. If any part of this Lease cannot be enforced, the rest of the Lease will still be enforceable.

Indemnity. To the fullest extent permitted by law and unless otherwise prohibited by law, you agree to indemnify and hold us harmless and our successors and assigns from all liability, claims, losses, demands, damages of all kinds, expenses (including reasonable legal fees and expenses, unless prohibited), fines and penalties we suffer or incur resulting from the possession, operation, condition, maintenance or use of the Vehicle during the Lease Term.

Notices. Unless otherwise required by law, you agree that any notice we provide you will be reasonable and sufficient if it is sent by first class mail, addressed to you at the address given in this Lease or to your last known address as reflected in our records. You will notify us in writing within 30 days of any change in your address or where the Vehicle is garaged.

Security Deposit. If included in the Itemization of Amount Due at Lease Signing or Delivery section you will give us a refundable Security Deposit in the amount indicated. It may be used to pay any amount that you do not pay when due. After all your obligations are paid under this Lease, we will return any remaining amount to you. You agree to cash, deposit or otherwise collect any check we send you to refund any remaining portion of the Security Deposit within six months of the date on the check. Unless prohibited, you also agree that we may, beginning six months after the date of any refund check that remains uncollected, impose any monthly service charge described in the Service Charge for Unclaimed Security Deposit Refunds section. Unless prohibited, you will not be entitled to interest on your Security Deposit or to any other benefit, increase or profits that accrue to us as a result of holding the Security Deposit.

Late Charge. This section applies if this is a Monthly Payment Lease. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment.

Vehicle Use. You agree to the following.

• You agree to allow the Vehicle only to be operated by licensed drivers for lawful purposes and in a lawful manner.

• You agree to operate the Vehicle only as recommended by the manufacturer.

• You agree not to use the Vehicle as a taxi or for public or private hire or delivery.

• You agree not to use the Vehicle in a way that causes the cancellation or suspension of any warranty, insurance or other similar vehicle protection agreement.

• You agree not to take the Vehicle out of the state where you reside for more than 30 consecutive days without our prior written approval.

• You agree not to take the Vehicle out of the United States without our prior written approval.

Maintenance and Operating Costs. You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear and mileage. You agree to service and maintain it as recommended by the manufacturer and as needed to keep it in good operating condition. You also agree to maintain the Vehicle so that any warranties or similar agreements remain effective and so that it passes all inspections required by law. You are responsible for paying all costs of the Vehicle's service, repair and maintenance and all the costs of its operation, including the costs of gas, oil, parking, storage, violations, etc. You agree to make the Vehicle available to us for inspection during the Lease Term at any reasonable time and location that we request.

EXHIBIT C - Page 2 of 9

**Required Insurance.** You are liable for any injury, death or damage arising out of the use of the Vehicle. You agree to provide at least the following insurance coverage ("Required Insurance") on the Vehicle at all times during this Lease:

- Liability for bodily injury or death of others in an amount of at least $100,000 per person and $300,000 per occurrence.
- Liability for property damage to others in an amount of at least $50,000.
- Collision and comprehensive (including fire and theft coverage) with a deductible not to exceed $1,000.

You agree to provide the insurance at your own expense from an insurer authorized to do business in the state where you are located or an eligible surplus lines insurer. This insurance may be provided through existing policies that you own or control. You also agree to name us or our assignee as loss payee and additional insured. The insurance policy must provide for at least 10 days advance notice to us of any cancellation or other material change in coverage. At our request, you will promptly deliver to us a copy of the policy and proof of the payment of premiums. If you fail to meet these requirements, we may obtain insurance on your behalf at your expense.

You are required to insure the Vehicle from us. We own the Vehicle. You are required to maintain insurance on the Vehicle to us, we may place insurance on the Vehicle and you are responsible for the cost of the insurance we place on the Vehicle.

You will promptly contact us in writing if any of the insurance provider information changes. You authorize us to endorse your name on any check we receive for insurance proceeds.

**Notice.** Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Lease.

**Damage to the Vehicle and Insurance Claims.** You will notify us in writing immediately after any loss to person or property occurs involving the Vehicle in any way. You will also notify us in writing immediately upon receiving notice of any demand, claim or suit involving the Vehicle in any way. You agree to fully cooperate with us and with your insurer in any investigation, suit or other action resulting from the use or control of the Vehicle.

