[1]IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES MOTORS, LP | § | Case No. 18-50214-rlj11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES IMPORTS, LP | § | Case No. 18-50215-rlj11 |
| | § | (Jointly Administered Under Case 18-50214) |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES AMARILLO, LP | § | Case No. 18-50216-rlj11 |
| | § | (Jointly Administered Under Case 18-50214) |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES AUTO COMPANY, LP | § | Case No. 18-50217-rlj11 |
| | § | (Jointly Administered Under Case 18-50214) |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES PLAINVIEW, LP | § | Case No. 18-50218-rlj11 |
| | § | (Jointly Administered Under Case 18-50214) |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES FLOYDADA, LP | § | Case No. 18-50219-rlj11 |
| | § | (Jointly Administered Under Case 18-50214) |
| Debtor. | § | |

## AIMBANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY
## AND TO ALLOW SETOFF

---

[1] Per court order, this is a jointly administrated bankruptcy with In re Reagor-Dykes Imports, LP (Case No. 18-50215, In re Reagor-Dykes Amarillo, LP (Case No. 18-50216), In re Reagor-Dykes Auto Company, LP (Case No. 18-50217), In re Reagor-Dykes Plainview, LP (Case No. 18-50218) and In re Reagor-Dykes Floydada, LP (Case No. 18-50219).

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1205 TEXAS AVE., LUBBOCK, TX 79401-4002, BEFORE CLOSE OF BUSINESS ON FEBRUARY 5, 2019, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW, AimBank, and files its Motion for Relief from the Automatic Stay and to Allow Setoff and would show as follows:

## FACTS

### A.    Reagor-Dykes Toyota

1.    On January 20, 2017, Reagor-Dykes Plainview, LP d/b/a Toyota ("R-D Plainview") executed a Promissory Note and Security Agreement in the original principal sum of $500,500.00 (Loan No. XXXX623) (the "R-D Plainview Note").  A true and correct copy of the R-D Plainview Note is attached hereto as **Exhibit A**.  Also on January 20, 2017, R-D Plainview executed a Commercial Loan Agreement, a true and correct copy of which is attached here as **Exhibit B**.  The R-D Plainview Note is secured by a certificate of deposit (CD No. XXXX671) held by AimBank in the name of R-D Plainview (the "R-D Plainview CD").  *See*, Exhibit A, p.2, ¶ 11.A.(1) and p.3, ¶ 11.D.(2).  The Security Agreement contained within the R-D Plainview Note also secures all debts owed by R-D Plainview to AimBank.  *See*, Exhibit A, p.2, ¶ 11.A.(2).

2

2.    As of January 9, 2019, the outstanding balance of the R-D Plainview Note was $453,364.09 with accrued and unpaid interest of $7,933.88 for a total due of $461,297.97.   As of January 20, 2019, there will be $514,477.58 on deposit in the R-D Plainview certificate of deposit. After offsetting the R-D Plainview CD against the R-D Plainview Note, there will remain approximately $53,179.61.

3.    On July 31, 2018, R-D Plainview, Reagor-Dykes Snyder, L.P. ("R-D Snyder") and others were engaged in an alleged check kiting scheme.  In connection therewith, R-D Plainview issued checks payable to R-D Snyder on July 31, 2018, drawn on an account at Vista Bank.  The R-D Plainview checks were:

a)    Check 36651 in the amount of $65,235.00
b)    Check 36652 in the amount of $72,675.00
c)    Check 36653 in the amount of $61,704.00
d)    Check 36654 in the amount of $63,561.00
e)    Check 36655 in the amount of $72,637.00
f)    Check 36656 in the amount of $60,573.00
g)    Check 36751 in the amount of <u>$76,947.00</u>

**$473,332.00**

(Collectively, the "R-D Plainview Dishonored Checks".)  True and correct copies of the R-D Plainview Dishonored Checks are attached hereto as **Exhibit E**.  Each of these checks were returned by R-D Plainview's drawer bank (Vista Bank) with the notation "Frozen/Blocked Account."  Due to Vista Bank's dishonor, AimBank is the owner and holder of each of the above R-D Plainview Dishonored Checks and R-D Plainview is obligated to AimBank on the R-D Plainview Dishonored Checks in the amount of $473,332.00.  AimBank's security interest in the R-D Plainview CD also secures R-D Plainview's debt to AimBank due to R-D Plainview's breach of warranty on the R-D Plainview Dishonored Checks.  *See,* Exhibit A, p.2, ¶ 11.A.(2) and p.3, ¶

