# EXHIBIT "C"

Case 18-50214-rlj11 Doc 936-3 Filed 02/05/19 Entered 02/05/19 11:42:30 Page 2 of 3



# GM FINANCIAL

## Deposit Account Control Agreement

**Date:** January 23, 2018     **Account No(s).:** ▮3183, ▮1026

This Deposit Account Control Agreement (this "Agreement") is entered into and effective as of the date first written above, by and between REAGOR-DYKES SNYDER, L.P. ("Dealer"), AIMBank ("Bank") and AmeriCredit Financial Services, Inc., doing business as GM Financial ("Lender").

## 1. RECITALS

This Agreement is made with reference to the following facts:

1.1. **Security Interest.** Dealer has granted, or hereby grants, a security interest in favor of Lender in Dealer's deposit accounts, inventory, equipment, accounts, other collateral and collateral proceeds, including any rights that Dealer has to all funds now and in the future on deposit in Dealer's deposit account(s) with Bank.

1.2. **Proceeds in Trust for Lender.** Dealer has designated the deposit account(s) for which the account number(s) have been set forth above (collectively, and together with any renumbered or successor accounts, the "Operating Account") as the deposit account(s) into which Dealer will deposit cash and cash equivalent proceeds derived from the sale, lease or other disposition of Lender's collateral. Dealer has agreed that these proceeds belong to Lender, and that at all times while Dealer may hold the proceeds (whether directly or in the form of deposits with Bank), it will hold such funds "in trust" for and on behalf of Lender.

1.3. **Borrower's Use of Account.** Under Dealer's agreement with Lender, Dealer has the continuing right to write checks on, make payments from, make deposits into, and withdraw funds from, the Operating Account until such time as Lender instructs Bank of its intention to exercise control over the Operating Account.

## 2. AGREEMENT

Dealer, Bank and Lender agree that:

2.1. **Operating Account.** The Operating Account is a deposit account under the Uniform Commercial Code, as amended from time to time. For the purposes of this Agreement, the Operating Account shall include all subaccounts, if any, presently existing or hereafter established for deposit reporting purposes and integrated with the Operating Account by an arrangement in which deposits made through subaccounts are posted to the Operating Account.

2.2. **Adverse Claims.** Dealer and Bank represent and warrant that there are no perfected liens or encumbrances with respect to the Operating Account (other than liens or encumbrances in favor of Lender and Bank). Bank covenants that, so long as this Agreement remains in effect, it shall not enter into an agreement with, or comply with any instructions from, any entity or person other than Lender or Dealer as to the disposition of funds in, or restriction of access to, the Operating Account.

2.3. **Control Notice.** In order to provide Lender with control over the Operating Account, Dealer and Bank agree that if, at any time, Bank receives written notice ("Control Notice") from Lender or its attorney of Lender's intention to exercise control over the Operating Account, Bank shall comply exclusively with Lender's instructions as to the withdrawal or disposition of funds in the Operating Account or as to any other matters relating to the Operating Account, all without further consent of Dealer or any other person.

2.4. **Third-Party Instructions; Legal Process.** If, at any time, Lender delivers to Bank a Control Notice, Bank agrees that, after receipt of such Control Notice, it shall cease taking instructions regarding the Operating Account from Dealer or any other party. Bank shall have no duty to inquire into or determine the existence or enforceability of Dealer's obligations to Lender or whether such obligations are in default. Notwithstanding the foregoing, Bank shall be permitted at any time to comply with any writ, levy or other similar judicial or regulatory order or process concerning the Operating Account and shall not be in violation of this Agreement for such compliance.

2.5. **Information.** Bank will respond to any inquiries from Lender or its attorney regarding the Operating Account, and Dealer's financial dealings with Bank, without Dealer's further consent. Dealer waives any right of privacy and confidentiality that Dealer has with respect to information and comments that Bank may provide to Lender, and Dealer releases and relieves Bank and its employees and agents from any and all liability in this regard.

2.6. **Subordination by Bank.** Bank subordinates to the security interest of Lender all present and future liens, encumbrances, claims and rights of setoff in the Operating Account, or in any funds in the Operating Account, other than Bank's customary fees and charges with respect to the maintenance of the Operating Account.

633 Deposit Control (Rev. 8/15)     DEPOSIT ACCOUNT CONTROL AGREEMENT     Page 1 of 2

2.7. **Authorization and Indemnification by Dealer.** Dealer irrevocably directs and authorizes Bank to comply with any instruction or inquiry by Lender authorized under the provisions of this Agreement, even in the event that Dealer later objects to such instructions or inquiries in any way, and agrees to indemnify and hold Bank harmless from any and all liability related to such compliance.

2.8. **Successors and Assigns.** The terms of this Agreement shall be binding upon, and shall inure to the benefits of, the parties hereto and their respective assigns and successors.

2.9. **Severability.** If a court finds any provision of this Agreement to be invalid and unenforceable, the offending provision will be deemed to be modified to be within the limits of enforceability. If this cannot be done, the offending provision will be deemed to be stricken, and all other provisions of this Agreement will remain valid, enforceable and in effect.

2.10. **Termination.** Lender may terminate this Agreement by written notice to Bank. Bank may terminate this Agreement on 30 days' prior written notice to Dealer and Lender. Dealer may not terminate this Agreement except with the written consent of Lender.

2.11. **Amendments.** This Agreement may be amended only by a writing signed by each the parties hereto.

2.12. **Notices.** All notices, instructions or other communications to a party required under this Agreement shall be in writing and shall be sent to the party's address for notices set forth below or to such other address as shall be designated by such party by notice given to the other parties.

2.13. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original instrument. The signatures of the parties, exchanged via fax or e-mail, shall constitute and be deemed an original signature for all purposes.

2.14. **Entire Agreement.** This Agreement contains the entire agreement between the parties in connection with its subject matter and supersedes all prior agreements and negotiations, whether written or oral.

2.15. **Authority to Execute.** The parties hereto represent and warrant that the persons signing this Agreement on their behalf are duly and properly authorized to do so.

The parties hereto have caused this Agreement to be duly executed on the date first written above.

| DEALER NAME | | | |
|---|---|---|---|
| REAGOR-DYKES SNYDER, L.P. | | | |
| By: REAGOR AUTO MALL I, L.L.C., its General Partner | | | |
| BY (SIGNATURE): *[signed]* | | | |
| NAME: Bart Reagor | ADDRESS: 4004 Spur Business 84 | | |
| TITLE: President | CITY: Snyder | STATE: TX | ZIP: 79549 |

| BANK | | | |
|---|---|---|---|
| AIMBank | | | |
| BY (SIGNATURE): *[signed]* | | | |
| NAME: MIKE TIBBIT | ADDRESS: 3004 SLIDE ROAD LUBBOCK, TX. 79407 | | |
| TITLE: SENIOR VICE PRESIDENT | CITY: | STATE: | ZIP: |

| Lender | | | |
|---|---|---|---|
| BY (SIGNATURE): *[signed]* | | | |
| NAME: Kell Kisrow | ADDRESS: 220 East Las Colinas Boulevard, Suite 500 | | |
| TITLE: Assistant Vice President | CITY: Irving | STATE: TX | ZIP: 75039 |