Duane M. Geck
Cal. State Bar No. 114823
dmg@severson.com
Donald H. Cram
Cal. State Bar No. 160004
Tex. State Bar No. 05000300
dhc@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Keith A. Langley
State Bar No. 11919500
Brandon K. Bains
State Bar No. 24050126
LANGLEY LLP
1301 Solana Blvd
Building 1, Suite 1545
Westlake, Texas 76262
Telephone:    214.722.7171
Facsimile:    214.722.7161
bbains@l-llp.com

Attorneys for Secured Creditor
FORD MOTOR CREDIT COMPANY LLC

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| IN RE: | § | |
| --- | --- | --- |
| | § | |
| **REAGOR-DYKES MOTORS, LP** | § | Case No. 18-50214-rlj11[1] |
| | § | (Jointly Administered) |
| Debtor. | § | |

**FORD MOTOR CREDIT COMPANY LLC'S AMENDED OBJECTION TO AMENDED EMERGENCY MOTION TO COMPEL GLOBAL MEDIATION**

---

[1] The Debtors are Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), and Reagor-Dykes Floydada, LP (Case No. 18-50219).

Ford Motor Credit Company LLC ("Ford Credit") submits this objection to the Debtors' Amended Emergency Motion to Compel Global Mediation ("Emergency Motion") respectfully showing the Court as follows:

## I.  INTRODUCTION

Over the past six (6) months, the Debtors have had ample opportunity to sell its assets or to advocate approval/confirmation of a Plan and Disclosure Statement.  This has not come to fruition.  The Debtors' § 363 Sale process failed and although a Plan has been filed, no steps have been taken to advance confirmation as it lakes support.  Now, without any proposals, without any agenda, and without any specific issues to be resolved, the Debtors seek to compel numerous parties to participate in a global mediation in less than two (2) weeks.  At this point, any mediation attempt cannot be successful as there is no agenda, opportunity to discuss, or articulated dispute to resolve.  As such, the motion should be denied.

## II.  PERTINENT FACTS

1. On August 1, 2018 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").

2. Debtors are automobile dealerships engaged in the business of selling and leasing vehicles to retail customers and servicing vehicles for customers.

3. Prior to the Petition Date, Ford Credit provided Debtors financing for Debtors' acquisition of vehicle inventory to be used in their dealership operations.  Generally speaking, Debtors entered into wholesale financing agreements and other loan agreements with Ford Credit, as well as security agreements granting Ford Credit a lien in all Debtors' vehicle inventory, as well as the proceeds of such inventory, and all other tangible and intangible property.  The financing agreements, security agreements and all related ancillary documents entered into in financing individual vehicles are hereafter referred to as the "Loan Documents".  The collateral pledged to secure the obligations set forth in the Loan Documents is hereinafter referred to as the "Collateral".  The titles and dates of the Loan Documents are identified and

attached to the Declaration of Paul A. Boudreau in support of this motion filed August 9, 2018 [*Docket No. 55*].

4. The interests granted to secure the amounts financed by Ford Credit are perfected by UCC-1 Financing Statements filed in the State of Texas, and thus, Ford Credit holds a properly perfected lien in the Collateral. The filing numbers and dates of the UCC-1s are also attached to the Declaration of Paul A. Boudreau in support of this motion filed August 9, 2018 [*Docket No. 55*].

5. Debtors are indebted to Ford Credit in an amount that exceeds $112 million with interest and other charges continuing to accrue.[2] The indebtedness owing to Ford Credit is secured as Ford Credit holds a pre-petition lien, in first position, in the Collateral, including Debtors' franchises and goodwill, and any proceeds therefrom.

6. Debtors' operating revenue is primarily generated through the sales and leasing of the new and used vehicles.

7. Due to pre-petition events of default and other acts of Debtors, Ford Credit asserts, and Debtors does not dispute, that Ford Credit is undersecured.[3]

8. Debtors embarked on a § 363 sale process which culminated in an unsuccessful auction on November 27th and November 28th, 2018. On November 29, 2018,

9. Debtors tabled their § 363 sale motion in favor of pursuing a reorganization path as outlined in the Memorandum.

10. Due to Debtors' inability to generate sufficient cash from sales of vehicles or from other sources (such as contracts in transit) and in an effort to support continued operations through a § 363 sale, beginning October 25, 2018, Ford Credit allowed Debtors to sell

---

[2] Ford Credit filed Proof of Claims on December 4, 2018 in the six Debtor Cases in the amount of $112,041,555.00. No objections to these claims have been filed.

