MCGLINCHEY STAFFORD, PLLC
Stephen P. Strohschein, LA Bar Roll #12541
301 Main Street, 14th Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 383-9000
Facsimile: (225) 343-3076
sstroh@mcglinchey.com

and

R. Dwayne Danner
6688 N. Central Expressway
Suite 400
Dallas, Texas 75206
Telephone: (214) 445-2445
Facsimile: (214) 445-2450
Email: ddanner@mcglinchey.com

COUNSEL FOR AMERICREDIT FINANCIAL SERVICES, INC., DOING BUSINESS AS GM FINANCIAL

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| REAGOR-DYKES MOTORS, LP[1] | * | CASE NO. 18-50214-rlj-11 |
| | * | (Jointly Administered) |
| Debtor | * | |

**********************************************************************

**AMERICREDIT FINANCIAL SERVICES, INC. D/B/A/ GM FINANCIAL'S
MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)**

> **THIS DOCUMENT PERTAINS TO
> REAGOR-DYKES SNYDER, LP (CASE NO. 18-50321)**

---

[1] The Debtors are Reagor-Dykes Motors, LP (Case No. 18-50214), Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III, LLC (Case No. 18-50322), Reagor-Dykes II, LLC (Case No. 18-50323), Reagor-Dykes Auto Mall, Ltd. (Case No. 18-50324), and Reagor-Dykes Auto Mall I, LLC (Case No. 18-50325).

> PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.
>
> ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE GEORGE MAHON FEDERAL BUILDING, 1205 TEXAS AVENUE, ROOM 306, LUBBOCK, TEXAS 79401-4002 BEFORE THE CLOSE OF BUSINESS ON ANY DAY, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF OR IN THE EVENT OF AN EXPEDITED HEARING, AT SUCH HEARING. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.

**NOW INTO COURT**, through undersigned counsel, comes **AmeriCredit Financial Services, Inc. d/b/a GM Financial** ("GM Financial"), the holder of a properly perfected first-in-right security interest in and to substantially all of the assets of Debtor, Reagor-Dykes Snyder, L.P. (the "**Debtor**"), which moves the Court, pursuant to the provisions of 11 U.S.C. §362(d) and Fed. R. Bankr. P. 4001 for an order granting GM Financial relief from the automatic stay of the Debtor's case, and in support whereof GM Financial respectfully states the following:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (G). The statutory basis for relief sought herein is provided by 11 U.S.C. §362(d) and Fed. R. Bankr. P. 4001.

## BACKGROUND

2.  On November 2, 2018, (the "Filing Date"), the Debtor filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code with this Court. The Debtor generally continues in possession and control of its assets and is engaged in its business activities, which activities primarily relate to the sale of motor vehicles. Specifically, the Debtor is the holder of various motor vehicle franchises pursuant to agreements between it and General Motors LLC ("General Motors"), under which Debtor operates a new and used automobile dealership in Snyder, Texas.

3.  An Official Committee of Unsecured Creditors has not been appointed. A Trustee or Examiner has also not been appointed, although BlackBriar Advisors LLC is acting as the Chief Restructuring Officer or "CRO" by virtue of an order of this Court entered on January 17, 2019 [Dkt 862].

4.  GM Financial is a secured creditor of the Debtor and the holder of a duly perfected first priority security interest in virtually all assets of the Debtor by virtue of that certain Master Loan Agreement dated January 23, 2018 (the "MLA").[2] Under the MLA, GM Financial agreed to extend new vehicle floorplan financing and used vehicle floorplan financing to Debtor, and with these loans from GM Financial, Debtor purchased new motor vehicles and used motor vehicles as inventory for its automobile dealership. Pursuant to the MLA, certain terms and conditions of that agreement are set forth in an Operative Schedule 1, as it may be changed, modified, amended or replaced from time to time. The Operative Schedule 1 is also dated January 23, 2018, and references to the MLA shall collectively mean the MLA and the Operative Schedule 1.

---

[2] A true and correct copy of the Master Loan Agreement is attached as Exhibit GMF-1 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."

5. In addition, the Debtor executed that certain Joint Notice of Assignment and Demand for Payment (General Motors LLC) dated January 23, 2018, pursuant to which the Debtor gave GM Financial the right to require, among other things, that all factory receivables owed or to be paid to the Debtor by General Motors, such as rebates, holdback, warranty service work, etc., be paid directly to GM Financial (the "Factory Assignment").[3]

6. Further, the Debtor executed that certain Deposit Account Control Agreement dated January 23, 2018 pursuant to which the Debtor gave GM Financial a security interest in and over its deposit accounts at AimBank, which agreement also gives GM Financial the right to require, among other things, that all amounts on deposit owed to the Debtor be paid directly to GM Financial upon demand (the "DACA").[4] The DACA was perfected by acknowledgment of AimBank.

