Marcus A. Helt (TX 24052187)
mhelt@foley.com
C. Ashley Ellis (TX 00794824)
aellis@foley.com
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**COUNSEL TO DEBTORS**
**REAGOR-DYKES MOTORS, LP** *et al.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| **In Re:** § | |
| § | |
| **Reagor-Dykes Motors, LP,** *et al.*[1] § | Case No. 18-50214-rlj-11 |
| § | Jointly Administered |
| **Debtors.** § | |

### DEBTORS' OBJECTION TO AIMBANK'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY AND TO ALLOW SETOFF
**(Related Docket No. 893)**

Reagor-Dykes Motors, LP and its debtor affiliates (collectively, "**Reagor-Dykes**" or the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned jointly administered bankruptcy cases ("**Bankruptcy Cases**"), hereby file this *Objection to AimBank's Motion for Relief from Automatic Stay and to Allow Setoff* ("**Objection**"). In support of the Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in the Bankruptcy Cases are: Reagor-Dykes Motors, LP ("**RDM**") (Case No. 18-50214); Reagor-Dykes Amarillo, LP ("**RDA**") (Case No. 18-50216); Reagor-Dykes Floydada, LP ("**RDF**") (Case No. 18-50219); Reagor-Dykes Imports, LP ("**RDI**") (Case No. 18-50215); Reagor-Dykes Plainview, LP ("**RDP**") (Case No. 18-50218); and Reagor-Dykes Auto Company, LP ("**RDAC**") (Case No. 18-50217).

DEBTORS' OBJECTION TO AIMBANK'S
MOTION FOR RELIEF FROM AUTOMATIC STAY AND TO ALLOW SETOFF      PAGE 1

## I. INTRODUCTION

1. On January 22, 2019, AimBank ("**AimBank**") filed its *Motion for Relief from Automatic Stay and to Allow Setoff* at Docket Number 893 ("**Motion**"). By written agreement of the parties, the Debtors' deadline to file a response to the Motion was extended to February 12, 2019.

2. In its Motion, AimBank seeks relief from the automatic stay to do two (2) things: (i) offset a certificate of deposit owned by RDP against certain debts allegedly owed by RDP to AimBank; and (ii) offset a certificate of deposit owned by RDAC against certain debts allegedly owed by RDAC to AimBank.[2]

3. AimBank is not entitled to relief from the automatic stay for the following reasons:

   a) AimBank's respective, separate security interests in the CDs are adequately protected by equity cushions existing in each of the CDs;

   b) RDP and RDAC each require the cash proceeds from the CDs to fund their respective effective reorganizations in these Bankruptcy Cases; and

   c) Stay relief in favor of AimBank is not ripe due to the Debtors' pending claims against AimBank and ongoing investigation.

## II. OBJECTIONS

### A. AimBank's Security Interests in CDs are Adequately Protected by an Equity Cushion

4. In its Motion, AimBank attempts to unlawfully "cherry pick" the CDs from the other sources of AimBank's collateral. For example, AimBank asserts there is no equity in the

---

[2] For the sake of clarity, the debts owed by RDP to AimBank is separate and not cross-collateralized with the debts owed by RDAC to AimBank. Accordingly, any debt owed by RDP will only be secured by certain property granted by RDP to secure such debts owed only by RDP. Likewise, any debt owed by RDAC will only be secured by certain property granted by RDAC to secure such debts owed only by RDAC. Thus, the "equity" analysis on the R-D Plainview CD is conducted separately from the analysis on the R-D Auto CD. AimBank's Motion does not allege otherwise; however, this footnote is provided out of an abundance of caution and to avoid any confusion.

R-D Plainview CD[3] by combining (i) the alleged aggregate balance of the R-D Plainview Note ($461,297.97), plus (ii) the alleged aggregate balance of the R-D Plainview Dishonored Checks ($473,332.00), for an alleged total debt owed by RDP in the amount of $934,629.97. [*See* Motion at ¶¶ 1-3, pp. 2-4]. AimBank then compares that aggregate debt against the face value of the R-D Plainview CD ($514,477.58) to allege "no equity" in the R-D Plainview CD.