You agree to repair or compensate us for any loss or damage to the Vehicle that occurs during this Lease. If the Vehicle is damaged, we will decide if it is repairable and if it should be repaired. If the Vehicle is repaired, you will apply to the costs of repair any insurance proceeds you receive for its loss or damage. You understand that you must pay for any loss or damage that is not paid by insurance proceeds. You must also keep making any payments as they come due during this Lease even if the Vehicle is damaged or unusable for a period of time. The Theft, Loss or Irreparable Damage section describes what happens if we decide that the Vehicle cannot or should not be repaired.

**Theft, Loss or Irreparable Damage.** If the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired, then we will decide whether to continue or terminate this Lease. If it is continued, you agree to accept a reasonable substitute vehicle of similar value, condition, mileage and accessories to replace the original Vehicle. If we terminate the Lease under this section, the event will be treated as an early termination and you will be required to pay the amounts described in the Early Termination section. On such early termination, you agree to release to us all insurance or other proceeds you receive for damages or loss to the Vehicle (including any premium refunds on the Required Insurance) up to the amount you owe us.

**Default.** You will be in default on this Lease if any one of the following occurs (except as prohibited by law):

- You fail to make any payment when it is due.
- You fail to perform any material obligation that you have undertaken in this Lease (which includes doing something you have agreed not to do).
- The Vehicle is seized, confiscated or levied upon by legal or governmental process.
- You fail to provide the Required Insurance on the Vehicle or fail to provide proof of such coverage after we request it
- Anything else happens that creates a default according to applicable law.

If this Lease is in default, we may exercise our remedies against any or all Lessees.

**Remedies.** If this Lease is in default, we may take any one or more of the following actions. If the law requires us to do so, we will give you notice and wait any period of time required before taking some or all of these actions.

- We may terminate this Lease and your rights to use the Vehicle.
- We may take any reasonable action to correct your default or to prevent our loss (including, for example, purchasing insurance that you agreed to provide). Any amount we pay will be added to the amount you owe us and will be immediately due.
- We may require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
- We may take back the Vehicle by legal process or self help, but in doing so, we may not breach the peace or violate the law.
- We may use any other remedy available to us in this Lease or by law.

You agree that, subject to your right to recover such property, if any, we may take possession of personal property left in or on the Vehicle when we take back the Vehicle.

You agree to repay us for any reasonable amounts we pay to correct or cover your default, unless prohibited by law. You also agree to reimburse us for any costs and expenses we incur in the Vehicle's return and disposition or resulting from early termination, unless prohibited by law. This amount includes, for example, our court costs and, to the extent and in the amount permitted by applicable law, reasonable attorneys' fees. By choosing any one or more of these remedies, we do not give up our right to use another remedy. By deciding not to use any remedy should this Lease be in default, we do not give up our right to use that remedy if the same kind of default happens again.

**Lease Termination.** This Lease will end ("terminate") when one of the following events occurs, whichever happens first:

- You choose to end the Lease early and return the Vehicle to us.
- You choose to buy the Vehicle (if you have that option).
- You return the Vehicle at the end of the scheduled Lease Term.
- We terminate the Lease because the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired or replaced.
- We terminate the Lease due to your default.

On termination, you will pay the amounts agreed to in this Lease. You are not entitled to keep the Vehicle past the end of the scheduled Lease Term or the date of early termination without our prior consent.

**Gap Waiver or Gap Coverage.** You are liable for the early termination charges in the Early Termination section if this Lease ends early because the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired. On such termination, the amount of insurance proceeds we receive from or through you for the Vehicle may not be enough to pay the early termination charges. This difference is generally referred to as the "Gap Amount." You may, but are not required to, purchase a Gap Waiver or Gap Coverage Contract (Gap Product) to help cover the Gap Amount subject to the specific conditions and limitations in the separate Gap Product.

**Early Termination.** This section applies if the Lease terminates before the end of the scheduled Lease Term. It does not apply if you choose to buy the Vehicle before the end of the scheduled Lease Term. On early termination, you will return the Vehicle to us. You will deliver it to our address or to another reasonable location at our request.