3

11.D.(2).  Due to R-D Plainview's breach of its warranty, AimBank is entitled to a common law setoff against the remaining balance of the R-D Plainview CD after the setoff against the R-D Plainview Note balance against the amount of the R-D Plainview Dishonored Checks. Accordingly, the approximate amount of the balance due R-D Plainview CD after paying the R-D Plainview Note is $53,179.61, which secures R-D Plainview's obligation to AimBank on the $473,332.00 R-D Plainview Dishonored Checks.

**B.      Reagor-Dykes Ford/Lincoln**

4.      On December 22, 2016, Reagor-Dykes Auto Company, LP d/b/a Ford Lincoln ("R-D Auto") executed a Promissory Note in the original principle balance of $410,827.42 (Loan XXXX417) (the "R-D Auto Note"), which was a renewal of a Note dated December 14, 2012 in the original amount of $500,000.00.  A true and correct copy of the R-D Auto Note is attached hereto as **Exhibit C**.  Also on December 22, 2016, R-D Auto executed a Commercial Loan Agreement, a true and correct copy of which is attached hereto as **Exhibit D**.  The R-D Auto Note is secured by a certificate of deposit (CD No. XXXX060) held by AimBank in the name of R-D Auto (the "R-D Auto CD").  *See*, Exhibit C, p.2, ¶ 11.A.(1) and p.3, ¶ 11.D.(2).  The Security Agreement contained within the R-D Auto Note also secures all debts owed by R-D Auto to AimBank.  *See*, Exhibit A, p.2, ¶ 11.A.(2).

5.      As of January 9, 2019, the outstanding principal balance of the R-D Auto Note was $355,171.95 plus accrued and unpaid interest of $5,878.10 for a total due of $361,050.05.  As of January 14, 2019, there will be $540,018.01 on deposit in the R-D Auto CD.  After offsetting the R-D Auto CD against the R-D Auto Note, there will remain approximately $178,967.96.

4

6.     On July 31, 2018, R-D Auto, Reagor-Dykes Snyder and others were engaged in an alleged check kiting scheme.  In connection therewith, R-D Auto issued checks payable to R-D Snyder on July 31, 2018, drawn on an account at Vista Bank.  The R-D Auto checks were:

a)     Check 70554 in the amount of $74,535.00

b)     Check 70555 in the amount of $59,110.00

c)     Check 70556 in the amount of $62,504.00

d)     Check 70557 in the amount of $66,748.00

e)     Check 70558 in the amount of $68,110.00

f)     Check 70581 in the amount of $60,757.00

g)     Check 70582 in the amount of <u>$71,928.00</u>

**$463,692.00**

(Collectively the "R-D Auto Dishonored Checks").  True and correct copies of the R-D Auto Dishonored Checks are attached as **Exhibit F**.  Each of these checks were returned by R-D Auto's drawer bank (Vista Bank) with the notation "Frozen/Blocked Account."  Due to Vista Bank's dishonor AimBank is the owner and holder of each of the above R-D Auto Dishonored Checks and R-D Auto is obligated to AimBank on the R-D Auto Dishonored Checks in the amount of $463,692.00.  AimBank's security interest in the R-D Auto CD also secures R-D Auto's debt to AimBank due to R-D Auto's breach of warranty on the R-D Auto Dishonored Checks.  *See,* Exhibit C, p.2, ¶ 11.A.(2) and p.3, ¶ 11.D.(2).  Due to R-D Auto's breach of its warranty, AimBank is entitled to offset the balance due to R-D Auto on the R-D Auto CD payment of the R-D Auto Note against the amount of the R-D Auto Dishonored Checks.  Accordingly, the approximate amount of the balance due R-D Auto CD after paying the R-D Auto Note is $178,967.96, which secures R-D Auto's obligation to AimBank on the $463,692.00 R-D Auto Dishonored Checks.