[3] Debtors filed Schedules of Assets and Liabilities on October 19, 2018 that list personal property assets of approximately $98 million (which includes outstanding notes owed to Debtors by Bart Reagor and Rick Dykes in the approximate amount of $7 million, amounts held in various bank accounts as well as goodwill value arising from the franchise agreements).

approximately $1.38 million in used vehicles and retain all net proceeds from those sales to be utilized to continue operations and pay professionals. See paragraph 4 of the Fifth Interim Cash Collateral Order entered November 19, 2018 [*Docket No. 567*].

11. Under the terms of the Sixth Interim Cash Collateral Order entered December 31, 2018 [*Docket No. 764*], Debtors' ability to use Ford Credit's cash collateral expired January 5, 2019.

12. Although the filing of the Plan was promised shortly after the hearing on November 29, 2018, Debtors filed a Plan of Reorganization on January 7, 2019. Since the filing of the Plan, Debtors have not submitted a Disclosure Statement, nor have they taken any effort to move the reorganization process forward..

13. By Order dated January 22, 2019, the Court granted Ford Credit relief from the automatic stay allowing it to take possession and dispose of Ford Credit's vehicle and non-vehicle collateral. Ford Credit is proceeding with its efforts to take possession and dispose of its collateral.

14. Debtors limited, sources of cash to enable Debtors to continue operations or to pay further professional fees and costs of administration.

15. Debtors filed the instant Emergency Motion seeking a Court order compelling numerous parties to participate in a mediation scheduled for February 20, 2019. However, it is unclear what specific disputes and between which parties the mediation hopes to resolve.

### III. OBJECTION

Ford Credit does not dispute the Court's inherent power to order parties to mediation. *In re Atlantic Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002). The Court also has the ability to enforce any mediation-related orders. *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *In re Novak*, 932 F.2d 1397, 1407 (11th Cir. 1991). Although the Court can require parties to attend mediation, it cannot force the parties to reach a resolution. *Dawson v. United States*, 68 F.3d 886, 896–897 (5th Cir. 1995).

The purpose of mediation is to resolve specific disputes between specific parties. By way of the Emergency Motion, the Debtors take a shotgun approach seeking to compel more than

twenty (20) different parties (not including the catch all, "any Retail Lender" and "any Bank that has appeared in the Case") to mediate any number of unnamed disputes in less than two weeks without any confirmable plan or proposal. This is not a recipe for a successful mediation. If the Debtors have proposals, an agenda or seek to resolve specific disputes, they should be articulated before the Court compels parties to mediate. Without any starting point and absent structure, any compelled mediation is likely to result in a waste of resources, time and goodwill. At this point, the estate is administratively insolvent and Debtors should not be permitted to further waste its resources and the resources of creditors.

## IV.  CONCLUSION

For the reasons set forth above, Ford Credit respectfully requests that this Court:

1. Deny the Debtors' Emergency Motion; and

2. Enter such other and further relief as this Court deems necessary and proper.


DATED:  February 7, 2019          SEVERSON & WERSON
                                  A Professional Corporation


                                  By:   /s/ Donald H. Cram
                                        Donald H. Cram
                                  Cal. State Bar No. 160004
                                  Tex. State Bar No. 05000300
                                  SEVERSON & WERSON
                                  A Professional Corporation
                                  One Embarcadero Center, Suite 2600
                                  San Francisco, California 94111
                                  Telephone: (415) 398-3344
                                  Facsimile: (415) 956-0439
                                  dhc@severson.com

                                  Attorneys for Secured Creditor
                                  FORD MOTOR CREDIT COMPANY LLC

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing has been served electronically by the Court's ECF System on all parties registered to receive such service on the 7th day of February, 2019.

                                      /s/ Donald H. Cram\_\_\_
                                      Donald H. Cram