7. Further, previous to GM Financial's agreement to provide floorplan financing to Debtor through the MLA, the Debtor and GM Financial had entered an agreement by which GM Financial would provide retail financing to the Debtor's customers. On December 8, 2016, the Debtor executed a "Dealer Agreement" with GM Financial which provides those terms, conditions, representations and warranties under which GM Financial agreed to provide that financing (the "Retail Agreement").[5]

---

[3] A true and correct copy of the Factory Assignment is attached as Exhibit GMF-2 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."
[4] A true and correct copy of the Deposit Account Control Agreement is attached as Exhibit GMF-3 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."
[5] A true and correct copy of the Dealer Agreement is attached as Exhibit GMF-4 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."

8. Additionally, GM Financial holds three Continuing Guaranty agreements, each dated January 23, 2018 executed by Rick Dykes, Bart Reagor and Reagor Auto Mall I, LLC (the "Guaranties").[6]

9. Under the MLA, the Factory Assignment, and the DACA, GM Financial was granted a security interest in all of the assets of the Debtor, including inventory (whether or not financed by GM Financial), equipment, accounts, cash and deposit accounts, general intangibles and all proceeds therefrom for each and every obligation of the Debtor to GM Financial. GM Financial perfected its security interest in the Debtor's property by filing a UCC-1 financing statement in the Texas Secretary of State's office, which UCC-1 was duly recorded on January 17, 2018, as Filing No. 18-0001917835 (the "UCC-1,"[7] which with the MLA, the Retail Agreement, the Factory Assignment, the DACA, the Guaranties and GM Financial's other standard lending documents are collectively referred to as the "Loan Documents").

10. UCC financing statements have been filed by other creditors for the purchase money of particular items, some of which pre-date GM Financial's all-asset filing, but GM Financial has the first priority "blanket lien" on all of the Debtor's assets and particularly on all of the Debtor's inventory and any cash collateral.

11. GM Financial's security interests secure all amounts owed by the Debtor to GM Financial including without limitation those amounts owed under the MLA and the Retail Agreement.

---

[6] A true and correct copy of the Continuing Guaranties are attached as Exhibits GMF-5 through GMF-7 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."
[7] A true and correct copy of the UCC-1 Financing Statement is attached as Exhibit GMF-8 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."

12. One of the Debtor's principal obligations under the MLA and other credit facility documents was (and is) to deliver to GM Financial the proceeds derived from the sale of vehicles financed by GM Financial after any such sale was completed as was (is) necessary to retire the floor plan obligation due for that vehicle. In fact, under the MLA the Debtor agrees to hold such proceeds, in whatever form they may be received, "in trust" for and on behalf of GM Financial, with the Debtor "assuming full fiduciary duties, responsibilities, and obligations to and in favor of [GM Financial] . . ."[8]

13. Upon being informed of the problems Ford Motor Credit Corporation ("FMCC") discovered at the affiliate dealerships and the bankruptcy filing of those affiliates (the "FMCC Debtors"), GM Financial began its own investigation at Snyder and discovered that the Debtor had previously sold approximately sixty-eight (68) vehicles in which the proceeds were received by the Debtor and for which these proceeds were not delivered to GM Financial. As a consequence Debtor is "out of trust" or "SOT" with GM Financial. GM Financial's current estimate of the Debtor's SOT balance totals $2,838,722.18.[9] GM Financial is currently unaware of the disposition of these proceeds.

14. Additional events of default under the MLA, the Retail Agreement and the Loan Documents have occurred including without limitation the failure to pay monthly interest and insurance charges, the failure to pay monthly curtailments, the double-floorplanning of certain vehicles, and the failure to pay trade-in liens and tax, title and license charges with regard to GM Financial's retail financing for the Debtor's customers.

---

[8] See Section 6.1 of the MLA.
[9] A listing of the vehicles comprising the Sold Out of Trust amount is attached as Exhibit GMF-9 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A."

15. As a result of the defaults, GM Financial has maintained the presence of a lender representative at the dealership to hold all keys, titles and manufacturer certificates of origin ("MCOs"), to immediately collect proceeds of the sale of any item of inventory, and has maintained after-hours security at the dealership premises.

16. As outlined above, GM Financial's security interest includes all funds in the Debtor's pre-petition bank accounts, cash in the Debtor-In-Possession accounts and virtually all cash to be generated by the Debtor post-petition (the "**Cash Collateral**"). GM Financial has consented to the Debtor's limited use of its cash collateral by virtue of a First Interim Order entered on December 10, 2018 [Doc. 673], which was renewed by a Second Interim Order, entered December 14, 2018 [Doc. 702]. The Debtor's request for continued use of GM Financial's cash collateral is currently scheduled for hearing on February 20, 2019.