5. What AimBank omits from the Motion is that the alleged indebtedness owed from RDP to AimBank is secured by additional collateral other than the R-D Plainview CD. On page 3 of Exhibit A attached to the Motion, under Section 11(C) of the R-D Plainview Note, AimBank is granted additional security interests in all other deposit accounts maintained by RDP at any bank. The "equity" calculation on the R-D Plainview CD is incomplete, as currently set forth in the Motion. The "equity" calculation on the R-D Plainview CD is not ripe until a comprehensive valuation assessment is completed against all of AimBank's collateral securing the debts owed by RDP.

6. AimBank conducts the same flawed, partial analysis for the R-D Auto CD. [*See* Motion at ¶¶ 4-6, pp. 4-5]. AimBank alleges a total debt owed by R-D Auto of $824,742.05 (comprised of: (i) R-D Auto Note balance of $361,050.05; plus (ii) R-D Auto Dishonored Checks balance of $463,692.00). [*See* id.]. AimBank then compares that aggregate debt against the face value of the R-D Auto CD ($540,018.01) to allege "no equity" in the R-D Auto CD.

7. Similar to the R-D Plainview Note, the debts owed by RDAC to AimBank are secured by additional collateral other than the R-D Auto CD. On page 2 of Exhibit C attached to the Motion, under Section 11 of the R-D Auto Note, the debt: "*is secured by previously executed, separate security instruments, including the following: all collateral now owned or hereafter*

---

[3] Unless otherwise set forth herein, defined terms shall bear the meanings assigned in the Motion.

*acquired including but not limited to all additions and substitutions, include [R-D Auto CD]*". The "equity" calculation on the R-D Auto CD is incomplete, as currently set forth in the Motion. The "*separate security instruments*" referenced by the R-D Auto Note (attached as Exhibit C to the Motion) are not included or described in the Motion. The "equity" calculation on the R-D Auto CD is not ripe until a comprehensive valuation assessment is completed against all of AimBank's collateral securing the debts owed by RDAC.

8. AimBank is not permitted to "cherry pick" its collateral for calculation of "equity" under 11 U.S.C. §§ 361, 362. In *In re Haydel Prop., LP*, No. 16-51259, 2017 WL 1155690 at *1-3 (Bankr. S.D. Miss. March 27, 2017), a secured creditor moved to lift the stay for one piece of its total collateral package. The secured creditor alleged that no equity existed in the single piece of collateral when compared to the total cross-collateralized debt the property secured. The bankruptcy court rejected the secured creditor's methodology of calculating "equity" for purposes of 11 U.S.C. §§ 361, 362. Instead, the bankruptcy court compared the total value of all collateral securing the creditor's claim. Because the value of all collateral exceeded the balance of the secured creditor's claims against the debtor, the bankruptcy court concluded that the secured creditor had an "equity cushion" in the particular piece of collateral and denied the motion for relief because the movant-creditor was "adequately protected". *See In re Haydel Prop., LP*, No. 16-51259, 2017 WL 1155690 at *1-3 (Bankr. S.D. Miss. March 27, 2017).

9. Similar to *Haydel*, the two (2) CDs are not AimBank's only pieces of collateral. The face value of each CD exceeds the balance due and owing under each of the corresponding secured notes. Without a comprehensive valuation of AimBank's total collateral package, AimBank has not established its burden of proof under 11 U.S.C. § 362(g)(1). As currently drafted, the Motion leaves open the possibility that AimBank has an equity cushion in its total

collateral package. Accordingly, under 11 U.S.C. § 361, AimBank remains "adequately protected" in the CDs, and AimBank has failed to establish that "cause" exists to lift the stay under 11 U.S.C. § 362(d)(1).

**B. The CDs have Equity and are Necessary for an Effective Reorganization**

10. As set forth above, there is equity in AimBank's total collateral package – specifically including the CDs. Under 11 U.S.C. § 362(g)(1), AimBank has failed to establish its initial evidentiary burden of proof. As such, pursuant to 11 U.S.C. § 362(d)(2), AimBank is precluded from stay relief against the CDs. However, under 11 U.S.C. § 362(d)(2)(B), the Debtors assert that the CDs are necessary to an effective reorganization.