**Early Termination Liability.** On early termination, you agree to pay us the following items.

- A Vehicle Return Fee, if any, described in the Additional Fees and Charges section.
- All accrued and unpaid amounts that are due or past due at that time (including amounts described in the Remedies section).
- The amount by which the Adjusted Lease Balance at that time exceeds the Realized Value. (If the Realized Value is greater than the Adjusted Lease Balance, the excess will be applied as a credit toward your liability. Any remaining amount of the excess will be credited to you only if this is a Single Payment Lease.)
- All official fees and taxes imposed in connection with the Lease termination.

If the early termination occurred because of theft, loss or irreparable damage to the Vehicle, any insurance or Gap Product proceeds received by us for that theft, loss or damage will be applied to pay that early termination liability.

**Determining the Adjusted Lease Balance.** Your early termination liability under this section will be calculated using the "Adjusted Lease Balance". A "Month" is a period of approximately 30 days beginning on the same day of a month that the payment(s) is/are due (or on the last day of a month if there is no day is due in that month). If this Lease is a Single Payment Lease, the Adjusted Lease Balance at the beginning of the Lease is equal to the Adjusted Capitalized Cost minus the Base Payment. At the beginning of each Month, the Adjusted Lease Balance increases by the Rent Charge for that Month. The Rent Charge for each Month in a Single Payment Lease is equal to the Lease Rate times the Adjusted Lease Balance before that increase. The Lease Rate is the rate that will cause the monthly increases described above to increase the Adjusted Lease Balance to the Residual Value over the Lease Term. If this Lease is a Monthly Payment Lease, the Adjusted Lease Balance at the beginning of this Lease is equal to the Adjusted Capitalized Cost. At the end of each Month, the Adjusted Lease Balance will be reduced by adding the Rent Charge for that Month and then subtracting the amount of the Base Monthly Payment. That Rent Charge for a Monthly Payment Lease is equal to (a) the Adjusted Lease Balance at the beginning of the Month minus the Base Monthly Payment amount, multiplied by (b) the Lease Rate. The Lease Rate is the rate which will cause monthly reductions described above to reduce the Adjusted Lease Balance to the Residual Value over the Lease Term. All the calculations referred to above are done as though each Month has exactly 30 days.

**Determining the Realized Value.** If the law so requires, we will send you a notice and wait any required period of time before taking action to establish the Vehicle's Realized Value. Unless otherwise required by law, the Realized Value will be determined in one of the following ways.

- It will be determined by a written agreement between you and us reached within 10 days of the Vehicle's return.
- It will be determined by the professional appraisal of an independent third party agreed to by you and us and obtained at your expense within 10 days of the Vehicle's return (or a longer period, if all parties so agree or if the law so requires). The appraisal shall be of the Vehicle's wholesale value and shall be final and binding on both you and us.
- If it is not determined within 10 days of the Vehicle's return, we will determine the Realized Value, at our sole discretion, either in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner. If the law requires a specific method or process, we will follow it as required. If we use a bid procedure, you may have the right to submit a cash bid which we will consider along with any other offers we may receive. We do not have to sell the Vehicle but will use the highest offer amount we receive in calculating your liability. The Realized Value will be zero if the Vehicle is not returned to us. If this Lease is governed by Nevada law, you may submit to us a written bid for the purchase of the Vehicle at any time before we establish its Realized Value.

**Option to Purchase Before the End of the Lease Term.** You have the option to purchase the Vehicle at any time as long as we have not declared the Lease to be in default. You must give us at least 30 days prior notice of your intent to purchase. The Vehicle sale price will be the sum of (a) All officials' fees, taxes and other costs incurred for the purchase (or to prepare the Vehicle for purchase) and all other fees and charges then due or past due under the Lease; and (b) the Adjusted Lease Balance.

**Scheduled Termination.** Unless this Lease ends under another section of this Lease, you will return the Vehicle to us on the last day of the scheduled Lease Term. You agree to return it to our address or to another reasonable location that we may request. You may return the Vehicle up to 15 days before the last day of the scheduled Lease Term at your option and for your own convenience, without any adjustment (charges or credits) for an "early" return.

On termination under this section, you agree to pay us the following items.

- A Disposition Fee, if any, described in the Additional Fees and Charges section.
- An Excess Wear Charge and an Excess Mileage Charge, if any, described in the Excess Wear and Mileage section.
- All other amounts then due or past due under this Lease.