20170101.20180569/3177017.1

7.      On July 27 and 30, 2018, R-D Snyder, R-D Auto and others were engaged in an alleged check kiting scheme.  In connection therewith, R-D Snyder issued checks payable to R-D Auto, as follows:

a)      Check 3153 in the amount of      $84,663.00
b)      Check 3135 in the amount of      $97,245.00
c)      Check 3145 in the amount of     $105,225.00
d)      Check 3147 in the amount of      $82,387.00
e)      Check 3149 in the amount of     $130,363.00
                                        **$499,883.00**

R-D Snyder also issued checks payable to R-D Plainview, as follows:

a)      Check 3134 in the amount of      $77,148.00
b)      Check 3139 in the amount of      $99,110.00
c)      Check 3141 in the amount of     $119,350.00
d)      Check 3144 in the amount of      $79,850.00
e)      Check 3152 in the amount of      $89,765.00
                                        **$465,223.00**

(Collectively, the "R-D Snyder Checks".)  Due to the R-D Plainview Dishonored Checks and R-D Auto Dishonored Checks, there was insufficient funds in the R-D Snyder bank account to pay the R-D Snyder Checks.  Unaware that the R-D Plainview Dishonored Checks and the R-D Auto Dishonored Checks would be returned, AimBank paid R-D Auto on the R-D Snyder Checks thereby resulting in an overdraft of R-D Snyder's bank account.

## **LEGAL ARGUMENT**

8.      a)      **AimBank is a Secured Creditor**.      Section 506(a)(1) states that a creditor has secured status if the allowed claim of the creditor is secured by a lien against property of the estate or if the property of the estate is subject to setoff under Section 553 of the Code.  11 U.S.C.

20170101.20180569/3177017.1

§506(a)(1). Here, AimBank has both a lien against property of the estate and a right of setoff against that property. Pursuant to Sections 9.310(b)(8), 9.314(a) and 9.104(a)(1) of the Texas Business and Commerce Code (the "Texas UCC"), AimBank has a perfected security interest in both the R-D Plainview CD and the R-D Auto CD to secure the respective Notes and Dishonored Checks.

b)     **Setoff.**  Section 553(a) provides that Title 11 does not affect the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case. 11 U.S.C. § 553(a). Under common law, the right of setoff arose by operation of law as a practical tool to eliminate unnecessary transactions between parties holding mutual debts. *In re Braniff Airways, Inc.,* 42 B.R. 449, 448 (Bankr. N.D. Tex. 1984). The U.S. Supreme Court has explained, "[t]he right of setoff (also called "offset") allows entities that owe each other money to apply this mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). In Texas, a bank has a common law right to apply its customer's deposit account against the customer's debt due the bank. *Mauriceville Nat. Bank v. Zernial,* 892 S.W.2d 858, 860 (Tex. 1995) (citing *Bandy v. First State Bank, Overton, Tex.,* 835 S.W.2d 609, 618 (Tex. 1992). Section 553 recognizes the long-standing principle of the right of setoff of mutual debts. "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Strumpf,* 516 U.S. at 18.

c)     **Automatic Stay.**  Section 362(a)(3) creates a stay of any act to obtain possession of or exercise control over property of the estate. Section 362(a)(7) creates a stay from setoff of

7

any debt owing to the debtor that arose before the commencement of the case.  11 U.S.C. § 362(a)(3) and (7).

d)  **Mutual Debtor/Creditor Relationship Exist**.  When R-D Plainview and R-D Auto deposited funds into AimBank, represented by the respective certificates of deposit, a creditor-debtor relationship was created by the depositor and the bank.  *Gilbert v. First Nat. Bank of Jackson, Miss.,* 633 F.2d 686 (5th Cir. 1980); *Lenk v. Guaranty Bank,* 360 S.W.3d 511, 516 (Tex. App. – San Antonio 2008), *aff'd, Fed. Deposit Ins. Corp. v. Lenk,* 361 S.W.3d 602 (Tex. 2012) (citing *Mesquite State Bank v. Prof'l Inv. Corp.,* 488 S.W.2d 73, 75 (Tex. 1972).