## LACK OF EQUITY IN GM FINANCIAL'S COLLATERAL

17. As of November 9, 2018, the Debtor owed GM Financial the principal amount of $14,636,321.01 under its floorplan indebtedness, which is broken down as follows:

| Description | Amount |
|---|---|
| New Inventory | $ 12,504,422.67 |
| New Demos | $ 311,277.61 |
| Used Inventory | $ 1,684,527.03 |
| Courtesy Transportation | $ 136,093.70 |
| TOTAL | $ 14,636,321.01 |

GM Financial is further owed a significant amount of money with regard to the Debtor's defaults under the Retail Agreement which it estimates to be $1,081,690.80.[10] All obligations owed to GM

---

[10] GM Financial's current estimate is that it will need to pay $60,586.11 to satisfy tax, title and license fees on its retail portfolio, $193,407.24 in trade-in liens, and is owed $38,500.00 for trade-in liens directly to GM Financial, and is owed $522,353.95 in Dealer Agreement Violations, and $288,852.77 in Future Ancillary Refunds, all as more specifically delineated and described in GM Financial's proof of claim to be filed in this case.

Financial continue to accrue interest, expenses and attorney's fees. Interest and insurance charges alone totaled $854,489.90 as of January 31, 2019.[11]

18. As of the filing of this Motion, GM Financial would estimate that the total current value of the vehicle inventory is less than the balance due for those vehicles, but for purposes of this Motion, GM Financial is willing to deem the value of the vehicles to be equal to the balance due for those vehicles. This would leave a deficiency balance due to GM Financial of the SOT balance ($2,838,722.18) *plus* the amount that will be due under the Retail Agreement ($1,081,690.80), *plus* past due interest and insurance charges ($854,489.90), or approximately $4,774,902.88.

19. Other collateral securing this balance exists, such as the deposit accounts at AimBank[12] and the factory receivables from General Motors[13]. Additionally, the parts inventory, accounts receivable and furniture, fixture and equipment of the Debtor provide some collateral value for GM Financial.

---

[11] See Exhibit GMF-12 attached to the Declaration of Howard S. Ravitz.

[12] GM Financial made demand upon AimBank on August 7, 2018 to turn over all funds then on deposit or subsequently deposited into the Debtor's accounts, a true and correct copy of which is attached as Exhibit GMF-10 to the Declaration of Howard S. Ravitz attached hereto as Exhibit "A." GM Financial has not received any funds from AimBank and reserves all rights under the DACA against AimBank. As of delivery of the demand letter, AimBank was holding $24,367.76 in the Debtor's savings account and the checking account was overdrawn in the amount of $1,953,302.02, according to the records of AimBank.

[13] GM Financial sent notice to General Motors on August 3, 2018 to make all future payments due to the Debtor by General Motors to GM Financial pursuant to the Factory Assignment, a true and correct copy of which is attached as Exhibit GMF-11 to the Declaration of Howard S. Ravitz attached hereto as Exhibit "A." GM Financial has not received any funds from General Motors and understands that General Motors has engaged in its own audits to determine what rights it may have against the monies which might otherwise be due to the Debtor, but now payable to GM Financial.

20. Finally, GM Financial's collateral consists of all general intangibles owned by the Debtor which would include any "blue sky" value attributable to the on-going business and franchise contracts of the Debtor.[14]

21. GM Financial estimates that the value of all additional collateral will be significantly less than the $4.8mm deficiency reflected above.

22. Given the amount of debt owed by the Debtor to GM Financial and the fact that the Debtor's assets are without sufficient value to satisfy GM Financial's claims, it is clear that no equity exists in the Collateral and that GM Financial is under-secured in this case.

## RELIEF FROM THE STAY IS APPROPRIATE

23. Pursuant to 11 U.S.C. §362, upon the commencement of the instant bankruptcy case, GM Financial was stayed from taking any action against the Debtor to obtain possession of the Collateral.

24. As outlined above, upon the filing of its petition, the Debtor was in default pursuant to the terms and conditions of the operative documents and the MLA because of the Debtor's SOT status with GM Financial, the other defaults discussed above, and because the Debtor has insufficient working capital to operate a dealership, much less meet GM Financial's lending standards.

25. Pursuant to the provisions of 11 U.S.C. §362(d), the Court shall grant a secured creditor relief from the automatic stay for either "cause" or if the debtor does not have equity in the property and if the property is not necessary for an effective reorganization.

---

[14] GM Financial's cooperation with the Debtor and decision not to pursue relief from the stay earlier in this case was based in large part on the belief that the recovery of the blue sky value of the Snyder dealership would significantly reduce GM Financial's deficiency. The Debtor's current plan fails to provide any recovery for GM Financial on the basis of the blue sky value of the dealership.