11. A debtor will meet its burden of proof under 11 U.S.C. § 362(d)(2)(B) by showing the property in question is necessary to an effective liquidation. *See In re Playa Dev. Corp.,* 68 B.R. 549, 555 (Bankr. W.D. Tex. 1986) ("This Court does concur with decisions holding that reorganization embraces both rehabilitation and liquidation efforts and that under § 362(d)(2)(B), property may be necessary either to an 'effective rehabilitation' or to an '*effective liquidation*'".) (emphasis added).

12. At present, it remains possible to confirm a plan that rehabilitates and reorganizes the Debtors. The Debtors currently have such a plan on file with the Court. Furthermore, it remains possible for the Debtors to propose a liquidation process to complete a successful disposition of substantially all of the Debtors' assets and maximize the return to creditors. In order to complete such an orderly liquidation process, the Debtors will need access to all available cash sources to maximize the value of their assets during the pendency of such liquidation process.

13. The Debtors may call the cash proceeds on the CDs and use the funds for bridge capital to complete a rehabilitation or liquidation to maximize the return to creditors. As such, the

CDs are necessary to fund the reorganization process (whether by rehabilitation, sale or liquidation) and maximize the asset values. In turn, this will directly impact the increased return to Debtors' creditors.

### C. "Cause" to Lift the Stay is Premature

14. In late July 2018, Ford Motor Credit Company LLC ("**Ford**") sued the Debtors, requesting, among other things, sequestration of certain assets belonging to Debtors. Ford's lawsuit against Debtors remains pending before the United States District Court for the Northern District of Texas, Lubbock Division, as Case Number 5:18-cv-00186-C ("**Ford Litigation**").

15. In the Ford Litigation, Ford alleges that Debtors and their principals defaulted on those certain commercial floor plan financing agreements and breached the same by: (i) selling vehicles "out of trust", (ii) failing to make required payments to Ford as and when due, (iii) submitting false or inaccurate information to Ford, and (iv) obtaining financing from Ford under false pretenses. In response to the Ford Litigation, Debtors filed the Bankruptcy Cases to provide an adequate opportunity to investigate the Ford Litigation allegations and preserve the value of Debtors' ongoing business operations.

16. Debtors' investigation of the fraud allegations raised in the Ford Litigation is ongoing. Included within Debtors' investigation is the extent of AimBank's involvement in the fraudulent activities alleged by Ford. The extent of AimBank's potential involvement and liability remains undetermined at this time. To the extent AimBank's liability exceeds the balance of AimBank's claims against Debtors' bankruptcy Estates, AimBank will not hold an enforceable right to payment against the Estates under 11 U.S.C. § 502(d). Without an enforceable right to payment, no debt would exist and AimBank cannot hold a "claim" as defined under 11 U.S.C. §

101(5). Without a "claim" against Debtors, any and all security interests pledged to secure such nonexistent debt will also cease to exist.

17. Through a forthcoming adversary proceeding and pursuant to Rule 3007(b) of the Bankruptcy Rules, Debtors may object to and seek to disallow any and all portions of AimBank's claims against the bankruptcy estates, both secured and unsecured, during the ongoing investigation of AimBank's involvement and potential liability for the fraud allegations raised in the Ford Litigation. As such, stay relief is not ripe until the Debtors' investigation of AimBank is concluded and only to the extent such investigation conclusively establishes that AimBank's claims, if any, against the bankruptcy estates should be allowed in an amount in excess of AimBank's liability, if any, to the Debtors.

WHEREFORE, the Debtors respectfully request that the Court (i) deny AimBank's Motion in its entirety; and (ii) grant the Debtors such other and further relief as may be just and equitable.

[*remainder of page intentionally left blank*]

DATED:  February 12, 2019                Respectfully submitted by:

                                                               */s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
mhelt@foley.com
C. Ashley Ellis (TX 00794824)
aellis@foley.com
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL TO DEBTORS**
**REAGOR-DYKES MOTORS, LP** *et al*.

## CERTIFICATE OF SERVICE

     I certify that on February 12, 2019, and according to the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, a copy of the Objection was served on the parties who have consented to receive service of the Objection through the Court's e-service system, including, without limitation, counsel of record to the movant – AimBank.

                                                        */s/ Marcus A. Helt*
                                                        Marcus A. Helt