These amounts are due and payable at the time you return the Vehicle or as soon thereafter that they can be determined unless otherwise provided by law. You will also pay us for all reasonable losses and expenses we incur if you fail to return the Vehicle at the end of the scheduled Lease Term.

**Option to Purchase at the End of the Lease Term.** The Purchase Option at End of Lease Term section in the Federal Consumer Leasing Act Disclosures section describes your option to purchase the Vehicle at the end of the scheduled Lease Term (if any) and

EXHIBIT C - Page 3 of 9

the Vehicle's purchase price. If you have the option, it is available only if we have not already declared the Lease to be in default. You must also give us at least 30 days prior notice of your intent to purchase.

Excess Wear and Mileage. When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay an Excess Wear Charge for any excessive wear to the Vehicle. The Excess Wear Charge will be equal to the actual or estimated costs of repair, or the estimated loss in its value, because of any excessive wear (even if we do not repair the Vehicle). Excessive wear includes the following.

○ Mechanical damage, failure or defect.

○ Repairs or replacement parts, including tires, that are not made with original equipment manufacturer's parts unless we specifically approve the use of such repairs or parts in advance and in writing.

○ Exterior parts, grilles, bumpers, trim, paint and glass that are dented, scratched, chipped, discolored or otherwise damaged, missing or worn beyond ordinary use.

○ Interior parts, upholstery, dashboard, carpeting or trunk liner that are stained, torn, burned or otherwise damaged, missing or worn beyond ordinary use.

○ Accessories, tools and equipment included with the Vehicle when delivered that are missing, damaged or not in proper working order.

○ Tires that are retreads, unsafe, have less than 1/8 inch tread at the shallowest point or are not a part of a matching set of four.

○ Any other part or condition that causes the Vehicle to be unsafe or unlawful to use.

○ Any other damage or wear that together cost more than $50 to repair or replace

We will notify you of the amount of these charges and provide any other related information as may be required by law. The charges will be due as soon as the amount is determined unless otherwise provided by law. When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay any Excess Mileage Charge as described in the *Federal Consumer Leasing Act Disclosures* section.

Titling, Official Fees and Taxes. You understand and agree that this Lease is a lease only. We own the Vehicle, and it will be in our name or in the name of our assignee. You have no ownership interests in the Vehicle except for any future options to purchase provided in this Lease. You agree to pay all title, registration, license, sales, use, excise, personal property, ad valorem, inspection, testing and all other taxes, fees and charges imposed by government authorities in connection with the Vehicle and this Lease during the Lease Term, except our income taxes. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. We may, at our discretion, determine the timing and procedures for payment of these amounts. You will promptly pay these amounts as they come due unless otherwise indicated in this Lease. The actual total of official fees and taxes that you pay may be higher or lower than our estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

Assignments and Transfers. We may sell, assign or in any other way transfer our rights and responsibilities in the Vehicle and this Lease.

You will not sublease the Vehicle, assign, pledge or permit a security interest to be created in, or in any other way transfer your interests or responsibilities in the Vehicle and in this Lease. We may, at our discretion, give you permission to make a transfer that is otherwise prohibited. Such permission must be given in writing prior to any transfer.

### Arbitration Agreement

Please Read Carefully! Notice of Arbitration.

By agreeing to this Arbitration Agreement you are giving up your right to go to court for claims and disputes arising from this Lease if you or we choose to arbitrate.

○ You or we may choose to have any dispute between us decided by arbitration, and not by a court or by jury trial.

○ If a dispute is arbitrated, you give up your right to join as a class representative or class member in any class action or class arbitration that you may have against us.

○ In arbitration, discovery and rights to appeal are generally more limited than a judicial proceeding, and other rights that you and we would have in court may not be available.

At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and us or our employees, agents, successors or assigns that arises out of, or relates to your credit application, this Lease or any related transaction or relationship is to be decided by neutral, binding arbitration. Also, to the extent allowed by law, the validity, scope, and interpretation of this Arbitration Agreement is to be decided by neutral, binding arbitration

If you or we choose to arbitrate a claim or dispute, you and we agree that no trial by jury or other judicial proceeding take place. In addition, you agree not to participate as a class representative or class member on any class claim that you may have against us, including class arbitration. You and we also agree that any claim or dispute is to be heard and decided by one arbitrator only, and only on an individual basis, and not as a class action.