e)  **Loan/CD Setoff**.  As to the two loans, the setoff is straightforward.  R-D Plainview owes AimBank $461,297.97 and AimBank owes the R-D Plainview $514,477.58; and R-D Auto owes the Bank $361,050.05 and AimBank owes R-D Auto $540,018.01.  Furthermore, there is an express grant of a security interest by both R-D Plainview and R-D Auto in the certificates of deposit.  Possession of the cash perfects AimBank's security interest in the two certificates of deposit.  Tex. Bus. & Com. Code § 9.203(a); *First Nat'l Bank v. Lone Star Life Ins. Co.,* 524 S.W.2d 525, 528 (Tex. App. – Dallas 1975), writ ref'd n.r.e. 529 S.W.2d 67 (Tex. 1975) *(per curiam)*.

9.  **Article 3 of Texas Business & Commerce Code**.  Pursuant to Section 3.301 of the Texas UCC, AimBank, as the holder of the R-D Plainview Dishonored Checks and the R-D Auto Dishonored Checks, is entitled to enforce those items.  Tex. Bus. & Com. Code. §3.301.

a)  The R-D Plainview Dishonored Checks, made payable to R-D Snyder, were each deposited into R-D Snyder's account at AimBank, subsequently returned by Vista Bank without payment.  R-D Plainview breached its warranty under the Texas UCC and is liable to AimBank in the amount of the R-D Plainview Dishonored Checks.  AimBank gave credit to R-D Snyder on the

8

R-D Plainview Dishonored Checks, and AimBank is the owner and holder of the R-D Plainview Dishonored Checks. Accordingly, R-D Plainview is obligated to AimBank on the R-D Plainview Dishonored Checks. Tex. Bus. & Com. Code § 3.412. R-D Snyder, as an endorser, is also liable to AimBank. Tex. Bus. & Com. Code § 3.415. Based on the above, R-D Plainview owes AimBank $473,332.00 on the R-D Plainview Dishonored Checks. AimBank owes R-D Plainview approximately $53,179.61 on the balance of the R-D Plainview CD after allowing the setoff related to the R-D Plainview Note. The amount owed AimBank by R-D Plainview far exceeds the remaining balance owed by AimBank on the R-D Plainview CD.

b) The R-D Auto Dishonored Checks were payable to R-D Snyder each of which were deposited into R-D Snyder's account at AimBank and which were returned by Vista Bank without payment. R-D Auto breached its warranty under the Texas UCC and is liable to AimBank in the amount of the R-D Auto Dishonored Checks. AimBank gave credit to R-D Snyder on the R-D Auto Dishonored Checks, and AimBank is the owner and holder of the R-D Auto Dishonored Checks. Accordingly, R-D Auto is obligated to AimBank on the R-D Auto Dishonored Checks. Tex. Bus. & Com. Code § 3.412. R-D Snyder, as an endorser, is also liable to AimBank. Tex. Bus. & Com. Code §3.415. Based on the above, R-D Auto owes AimBank $463,692.00 on the R-D Auto Dishonored Checks. AimBank owes R-D Auto approximately $178,967.96 on the balance of the R-D Auto CD, after allowing the setoff related to the R-D Auto Note. The amount owed AimBank by R-D Auto far exceeds the remaining balance owed by AimBank on the R-D Auto CD.

10. **Money Had and Received**. R-D Plainview, R-D Auto and R-D Snyder, together with numerous other Reagor-Dykes entities were, prepetition, engaged in an alleged check kiting scheme which involved the entities issuing checks to their affiliates thereby utilizing the "float" to

create the illusion of valid transactions. R-D Snyder issued five checks to R-D Plainview aggregating $465,223.00 and five checks to R-D Auto aggregating $499,883.00. Accordingly, R-D Plainview and R-D Auto holds funds which in equity and good conscience belong to AimBank under the principles of "money had and received." *Saints v. Miller,* 243 S.W.2d 686, 187-88 (Tex. 1951); *Greer v. White Oak State Bank,* 673 S.W.2d 326, 329 (Tex. App. – Texarkana 1984, no writ); *Compass Bank v. Villarreal,* 2012 WL 13046325 at *5 (S.D. Tex. Mar. 13, 2012). R-D Plainview and R-D Auto have been unjustly enriched by receiving money through the alleged check kite scheme that in equity and good conscience belongs to AimBank. The principle of money had and received allows for AimBank to recover against R-D Plainview and R-D Auto under an unjust enrichment claim of "money had and received." *Saints v. Miller,* 243 S.W.2d at 678-88; *Compass,* 2012 WL 13046325, at *5. Furthermore, Section 3.418(b)(1) of the Texas Business & Commerce Code allows for AimBank to recover against R-D Plainview and R-D Auto on the R-D Snyder checks paid by mistake. Tex. Bus. Com. Code. §3.418(b)(1).