26. Although this case was filed only in November of 2018, the Court is very familiar with the earlier filings of the FMCC Debtors on August 2, 2018, the auction process that was begun in those cases and the failure of that auction process to find a purchaser for those dealerships. Although the Debtor was not specifically part of the auction process, the "new case debtors" filed in November were always part of the conversations during the auction process, the failure of which also reflects a failure of the Reagor-Dykes Automotive Group generally to attract any meaningful interest.

27. Consequently, under the holding of the U.S. Supreme Court in *Timbers*,[15] the "reasonable possibility for a successful reorganization within a reasonable time" does not exist with regard to the Debtor any more than it exists with regard to the FMCC Debtors, as this Court found in connection with the relief this Court granted FMCC pursuant to its lift stay motion [Doc. 865].

28. GM Financial further submits that "cause" exists for lifting the stay under §362(d)(1) as GM Financial's collateral has been depreciating since August of 2018, with no curtailments being paid to GM Financial as would occur in the ordinary course of business. As of January 31, 2019, past due curtailments had accumulated to a total of $161,288.50,[16] which represents a minimal amount of depreciation.

29. Additionally, routine interest and insurance charges have not been paid since July of 2018. The average monthly charges from August of 2018 through January of 2019 for these amounts is approximately $122,000.00.[17]

---

[15] *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 US 365, 108 S.Ct. 626, 98 L.Ed2d 740 (1988).
[16] See Exhibit GMF-12 attached to the Declaration of Howard S. Ravitz attached hereto as Exhibit "A."
[17] See Exhibit GMF-12 attached to the Declaration of Howard S. Ravitz, $854,489.90 divided by 7 months, equals $122,069.99.

30. Further, GM Financial is incurring extraordinary costs and expenses for protecting its collateral. As noted above, GM Financial maintains a lender representative at the Debtor's dealership during business hours and maintains security during non-business hours. Further, GM Financial is incurring additional expenses for the increased floorplan audits that it has reasonably imposed. The average monthly charges from August of 2018 through January of 2019 for these amounts is $42,352.01.[18]

31. When attorney's fees are added, the Debtor's Chapter 11 filing is costing GM Financial approximately $200,000.00 per month. GM Financial was willing to incur this cost for a limited period of time when the prospects of a reorganization were deemed more viable, but such does not currently appear to be the case.

32. Finally, sufficient cause exists to waive the requirement of Bankruptcy Rule 4001(a)(3), allowing an Order to be effective upon entry by this Court, as the Collateral is easily moved, easily secreted, easily damaged and can significantly depreciate in value within the fourteen-day period that would otherwise stay recovery of the Collateral.

33. Accordingly, GM Financial respectfully submits that sufficient cause exists to grant relief from the automatic stay herein and it is therefore appropriate, under the provisions of 11 U.S.C. §362(d), to grant GM Financial relief from the automatic stay from the Debtor's case.

---

[18] See Exhibit GMF-13 to the Declaration of Howard S. Ravitz, attached hereto as Exhibit "A," $254,112.08 divided by 6 months equals $42,352.01.

## WAIVER OF MEMORANDUM OF LAW

34.     GM Financial requests waiver of the requirement of the service and filing of a separate memorandum of law in connection with this Motion in that there are no new or novel issues of law and all relevant authorities are cited herein.

## NO PRIOR REQUEST

35.     No prior request for relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, **AmeriCredit Financial Services, Inc. d/b/a GM Financial** respectfully requests that the Court enter an Order:

(a)     pursuant to 11 U.S.C. §362(d) granting GM Financial relief from the automatic stay in order to dispose of its Collateral and ordering the Debtor to deliver all Cash Collateral in its possession to GM Financial; and,

(b)     that the time provisions of Rule 4001(a)(3) be waived and GM Financial be allowed to immediately enforce any order entered granting it relief from the automatic stay; or alternatively,

(c)     granting GM Financial such other and further relief as the Court deems just and proper.

Respectfully submitted:

  /s/   Stephen P. Strohschein
Stephen P. Strohschein, LA Bar Roll #12541
**McGlinchey Stafford, PLLC**
301 Main Street, 14th Floor
Baton Rouge, Louisiana  70801
Telephone:  (225) 383-9000
Facsimile:  (225) 343-3076
Email:  sstroh@mcglinchey.com

and

R. Dwayne Danner
State Bar No. 00792443
**McGlinchey Stafford, PLLC**
6688 North Central Expressway, Ste. 400
Dallas, Texas 75206
Telephone: (214) 445-2445
Facsimile: (214) 445-2450
Email: ddanner@mcglinchey.com

ATTORNEYS FOR AMERICREDIT FINANCIAL SERVICES, INC., DOING BUSINESS AS GM FINANCIAL