For the arbitration, any claim and we will use the following arbitration provider and its applicable rules: National Arbitration and Mediation (NAM), 990 Stewart Ave., Garden City, NY 11530 (www.namadr.com). You can get a copy of NAM's rules by contacting it or visiting its website. If NAM is unwilling or unable to serve as the arbitration provider, the arbitrator will be selected pursuant to 9 U.S.C. sections 5 and 6.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we agree otherwise. If arbitration begins, we will advance your filing, administration, service or case management fee, and your arbitrator or hearing fee all up to a total maximum of $1,500. Unless the arbitrator awards (from to a party; each party is responsible for the fees of its attorney(s), experts, witnesses, and any other fees and costs of arbitration, including any amount we have advanced.

The arbitrator will be a lawyer or a former judge. In making an award, the arbitrator shall follow governing substantive law. The arbitrator has the authority to order specific performance, compensatory damages, punitive damages and any other relief allowed by applicable law. Other than the grounds for review under the Federal Arbitration Act, the arbitration award is final and binding on all parties. Any court having jurisdiction may enforce the arbitrator's award.

You or we can do the following without giving up the right to require arbitration.

○ Seek remedies in small claims court for claims within that court's jurisdiction, unless these claims are transferred, removed, or appealed to a different court. If so, either you or we can require the transfer of these claims to arbitration.

○ Seek judicial provisional remedies.

○ Exercise self-help remedies and to take measures that do not involve a court or arbitration, including, but not limited to, setting off against a deposit account and repossessing property.

○ Exercise foreclosure against any real or personal property, collateral or other security.

The Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs this Arbitration Agreement, and not any state law concerning arbitration, including state law arbitration rules and procedures. This Arbitration Agreement survives any termination, payoff or transfer of this Lease. If any part of this Arbitration Agreement is not enforceable, the rest is enforceable; but if the waiver of class action rights is unenforceable, this entire Arbitration Agreement is unenforceable.

By signing this Lease you and we understand and agree to be bound by its terms, and expressly waive our rights to trial by jury and judicial process, and review, except as allowed by law. Caution: It is important that you read this Arbitration Agreement thoroughly before you sign this Lease. By signing it, you are accepting that you have read, understand and agree to this Arbitration Agreement, and have received a copy of it. If you do not understand something in this Arbitration Agreement, do not sign this Lease; instead ask your lawyer. You or we may reject this Arbitration Agreement by sending to the other a rejection notice by certified or registered mail or by messenger service within 10 days after the date of signing this Lease.

### Notices

Notice. You have no ownership rights in the Vehicle unless and until you exercise your option to purchase this Vehicle.

Arbitration. This Lease contains an Arbitration Agreement that affects your rights. By signing this Lease, you agree to the terms of the Arbitration Agreement.

### Signatures

Entire Agreement. Your and our entire agreement is contained in: (a) this Lease; and (b) any related agreement between you and us about conditions that must be satisfied after delivery of the Vehicle. There are no unwritten agreements regarding this Lease. Any change to this Lease must be in writing and signed by you and by us.

_____ 07/16/2018
                                 Date

█████████████████

_____
                                 Date

Notice to Lessee. (1) Do not sign this Lease before you read it or if it contains any blank spaces; (2) You are entitled to a completely filled-in copy of this Lease.

By signing below, you agree to the terms of this Lease. You received a copy of this Lease and had a chance to read and review it before you signed it.

_____ 07/16/2018
                                 Date

█████████████████

_____
                                 Date

Lessor's Acceptance. By signing below, Lessor agrees to the terms and conditions of this Lease.

○ Lessee DL Inspection. The Lessor inspected each Lessee's driver's license and compared and verified the signature on each license with a signature of each Lessee, written in Lessor's presence. Lessor believes that each Lessee providing such information is currently licensed to drive by the state of his/her residence.

○ Assignment. Lessor assigns this Lease and all rights and title to the Vehicle to the Assignee identified below (if any). This assignment is subject to any separate Assignment Agreement between the Lessor and Assignee.