11.     Pursuant to Section 362(d)(1) and (2), the automatic stay should be lifted for cause because neither Debtor (R-D Plainview nor R-D Auto) has equity in the respective certificates of deposit and neither certificate of deposit is necessary for an effective reorganization. Cause exists under § 362(d)(1) because the prepetition conduct of the various Reagor-Dykes entities regarding their kiting scheme was fraudulent and placed numerous banks in the position of funding checks that the management of Reagor-Dykes knew or should have known was simply a game of musical chairs. The claims of AimBank against R-D Plainview and R-D Auto far exceed the value of the R-D Plainview CD and the R-D Auto CD. The interest accrual on the R-D Plainview Note and the R-D Auto Note is greater than the interest accrual of the respective certificates of deposit and

20170101.20180569/3177017.1

AimBank, being an under-secured creditor, lacks adequate protection of its interests in the respective certificates of deposit.

12. Neither the R-D Plainview CD nor the R-D Auto CD is necessary to either Debtor because the certificates of deposit secure AimBank's claim and no effective reorganization is possible. The Debtors cannot utilize the cash of the certificates of deposit because they do not substitute collateral to adequately protect AimBank.

13. Setoff is appropriate to allow AimBank to offset a) the R-D Plainview CD against the balance due on the R-D Plainview Note and then towards the R-D Plainview Dishonored Checks; and b) the R-D Auto CD against the R-D Auto Note and then towards the R-D Auto Dishonored Checks.

WHEREFORE, PREMISES CONSIDERED, AimBank prays that the automatic stay be lifted so that AimBank may:

a) Offset the R-D Plainview CD against the obligations of R-D Plainview on the R-D Plainview Note and the R-D Plainview Dishonored Checks;

b) Offset the R-D Auto CD against the obligations of R-D Auto on the R-D Auto Note and the R-D Auto Dishonored Checks; and

c) that the Court grant AimBank such other and further relief as is just.

20170101.20180569/3177017.1

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: */s/ Michael J. Durrschmidt*
    Michael J. Durrschmidt
    Texas Bar No. 06287650
    Victoria N. Argeroplos
    Texas Bar No. 24105799
    1415 Louisiana, Floor 36
    Houston, Texas 77002
    Telephone: 713-220-9165
    Facsimile: 713-223-9319
    E-mail: mdurrschmidt@hirschwest.com
    E-mail: vargeroplos@hirschwest.com

BOERNER, DENNIS & FRANKLIN, PLLC

By: */s/ Jeff R. Lashaway*
    Jeff R. Lashaway
    Texas Bar No. 24013007
    P.O. Box 1738
    Lubbock, Texas 79408
    Telephone: 806-763-0044
    Facsimile: 806-763-2084
    E-mail: jlashaway@bdflaw.com
**ATTORNEYS FOR AIMBANK**

## CERTIFICATE OF CONFERENCE

On January 17, 2019, the undersigned transmitted a copy of this Motion to Debtors' counsel via email in an attempt to create a dialogue regarding same. On the morning of January 22, 2019, I called Ashley Ellis and left a detailed message; however, I have not received a return phone call.

*/s/ Michael J. Durrschmidt*
Michael J. Durrschmidt

## CERTIFICATE OF SERVICE

I, Michael J. Durrschmidt, hereby certify that on the 22nd day of January, 2019, a copy of the foregoing was served via first class mail, postage prepaid, and/or via the Clerk of the Court through the ECF system.

*/s/ Michael J. Durrschmidt*
Michael J. Durrschmidt

20170101.20180569/3177017.1