Assignee Name   MUSA Auto Leasing

Address         4455 Lyndon B Johnson Fwy, Ste 1200, Dallas, TX 75244

Phone           (800) 563-6872

_____ 07/16/2018
                                 Date

EXHIBIT C - Page 4 of 9

## MOTOR VEHICLE LEASE AGREEMENT - CLOSED-END



**1. LESSEE AND LESSOR**

| LESSEE AND CO-LESSEE | LESSOR |
|---|---|
| Name: ▓▓▓▓▓▓ | Name: Prime Capital Auto Lease |
| Address: ▓▓▓▓▓▓ | Address: 1301 19th Street |
| County: ▓▓▓▓▓▓ | Lubbock, TX 79401- |

| LEASE NUMBER | LEASE DATE 07/06/2018 |
|---|---|

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we", "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

**2. VEHICLE DESCRIPTIONS**

**A. LEASED VEHICLE**

| ☒ New | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| ☐ Used | 2018 | Dodge CHALLENGER 2dr Cpe R/T | | | 10 | 2C3CDZBTXJH229140 |

Primary Use of Vehicle: ☒ Personal, family or household purposes
☐ Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

**B. TRADE-IN VEHICLE:** Year 2017 Make 1500 LTZ Model 4DR

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)* | 4. MONTHLY PAYMENTS | 5. OTHER CHARGES (Not part of your Monthly Payment) | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $ 14,624.66 | A. Your first Monthly Payment of $ 649.66 is due on the Lease Date, followed by 47 payments of $ 649.66 due on the 6th of each month. B. The total of your Monthly Payments is $ 31,183.68 . | A. Termination Fee (if you do not purchase the Vehicle) $ 395.00 | $ 44,903.68 (Sections 3 plus 4(B) plus 5(B) minus Sections 7(A)(3) minus 7(A)(4)) |
| | | B. Total $ 395.00 | |

**7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| A. Amount Due at Lease Signing or Delivery: | | B. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | $ 13,325.00 | | |
| (2) Sales/Use Tax on Capitalized Cost Reduction | 0.00 | (1) Net Trade-In Allowance $ | 0.00 |
| (3) First Monthly Payment | 649.66 | (2) Rebates and Noncash Credits | 8,500.00 |
| (4) Refundable Security Deposit | 650.00 | (3) Amount to be Paid in Cash | 6,124.66 |
| (5) Title Fees | 0.00 | | |
| (6) Registration Fees | 0.00 | | |
| (7) Upfront Sales/Use Tax on Vehicle | 0.00 | | |
| (8) N/A | 0.00 | | |
| (9) N/A | 0.00 | | |
| (10) N/A | 0.00 | | |
| (11) Total $ | 14,624.66 | (4) Total $ | 14,624.66 |

**8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

| | | |
|---|---|---|
| A. | Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 54,649.99 ) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . . . . . . . . . $ | 55,735.65 |
| B. | Capitalized Cost Reduction. The amount of any Net Trade-In Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost . . . . . . . . . . . . . – | 13,325.00 |
| C. | Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment . . . . . . . . . . . . . . . . . . . . . . = | 42,410.65 |
| D. | Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment . . . . . . . . – | 20,604.00 |
| E. | Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term . . . . . . . . . . . . . = | 21,806.65 |
| F. | Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts . . . . . . . . . . . . + | 9,377.03 |
| G. | Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge . . . . . . . . . . . = | 31,183.68 |
| H. | Lease Payments. The number of payments in your Lease (Lease Term 48 months) . . . . . . . . . . . . . . . . ÷ | 48 |
| I. | Base Monthly Payment . . . . . . . . . . . . . . . . . . = | 649.66 |
| J. | Monthly Sales/Use Tax . . . . . . . . . . . . . . . . . + | 0.00 |
| K. | . . . . . . . . . . . . . . . . . . . . . . . . . . + | 0.00 |
| L. | Total Monthly Payment ("Monthly Payment") . . . . . . . . . . . . . . . . . . . . . = $ | 649.66 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**9. EXCESSIVE WEAR AND USE**

You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10,000 miles per year at the rate of $ 0.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

**10. PURCHASE OPTION AT END OF LEASE TERM**

If you have fully performed all of your obligations under this Lease, including paying the total of your Monthly Payments and all other amounts due under this Lease, then you have an option to purchase the Vehicle AS IS at the end of the Lease Term for $ 20,954.00 , plus any taxes, official fees and other charges related to such purchase.

Other Important Terms. See all five pages of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

© 2001 USB Leasing LT Form 30032PDF14, 5/16 (Page 1 of 5)

EXHIBIT C - Page 5 of 9

**11. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 54,649.99 |
| B. Extended Warranty Contract | | 0.00 |
| C. Mechanical Breakdown Protection | | 0.00 |
| D. Maintenance or Service Contract | | 0.00 |
| E. Sales/Use Tax | | 0.00 |
| F. Initial Title, Registration, and License Fees (only if included in the capitalized cost) | | 0.00 |
| G. Outstanding Prior Credit or Lease Balance | | 0.00 |
| H. Lease Acquisition Fee | | 695.00 |
| I. Credit Life and/or Disability Insurance (Credit insurance is not required) | | 0.00 |
| J. Dealer Documentation Fee | | 0.00 |
| K. Other: N/A | | 0.00 |
| L. Other: Dealer Prep | | 390.66 |
| M. Total = Gross Capitalized Cost | $ | 55,735.65 |

**12. OPTIONAL INSURANCE: You are not required to buy any of the optional insurance listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. This insurance will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the insurance, you want to obtain the insurance checked, and you agree to pay the premium shown.**

☐ **Credit Life Insurance**

Initial Coverage: $ ___N/A___    ☐ Single Cost: $ ___N/A___
                                 ☐ Joint  Cost: $ ___N/A___

☐ **Credit Disability Insurance**

Maximum Monthly
Coverage: $ ___N/A___    ☐ Single Cost: $ ___N/A___
                         ☐ Joint  Cost: $ ___N/A___

X _____    _____
  Insured Signature                  Date

X _____    _____
  Joint Insured Signature            Date

**13. OPTIONAL PRODUCTS: You are not required to buy any of the optional products listed below to enter into the Lease and your decision not to do so will not be a factor in the approval of this extension of credit. These products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you acknowledge receipt of a notice of the terms of the product, you want to obtain the product checked, and you agree to pay the charge shown.**

☐ **Extended Warranty Contract (non-insurance product)**

Provider _____    Cost $ _____    mo./mileage _____

X _____    _____
  Lessee Signature                   Date

X _____    _____
  Co-Lessee Signature                Date

☐ **Mechanical Breakdown Protection Contract**

Provider ___N/A___    $ ___N/A___    ___N/A___
                      Cost           mo./mileage

X _____    _____
  Lessee Signature                   Date

X _____    _____
  Co-Lessee Signature                Date

☐ **Maintenance or Service Contract**

Provider ___N/A___    $ __N/A__    __N/A__
                      Cost         mo./mileage

X _____    _____
  Lessee Signature                   Date

X _____    _____
  Co-Lessee Signature                Date

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

**14. ESTIMATED OFFICIAL FEES AND TAXES**
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ ___1,011.86___ . This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

**15. WARRANTIES**
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:

☐ The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.

☐ The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.

☐ _____

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties. **You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS". WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.**

**16. INSURANCE VERIFICATION**
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| | | | | |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 19).

**17. LESSOR'S RIGHT TO CANCEL.**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at lease closing less the amount required to restore the Vehicle's condition.

**18. LATE CHARGE; RETURNED INSTRUMENT CHARGE**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Colorado, you will pay a late charge of $15. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we

do not receive your Monthly Payment within 15 days of its due date.

If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Page 1, is located in the state of Louisiana, Missouri, West Virginia, or Wyoming, the returned instrument charge will be $15.

EXHIBIT C - Page 6 of 9

19. **INSURANCE**

Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:

A. Fire, theft and comprehensive insurance with a maximum deductible of $500;

B. Collision insurance with a maximum deductible of $500;

C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;

D. Property damage insurance for $50,000; and

E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.

The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.

The insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

20. **VEHICLE OPERATION**

A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You must have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.

B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 20B(6), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the continental United States for any period of time without our prior written approval; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the Lease without our written consent.

C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, testing, and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled. If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.

D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

21. **PURCHASE OPTION**

A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.

B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (2) the Early Termination Liability set forth in Section

© 2001 USB Leasing LT Form 30032PDF14, 5/16

25(C), excluding the items set forth in Sections 25(C)(1), (C)(7) and (C)(8).

C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

22. **EXCESS WEAR AND USE**

We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle to excess wear and use. If you do so and if you do not purchase the Vehicle at the scheduled end of the Lease Term, you agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs.

Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) dented, scratched, chipped or rusted areas on the body; (3) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) inoperative exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and upset insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.

Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if initially so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.

23. **VEHICLE RETURN**

If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstance can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

24. **SCHEDULED TERMINATION**

Except for Early Termination, this Lease will terminate or end upon:

A. The end of the Lease Term;

B. Return of the Vehicle;

C. Completion of a signed odometer statement; and

D. Payment of the following amounts:

(1) The Termination Fee;

(2) Any amounts owed for Excess Wear;

(3) Any amounts owed for Excess Mileage;

(4) All amounts due and unpaid under this Lease; and

(5) Any official fees and taxes due in connection with Lease termination.

25. **EARLY TERMINATION**

A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.

B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.

C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:

(1) The Termination Fee; plus

(2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired:

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
| --- | --- |
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

(3) Plus all unpaid amounts that are due or past due under this Lease; plus

(4) Any official fees, taxes and other charges related to early termination; plus

(Page 3 of 5)

EXHIBIT C - Page 7 of 9

(5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law, plus
(6) The Lease Balance; plus
(7) The Residual Value of the Vehicle; minus
(8) The Realized Value of the Vehicle.

D. LEASE BALANCE. The Lease Balance is equal to:
(1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus
(2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.

The term "Actuarial Method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.

E. REALIZED VALUE. The Realized Value will be determined in one of the following ways:
(1) By written agreement between you and us;
(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(3) We determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale cash bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
(4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.

F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by prorating the annual allowed miles set out in Section 9 to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

26. DEFAULT
A. DEFAULT. The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:
(1) You fail to make any payment in full when due;
(2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
(3) You fail to maintain insurance on the Vehicle as required by this Lease;
(4) You fail to return the Vehicle to us at the time and place we specify;
(5) You die, are declared insolvent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
(6) You make any material misrepresentation on your credit application;
(7) The Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;
(8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;
(9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
(10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.

If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):
(1) You fail to make a payment within 10 days of the time required by this Lease;
(2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.

B. REMEDIES. If this Lease is in Default, we may take any one or more of the following actions:
(1) Terminate this Lease and your rights to use the Vehicle.
(2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will

neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
(3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
(4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
(6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.
(7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
(8) Use any remedy we have at law or in equity.

C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY): If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.
If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

**Louisiana Law permits repossession of motor vehicles without judicial process.**

27. ATTORNEYS' FEES
If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be after referral to an attorney who is not our salaried employee.

28. REIMBURSEMENT
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

29. WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability set forth in Section 25(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had in effect the vehicle insurance required under this Lease at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; plus (C) any rebates of charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

30. REFUNDABLE SECURITY DEPOSIT
Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce your obligations under this Lease.

**31. GENERAL**

A. **SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

B. **ODOMETER STATEMENT/OTHER DOCUMENTS.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.

C. **OWNERSHIP.** This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.

D. **RIGHT OF SET-OFF.** We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner to the payment of amounts you owe to us.

E. **ENFORCEABILITY.** This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated at the Lessor's address on Page 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.

F. **WARRANTY OF AMOUNT OWED.** You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor, you will pay Lessor the excess amount upon demand.

G. **EXPRESS CONSENT TO CONTACT YOU.** By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number -- including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system -- from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

H. **TOLL VIOLATION NOTICE (COLORADO ONLY).** Pursuant to the requirements of C.R.S.A. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company when a toll evasion violation civil penalty is incurred during the term of the Lease.

I. **ENTIRE AGREEMENT. Important: Read before signing.** The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**ARBITRATION:** (The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law.

Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

**SIGNATURES**
YOU AGREE TO ALL THE PROVISIONS ON ALL FIVE PAGES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ ALL FIVE PAGES OF THIS LEASE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. OR AND SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.
YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.

| INDIVIDUAL LESSEE SIGNATURE(S) | |
|---|---|
| Lessee Signature: X | Co-Lessee Signature: X |

| BUSINESS LESSEE SIGNATURE | | |
|---|---|---|
| Authorized Signer's Name: | Title: | Signature: X |

| LESSOR SIGNATURE |
|---|
| The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage (see Section 16); and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee. |
| Authorized Signature: X |

© 2001 USB Leasing LT Form 30032PDF14, 5/16

EXHIBIT C - Page 9 of 9