**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **REAGOR-DYKES MOTORS, LP,** *et al.* | § | **Case No. 18-50214-rlj-11** |
| | § | **Jointly Administered** |
| Debtors. | § | |

---

### SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES AUTO GROUP, AS MODIFIED

---

Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
**FOLEY GARDERE**
**FOLEY & LARDNER, LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
mhelt@foley.com
aellis@foley.com

**COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION**

Dated: September 3, 2019

i

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................ii

SUMMARY OF THE PLAN ........................................................................................... 1

**ARTICLE I** INTRODUCTION ...................................................................................... 14

    **1.1.**    Introduction. ......................................................................................... 14

    **1.2.**    General Plan Structure; Funding Sources for Restructuring Alternative; Liquidation Alternative............................................................................................... 14

**ARTICLE II** DEFINITIONS AND INTERPRETATION ........................................... 14

    **2.1.**    Definitions. ........................................................................................... 14

    **2.2.**    Interpretation, Rules of Construction, and Other Terms ..................... 26

    **2.3.**    Computation of Time ........................................................................... 27

    **2.4.**    Governing Law..................................................................................... 27

    **2.5.**    Reference to Monetary Figures............................................................ 27

**ARTICLE III** CLASSIFICATION OF CLAIMS AND INTERESTS ....................... 27

    **3.1.**    Administrative Claims and Priority Tax Claims ................................. 28

    **3.2.**    Plan Sponsor Superpriority Claim....................................................... 28

    **3.3.**    Classes of Claims and Interests........................................................... 28

**ARTICLE IV** TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS ............... 29

    **4.1.**    Administrative Claims ......................................................................... 29

    **4.2.**    Post-Confirmation Date Fees and Expenses........................................ 31

    **4.3.**    Priority Tax Claims ............................................................................. 31

    **4.4.**    Payment of Statutory Fees................................................................... 32

**ARTICLE V** TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ......... 32

    **5.1.**    Class 1 – Allowed Priority Non-Tax Claims (Restructuring or Liquidation Alternative) ...... 32

    **5.2.**    Class 2 – Secured Claim of Ford Credit (Restructuring or Liquidation Alternative) ............ 33

    **5.3.**    Class 3 — Secured Claim of GM Financial (Restructuring or Liquidation Alternative) ....... 33

    **5.4.**    Class 4 — Secured Claim of First Capital Bank (Restructuring or Liquidation Alternative). 33

    **5.5.**    Class 5 — Secured Claim of First Bank & Trust (Restructuring or Liquidation Alternative) 34

    **5.6.**    Class 6 — Secured Claim of AIM Bank (Restructuring or Liquidation Alternative) ............ 35

    **5.7.**    Class 7 — Secured Claim of Vista Bank (Restructuring or Liquidation Alternative)............ 35

ii

**5.8.** Class 8 — Other Secured Claims (Restructuring or Liquidation Alternative)......................36

**5.9.** Class 9 — Claims of Qualified Retail Lenders for Payment of TT&L/Trade Liability (Restructuring Alternative Only) ...................................................................................36

**5.10.** Class 10 — Unsecured Assumed Trade Claims (Restructuring Alternative Only) .............37

**5.11.** Class 11 — General Unsecured Claims (Restructuring or Liquidation Alternative).............37

**5.12.** Class 12 — Unsecured Claims of Ford Credit (Restructuring or Liquidation Alternative)...38

**5.13.** Class 13 — Unsecured Claims of GM Financial (Restructuring or Liquidation Alternative) 38

**5.14.** Class 14 — Unsecured Claims of IBC Bank (Restructuring or Liquidation Alternative) .....39

**5.15.** Class 15 — Unsecured Claims of Bart Reagor and Rick Dykes (Restructuring or Liquidation Alternative) ...............................................................................................................39

**5.16.** Class 16 — Intercompany Claims (Restructuring or Liquidation Alternative)....................40

**5.17.** Class 17 — Subordinated Unsecured Claims (Restructuring or Liquidation Alternative).....40

**5.18.** Class 18 — Holders of Allowed Interests in the Debtors (Restructuring or Liquidation Alternative) ...............................................................................................................40

**ARTICLE VI** NON-VOTING AND UNIMPAIRED CLASSES..............................................40

**6.1.** Impaired/Unimpaired Classes ..................................................................................41

**6.2.** Controversy Concerning Impairment ........................................................................41

**6.3.** Elimination of Vacant Classes .................................................................................41

**6.4.** Subordinated Claims ..............................................................................................41

**ARTICLE VII** MEANS FOR IMPLEMENTATION OF THE PLAN: RESTRUCTURING ALTERNATIVE .........................................................................41

**7.1.** Continued Corporate Existence ...............................................................................41

**7.2.** Operations Between the Confirmation Date and the Effective Date................................42

**7.3.** Implementation Transactions on or Prior to the Effective Date by Reorganized Debtors or Creditor Trust – As Applicable ................................................................................42

**7.4.** Vesting of Assets ..................................................................................................45

**7.5.** Sources of Cash for Plan Distributions.....................................................................45

**7.6.** Approval of Agreements .........................................................................................45

**7.7.** Entry of Final Decree .............................................................................................45

**7.8.** Retention of Rights to Pursue Causes of Action ........................................................45

**ARTICLE VIII** RESTRUCTURING ALTERNATIVE: THE CREDITORS TRUST .............47

**8.1.** Creation of the Creditors Trust and Appointment of the Trustee .......................................47

iii

**8.2.**   Property of the Creditors Trust ........................................................................ 47

**8.3.**   Purpose of the Creditors Trust ......................................................................... 47

**8.4.**   Powers of the Creditors Trustee ...................................................................... 48

**8.5.**   Cooperation Between the Creditors Trustee and Reorganized Debtors ............. 48

**8.6.**   Termination of the Creditor Trust .................................................................... 48

**ARTICLE IX**      48

**9.1.**   Notice of Implementation of the Liquidation Alternative ................................... 48

**ARTICLE X**  CONDITIONS PRECEDENT TO EFFECTIVE DATE; EFFECT OF
PLAN CONFIRMATION ........................................................................... 49

**10.1.**   Conditions to Confirmation ............................................................................ 49

**10.2.**   Conditions Precedent to the Effective Date:  Restructuring Alternative ............ 49

**10.3.**   Conditions Precedent to the Effective Date:  Liquidation Alternative ............... 50

**10.4.**   Waiver of Conditions ...................................................................................... 50

**10.5.**   Effect of Non-Occurrence of the Effective Date ............................................... 50

**ARTICLE XI**  CLAIM OBJECTIONS, AND MISCELLANEOUS DISTRIBUTION
PROVISIONS 50

**11.1.**   Objections to Claims ...................................................................................... 50

**11.2.**   Estimation of Claims ...................................................................................... 51

**11.3.**   Distributions Under the Plan .......................................................................... 51

**11.4.**   Setoffs .......................................................................................................... 55

**ARTICLE XII**  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 55

**12.1.**   Executory Contracts and Unexpired Leases to be Rejected Unless Expressly Assumed ...... 55

**12.2.**   Approval of Assumptions ................................................................................ 56

**12.3.**   Objections to Assumption of Executory Contracts and Unexpired Leases ......................... 56

**12.4.**   Payments Related to Assumption of Executory Contracts and Unexpired Leases ............. 57

**12.5.**   Rejection of Executory Contracts .................................................................... 57

**12.6.**   Bar Date for Rejection Damages ..................................................................... 57

**ARTICLE XIII**  RELEASES; INDEMNIFICATION; PLAN INJUNCTION .......................... 57

**13.1.**   Binding Effect ................................................................................................ 58

**13.2.**   Compromise and Settlement of Claims, Interests, and Controversies ................ 58

**13.3.**   Discharge of Claims and Termination of Interests ............................................ 58

iv

**13.4.** Releases by a Holder of a Claim ........................................................................................ 58

**13.5.** Exculpation, Release, and Injunction .............................................................................. 59

**13.6.** Injunction Related to Releases and Exculpation .............................................................. 59

**13.7.** Term of Stay or Injunctions ........................................................................................... 60

**13.8.** Injunction Against Interference with Plan ....................................................................... 60

**ARTICLE XIV** MISCELLANEOUS ................................................................................................. 60

**14.1.** Retention of Jurisdiction ................................................................................................ 60

**14.2.** Successors and Assigns .................................................................................................. 62

**14.3.** Ipso Facto and Similar Provisions Ineffective ................................................................ 62

**14.4.** Cram Down ................................................................................................................... 62

**14.5.** Modification of the Plan ................................................................................................. 63

**14.6.** Withdrawal or Revocation of the Plan ............................................................................ 63

**14.7.** Notices .......................................................................................................................... 63

**14.8.** Severability ................................................................................................................... 63

**14.9.** All Claims ..................................................................................................................... 64

**14.10.** Immediate Binding Effect .............................................................................................. 64

**14.11.** Reservation of Rights. ................................................................................................... 64

The Debtors[1] in the above-referenced, jointly-administered Chapter 11 bankruptcy cases (collectively, "**Reagor-Dykes**" or the "**Debtors**") hereby propose this *Chapter 11 Plan of Reorganization for Reagor-Dykes* (the "**Plan**") pursuant to §1121(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

## SUMMARY OF THE PLAN

1. **Summary Only.** The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2. **General Description of the Business.** Reagor-Dykes historically operated eight (8) new and pre-owned car Dealerships comprised of thirteen (13) Locations – twelve (12) in West Texas and one (1) location in Dallas – as a consolidated group.

3. **Alternative Paths to the Effective Date.** This Plan provides two (2) alternative paths to a successful exit from Chapter 11 for the Debtors: (a) the Restructuring Alternative, or (b) if the Plan does not go effective under the Restructuring Alternative within seventy-five (75) days of Confirmation,[2] a controlled liquidation of assets via the Liquidation Alternative. The Debtors believe that the Restructuring Alternative would yield the highest and best return for all creditors and parties in interest. But, if the Debtors determine at any time – pre-Confirmation or post-Confirmation – that despite their best efforts the Plan cannot go effective under the Reorganization Alternative, the Liquidation Alternative shall take effect.

4. **Plan and Treatment of Claims – Restructuring Alternative.** Under the Restructuring Alternative, t**he Plan will effectuate a reorganization of the Dealerships, the business, and the operations. Under the Restructuring Alternative:

    a) The Dealerships will be recapitalized by the Plan Sponsor or its designee. The Reorganized Debtors will retain their operating assets together with Causes of Action not resolved by this Plan, and will continue to operate their business under a name selected by the Plan Sponsor.

    b) The franchise agreements with Ford Motor, General Motors, Mitsubishi, and Toyota Company will be assumed and assigned in

---

[1] The Debtors are Reagor-Dykes Motors, LP ("**RD Motors**") (Case No. 19-50214); Reagor-Dykes Imports, LP ("**RD Imports**") (Case No. 18-50215); Reagor-Dykes Amarillo ("**RD Amarillo**")(Case No. 18-50216); Reagor-Dykes Auto Company, LP ("**RDAC**")(Case No. 18-50217); Reagor-Dykes Plainview, LP ("**RD Plainview**")(Case No. 18-50218); Reagor-Dykes Floydada, LP ("**RD Floydada**")(Case No. 18-50219); Reagor-Dykes Snyder, L.P. ("**Snyder**") (Case No. 18-50321); Reagor Auto Mall Ltd ("**RAM**")(Case No. 18-50324); and Reagor-Dykes III LLC, (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), and Reagor Auto Mall I LLC (Case No. 18-50325) (collectively, the "**GP Debtors**").

[2] Under the Plan, the Restructuring Alternative must go effective within seventy-five (75) days of the Confirmation Date unless otherwise agreed by the United States Trustee or approved by the Court. Any request to extend this seventy-five (75) day deadline must be filed prior to the expiration of same. The timely filing of such a motion shall toll the expiration of the deadline until further ruling by the Court.

**Formatted:** DocID

the Plan.[3]

c) Post-confirmation, the Reorganized Debtors will benefit from the proven operational expertise of Fin Ewing and his consulting group (collectively, the "**Fin Ewing Group**"). The Fin Ewing Group will provide consulting services to the Reorganized Debtors. These consulting services will help the Reorganized Debtors accomplish their long-term business and financial goals as outlined in the Plan.

d) Directors and officers of the Reorganized Debtors will be identified in the Plan Supplement Documents.

e) The Reorganized Debtors are expected to receive up to $13 mm in cash (the "**New Equity Infusion**") from the Plan Sponsor. The New Equity Infusion may be a combination of (i) debtor-in-possession financing approved by the Bankruptcy Court and received by the Debtors before the Confirmation in a yet-to-be-determined amount and (ii) equity financing received by the Debtors after the Confirmation.

f) The New Equity Infusion will be used as follows: (i) approximately $4.3 million as initial post-confirmation working capital on an as-needed basis; (ii) pay all allowed, administrative expenses of the Estates, which such expenses are estimated to be approximately $4.5 million; (iii) approximately $.700 million to Qualified Retail Lenders in Class 9; (v) up to approximately $2 million to Ford Credit if certain conditions are satisfied; and (v) up to approximately $1.5 million to GM Financial if certain conditions are satisfied, including if GM Financial provides floorplan financing to the Reorganized Debtors.

g) The equity of the Reorganized Debtors will be owned (i) 90% by the Plan Sponsor or its designee and (ii) 10% by a Creditors Trust for the express benefit of creditors holding Allowed Class 11 General Unsecured Claims.

h) Each Allowed Class 11 Claim will receive a beneficial interest in the Creditors Trust. In addition to the 10% equity interest in the Reorganized Debtors, the Creditors Trust Assets will include $1 million in cash contributed by Rick Dykes; funds contributed to the Trust by the Plan Sponsor dedicated and earmarked for the express purpose of resolving consumer issues, with the exact dollar amount of such funds to be determined contemporaneous with finalizing the terms upon which the Reorganized Debtors will

---

[3] Issues regarding assumption and assignment of the franchise agreements with Gulf States Toyota, Mitsubishi and General Motors will not be sought via Confirmation of the Plan, but will instead be addressed post-confirmation on or prior to dates to be agreed upon by the Debtors and Gulf State Toyota, Mitsubishi and General Motors.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 2

4841-4505-7683.15

**Formatted:** DocID

operate with Ford Motor Company; and all Causes of Action, including all rights to challenge the extent, priority and validity of alleged liens, will be transferred to the Creditors Trust and the Creditors Trustee.

i) Each beneficial interest and, the 10% equity, and the right to Distributions on the Litigation Proceeds will be subject to a redemption right that will allow the Reorganized Debtors to redeem this equity upon payment in full of the Allowed amount of Unsecured Claims converted to equity or such amount agreed by the holders of such Unsecured Claims and the Reorganized Debtors. After distributions to holders of Allowed Class 11 Unsecured Claims reach a total of $7.5 million, the Creditors' Trust will surrender this 10% equity and the Litigation Proceeds to the Reorganized Debtors.

j) The Creditors Trust will make distributions to all Allowed Unsecured Claims in Class 11 pursuant to the terms and conditions of this Plan and a Creditors Trust Agreement.

k) The Reorganized Debtors will assume certain unsecured Assumed Trade Claims under this Plan. The identity of such assumed unsecured Assumed Trade Claims will be disclosed in the Plan Supplement. Such Assumed Trade Claims will be treated in Class 10 and will not participate in Class 11.

l) Ford Credit's secured claim will be paid in full by surrender of Collateral.

m) Ford Credit's unsecured claim will be paid from Excess Cash Flow and only after payment of all Allowed Administrative Expenses by (i) a $1 million cash payment in 2020, (ii) a $1 million cash payment in 2021, and (iii) a $5 million unsecured promissory note.

n) The $5 million unsecured promissory note payable to Ford Credit will have the following terms:  (i) 10-year amortization, (ii) 7-year balloon payment, (iii) 6.5% interest per annum, (iv) payment-in-kind interest for 12 months, and (v) payable thereafter from Excess Cash Flow.

o) Payment of the $2.0 million to Ford Credit is subject to and conditioned on (i) the assumption of the Debtors' franchise agreements with Ford Motor or issuance of a new franchise agreement(s), and (iii) implementation of the Restructuring Alternative under the Plan.

p) GM Financial's secured claim will be paid in full by surrender of Collateral.

**Formatted:** DocID

q) GM Financial's unsecured claim will be paid as follows: As a settlement and full and final satisfaction and release of all unsecured claims, GM Financial will receive (i) $750,000 from Excess Cash Flow by the later of (x) 180 days after the Effective Date and (y) payment of all Allowed Administrative Expenses, and (ii) another $750,000 from Excess Cash Flow no later than twelve (12) months after the first $750,000 payment to GM Financial.

r) Payment of the $1.5 million is subject to and conditioned on (i) GM Financial providing floorplan financing to the Reorganized Debtors on mutually agreed terms, (ii) the assumption of the Debtors' franchise agreement with General Motors or issuance of a new franchise agreement, and (iii) implementation of the Restructuring Alternative under the Plan.

t)s) First Capital Bank's secured claim will be paid as follows: In full and final satisfaction of all First Capital's secured claims against the Debtors, First Capital Bank will receive (a) the net proceeds from the liquidation of collateral after payment of (i) all fees incurred and (ii) expenses reimbursed related to the liquidation of such collateral, or (b) surrender of collateral.

u)t) First Capital Bank's unsecured claim is a Disputed Claim. To the extent Allowed, First Capital Bank's unsecured claim will be treated in Class 11 and paid as follows: In full and final satisfaction and release of all First Capital's unsecured claims against the Debtors, First Capital Bank will receive its Pro Rata Share of Creditors Trust Assets, which includes 10% equity securities of the Reorganized Debtors. All Causes of Action against First Capital Bank are reserved under this Plan.

v) FB&T's secured claim will be paid as follows: In full_Pursuant to that certain _Expedited Motion for Approval of Compromise_ and _final satisfaction of all secured Settlement with First Bank & Trust Texas, N.A._ and the _Order Granting Expedited Motion for Approval of Compromise and Settlement with First Bank & Trust Texas, N.A._ entered thereon by the Court on November 18, 2019, the liens alleged to secure FB&T's claims against the Debtors, FB&T will receive (a) the net proceeds from the liquidation of collateral after payment of (i) all fees incurred and (ii) expenses reimbursed related to the liquidation of such collateral, or (b) surrender of collateral.

w)u) FB&T's unsecured claim is a Disputed Claim. To the extent Allowed, FB&T's unsecured claim will be  are treated in Class 11 and paid as follows: In full and final satisfaction and release of all FB&T's unsecured as avoided by consent, FB&T's

claims ~~against~~ are subordinated to the claims of all other creditors of the ~~Debtors, FB&T will receive its Pro Rata Share of Creditors Trust Assets, which includes 10% equity securities of the Reorganized Debtors.~~ Estates, and FB&T will receive no distribution under this Plan. All Causes of Action against FB&T are ~~reserved~~released under this Plan.

~~x)~~v)     Pursuant to the Plan, the Dealerships or Locations will be operated on the same real estate where the Dealerships or Locations were operated prior to and during the bankruptcy case. That real estate is now owned by IBC Bank. IBC Bank has given Rick Dykes and his assigns both an option right and a right of first refusal to purchase the real estate at mutually-agreed and confidential "strike prices." To facilitate the Restructuring Alternative, Rick Dykes has agreed to assign his option and right of first refusal to the Reorganized Debtors to implement the Restructuring Alternative.

~~y)~~w)     Each Qualified Retail Lender who (i) executes a TT&L Agreement, (ii) provides the Reorganized Debtors with proof of payment of a TT&L/Trade Liability, and (iii) agrees to provide future retail lending to the Reorganized Debtors on terms mutually acceptable to the Reorganized Debtors and said Retail Lender, thereby becoming a Qualified Retail Lender, will be reimbursed their Pro Rata Share for payment of the Debtors' TT&L/Trade Liability either (x) within sixty (60) days after the Effective Date if funds are immediately available or (y) via receipt of an unsecured promissory note payable by the Reorganized Debtors at 3% interest per annum with a two-year term. Such reimbursement will be made from the Qualified Retail Lender Pool. This Qualified Retail Lender Pool will be up to $.700 million.

~~z)~~x)Allowed Administrative Claims will be paid at or before the Effective Date, or on such terms as the Reorganized Debtors and the holder of an Allowed Administrative Claim may otherwise agree.

5.     **Plan and Treatment of Claims – Liquidation Alternative.** Under the Liquidation Alternative, the Plan will effect an orderly wind down of the Debtors' business operations, a controlled liquidation of all Collateral, and the transfer of all Causes of Action to the Creditors Trust. Pursuant to the terms of the Plan and the Liquidation Alternative:

a) A Creditors Trust will be established and the Creditors Trustee will be appointed upon Confirmation.

b) All Assets, including Causes of Action, and all rights to challenge the extent, priority and validity of alleged liens, and all Collateral not surrendered under the terms of this Plan will be transferred to

Formatted: DocID

the Creditors Trust and the Creditors Trustee.

c) All Holders of Allowed Administrative Claims will be paid from liquidation proceeds in their relative priorities, all Holders of Allowed Unsecured Claims will receive a beneficial interest in the Creditors Trust equal to the *pro rata* amount of their Allowed Unsecured Claim, and the Creditors Trustee will make distributions to all Allowed Unsecured Claims in Class 11 pursuant to the terms and conditions of this Plan and a Creditors Trust Agreement.

d) Ford Credit's Allowed Secured Claim will be paid in full by surrender of Collateral.

e) Ford Credit's Unsecured Claim is a Disputed Claim. To the extent Allowed, Ford Credit's Unsecured Claim will be treated in Class 12 and paid as follows: In full and final satisfaction and release of all Ford Credit's Unsecured Claims against the Debtors, Ford Credit will receive its Pro Rata Share of the Creditors Trust Assets. All Causes of Action against Ford Credit are reserved under the Liquidation Alternative in this Plan.

f) GM Financial's Allowed Secured Claim will be paid in full surrender of Collateral.

g) GM Financial's Unsecured Claim is a Disputed Claim. To the extent Allowed, GM Financial's Unsecured Claim will be treated in Class 13 and paid as follows: In full and final satisfaction and release of all GM Financial's Unsecured Claims against the Debtors, GM Financial will receive its Pro Rata Share of the Creditors Trust Assets. All Causes of Action against GM Financial are reserved under the Liquidation Alternative in this Plan.

h) Pursuant to that certain *Expedited Motion for Approval of Compromise and Settlement with First Bank & Trust Texas, N.A.* and the *Order Granting Expedited Motion for Approval of Compromise and Settlement with First Bank & Trust Texas, N.A.* entered thereon by the Court on November 18, 2019, the liens alleged to secure FB&T's ~~secured claim is a Disputed Claim. To the extent Allowed, FB&T's Secured Claim will be paid as follows: In full and final satisfaction of all secured~~ claims against the Debtors, are treated as avoided by consent, FB&T's claims are subordinated to the claims of all other creditors of the Estates, and FB&T will receive ~~(i) the net proceeds from the liquidation of collateral after payment of (x) all fees incurred and (y) expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.~~

i)h) FB&T's unsecured claim is a Disputed Claim. To the

Formatted: DocID

~~extent Allowed, FB&T's unsecured claim will be treated in Class 11 and paid as follows: In full and final satisfaction and release of all FB&T's unsecured claims against the Debtors, FB&T will receive its Pro Rata Share of the Creditors Trust Assets.~~ no distribution under this Plan. All Causes of Action against FB&T are ~~reserved~~released under this Plan.

~~(ii)~~The Creditors Trust shall make distributions to Holders of Allowed Class 11 Unsecured Claims of their Pro Rata Share (calculated together with Allowed Claims in Classes 12, 13, 14 and 15) of the Creditors Trust Assets.

Regardless of the alternative, all Causes of Action not otherwise compromised, settled and released pursuant to this Plan are hereby preserved.

Creditors holding Allowed Claims shall receive the following treatment under the Plan:

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| 1. | ALLOWED PRIORITY NON-TAX CLAIMS | Shall receive (i) Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim on the Effective Date or (ii) other treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code; *provided, however,* that Priority Non-Tax Claims that arise in the ordinary course of the Debtors' business shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business. | Shall receive (i) Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim on the Effective Date or (ii) other treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code. |
| 1A. | ALLOWED 9019 LUBBOCK COUNTY CLAIM | Shall receive Cash as soon reasonably practicable when funds are available after the Effective Date consistent with the 9019 Order. Any amounts due to Lubbock County Tax Assessor will be paid before payment to General Unsecured Creditors. | Shall receive Cash as soon reasonably practicable when funds are available after the Effective Date consistent with the 9019 Order. |
| 2. | SECURED CLAIM OF FORD CREDIT COMPANY, LLC | Ford Credit's Class 2 Claim will be paid by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 2 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 2 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the | Ford Credit's Class 2 Claim will be paid by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 2 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 2 Claim shall be treated in Class 12. |

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| | | Class 2 Claim shall be treated in Class 12. | |
| 3. | **SECURED CLAIM OF GM FINANCIAL** | GM Financial's Class 3 Claim will be paid by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 3 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 3 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 3 Claim shall be treated in Class 13. | GM Financial's Class 3 Claim will be paid by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 3 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 3 Claim shall be treated in Class 13. |
| 4. | **SECURED CLAIM OF FIRST CAPITAL BANK** | The Class 4 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 4 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 4 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 4 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 4 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 4 Claim shall be treated in Class 11. | First Capital Bank's Class 4 Claim will be satisfied in full by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 4 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 4 Claim shall be treated in Class 11. |
| 5. | **CLAIM OF FIRST BANK & TRUST** | The Class 5 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 5 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 5 Claim or (b) if no agreement is reached, at the | FB&T's Class 5 Claim will be paid by surrender of the Collateral. The amount, validity, extent, value, and priority of the Allowed Secured Class 5 Claim under § 506 of the Bankruptcy Code will be determined |

**Formatted:** Not Highlight

**Formatted:** DocID

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| | | Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral. | by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 5 Claim shall be treated in Class 11. |
| | | The amount, validity, extent, value, and priority of the Allowed Secured Class 5 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 5 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 5 Claim shall be treated in Class 11. *pursuant to the terms of that certain Expedited Motion for Approval of Compromise & Settlement with First Bank & Trust Texas, N.A. and the Order Granting Expedited Motion for Approval of Compromise & Settlement with First Bank & Trust Texas, N.A.* entered thereon by the Court on November 18, 2019, the liens alleged to secure FB&T's claims against the Debtors are treated as avoided by consent, FB&T's claims are subordinated to the claims of all other creditors of the Estates, and FB&T will receive no distribution under this Plan. All Causes of Action against FB&T are released under this Plan. | The Class 5 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 5 Claim pursuant to the terms of that certain *Expedited Motion for Approval of Compromise and Settlement with First Bank & Trust Texas, N.A. and the Order Granting Expedited Motion for Approval of Compromise and Settlement with First Bank & Trust Texas, N.A.* entered thereon by the Court on November 18, 2019, the liens alleged to secure FB&T's claims against the Debtors are treated as avoided by consent, FB&T's claims are subordinated to the claims of all other creditors of the Estates, and FB&T will receive no distribution under this Plan. All Causes of Action against FB&T are released under this Plan. |
| 6. | **SECURED CLAIM OF AIM BANK** | The Class 6 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 6 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 6 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral. | AIM Bank's Class 6 Claim will be paid by surrender of the Collateral.<br><br>The amount, validity, extent, value, and priority of the Allowed Secured Class 6 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 6 Claim shall be treated in Class 11. |

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| | | The amount, validity, extent, value, and priority of the Allowed Secured Class 6 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 6 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 6 Claim shall be treated in Class 11. | |
| 7. | **SECURED CLAIM OF VISTA BANK** | The Class 7 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 7 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 7 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.<br><br>The amount, validity, extent, value, and priority of the Allowed Secured Class 7 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 7 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 7 Claim shall be treated in Class 11. | Vista Bank's Class 7 Claim will be paid by surrender of the Collateral.<br><br>The amount, validity, extent, value, and priority of the Allowed Secured Class 7 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 7 Claim shall be treated in Class 11. |
| 8. | **OTHER SECURED CLAIMS** | Holders of Allowed Class 8 Claims, if any, shall be designated as Class 8A, Class 8B *et seq.* and shall be satisfied at the Reorganized Debtors' option by (i) payment of such Allowed Secured Claim in full in cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code; (ii) delivery of the Collateral securing such Allowed Secured Claim; or (iii) issuance of a restructured note with a present value equal to the amount of | Holders of Allowed Class 8 Claims, if any, shall be designated as Class 8A, Class 8B *et seq.* and will be paid by surrender of the Collateral.<br><br>The amount, validity, extent, value, and priority of the Allowed Secured Class 8 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of the |

Formatted: DocID

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| | | the value of each Holder's Collateral with interest payable at a rate of 3% annually, and payable in full in ten (10) years.<br><br>The amount, validity, extent, value, and priority, of any asserted Class 8 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 8 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 8 Claim shall be treated in Class 11. | Holder of the Class 8 Claim shall be treated in Class 11. |
| 9. | **CLAIMS OF QUALIFIED RETAIL LENDERS FOR PAYMENT OF TT&L/TRADE LIABILITY** | As full and final satisfaction, settlement, release, and discharge of such Class 9 Claim, each Qualified Retail Lender in Class 9 will receive its Pro Rata Share from the Qualified Retail Lender Pool for reimbursement for such Qualified Retail Lenders' payment of a TT&L/Trade Liability. | N/A under Liquidation Alternative |
| 10. | **ASSUMED TRADE CLAIMS** | As full and final satisfaction, settlement, release, and discharge of such Class 10 Claim, each member of the Plan Sponsor, the Debtors, and the Reorganized Debtors, each Holder of a Class 10 Claim will receive payment in full, over time, through the assumption of the indebtedness underlying the Allowed Class 10 Claim payable on terms to be agreed by each Holder of a Assumed Trade Claim and the Reorganized Debtors. | N/A under Liquidation Alternative |
| 11. | **GENERAL UNSECURED CLAIMS** | As full and final satisfaction, settlement, release, and discharge of each Class 11 Claim against the Debtors, each member of the Plan Sponsor, and the Reorganized Debtors, each Holder of a Class 11 Claim shall be satisfied by Pro Rata | As full and final satisfaction, settlement, release, and discharge of each Class 11 Claim against the Debtors, except as set forth below with regard to IBC Bank, each Holder of a Class 11 Claim shall be satisfied by Pro Rata Share (calculated together with Allowed Claims in Classes 12, 13, 14 and 15) of Distributions from the Creditors Trust Assets.<br><br>Class 11 includes the Allowed Unsecured Claim of IBC Bank against |

Formatted: DocID

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE | |
|---|---|---|---|---|
| | | Share of Distributions from Creditors Trust Assets.[4]<br><br>Class 11 includes the Allowed Unsecured Claim of IBC Bank against the Debtors in the reduced, agreed Allowed amount of $20 million, *provided, however*, that IBC Bank will waive all Distribution on its Allowed Class 11 Claim for the benefit of the holders of all other Allowed Class 11 Claims in consideration of the release by the Estates of all Causes of Action against IBC Bank, its directors, officers and employees. | the Debtors in the reduced, agreed Allowed amount of $20 million, *provided, however*, that IBC Bank will receive Distribution of its Pro Rata Share of only $7 million of its Allowed Class 11 Claim; IBC Bank will waive its right to Distribution for the remainder of its Allowed $20 million Unsecured Claim for the benefit of the holders of all other Allowed Class 11 Claims in consideration of the release by the Estates of all Causes of Action against IBC Bank, its directors, officers and employees. | |
| 12. | **UNSECURED CLAIMS OF FORD CREDIT**[5] | Ford Credit's Unsecured Claim will be paid from Excess Cash Flow and only after payment of all Allowed Administrative Expenses by (i) a $1 million cash payment in 2020, (ii) a $1 million cash payment in 2021, and (iii) a $5 million unsecured promissory note.<br><br>The $5 million unsecured promissory note will have the following terms: (i) 10-year amortization, (ii) 7-year balloon payment, (iii) 6.5% interest per annum, (iv) payment-in-kind interest for 12 months, and (v) payable thereafter from Excess Cash Flow. | Ford Credit's Unsecured Claim is a Disputed Claim. To the extent Allowed, Ford Credit's Unsecured Claim will be treated in Class 12 and paid as follows: In full and final satisfaction and release of all Ford Credit's Unsecured Claims against the Debtors, Ford Credit will receive its Pro Rata Share (calculated together with Allowed Claims in Classes 11, 13, 14 and 15) of Distributions from the Creditors Trust Assets. All Causes of Action against Ford Credit are reserved under this Plan. | |

Formatted Table

---

[4] Percentage Distribution to Holders of Allowed Class 11 Claims is dependent on a variety of risks and factors, including the success of the Reorganized Debtors' post-confirmation business operations, value of the Creditors Trust Assets, the administration costs of the Creditor Trust, and whether the Restructuring or Liquidation Alternative proceeds.

[5] Classes 12 and 13 Claims are held by Ford Credit and GM Financial, respectively. Each is an affiliate of Original Equipment Manufacturers or "franchisors" that are parties to franchise or "dealer" agreements with one or more of the Debtors. The Class 12 and 13 Claims asserted by Ford Credit and GM Financial arise, in whole or in part from money loaned for the purchase of vehicles from the Original Equipment Manufacturers, and in Ford Credit's case from allegations of out-of-trust sales or double floorplanned inventory as stated in pleadings in this Chapter 11 Case and the Ford Litigation. For those reasons, the Claims in Classes 12 and 13 are qualitatively dissimilar to Assumed Trade Claims in Class 10 or General Unsecured Claims in Class 11.

Formatted: DocID

| CLASS | CLAIMANT | TREATMENT: RESTRUCTURING ALTERNATIVE | TREATMENT: LIQUIDATION ALTERNATIVE |
|---|---|---|---|
| 13. | **UNSECURED CLAIMS OF GM FINANCIAL** | GM Financial's unsecured claim will be paid as follows: As a settlement and full and final satisfaction and release of all unsecured claims, GM Financial will receive (i) $750,000 from Excess Cash Flow by the later of (x) 180 days after the Effective Date and (y) payment of all Allowed Administrative Expenses and (ii) another $750,000 from Excess Cash Flow no later than twelve (12) months after the first $750,000 payment to GM Financial. | GM Financial's Allowed Unsecured Claim will be treated in Class 13 and paid as follows: In full and final satisfaction and release of all GM Financial's Unsecured Claims against the Debtors, GM Financial will receive its Pro Rata Share (calculated together with Allowed Claims in Classes 11, 12, 14 and 15) of Distributions from the Creditors Trust Assets. All Causes of Action against GM Financial are reserved under the Liquidation Alternative in this Plan. |
| 14. | ~~UNSECURED CLAIMS OF IBC BANK~~ **{INTENTIONALLY LEFT BLANK}** | ~~All prepetition claims of IBC Bank against the Debtors, held directly or indirectly, will be forgiven, and there will be no Distributions to Claims in Class 14.~~ **{INTENTIONALLY LEFT BLANK}** | ~~Allowed Claims in Class 14 will receive their Pro Rata Share of the Creditors Trust Assets.~~**{INTENTIONALLY LEFT BLANK}** |
| 15. | **UNSECURED CLAIMS OF BART REAGOR AND RICK DYKES[6]** | There will be no Distributions to Claims in Class 15. | Allowed Claims in Class 15 will receive their Pro Rata Share of the Creditors Trust Assets. |
| 16. | **INTERCOMPANY CLAIMS** | There will be no Distributions to Claims in Class 16. | There will be no Distributions to Claims in Class 16. |
| 17. | **UNSECURED SUBORDINATED CLAIMS** | There will be no Distributions to Claims in Class 17. | There will be no Distributions to Claims in Class 17. |
| 18. | **INTERESTS IN THE DEBTORS** | All Interests will be cancelled and discharged on the Effective Date, and no holder of an Interest shall receive a Distribution on account of such Interest. | All Interests will be cancelled and discharged on the Effective Date, and no holder of an Interest shall receive a Distribution on account of such Interest. |

[6] The Class 15 Claims are held by Insiders. The estimated amount of the Class 15 Claims is at least $1.8 million. As part of a Restructuring under this Plan, the Holders of the Class 15 Claims have agreed to waive and forego all Unsecured Claims they hold against the Debtors and will receive no Distribution under this Plan.

## ARTICLE I
## INTRODUCTION

### 1.1. *Introduction.*

This Plan is proposed by and on behalf of the Debtors under Chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, results of operations, and for a summary and analysis of the Plan. All Holders of Claims against and Interests in the Debtors are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Other than the Disclosure Statement and any exhibits and schedules referenced therein or herein, no materials have otherwise been approved by the Debtors for use in soliciting acceptances of this Plan.

### 1.2. *General Plan Structure; Funding Sources for Restructuring Alternative; Liquidation Alternative.*

The New Equity Infusion from the Plan Sponsor will be used to consummate the Restructuring Alternative under this Plan. The New Equity Infusion will be a combination of (i) debtor-in-possession financing approved by the Bankruptcy Court and received by the Debtors before the Confirmation in a yet-to-be-determined amount and (ii) equity financing received by the Debtors after the Confirmation. The New Equity Infusion will be used as follows: (i) approximately $4.3 million as initial post-confirmation working capital on an as-needed basis; (ii) pay all allowed, administrative expenses of the Estates, which such expenses are estimated to be approximately $4.5 million; (iii) approximately $.700 million to Qualified Retail Lenders in Class 9; (v) up to $2 million to Ford Credit from Excess Cash Flow and subject to satisfaction of certain conditions; and (v) up to $1.5 million to GM Financial from Excess Cash Flow and subject to satisfaction of certain conditions, including if GM Financial provides floorplan financing to the Reorganized Debtors.

If the Restructuring Alternative is unsuccessful, the Plan will instead go effective via the orderly and controlled disposition of all Assets by the Creditors Trustee under the Liquidation Alternative.

## ARTICLE II
## DEFINITIONS AND INTERPRETATION

In addition to such other terms as may be defined in other provisions of the Plan, the following capitalized terms shall have the following meanings:

### 2.1. *Definitions.*

**"9019 Lubbock County Claim"** means the Allowed Priority Claim of Lubbock County pursuant to the 9019 Order.

**"9019 Order"** means the Order granting the Amended Motion for Approval of Settlement and Compromise with Lubbock County Tax Assessor-Collector Under Bankruptcy Rule 9019 [Docket No. 1147].

Formatted: DocID

"**Administrative Claim**" means any cost or expense of administration in connection with this Case of a kind specified in §§ 503(b) or 507(a)(1), including, without limitation, (a) the actual, necessary costs and expenses of preserving the Estates and of operating the business of the Debtors, including wages, salaries, commissions, or any other compensation for services rendered after the commencement of the bankruptcy case; (b) compensation for legal or other services, and reimbursement of costs and expenses under §§ 330(a) or 331, 363, or otherwise allowed by the Court; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930. For the avoidance of doubt, Administrative Claims include (a) fees earned and expenses incurred by Professionals; and (b) expenses incurred, if any, by an Entity in making a substantial contribution in the Case pursuant to §§ 503(b)(3) or (4).

"**Affiliate**" means as set forth in § 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to Claims and Interests, (a) any Claim against or Interest in the Debtors, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent nor unliquidated, and for which no timely Filed proof of Claim has been Filed, (c) any Interest registered in the Debtors' books and records as of the Petition Date or (d) any Claim allowed pursuant to the Plan and, in each such case in (a), (b) and (c) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) such an objection is so Filed and the Claim or Interest shall have been allowed pursuant to a Final Order (but only to the extent so allowed), or (iii) such an objection is so Filed and the Claim or Interest shall have been stipulated as allowed by the Reorganized Debtor, (but only to the extent so stipulated).

"**Assets**" means all assets of the Estates, including Causes of Action.

"**Assumed Trade Claims**" means Claims, in the sole and absolute discretion of the Reorganized Debtors, that will be assumed by the Reorganized Debtors and paid pursuant to an agreement between each Holder of an Assumed Trade Claim and the Reorganized Debtors if this Plan is Confirmed under the Restructuring Alternative.

"**Ballot**" means the ballot form on which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as subsequently amended, principally codified at 11 U.S.C. § 101, *et seq.* Unless otherwise stated herein or the Disclosure Statement, all section (§) references contained in the Plan and Disclosure Statement are to the Bankruptcy Code.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, or, if such court ceases to have jurisdiction over the Cases, such court or adjunct thereof having jurisdiction over the Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075 as subsequently amended, and, where appropriate, the Local Bankruptcy Rules of the Bankruptcy Court.

**Formatted: DocID**

"**Bar Date**" means the deadline for timely Filing proofs of claim and proofs of interest by all parties other than governmental units. For RD Motors, RD Imports, RD Amarillo, RDAC, RD Plainview, RD Floydada, the Bar Date was December 5, 2018, for all parties other than governmental units and is/was January 28, 2019, for the Filing of proofs of claims by all governmental units. For RAM, Snyder and the GP Debtors, the Bar Date is/was March 28, 2019, for the Filing of proofs of claim and proofs of interest by all parties other than governmental units, and is/was May 1, 2019, for the Filing of proofs of claims by all governmental units. The Bar Date is the last date on which proofs of claim or proofs of interest may be timely Filed against the Debtors.

"**Business Day**" means any day except Saturday, Sunday, or any other day on which the law authorizes commercial banks in the State of Texas to be closed.

"**Cash**" means cash and cash equivalents that evidence immediately available funds.

"**Cash Collateral**" means any Cash of the Debtors, or interest in Cash of the Debtors, that serves as security for the repayment of a debt or the performance of an obligation owed by one or more of the Debtors to the holder of an Allowed Secured Claim.

"**Causes of Action**" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and Claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a) Chapter 5 Causes of Action; (b) those claims involved in those civil actions identified in each of the Debtors' Statements of Financial Affairs; (c) other damages (general, exemplary, or both) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based on alter ego or other liability theories; (vi) based on any other claim of the Debtors, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) claims under any prepetition insurance policy of the Debtors; (e) any claims of the Debtors for equitable subordination under § 510(c) or under other applicable laws; (ef) any claim of the Debtors to recharacterize one or more Claims as Interests; and (fg) any unresolved objection to any Disputed Claim.

"**Chapter 5 Causes of Action**" means any Cause of Action arising under §§ 510, 544 through 551 and 553 or otherwise under the Bankruptcy Code.

"**Chapter 7**" means chapter 7 of the Bankruptcy Code.

"**Chapter 11**" means chapter 11 of the Bankruptcy Code.

"**Chapter 11 Cases**" means, collectively, the voluntary Chapter 11 cases Filed by each of the Debtors, currently pending in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, each a Case, jointly administered under Case No. 18-50214.

"**Claim**" means a claim against any one of the Debtors, whether or not asserted, as defined in § 101(5), by whatever right the Creditor may have against such Debtor.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 16

Formatted: DocID

"**Claims Objection Deadline**" shall be 270 days after the Effective Date, unless extended by Order of the Court.

"**Class**" means any group of substantially similar Claims or Interests classified by the Plan pursuant to § 1122.

"**Collateral**" means any property of one or more of the Debtors or interest in property of one or more of the Debtors that serves as security for the repayment of a debt or the performance of an obligation owed by one or more of the Debtors to the holder of an Allowed Secured Claim.

"**Confirmation**" means the entry of an order by the Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

"**Confirmation Date**" means the date of the entry of the Confirmation Order by the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such may be continued from time to time.

"**Confirmation Order**" means the order signed by the Court and caused to be entered that confirms this Plan pursuant to § 1129 of the Bankruptcy Code.

"**Contingent Claim**" means a Claim whose existence, or alleged liability of one or more of the Debtors thereon, is dependent on an event that has not occurred or may never occur.

"**Creditor**" means any Entity that is the holder of a Claim that arose on or before the Petition Date or a Claim of the kind specified in § 502(g), 502(h) or 502(i).

"**Creditors Trust" or "Trust**" means the trust to be created pursuant to Article VIII of the Plan.

"**Creditors Trust Agreement** or "Trust Agreement"" means the trust agreement governing the ~~Creditors~~ Trust, substantially in the form filed with the Bankruptcy Court as a Plan Supplement Document executed by the Debtors and the Trustee.

"**Creditors Trust Assets"** or "Trust Assets" means (a) under the Restructuring Alternative, all Causes of Action and the Litigation Proceeds; $1 million in cash contributed by Rick Dykes; funds contributed to the Trust by the Plan Sponsor dedicated and earmarked for resolution of consumer TT&L issues, with the exact dollar amount of such funds to be determined contemporaneous with finalizing the terms upon which the Reorganized Debtors will operate with Ford Motor Company; and 10% of the New Equity of the Reorganized Debtors that will be issued to the Creditors Trust pursuant to a Restructuring under this Plan for the express benefit of creditors holding Allowed Class 11 against the Debtors, subject to the New Equity Redemption Right, *provided however*, that after distributions to holders of Allowed Class 11 Unsecured Claims reach a total of $7.5 million, the Creditors' Trust will surrender this 10% equity to the Reorganized Debtors; and (b) under the Liquidation Alternative, all Causes of Action and the Litigation Proceeds for the express benefit of creditors holding Allowed Class 11, 12, 13, 14, and 15 Claims; in no event shall the Creditors Trust Assets exceed the Allowed aggregate amount of Class 11, 12, 13, 14 and 15 Claims.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 17

4841-4505-7683.15

"**Creditors Trust Beneficiaries**" **or "Trust Beneficiaries"** means, under the Restructuring Alternative, Holders of Allowed Class 11 Claims— and, under the Liquidation Alternative, Holders of Allowed Class 11, 12, 13, 14, and 15 Claims.

"**Creditors Trust Interest**" **or "Trust Interest"** means the beneficial ownership interest in the Creditors Trust entitling the Holder of Allowed Class 11 Claims Trust Beneficiaries to share in Distribution of the Creditors Trust Assets.

> [Formatted: Font: Bold]

"**Creditors Trustee**" **or "Trustee"** means Dennis Faulkner of Lain, Faulkner & Co., P.C., assisted as necessary by BlackBriar Advisors, LLC.

> [Formatted: Underline]

"**Dealerships**" means one or more of the Debtor entities.

"**Debtors**" means Reagor-Dykes Motors, LP (Case NO. 18-50214), Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III LLC, (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), Reagor Auto Mall Ltd (Case No. 18-50324) and Reagor Auto Mall I LLC (Case No. 18-50325).

"**Deficiency Claim**" means any portion of a Claim (a) to the extent the value of the holder's interest in Assets securing such Claim is less than the amount of such Claim or (b) to the extent the amount of a Claim is subject to setoff is less than the amount of the Claim, each as determined by § 506(a) of the Bankruptcy Code.

"**Disallowed**" means, with respect to a Claim, any portion thereof, that (a) has been disallowed by either a Final Order or pursuant to a settlement, or (b)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

"**Disclosure Statement**" means that certain *Disclosure Statement in Support of Chapter 11 Plan of Reorganization for Reagor-Dykes* accompanying this Plan, as approved by the Bankruptcy Court for distribution pursuant to § 1125 [Docket No. __], together with any amendments or modifications thereto.

"**Disputed Claim**" means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been Filed, or deemed Filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been: (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim shall be considered a Disputed Claim (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by a Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by a Debtor has been scheduled as disputed, contingent or unliquidated in its Schedules; or (c) in its entirety, if no corresponding Claim has been scheduled by a Debtor in its Schedules.

> [Formatted: DocID]

"**Disputed Claim Reserve Account**" means the reserve account created pursuant to this Plan for the benefit of Unsecured Disputed Claims that become Allowed Claims.

"**Disputed Administrative Claim Reserve Account**" means the reserve account created pursuant to this Plan for the benefit of the Disputed Administrative, Priority Claims or Other Secured Claims that become Allowed Claims.

"**Distribution(s)**" means the payment of money or issuance of interest in accordance with this Plan.

"**EBITDA**" means for any period of consolidated Debtors, the net income of consolidated Debtors, determined in accordance with generally accepted accounting principles consistently applied, plus (a) interest expense for such period, plus (b) federal and state income taxes of Debtors for such period, plus (c) all depreciation and amortization of capitalized costs for such period. The adjustments described in (a), (b) and (c) above shall be made only to the extent such amounts were deducted from or included in the calculation of Debtors' net income.

"**Effective Date**" means the first Business Day on which all conditions to the occurrence of the Effective Date, as set forth in this Plan, have been satisfied or duly waived.

"**Entity(ies)**" means any individual, corporation, partnership, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit, or other entity including one of the Debtors and the United States Trustee, whether singular or plural.

"**Estates**" means the bankruptcy estates created in these Cases pursuant to § 541 of the Bankruptcy Code.

"**Estimated Claim**" means any Disputed Claim which is estimated in accordance with §502(c) of the Code. For purposes of distribution, the estimated amount of such Disputed Claim shall be deemed the Allowed Amount of such Claim.  For the full satisfaction of its Estimated Claim, a Claimant shall have, as its sole and exclusive remedy, the rights to payment provided under this Plan and shall have no other rights or remedies and may not, following the Effective Date, assert any other right against the Debtors, Claimant's Estimated Claim being deemed Allowed and fully satisfied by the Debtors' payment obligations described in this Plan, and any amount in excess thereof being fully released, voided and discharged by the confirmation of this Plan.

"**Excess Cash Flow**" means, for any period of determination, the remainder of (a) EBITDA for such period, minus (b) the sum, without duplication, of (i) scheduled repayments of principal of the Note made during such period, plus (ii) voluntary prepayments of the Note made during such period, plus (iv) all income taxes paid in cash by Debtor during such period, plus (v) cash interest expense of Debtor during such period.

"**Executory Contract**" means any prepetition executory contract or unexpired lease governed by § 365 of the Code.

"**Exit Financing**" means replacement floorplan financing for one or more of the Dealerships or Locations provided pursuant to the Exit Financing Documents, if necessary.

Formatted: DocID

"**Exit Financing Documents**" means any credit agreement between the Debtors and an Exit Lender providing replacement floorplan financing for one or more of the Dealerships or Locations, and all documents related to that credit agreement.

"**Exit Lender**" means an entity or financial institution, other than Ford Credit or GM Financial, that provides the Reorganized Debtors with replacement floorplan financing post-confirmation if this Plan is Confirmed under the Restructuring Alternative.

"**Face Amount**" means (a) with respect to a particular Claim, (i) if the Claim is listed in the Schedules and the holder of such Claim has not Filed a proof of Claim within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the amount of such Claim that is listed in the Schedules as not disputed, contingent or unliquidated; or (ii) if the holder of such Claim has Filed a proof of Claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the liquidated amount stated in such proof of Claim, or such amount as is determined by the Final Order of the Bankruptcy Court; (b) in the case of an Administrative Claim, the liquidated amount set forth in any application Filed with respect thereto, or the amount set forth in the Debtors' books and records or such amount as is determined pursuant to a Final Order; or (c) in all other cases, zero or such amount as shall be fixed or estimated pursuant to a Final Order.

"**FB&T**" means First Bank & Trust.

"**Fee Claim**" means a Claim by a Professional or any other party-in-interest pursuant to §§ 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

"**File**" or "**Filed**" or "**Filing**" means file or filed or filing with the Bankruptcy Court in this Case.

"**Final Decree**" means an Order of the Bankruptcy Court closing the Case.

"**Final Distribution**" means the last and final Distribution made by the Creditors Trustee to the Creditors Trust Beneficiaries such that the Creditors Trustee may proceed to dissolve and terminate the Creditors Trust.

"**Final Order**" means an Order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule

Formatted: DocID

under the Bankruptcy Rules, may be Filed relating to such order, shall not cause such order not to be a Final Order.

"**First Capital Bank**" means FirstCapital Bank of Texas, N.A., the prepetition floorplan lender to RAM.

"**Ford Credit**" means Ford Motor Credit Company, LLC, the prepetition floorplan lender to RDAC, RD Floydada, RD Amarillo, RD Imports, RD Motors and RD Plainview.

"**Ford Credit Note**" means a $5 million unsecured promissory note. The $5 million unsecured promissory note will have the following terms: (i) 10-year amortization, (ii) 7-year balloon payment, (iii) 6.5% interest per annum, (iv) payment-in-kind interest for 12 months, and (v) payable thereafter from Excess Cash Flow on a quarterly basis. If the Liquidation Alternative is implemented, then Ford Credit's unsecured claim will be a Disputed Claim, and, to the extent Allowed, Ford Credit's unsecured claim will be treated in Class 12 and will receive a Pro Rata Share of Creditors Trust Assets. Under the Liquidation Alternative, all Causes of Action against Ford Credit are preserved under this Plan. Ford Credit will not participate in Class 10 or Class 11. The Ford Credit Note will only apply if the Restructuring Alternative is implemented.

"**Ford Litigation**" means the lawsuit styled Ford Motor Credit Company LLC v. Reagor-Dykes Amarillo, L.P. *et al.*, Civil Action No. 5:18-cv-00186, in the United States District Court for the Northern District of Texas (Lubbock Division).

"**Ford Motor**" means Ford Motor Company.

"**General Motors**" means General Motors LLC.

"**GM Financial**" means AmeriCredit Financial Services, Inc., d/b/a GM Financial, the prepetition floorplan lender to Snyder.

"**GM Financial Secured Note**" means secured promissory note with a present value equal to the amount of the value of GM Financial's Collateral with principal and 3% per annum interest payable upon liquidation of that Collateral. The GM Financial Secured Note will be a Plan Supplement Document.

"**General Unsecured Claim**" means every Claim against each of the Debtors that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, an Assumed Trade Claim, an Unsecured Claim of Ford Credit, an Unsecured Claim of GM Financial, an Unsecured Claim of Bart Reagor, an Unsecured Claim of Rick Dykes, a Subordinated Claim, or an Interest in the Debtors.

"**Auto Investment Group**" means the group of investors formed by Henry Resources to own and operate the Reorganized Debtors. Henry Resources will own and control at least 50% of this group.

"**Holder**" or "**holder**" means an Entity holding a Claim or Interest.

"**IBC Bank**" means International Bank of Commerce.

Formatted: DocID

"**Impaired**" means as set forth in § 1124 of the Bankruptcy Code.

"**Interest**" means equity in a Debtor, whether or not asserted, by an equity security holder as defined in § 101(17).

"**Insider**" means any Entity that is either an "affiliate" or an "insider" as those terms are defined in § 101(2) and (31) of the Bankruptcy Code.

"**Intercompany Claim**" means any Claim that any Debtor holds or asserts against another Debtor.

"**Lien**" means any Security Interest, charge against, encumbrance on or other interest in property, the purpose of which is to secure payment of a debt or performance of an obligation.

"**Liquidation Alternative**" means the process by which all Assets of the Debtors, including all Causes of Action, will be transferred to a Creditors Trust and liquidated in a controlled fashion pursuant to this Plan.

"**Litigation Proceeds**" means the net proceeds received from Causes of Action, after payment of (a) all fees incurred and expenses reimbursed related to the prosecution, litigation, or liquidation of such Causes of Action and (b) all other Administrative Expenses. Litigation Proceeds received by the Creditors Trust ~~under the Liquidation Alternative~~ will not exceed the Allowed Class 11, Class 12, Class 13, Class 14, and Class 15 Claims.

"**Locations**" means one or more of the following brick and mortar automobile dealerships operated by the Debtors, as the context requires: Reagor-Dykes Plainview Ford, Reagor-Dykes Chevrolet Floydada, Reagor-Dykes Amarillo Mitsubishi, Reagor-Dykes Mitsubishi Lubbock, Spike Dykes Ford Lamesa, Reagor-Dykes Auto Mall, Reagor-Dykes Auto Mall Downtown, Reagor-Dykes Auto Mall Dallas (permanently closed), Reagor-Dykes Auto Mall Imports, Reagor-Dykes Auto Mall of Midland, Reagor-Dykes Chevrolet Buick GMC, Reagor-Dykes Toyota Plainview, Reagor-Dykes Auto Mall West Lubbock, and Reagor-Dykes Auto Mall Leveland.

"**New Equity**" means all shares of partnership interests, stock, or membership interests, as the case may be, in the Reorganized Debtors.

"**New Equity Infusion**" means, collectively, (a) the Plan Sponsor Advances plus (b) the up to $13 million in cash that the Plan Sponsor will invest in the Reorganized Debtors on the Effective Date of this Plan to be used for working capital and as set forth pursuant to the terms and conditions of this Plan.

"**New Equity Infusion Documents**" means (a) the Plan Sponsor Credit Documents and all other agreements executed or contemplated to be executed in connection with the Plan Sponsor DIP Facility, if same becomes necessary, and (b) all documents executed by and between the Debtors and the Plan Sponsor governing the $13 million cash portion of the New Equity Infusion by the Plan Sponsor pursuant to the terms and conditions of this Plan.

"**New Equity Redemption Right**" means the redemption right under which the Plan Sponsor may choose, at its sole discretion, to redeem the 10% of the New Equity owned by the Creditors Trust in exchange for payment to the Creditors Trust of the total amount of Allowed Class

Formatted: DocID

11, 12 and 13 Claims entitled to Distributions from the Creditors Trust pursuant to this Plan or each Beneficial Interest in the Creditors Trust on the payment of the value of that Beneficial Interest or an amount agreed by the Holder of the Beneficial Interest.

"**Order**" means any mandate, precept, command, or direction given by a court.

"**Other Secured Claim**" means any Secured Claim other than the asserted alleged Secured Claims of Ford Credit, GM Financial, First Capital, FB&T, AIM Bank, and Vista Bank.

"**Person**" means a person as defined in § 101(41) of the Bankruptcy Code.

"**Petition Date**" means, for RD Motors, RD Imports, RD Amarillo, RDAC, RD Plainview, RD Floydada, August 1, 2018, and, for RAM, Snyder and the GP Debtors, November 2, 2018, each the date on which the referenced Cases were commenced.

"**Plan**" means this *Second Amended Chapter 11 Plan of Reorganization for Reagor-Dykes*, dated September 3, 2019, including any amendments or modifications hereto.

"**Plan Documents**" means the agreements, documents and instruments entered into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan (including all documents necessary to consummate the transactions contemplated in the Plan), copies of which shall be available to Creditors upon request to Debtors' counsel.

"**Plan Sponsor**" means the entity(ies) owned by Auto Investment Group, SLJ Company, or other investor identified in the Plan Supplement or at the Confirmation Hearing if SLJ Company declines to participate, ~~Rick Dykes,~~ and Ron Blaylock. The Plan Supplement Documents will outline the final equity percentages of ownership in the Plan Sponsor, but the initial equity percentages of ownership in the Plan Sponsor are as follows: (a) Auto Investment Group = 65%; (b) SLJ Company = 20; and (c) Ron Blaylock = 5%.

"**Plan Sponsor Advances**" means the funds actually advanced by Plan Sponsor to the Debtors under the Plan Sponsor DIP Facility, if any.

"**Plan Sponsor DIP Facility**" means the debtor-in-possession financing, if any, received by the Debtors pursuant to §§ 105(a) and 364(c)(1) and (2) pursuant to the Plan Sponsor DIP Order.

"**Plan Sponsor DIP Order**" means the Final Order granting any motion authorizing the Debtors to incur postpetition financing from the Plan Sponsor.

"**Plan Sponsor Superpriority Claim**" means the Plan Sponsor's or any member or equity partner of the Plan Sponsor's Allowed, senior, superpriority Administrative Claim against the Estates, such claim having priority in payment over any other indebtedness and/or obligation now in existence or incurred hereafter by the Debtors and over all Administrative Claims or charges arising in the Chapter 11 Cases and any subsequent Chapter 7 cases including, without limitation, those specified in Bankruptcy Code §§ 362, 503(b), 506(c), 507(b), 726, 1113 or 1114 as set forth in a Plan Sponsor DIP Order, should one be entered.

"**Plan Supplement Document(s)**" means the documents, including (each as necessary and to the extent applicable under the Restructuring or Liquidation Alternatives) the Schedule of Assumed

Formatted: DocID

Contracts and Non-Real Property Leases, the Creditors Trust Agreement, the Creditors Trust Agreement, a description of the Plan Sponsor, the New Equity Infusion Documents, the Exit Financing Documents (if any), and the identity of the individuals who will serve on the Reorganized Debtors' initial board(s) of directors, all of which shall be included in a notice Filed with the Bankruptcy Court not less than ten (10) days prior to the Voting Deadline, unless otherwise established by the Court in a separate Order. The Plan Supplement Documents may be reviewed via the Bankruptcy Court's ECF docket for this Case, via www.jndla.com/cases/rdmotors, or requested in writing from the Debtors' counsel.

"**Post-Confirmation Business Plan**" means the three-year (3) projections of the income and expenses of the Reorganized Debtors under a Restructuring Alternative (inclusive of a variance of up to 15% in the aggregate), including payroll, professional fees, operational expenses, and payments due to Allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims attached to the Disclosure Statement as Exhibit B.

"**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or a Priority Tax Claim or the 9019 Lubbock County Claim, entitled to priority in payment under § 507(a).

"**Priority Tax Claim**" means a Claim entitled to priority in payment pursuant to §§ 502(i) and 507(a)(8).

"**Professional**" means each Entity that is either (a) employed pursuant to an order of the Court in accordance with §§ 327 or 1103 providing for compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 331, and 363, (b) seeking compensation and reimbursement pursuant to §§ 503(b)(2) or (4), or (c) awarded compensation and reimbursement by the Bankruptcy Code pursuant to § 503(b)(4) of the Bankruptcy Code inclusive of such Entities' predecessors, professionals, successors, assigns, affiliates, current officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

"**Pro Rata**" means, as it relates to Claims, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class and, as it relates to equity in the Reorganized Debtor, the proportion of New Equity Infusion contributed by one bears to the aggregate amount of all New Equity Infusion contributed by all.

"**Pro Rata Share**" means, at any time, and, (a) as it relates to Allowed Claims, the proportion that the Face Amount of the Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class and (b) as it relates to equity in the Reorganized Debtors, the proportion that the New Equity Infusion contributed by one party bears to the aggregate amount of the New Equity Infusion contributed by all parties.

"**Qualified Retail Lender**" means a Retail Lender who casts a ballot accepting this Plan and (i) executes a TT&L Agreement, (ii) provides the Reorganized Debtors with proof of payment of a TT&L/Trade Liability, and (iii) agrees to provide future retail lending on terms mutually acceptable to the Reorganized Debtors and said Retail Lender.

Formatted: DocID

"**Qualified Retail Lender Pool**" means the up to $.700 million funded on the Effective Date earmarked to reimburse all Qualified Retail Lenders if this Plan goes effective under the Restructuring Alternative.

"**Rejection Damages Claim**" means any Claim arising from the rejection of any executory contract or unexpired lease, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with § 502(b)(6) or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with § 502(b)(7). A Rejection Damages Claim shall constitute a General Unsecured Claim treated in Class 11.

"**Rejection Damages Bar Date**" means the later of thirty (30) days after such Rejection Damages Claim is Allowed by Final Order or thirty (30) days after the Effective Date.

"**Released Parties**" means the Debtors, Professionals of the Estates, the Plan Sponsor, and Rick Dykes.

"**Releasing Parties**" means (a) Holders of Claims who vote to accept the Plan but do not opt out of the releases on the Ballot, (b) Holders of Claims that are Unimpaired under this Plan; (c) Holders of Claims whose vote to accept or reject this Plan is solicited but who do not vote to either accept or reject this Plan; and (d) Holders of Claims who vote to reject the Plan but do not opt out of the releases on the Ballot.

"**Reorganized Debtors**" means the Debtors, as reorganized as of the Effective Date.

"**Restructuring or Restructuring Alternative**" means the Debtors' financial and operational restructuring, the principal terms of which are in the Plan, the Plan Supplement Documents and Plan Documents.

"**Retail Lenders**" means a retail financing lender that provided prepetition financing to a consumer customer of Reagor-Dykes in the ordinary course of business, inclusive of funds loaned to pay tax, title and license fees on a consumer's newly purchased vehicle and/or funds loaned to payoff liens on a consumer's trade-in vehicle.

"**Schedules**" means the *Schedules of Assets and Liabilities* Filed by the Debtors under § 521 and Bankruptcy Rule 1007 on October 19, 2018 [Docket Nos. 421, 423, 425, 427, 429 and 431 for RD Motors, RD Plainview, RD Amarillo, RDAC, RD Floydada, RD Imports], on December 17, 2018 [Docket Nos. 720-722 for the GP Debtors], on December 19, 2018 [Docket No. 731 for Snyder] and on December 27, 2018 [Docket No. 750 for RAM], each as amended from time to time.

"**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the list of each Executory Contract not already identified in this Plan for assumption that the Debtors intend to assume on the Effective Date or as soon as reasonably practicable thereafter. For the avoidance of doubt, this Schedule of Assumed Contracts and Unexpired Leases includes all real property leases to be assumed and non-real-property leases and executory contracts to be assumed, and will be Filed as part of the Plan Supplement Documents.

"**Secured Claim**" means a Claim that arose before the Petition Date, to the extent secured by a lien or other Security Interest on property of the Debtors, which lien is valid, perfected, and

enforceable under applicable law and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Case.

"**Security Interest**" means as defined in § 101(51) of the Bankruptcy Code.

"**Toyota**" means Gulf States Toyota, Inc.

"**TT&L/Trade Liability**" means the dollar amount of funds actually advanced by a Retail Lender *post-petition* to pay the outstanding (a) tax, title and license fees on a vehicle purchased *prepetition* and/or (b) amount of a *prepetition* lien against a trade-in vehicle of a Reagor-Dykes consumer customer.

"**Unclaimed Property**" means any Cash or other property unclaimed made in respect of the relevant Allowed Claim or Allowed Interest. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to an address of a holder of an Allowed Claim or Interest and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no address to mail or deliver such property was available.

"**Unexpired Lease**" means a lease to which one of the Debtors is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

"**Unimpaired**" means not Impaired.

"**Unsecured Claim**" means a Claim that is not secured by Collateral.

"**U.S. Trustee**" means the United States Trustee for the Northern District of Texas.

"**Voting Deadline**" means November 22, 2019, at 5:00 p.m. (prevailing Central Time), which is the deadline established by the Court for the submission of Ballots to counsel for the Debtors in accordance with the Voting Procedures.

"**Voting Procedures**" means the procedures for submitting a Ballot in which a holder of a Claim votes for or against the Plan as described in the Disclosure Statement.

## 2.2. *Interpretation, Rules of Construction, and Other Terms*

(a) Any term used in this Plan that is not defined herein, whether in Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

(b) If a conflict between the Plan and the Disclosure Settlement exists, the Plan will govern over the Disclosure Statement. If a conflict between the Plan and any document implementing the Plan exists, the document shall govern. If a conflict between the Plan and the Confirmation Order exists, the Confirmation Order shall govern.

(c) The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article, section, or clause contained in this Plan.

Formatted: DocID

(d)     Unless specified otherwise in a particular reference, a reference in this Plan to an article or section is a reference to that article or section of this Plan.

(e)     Unless otherwise provided for herein, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

(f)     As contextually appropriate, each term stated in either the singular or plural shall include both the singular and the plural.

(g)     In addition to the above, the rules of construction set forth in § 102 of the Bankruptcy Code shall apply to this Plan.

(h)     Use of the word "include" or any form thereof means "including without limitation" without repeating the same each time used.  Further, each definition above includes the plural as the context requires.

(i)     All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when Filed with the Court.

### 2.3.     *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

### 2.4.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, not incorporated in Texas shall be governed by the laws of the state or province of incorporation of the Debtors.

### 2.5.     *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly stated.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of voting and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in the Debtors shall be classified as set forth in this Article III.

Formatted: DocID

### 3.1.    *Administrative Claims and Priority Tax Claims*

As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified; thus, they are excluded from the Classes of Claims and Interests set forth in the Plan.

### 3.2.    *Plan Sponsor Superpriority Claim*

The Plan Sponsor Superpriority Claim, if any, may be converted to its Pro Rata Share or other amount agreed by the Reorganized Debtor and Plan Sponsor of the 90% of New Equity in the Reorganized Debtors allocated to the Plan Sponsor.

### 3.3.    *Classes of Claims and Interests*

A Claim or Interest is in a particular Class only to the extent the Claim or Interest is an Allowed Claim or Allowed Interest as defined herein. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and Interests shall be classified as follows:

**Formatted:** DocID

| Class | Type of Allowed Claim or Interest | Treatment: Restructuring | Treatment: Liquidation | Status |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Cash Distribution | Cash Distribution | Unimpaired; Deemed to Accept. |
| 1A | 9019 Lubbock County Claim | Cash Distribution | Cash Distribution | Impaired; Entitled to Vote |
| 2 | Secured Claim of Ford Credit | Return of Collateral | Return of Collateral | Impaired; Entitled to Vote |
| 3 | Secured Claim of GM Financial | Return of Collateral | Return of Collateral | Impaired; Entitled to Vote |
| 4 | Secured Claim of First Capital Bank | Cash Distributions and/or Return of Collateral | Return of Collateral | Impaired; Entitled To Vote |
| 5 | ~~Secured~~ Claim of FB&T | ~~Cash Distributions and/or Return of Collateral~~No Distribution | ~~Return of Collateral~~No Distribution | Impaired; Entitled to Vote |
| 6 | Secured Claim of AIM Bank | Cash Distributions and/or Return of Collateral | Return of Collateral | Impaired; Entitled to Vote |
| 7 | Secured Claim of Vista Bank | Cash Distributions and/or Return of Collateral | Return of Collateral | Impaired; Entitled to Vote |
| 8 | Other Secured Claim | Cash Distributions, Return of Collateral and/or Restructured Note | Cash Distributions and/or Return of Collateral | Impaired; Entitled to Vote |
| 9 | Claims of Qualified Retail Lenders For Payment of TT&L/Trade Liability | Cash from Qualified Retail Lender Pool | N/A | Impaired; Entitled to Vote |
| 10 | Assumed Trade Claims | As Agreed by Reorganized Debtors and Holders of Class 10 Claims | N/A | Impaired; Entitled to Vote |
| 11 | General Unsecured Claims | Distributions from Creditors Trust | Distributions from Creditors Trust | Impaired; Entitled to Vote |
| 12 | Unsecured Claims of Ford Credit | Cash Payment; Unsecured Promissory Note | Distributions from Creditor Trust | Impaired; Entitled to Vote |
| 13 | Unsecured Claims of GM Financial | Cash Payment | Distributions from Creditor Trust | Impaired; Entitled to Vote |
| 14 | ~~Unsecured Claims of IBC Bank~~[Intentionally Left Blank] | ~~No Distributions to Such Claims~~[Intentionally Left Blank] | ~~Distributions from Creditor Trust~~[Intentionally Left Blank] | ~~Impaired; Entitled to Vote~~[Intentionally Left Blank] |
| 15 | Unsecured Claims of Bart Reagor and Rick Dykes | No Distributions to Such Claims | Distributions from Creditors Trust | Impaired; Entitled to Vote |
| 16 | Intercompany Claims | No Distributions to Such Claims | No Distributions to Such Claims | Impaired; Deemed to Reject. |
| 17 | Unsecured Subordinated Claims | No Distributions to Such Claims | No Distributions to Such Claims | Impaired; Deemed to Reject |
| 18 | Interests in the Debtors | Interests shall not be retained | Interests shall not be retained | Impaired; Deemed to Reject. |

## ARTICLE IV
## TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

**4.1.**   *Administrative Claims*

(a)   **Time for Filing Administrative Claims.**

For any Administrative Claim, other than (i) a Professional Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtors, or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, an application or request for payment must be Filed with the Bankruptcy Court and served on the Reorganized Debtors or the Creditors Trustee as the case may be, the Office of the United States Trustee, within thirty (30) days after the Effective Date, unless an earlier date is established by the Bankruptcy Court.

Such notice must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly File and serve the application required under this subsection shall result in the Administrative Claim being forever barred and discharged. Any party in interest may File an objection to an Administrative Claim Filed pursuant to this subsection in accordance with the timeframes and procedures set forth in the Bankruptcy Rules.

(b)     **Time for Filing Fee Claims.**

Each Professional who holds or asserts an Administrative Claim that is a Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to File with the Bankruptcy Court and serve on all parties required to receive such notice a fee application within sixty (60) days after the Effective Date. Failure to timely and properly File and serve a fee application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. Any party in interest may File an objection to a Fee Claim, but any objection must be Filed in accordance with the timeframes and procedures set forth in the Bankruptcy Rules.

(c)     **Payment of Allowed Administrative Claims.**

Except to the extent that any Person entitled to payment of an Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim (other than Fee Claims) shall, in full and final satisfaction of any Administrative Claim, receive Cash from the Reorganized Debtors, or the Creditors Trustee as the case may be, in an amount equal to such Allowed Administrative Claim on or as soon as reasonably practicable following the later to occur of: (a) the Effective Date and (b) the date on which such Administrative Claim becomes an Allowed Administrative Claim; provided, however, Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors may be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, provided that either (x) such Allowed Administrative Claims were included in the cash-collateral budgets previously approved by the Bankruptcy Court, or (y) the Bankruptcy Court approves such payments in writing.

Each Professional that intends to File a Fee Claim must provide the Debtors a reasonable estimate of the amount of such Fee Claim at least five (5) days prior to the Confirmation Hearing. On the Effective Date, the Debtors shall transfer Cash in an amount sufficient to pay the Fee Claims reasonably estimated by such Professionals to a trust account maintained by the Debtors' counsel under the Restructuring Alternative. The Debtors' counsel shall hold such Cash in trust for the exclusive purpose of paying Allowed Fee Claims, and any excess funds remaining after all Fee Claims have been resolved by a Final Order of the Bankruptcy Court shall be transferred to and retained by the Reorganized Debtors or the Creditors Trustee as the case may be. Each Allowed Fee Claim, after

Formatted: DocID

deducting any retainer, shall be paid from such trust account within five (5) Business Days after such Claim is Allowed by a Final Order.

Notwithstanding any other provision of the Plan, all fees, expenses and other compensation arising after the Effective Date and due and payable to Professionals retained by the Reorganized Debtors shall be paid by the Reorganized Debtors first from funds remaining from those reserved for fees and then from operations of the Reorganized Debtors should the Restructuring Alternative go effective.

All trade payables and current liabilities of the Debtors, excluding payments to utility service providers, that (a) arise in the ordinary course of business after the Effective Date, including payroll and salaries which have accrued prior to the Effective Date, and (b) otherwise qualify as Administrative Claims, shall be paid by the Reorganized Debtors in the ordinary course of business should the Restructuring Alternative go effective.

> **Formatted:** Font: Not Bold

(d)     Allowed Administrative Claim of IBC Bank

Upon agreement with the Debtors, IBC Bank holds an Allowed Administrative Claim in the amount of $1.5 million, *provided however*, that IBC Bank has assigned the right to receive any and all Distributions on such Allowed Administrative Claim to the Creditors Trust in consideration of the release by the Estates of all Causes of Action against IBC Bank, its directors, officers and employees.

**4.2.    *Post-Confirmation Date Fees and Expenses***

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without further notice or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to the implementation and consummation of the Plan incurred by the Reorganized Debtors through and including the Effective Date. Upon the Confirmation Date, any requirement that Professionals comply with §§ 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without further notice to any party or action, order, or approval of the Bankruptcy Court.

**4.3.    *Priority Tax Claims***

At the election of the Debtors or the Creditors Trustee, as the case may be, each holder of an Allowed Priority Tax Claim will receive from the Reorganized Debtors or the Creditors Trust in full satisfaction of such Allowed Priority Tax Claim (i) payments in Cash, in regular installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (ii) a lesser amount in one Cash payment as may be agreed in writing by such holder; or (iii) such other treatment as may be agreed in writing by such holder; provided, that such agreed treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. The Confirmation Order shall enjoin any holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible

> **Formatted:** DocID

~~person, officer or director of the Reorganized Debtors that otherwise would be liable to such holder for payment of an Allowed Priority Tax Claim so long as the Debtors or the Creditors Trustee, as the case may be, are in compliance with this Section. So long as the holder of an Allowed Priority Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer, or director under this Section or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.~~ To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate provided in § 511 of the Bankruptcy Code. Notwithstanding the foregoing, any penalty arising with respect to or in connection with an Allowed Priority Tax Claim shall be treated as a Class 11 General Unsecured Claim.

**4.4.** *Payment of Statutory Fees*

All fees due and payable on or before the Effective Date (i) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, and (ii) to the United States Trustee, shall be paid by the Debtors on or before the Effective Date. All such fees payable after the Effective Date shall be paid by the Reorganized Debtors or the Creditors Trustee, as the case may be, until entry of the final decree in the Bankruptcy Case.

**ARTICLE V**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**5.1.** *Class 1 – Allowed Priority Non-Tax Claims (Restructuring or Liquidation Alternative)*

(a) **Classification.** Class 1 consists of Priority Non-Tax Claims.

(b) **Treatment.** Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less-favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Non-Tax Claim, each Holder of such Allowed Priority Non-Tax Claim shall be paid (a) in full in Cash by the Reorganized Debtors or the Creditors Trustee, as the case may be, on or as reasonably practicable after (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtors becomes an Allowed Priority Non-Tax Claim, or (iii) such other date as may be agreed by the parties or ordered by the Bankruptcy Court; Date or (b) shall receive treatment consistent with the provisions of § 1129(a)(9) of the Bankruptcy Code; *provided, however*, that Priority Non-Tax Claims that arise in the ordinary course of the Debtors' business shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business.

(c) **Impairment and Voting.** Class 1 is Unimpaired. In accordance with § 1126(f) of the Bankruptcy Code, each Holder of a Class 1 Claim is presumed to accept this Plan; therefore, no such Holder is entitled to vote to accept or reject this Plan.

*5.1A. Class 1A – Allowed 9019 Lubbock County Claim (Restructuring or Liquidation Alternative)*

(d) **Classification.** Class 1A consists of the Allowed 9019 Lubbock County Claim pursuant to the 9019 Order.

Formatted: DocID

(e)  **Treatment.** Consistent with the terms of the 9019 Order, except to the extent that the Holder of the Allowed 9019 Lubbock County Claim agrees to less-favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of the 9019 Lubbock County Claim, Class 1A shall be paid in full in Cash by the Reorganized Debtors or the Creditors Trustee, as the case may be, as soon reasonably practicable when funds are available after the Effective Date.

(f)  **Impairment and Voting.** Class 1A is Impaired and entitled to vote to accept or reject the Plan.

**5.2.  *Class 2 – Secured Claim of Ford Credit (Restructuring or Liquidation Alternative)***

(a)  **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Secured Class 2 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 2 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 2 Claim shall be treated in Class 12.

(b)  **Treatment.** Ford Credit's Class 2 Claim will be paid in full by delivery of the Collateral securing such Allowed Secured Claim.

(c)  **Impairment and Voting.** Class 2 is Impaired under the Plan. Class 2 includes only the Secured Claim of Ford Credit. The Holder of a Class 2 Claim is entitled to vote to accept or reject the Plan. Under the Liquidation Alternative, all Causes of Action against Ford Credit are preserved under the Plan.

**5.3.  *Class 3 — Secured Claim of GM Financial (Restructuring or Liquidation Alternative)***

(a)  **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Secured Class 3 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 3 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 3 Claim shall be treated in Class 13.

(b)  **Treatment**. GM Financial's Class 3 Claim will be paid in full by delivery of the Collateral securing such Allowed Secured Claim.

(c)  **Impairment and Voting.** Class 3 is Impaired under the Plan. Class 3 includes only the Secured Claim of GM Financial. The Holder of a Class 3 Claim is entitled to vote to accept or reject the Plan. Under the Liquidation Alternative, all Causes of Action against GM Financial are preserved under this Plan.

**5.4.  *Class 4 — Secured Claim of First Capital Bank (Restructuring or Liquidation Alternative)***

(a)  **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Secured Class 4 Claim under § 506 of the Bankruptcy Code will be determined

Formatted: DocID

by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 4 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 4 Claim shall be included as a Class 11 General Unsecured Claim.

(b) **Treatment: Restructuring Alternative**. The Class 4 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 4 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 4 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.

(c) **Treatment: Liquidation Alternative**. In full and final satisfaction of all secured Class 4 claims against the Debtors, First Capital Bank will receive surrender of the Collateral.

(d) **Impairment and Voting.** Class 4 is Impaired under the Plan. Class 4 includes only the Secured Claim of First Capital Bank. Each Holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. All Causes of Action against First Capital Bank are preserved under the Plan.

**5.5.** *Class 5 — ~~Secured~~ Claim of First Bank & Trust (Restructuring or Liquidation Alternative)*

(a) ~~**Claim**~~**Treatment:** Pursuant to that certain *Expedited Motion for Approval of Compromise and* ~~**Lien Determination.** The amount, validity, extent, value,~~*Settlement with First Bank & Trust Texas, N.A,* and ~~priority, of the~~ ~~Allowed Secured Class 5 Claim under § 506~~*Order Granting Expedited Motion for Approval of* ~~the Bankruptcy Code will be determined~~*Compromise and Settlement with First Bank & Trust Texas, N.A.* entered thereon by the ~~Bankruptcy~~ Court ~~after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 5 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 5 Claim shall be included as a Class 11 General Unsecured Claim.~~

(b) ~~**Treatment: Restructuring Alternative.** The Class 5 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 5 Claim (a) pursuant~~on November 18, 2019, the liens alleged ~~to~~ ~~an agreement between the Reorganized Debtors and the Holder of Class 5 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.~~

~~(c)~~(a) ~~**Treatment: Liquidation Alternative.** In full and final satisfaction of all secured Class 5~~secure FB&T's ~~**claims**~~ against the Debtors, ~~FB&~~ are treated as avoided by consent, FB&T's claims are subordinated to the claims of all other creditors of the Estates, and FB&T will receive ~~surrender of the Collateral~~no distribution under this Plan.

~~(d)~~(b) **Impairment and Voting.** Class 5 is Impaired under the Plan. Class 5 includes only the ~~Secured~~ Claim of FB&T. ~~Each Holder of a~~Pursuant to the Motion and Order referenced in the preceding paragraph, Class 5 Claim ~~is entitled~~has agreed to vote to accept ~~or reject~~ the Plan. All Causes of Action against FB&T are ~~preserved~~released under the Plan.

**Formatted:** Font: Not Bold, Italic, Font color: Black, Expanded by 0.2 pt

**Formatted:** Font: Italic, Font color: Black, Expanded by 0.2 pt

**Formatted:** Font: Italic, Font color: Black, Expanded by 0.2 pt

**Formatted:** DocID

**5.6.** *Class 6 — Secured Claim of AIM Bank (Restructuring or Liquidation Alternative)*

(a) **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Secured Class 6 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 6 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 6 Claim shall be included as a Class 11 General Unsecured Claim.

(b) **Treatment: Restructuring Alternative**. The Class 6 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 6 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 6 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.

(c) **Treatment: Liquidation Alternative.** In full and final satisfaction of all secured Class 6 claims against the Debtors, AIM Bank will receive surrender of the Collateral.

(d) **Impairment and Voting.** Class 6 is Impaired under the Plan. Class 6 includes only the Secured Claim of AIM Bank. Each Holder of a Class 6 Claim is entitled to vote to accept or reject the Plan. All Causes of Action against AIM Bank are preserved under the Plan.

**5.7.** *Class 7 — Secured Claim of Vista Bank (Restructuring or Liquidation Alternative)*

(a) **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Secured Class 7 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of the Class 7 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 7 Claim shall be included as a Class 11 General Unsecured Claim.

(b) **Treatment: Restructuring Alternative**. The Class 7 Claim will be satisfied in full and final satisfaction, settlement, release, and discharge of such Class 7 Claim (a) pursuant to an agreement between the Reorganized Debtors and the Holder of Class 7 Claim or (b) if no agreement is reached, at the Reorganized Debtors' sole and absolute option, (i) the net proceeds from the liquidation of collateral after payment of all fees incurred and expenses reimbursed related to the liquidation of such collateral, or (ii) surrender of collateral.

(c) **Treatment: Liquidation Alternative**. In full and final satisfaction of all secured Class 7 claims against the Debtors, Vista Bank will receive surrender of the Collateral.

(d) **Impairment and Voting.** Class 7 is Impaired under the Plan. Class 7 includes only the Secured Claim of Vista Bank. Each Holder of a Class 7 Claim is entitled to vote to accept or reject the Plan. All Causes of Action against Vista Bank are preserved under the Plan.

Formatted: DocID

**5.8. *Class 8 — Other Secured Claims (Restructuring or Liquidation Alternative)***

(a) **Claim and Lien Determination.** The amount, validity, extent, value, and priority of the Allowed Other Secured Class 8 Claim under § 506 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date or pursuant to an agreement between the Reorganized Debtors and the Holder of a Class 8 Claim. Any Deficiency Claim or other Unsecured Claim of the Holder of the Class 8 Claim shall be included as a Class 11 General Unsecured Claim.

(b) **Treatment: Restructuring Alternative**. Holders of Allowed Class 8 Claims, if any, shall be designated as Class 8A, Class 8B *et seq.* and shall be satisfied at the Reorganized Debtors' option by (i) payment of such Allowed Secured Claim in full in cash, including interest, if applicable, as required under § 506(b) of the Bankruptcy Code; (ii) delivery of the Collateral securing such Allowed Secured Claim; or (iii) issuance of a restructured note with a present value equal to the amount of the value of their Collateral with interest payable from net profits of the Reorganized Debtors at a rate of 3% annually, and payable in full in ten (10) years.

(c) **Treatment: Liquidation Alternative**. Holders of Allowed Class 8 Claims, if any, shall be designated as Class 8A, Class 8B *et seq.* and will be paid by surrender of the Collateral.

(d) **Impairment and Voting.** Class 8 is Impaired under the Plan. Class 8 includes only Secured Claims not otherwise classified under this Plan. Each Holder of a Class 8 Claim is entitled to vote to accept or reject the Plan. All Causes of Action against any holder of a Class 8 Claim are preserved under this Plan.

**5.9. *Class 9 — Claims of Qualified Retail Lenders for Payment of TT&L/Trade Liability (Restructuring Alternative Only)*[7]**

(a) **Class 9 Eligibility.** A Retail Lender who accepts the Plan and, on such accepting Ballot, indicates its agreement to (i) execute a TT&L Agreement, (ii) provide the Reorganized Debtors with proof of payment of a TT&L/Trade Liability, and (iii) provide future retail lending on terms mutually acceptable to the Reorganized Debtors will be given a Class 9 Claim for the amount payment pursuant to (a)(ii) above.

(b) **Treatment.** As full and final satisfaction, settlement, release, and discharge of each Class 9 Claim, each Holder of a Class 9 Claim will receive is Pro Rata Share of the Qualified Retail Lender Pool.

(c) **Impairment and Voting.** Class 9 is Impaired under the Plan. Class 9 includes only the Claims of Qualified Retail Lenders. Each Holder of a Class 9 Claim is entitled to vote to accept or reject the Plan; however, any Retail Lender who does not qualify for a Class 9 Claim but asserts a Claim against the Debtors will have that Claim treated as a Class 11 Claim. All Causes of Action against any Retail Lender are preserved under the Plan.

---

[7] Class 9 is not an option under the Liquidation Alternative; all Claims that could qualify as Claims of Qualified Retail Lenders under the Restructuring Alternative will be treated in Class 11 under the Liquidation Alternative.

**Formatted:** DocID

**5.10.** ***Class 10 — Unsecured Assumed Trade Claims (Restructuring Alternative Only)[8]***

(a) **Class 10 Eligibility**. The Plan Sponsor may, not less than ten (10) days before the Voting Deadline, identify certain Unsecured Claims held by Creditors whose future cooperation the Plan Sponsor deems critical to the success of the business operations of the Reorganized Debtors and designate each an Assumed Trade Claim. Claims denominated as Assumed Trade Claims by the Plan Sponsor will be treated in Class 10.

(b) **Treatment.** As full and final satisfaction, settlement, release, and discharge of such Class 10 Claim, each Holder of a Class 10 Claim will receive payment in full, over time, through the assumption of the indebtedness underlying the Allowed Class 10 Claim payable on terms to be agreed by each Holder of an Assumed Trade Claim and the Reorganized Debtors.

(c) **Impairment and Voting.** Class 10 is Impaired under the Plan. Class 10 includes only Unsecured Assumed Trade Claims. The Holders of Class 10 Claims are entitled to vote to accept or reject the Plan. All Causes of Action against any holder of a Class 10 Claim are preserved under the Plan.

**5.11.** ***Class 11 — General Unsecured Claims (Restructuring or Liquidation Alternative)***

(a) **Treatment: Restructuring Alternative.** ~~As~~Except as set forth below with regard to the agreed treatment of IBC Bank, as full and final satisfaction, settlement, release, and discharge of each Class 11 Claim against the Debtors, each member of the Plan Sponsor, and the Reorganized Debtors, each Holder of a Class 11 Claim shall be satisfied by Pro Rata Share (calculated together with Allowed Claims in Class 12 and Class 13) of Distributions from Creditors Trust Assets, *provided however*, that after distributions to holders of Allowed Class 11 Unsecured Claims reach a total of $7.5 million, the Creditors' Trust will surrender this 10% equity to the Reorganized Debtors. Class 11 includes the Allowed Unsecured Claim of IBC Bank against the Debtors in the reduced, agreed Allowed amount of $20 million, *provided however*, that IBC Bank will waive all Distribution on its Allowed Class 11 Claim for the benefit of the holders of all other Allowed Class 11 Claims under the Restructuring Alternative in consideration of the release by the Estates of all Causes of Action against IBC Bank, its directors, officers and employees.

(b) **Treatment: Liquidation Alternative.** As full and final satisfaction, settlement, and discharge of each Class 11 Claim against the Debtors, each Holder of a Class 11 Claim shall be satisfied by Pro Rata Share (calculated together with Allowed Claims in Classes 12, 13, 14 and 15) of Distributions from the Creditors Trust Assets, *provided however*, that IBC Bank will receive Distributions of its Pro Rata Share of only $7 million of its Allowed Class 11 Claim in consideration of the release by the Estates of all Causes of Action against IBC Bank, its directors, officers and employees.

---

[8] Class 10 is not an option under the Liquidation Alternative; all Claims that could qualify as Assumed Trade Claims will be treated in Class 11 under the Liquidation Alternative.

Formatted: DocID

(c)     **Impairment and Voting**.  Class 11 is Impaired under the Plan.  Class 11 includes only General Unsecured Claims.  The Holders of Class 11 Claims are entitled to vote to accept or reject the Plan.  All Causes of Action against any holder of a Class 11 Claim other than IBC Bank are preserved under this Plan.

**5.12.     *Class 12 — Unsecured Claims of Ford Credit (Restructuring or Liquidation Alternative)***

(a)     **Claim Determination:  Restructuring Alternative**.  Ford Credit shall have an Allowed Class 12 Claim of $7 million.

(b)     **Claim Determination:  Liquidation Alternative.**  Ford Credit's Unsecured Claim is a Disputed Claim.  Under the Liquidation Alternative, all Causes of Action against Ford Credit are reserved under the Plan.  Until such Causes of Action are resolved on a final basis by litigation or settlement by the Creditors Trustee, the Allowed amount of Ford Credit's Unsecured Claim, if any, is unknown.

(c)     **Treatment:  Restructuring Alternative**.  As full and final satisfaction, settlement, release, and discharge of such Class 12 Claims against the Debtors, each member of the Plan Sponsor, and the Reorganized Debtors, Ford Credit's Class 12 Claim will be paid from Excess Cash Flow and only after payment of all Allowed Administrative Expenses by (i) a $1 million cash payment in 2020, (ii) a $1 million cash payment in 2021, and (iii) issuance of the Ford Credit Note.

**FORD CREDIT ONLY GETS A RELEASE AND PAYMENT OF $2 MM CASH AND $5 MM NOTE IF (A) THE RESTRUCTURING ALTERNATIVE IS APPROVED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE FOR SUCH ALTERNATIVE OCCURS, (B) FORD CREDIT VOTES IN FAVOR OF THE PLAN, AND (C) FORD MOTOR AGREES TO THE ASSUMPTION OF THE DEALER AGREEMENTS OR THE ISSUANCE OF NEW DEALER AGREEMENTS ON TERMS AT LEAST AS FAVORABLE AS THE TERMS IN THE CURRENT DEALER AGREEMENTS.**

(d)     **Treatment:  Liquidation Alternative.**  Ford Credit's Unsecured Claim is a Disputed Claim.  To the extent Allowed, Ford Credit's Unsecured Claim will be treated in Class 12 and paid as follows:  In full and final satisfaction and release of all Ford Credit's Unsecured Claims against the Debtors, Ford Credit will receive its Pro Rata Share (calculated together with Allowed Claims in Classes 11, 13, 14, and 15) of Distributions from the Creditors Trust Assets.

(e)     **Impairment and Voting.**  Class 12 is Impaired under the Plan. Class 12 includes only the Unsecured Claim of Ford Credit.  The Holders of Class 12 Claims are entitled to vote to accept or reject the Plan.  All Causes of Action against Ford Credit are preserved under the Liquidation Alternative of the Plan or if Ford Credit does not satisfy the conditions precedent to the payment of the Class 12 Claim under the Restructuring Alternative.

**5.13.     *Class 13 — Unsecured Claims of GM Financial (Restructuring or Liquidation Alternative)***

(a)     **Treatment:  Restructuring Alternative**.  As full and final satisfaction, settlement, release, and discharge of such Class 13 Claims against the Debtors, each member of the Plan Sponsor, and the Reorganized Debtors, GM Financial will receive (i) $750,000 from Excess Cash Flow by the later of (x) 180 days after the Effective Date and (y) payment of all Allowed Administrative

**Formatted:** DocID

Expenses and (ii) another $750,000 from Excess Cash Flow no later than twelve (12) months after the first payment of $750,000 to GM Financial.

***GM FINANCIAL ONLY GETS A RELEASE AND THE $1.5 MM PAYMENT IF (A) THE RESTRUCTURING ALTERNATIVE IS APPROVED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE FOR SUCH ALTERNATIVE OCCURS, (B) GM FINANCIAL VOTES IN FAVOR OF THE PLAN, (C) GM FINANCIAL PROVIDES FLOOR-PLAN FINANCING TO THE REORGANIZED DEBTORS ON TERMS AND CONDITIONS REASONABLY ACCEPTABLE TO THE REORGANIZED DEBTORS; AND (D) GENERAL MOTORS AGREES TO THE ASSUMPTION OF THE DEALER AGREEMENT OR THE ISSUANCE OF NEW DEALER AGREEMENT ON TERMS AT LEAST AS FAVORABLE AS THE TERMS IN THE CURRENT DEALER AGREEMENT.

(b) **Treatment: Liquidation Alternative.** GM Financial's Unsecured Claim will be a Disputed Claim, and, to the extent Allowed, GM Financial's Class 13 Claim will receive its Pro Rata Share (calculated together with Allowed Claims in Classes 11, 12, 14, and 15) of Distributions from the Creditor Trust Assets. All Causes of Action against GM Financial are reserved under the Liquidation Alternative in this Plan.

(c) **Impairment and Voting.** Class 13 is Impaired under the Plan. Class 13 includes only the Unsecured Claim of GM Financial. The Holders of Class 13 Claims are entitled to vote to accept or reject the Plan. All Causes of Action against GM Financial are preserved under the Liquidation Alternative of the Plan or if GM Financial does not satisfy the conditions precedent to the payment of the Class 13 Claim under the Restructuring Alternative.

5.14. *Class 14 — Unsecured Claims of IBC Bank (Restructuring or Liquidation Alternative)*

(a) **Treatment: Restructuring Alternative.** All prepetition claims of IBC Bank against the Debtors, directly or indirectly, will be forgiven, and there will be no Distributions to Claims in Class 14.

(b) **Treatment: Liquidation Alternative.** In full and final satisfaction and release of all of IBC Bank's Claims against the Debtors, IBC Bank will receive its Pro Rata Share (calculated together with Allowed Claims in Classes 11, 12, 13, and 15) of Distributions from the Creditor Trust Assets.

(c) **Impairment and Voting.** Class 14 is Impaired under the Plan. Class 14 includes only the Unsecured Claim of IBC Bank. The Holders of Class 14 Claims are entitled to vote to accept or reject the Plan.

**5.14.** *Class 14 — Intentionally Left Blank*

**5.15.** *Class 15 — Unsecured Claims of Bart Reagor and Rick Dykes (Restructuring or Liquidation Alternative)*

(a) **Treatment: Restructuring Alternative.** The Holders of Class 15 Claims are not entitled to receive any Distribution under the Plan.

Formatted: DocID

(b) **Treatment: Liquidation Alternative.** Allowed Claims in Class 15 will receive their Pro Rata Share (calculated together with Allowed Claims in Classes 11, 12, 13, and 15) of Distributions from the Creditor Trust Assets.

(c) **Impairment and Voting.** Class 15 includes only the Unsecured Claims of Bart Reagor and Rick Dykes, and such Claims are Impaired under the Plan and entitled to vote.[9]

**5.16.** *Class 16 — Intercompany Claims (Restructuring or Liquidation Alternative)*

(a) **Treatment Restructuring or Liquidation Alternative.** On the Effective Date, all Intercompany Claims shall be cancelled and discharged. The Holders of Class 16 Claims are not entitled to receive any Distribution under the Plan.

(b) **Impairment and Voting.** Class 16 consists of all Intercompany Claims. Holders in Class 16 are not entitled to a Distribution under the Plan; therefore, they are deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code.

**5.17.** *Class 17 — Subordinated Unsecured Claims (Restructuring or Liquidation Alternative)*

(a) **Treatment: Restructuring or Liquidation Alternative.** The Holders of Class 17 Claims are not entitled to receive any Distribution under the Plan.

(b) **Impairment and Voting.** Class 17 includes only Unsecured Claims that are subordinated pursuant to contractual, legal, or equitable subordination, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Because Class 17 Claims are disallowed in full and will receive no Distribution under the Plan, Class 17 is deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code.

**5.18.** *Class 18 — Holders of Allowed Interests in the Debtors (Restructuring or Liquidation Alternative)*

(a) **Treatment Restructuring or Liquidation Alternative.** On the Effective Date, all Interests shall be cancelled and discharged.

(b) **Impairment and Voting.** Class 18 consists of all Interests. Holders in Class 18 are not entitled to a Distribution under the Plan; therefore, they are deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code.

**ARTICLE VI**
**NON-VOTING AND UNIMPAIRED CLASSES**

---

[9] Because such Claims will receive no Distribution under the Plan, Class 15 will be deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code if the Plan is Confirmed pursuant to the Restructuring Alternative.

Formatted: DocID

### 6.1. *Impaired/Unimpaired Classes*

Holders of Allowed Claims in Class 1 are Unimpaired; therefore, they are presumed to accept the Plan. Holders of Claims in Classes 1A, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 are Impaired under the Plan; therefore, they are entitled to vote to accept or reject the Plan. Holders of Allowed Claims in Class 15 will receive no Distributions under the Plan on account of said Claims if the Plan is Confirmed under the Restructuring Alternative, and Holders of Allowed Claims in Class 16 and 17 and Interests in Class 18 are Impaired and will receive no Distributions under the Plan on account of said Claims or Interests; therefore, Classes 16, 17 and 18 are presumed to reject the Plan under § 1126(g) of the Bankruptcy Code. The Debtors need not solicit acceptances of the Plan from Holders of Claims in Class 1. Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights regarding any Claim that is not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims.

### 6.2. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claim or Interest, or any class of Claims or Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### 6.3. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

### 6.4. *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable-subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to § 510 of the Bankruptcy Code, the Reorganized Debtors or the Creditor Trustee, as the case may be, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION OF THE PLAN: RESTRUCTURING ALTERNATIVE

### 7.1. *Continued Corporate Existence*

The Debtors shall each continue to exist after the Effective Date as Reorganized Debtors in accordance with applicable laws of the jurisdiction in which each is incorporated or organized. On or after the Effective Date, the Reorganized Debtors may, in each of their sole and absolute discretion,

**Formatted:** DocID

take such action as permitted by applicable law and each of the Reorganized Debtors' organizational documents as the Reorganized Debtors may determine is reasonable and appropriate.

**7.2.** *Operations Between the Confirmation Date and the Effective Date*

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their business as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**7.3.** *Implementation Transactions on or Prior to the Effective Date by Reorganized Debtors or Creditor Trust – As Applicable*

(a) **New Equity Infusion**. On the Effective Date, the Reorganized Debtors will execute the New Equity Infusion Documents and receive the up to $13 million in cash and financing from the Plan Sponsor and to be used for working capital and to pay Allowed Claims pursuant to the terms and conditions of this Plan and the Post-Confirmation Business Plan.

(b) **Issuance of New Equity**. On the Effective Date, the Interests in the Debtors shall be cancelled and discharged, and the Reorganized Debtors are authorized to issue or cause to be issued the New Equity with 90% of the New Equity issued to the Plan Sponsor in exchange for the contribution of the New Equity Infusion, and 10% of the New Equity placed into the Creditors Trust, subject to the New Equity Redemption Right. The issuance of the New Equity and the Distribution thereof shall be exempt from registration under applicable securities laws pursuant to § 1145(a) of the Bankruptcy Code.

(c) **Post-Confirmation Business Plan**. The Debtors, with the support and input of the Plan Sponsor, have prepared three-year projections of the income and expenses of the Reorganized Debtors (inclusive of a variance of up to 15% in the aggregate) including payroll, professional fees, operational expenses, and payments due to Allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims pursuant to this Plan. The Post-Confirmation Business Plan is attached to the Disclosure Statement as Exhibit B.

(d) **Exit Financing, If Necessary**. If the Reorganized Debtors need to find replacement floorplan financing, then the Reorganized Debtors are authorized to obtain Exit Financing and execute and deliver Exit Financing Documents to an Exit Lender on the Effective Date. This Exit Financing will be from an entity or financial institution in an amount sufficient to allow the Reorganized Debtors to execute the Ford Credit Secured Note and/or the GM Financial Secured Note. Without limiting the generality of the foregoing, it is anticipated that the obligations of the Reorganized Debtors under such Exit Financing Documents shall be secured by a first-priority lien in and on substantially all of the assets of the Dealerships or Locations to which such financing relates, subject only to certain customary permitted liens.

(e) **Restructuring-Alternative Transactions**. On the Effective Date, the Reorganized Debtors shall execute the Creditors Trust Agreement and shall execute and deliver to the Plan Sponsor and, if necessary, to an Exit Lender, documents necessary to implement the Plan, including, without limitation, (i) the New Equity Infusion Documents and (ii) Exit Financing Documents, if necessary. Without limiting the generality of the foregoing, these documents shall

Formatted: DocID

provide that (i) the obligations of the Reorganized Debtors to the Plan Sponsor shall be secured by a first-priority lien in and on substantially all of the Reorganized Debtors' assets, potentially subject to a superior lien of a floorplan lender in specified Collateral of the Dealerships or Locations to which such floorplan financing relates. The issuance of these documents shall be exempt from registration under applicable securities laws pursuant to § 1145(a) of the Bankruptcy Code. Further, on the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may also take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

(f)     **Corporate Action**.  Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (a) execution and entry into the New Equity Infusion Documents and, if necessary, Exit Financing Documents; (b) Distribution of the New Equity Interests; (c) selection of the directors and officers for the Reorganized Debtors; (d) implementation of the restructuring transactions contemplated by this Plan, as applicable; and (e) all other actions contemplated by the Plan (whether to occur before on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by one of the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtors. On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors (as applicable) shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by and consistent with the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Infusion Documents and, if necessary, Exit Financing Documents, and any and all related and ancillary agreements, documents, and filings, New Equity Interests, or Creditor Trust, as applicable, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law. The issuance of the New Equity Interests shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

(g)     **New Certificates of Incorporation and New By-Laws**.  On or around the Effective Date, the Reorganized Debtors will File each of their respective New Certificates of Incorporation with the applicable Secretary of State and/or other applicable authorities in its state. Pursuant to § 1123(a)(6) of the Bankruptcy Code, the New Certificates of Incorporation will prohibit

**Formatted:** DocID

the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate its New Certificate of Incorporation and New By-Laws and other constituent documents as permitted by the laws of its state.

(h) **Cancellation of Prepetition Interests**. Except as expressly provided herein, on the Effective Date, all notes, instruments, certificates evidencing Interests in the Debtors shall be deemed surrendered and cancelled and the Debtors' obligations thereunder shall be discharged.

(i) **Release of Liens**. Upon full payment or other satisfaction of Secured Claims pursuant to this Plan, the Holders of such Secured Claims shall deliver to the Debtors or the Reorganized Debtors, or Creditor Trustee, as applicable, any Collateral or other property of the Debtors held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all Security Interests with respect to Allowed Secured Claims that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory liens, or *lis pendens*, or similar interests or documents. The Reorganized Debtors are authorized to file any such UCC-3 termination statement(s) as may be necessary to fulfill the terms of this Section.

(j) **Directors and Officers of the Reorganized Debtors**. As of the Effective Date, a new initial board of directors of the Reorganized Debtor shall be appointed by the Reorganized Debtors. Pursuant to § 1129(a)(5) of the Bankruptcy Code, the initial board of directors for the Reorganized Debtors will be as identified in the Plan Supplement Documents. To the extent any such director or officer is an "insider" as such term is defined in § 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed in the Plan Supplement Documents. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the organizational and other constituent documents of the Reorganized Debtors.

(k) **Effectuating Documents; Further Transactions**. Entry of the Confirmation Order shall constitute authorization for the Reorganized Debtors and the Debtors, pursuant to § 1123(a)(5)(D), and the officers and members of the new board of directors to issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

(l) **Exemption from Certain Taxes and Fees**. Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other Security Interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of

Formatted: DocID

consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

### 7.4. *Vesting of Assets*

On the Effective Date, except as otherwise expressly provided herein, title to all Assets shall remain/vest (a) in the Reorganized Debtors, as applicable, free and clear of all liens, Claims, Causes of Action, interests, rights, Security Interests, and other encumbrances under the Restructuring Alternative and without further order of the Bankruptcy Court or (b) in the Creditors Trust, free and clear of all liens, Claims, Causes of Action, interests, rights, Security Interests, and other encumbrances under the Liquidation Alternative. On and after the Effective Date, except as otherwise provided herein, the Debtors and the Reorganized Debtors may operate their business and may use, acquire, and dispose of their Assets free of any restrictions of the Bankruptcy Code.

### 7.5. *Sources of Cash for Plan Distributions*

All Cash necessary for the Debtors, Reorganized Debtors, or the Creditors Trustee, as the case may be, to make Distributions to Holders of Allowed Claims shall be obtained from the proceeds of the Plan Sponsor DIP Facility (if any), the New Equity Infusion, and/or Exit Financing.

### 7.6. *Approval of Agreements*

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Supplement Documents, Plan Documents and all transactions contemplated by the Plan. Entry of the Confirmation Order shall constitute approval of the Plan Supplement Documents and such transactions and authorization for the Reorganized Debtors and the Debtors, as appropriate, to execute and deliver each of the Plan Documents.

### 7.7. *Entry of Final Decree*

As soon as is practicable after the Effective Date, the Reorganized Debtors shall File an application with the Clerk of the Court requesting the entry of a Final Decree closing the Case. The Reorganized Debtors shall be responsible for all U.S. Trustee fees owed pursuant to 28 U.S.C. § 1930 until entry of the final decree and closing of the bankruptcy case. Neither the Reorganized Debtors nor the Creditors Trust shall be responsible for any U.S. Trustee fees after the bankruptcy case is closed.

### 7.8. *Retention of Rights to Pursue Causes of Action*

Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including Chapter 5 Causes of Action) are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date. The Reorganized Debtors (under the Restructuring Alternative) or the Creditor Trustee (under the Liquidation Alternative) shall, on behalf of the Debtors, retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement Document, and the Reorganized Debtors' or the Creditor Trustee's, as the case may be, rights to commence, prosecute, or settle such Causes of Action shall be preserved. For the avoidance of doubt, the preservation of Causes of Action herein includes, without limitation, the right to object to all

Formatted: DocID

Claims, including Secured Claims, Administrative Claims, Priority Claims, and General Unsecured Claims.

The Debtors have not fully investigated any potential Causes of Action against any Persons or Entities at this time. The failure to list or describe any unknown Cause of Action herein is not intended to limit the rights of the Reorganized Debtors or the Creditor Trustee, as the case may be to pursue any known or unknown Cause of Action. Unless Causes of Action against a Person or Entity are expressly waived, relinquished, released, compromised or settled herein or any Final Order, the Debtors or the Estates (before the Effective Date) and the Debtors and the Reorganized Debtors (as applicable), hereby expressly reserve all Causes of Action (including the unknown Causes of Action) for later adjudication and therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action after, or as a result of the confirmation or Effective Date of the Plan, or the Confirmation Order. In addition, the Debtors and the Estates, and the Reorganized Debtors, expressly reserve the right to pursue or adopt any Claims not so waived, relinquished, released, compromised, or settled that are alleged in any lawsuit in which one of the Debtors or Estates is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement Documents, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors (under the Restructuring Alternative) or the Creditor Trustee (under the Liquidation Alternative) will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors, on behalf of themselves or the Creditors Trustee, as the case may be, expressly reserve all rights to prosecute any and all Causes of Action other than Causes of Action settled, resolved or released pursuant to this Plan.

For the avoidance of doubt, the Reorganized Debtors reserve and shall retain all Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Reorganized Debtors shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors (under the Restructuring Alternative) or the Creditor Trustee (under the Liquidation Alternative) shall have the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Such retained potential causes of action include, without limitation, (i) any potential Cause of Action arising from or related to any transfer or other actions or omissions referenced in each of the Debtors' Schedules or Statement of Financial Affairs, as same may be amended (ii) any potential Causes of Action against any past or present insider of the Debtors, (iii) any causes of action related to the extent, validity, and priority of any liens, (iv) any actions for breach of contract, and (v) any actions arising in tort. The Reorganized Debtors or the Creditor Trustee, as the case may be, will review payments made by and transactions involving the Debtors prior to the Petition Date to determine whether preference and other actions to avoid such payments and transactions should be brought. Failure to specifically identify potential actions herein shall not be deemed a waiver of any such action by the Debtors or any other party. The Debtors shall have the right to identify any additional Causes of Action prior to the Effective Date of the Plan.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 46

4841-4505-7683.15

Formatted: DocID

## ARTICLE VIII
## RESTRUCTURING ALTERNATIVE: THE CREDITORS TRUST

### 8.1. *Creation of the Creditors Trust and Appointment of the Trustee*

(a)     On the Effective Date, the Creditors Trust will be created pursuant to the Creditors Trust Agreement.

(b)     The Creditors Trust shall be administered by the Creditors Trustee who shall be selected by the Debtors and the Plan Sponsor and identified no later than ten (10) days prior to the Voting Deadline and notice of same shall be filed and served via ECF. The appointment of the initial Creditors Trustee and the terms of his/her compensation shall be subject to the approval of the Bankruptcy Court at the Confirmation Hearing.

(c)     On the Effective Date, all of the Creditor Trust Assets shall transfer to and vest in the Creditors Trust free and clear of all Claims, Liens, interests, rights, and encumbrances without the need for any action by the Debtors or the Bankruptcy Court.

(d)     Compensation owed to the Creditors Trustee and the Creditors Trustee's counsel shall be paid from the Creditor Trust Assets, not from the Reorganized Debtors.

### 8.2. *Property of the Creditors Trust*

On the Effective Date, notwithstanding any prohibition of assignability under applicable law, the Reorganized Debtors shall be deemed to have automatically transferred to the Creditors Trust all of its right, title, and interest in and to the Creditors Trust Assets, and the right to object to any Claims, unless otherwise agreed. The Reorganized Debtors shall reasonably cooperate with the Creditors Trustee to provide access to the Reorganized Debtors' books and records, necessary accounting information and documentation to enable the Creditors Trustee to efficiently and timely perform the functions of this Plan.

### 8.3. *Purpose of the Creditors Trust*

On the Effective Date, the Creditors Trust will be established and become effective for the benefit of the Creditors Trust Beneficiaries and for the primary purpose of liquidating its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors Trust. The Debtors, all Claimants, and all Holders of Interests shall be deemed to have adopted and approved the Creditors Trust Agreement. The purpose of the Creditors Trust is to (a) liquidate all Creditors Trust Assets and (b) distribute the proceeds of the Creditors Trust Assets to the Creditors Trust Beneficiaries. The Creditors Trust shall not be deemed a successor-in-interest of the Debtors or Reorganized Debtors for any purpose other than as specifically set forth herein or in the Creditors Trust Agreement. The ~~Creditors~~ Trust ~~is intended to qualify~~shall be treated as a ~~"~~grantor trust~~"~~ subject to the provisions of Section 671 of the Internal Revenue Code and as a liquidating trust under Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes~~, with the Holders of the Creditors~~ and, to the extent permitted under applicable law, for state and local income tax purposes. The Trust ~~Interests~~Beneficiaries will be treated as the grantors and deemed owners of ~~the Creditors Trust. As soon as practicable after the Effective Date, the~~

Formatted: DocID

Creditors Trustee (to the extent that the Creditors Trustee deems it necessary or appropriate in his or her sole discretion) shall value the assets of the Creditors Trust based on the good faith determinationtheir allocable portion of the Creditors Trustee. The valuation shall be used consistently by all parties for allTrust Assets for federal income tax purposes. Any valuation of the Trust Assets by the Trust Beneficiaries shall be consistent with the valuation of Trust Assets used by the Trust.The Bankruptcy Court shall resolve any dispute regarding such valuation.

### 8.4. *Powers of the Creditors Trustee*

The Creditors Trustee shall have the power to administer the assets of the Creditors Trust in a manner consistent with the Creditors Trust Agreement. Without limiting the generality of the foregoing, the Creditors Trustee shall (a) hold, administer, and prosecute the assets of the Creditors Trust and any proceeds thereof; (b) have the power and authority to retain, as an expense of the Creditors Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Creditors Trustee hereunder or in the Creditors Trust Agreement; (c) make distributions to Holders of Allowed Class 11, 12 and 13 Claimsthe Trust Beneficiaries; and (d) provide periodic reports and updates to the Reorganized Debtors regarding the status of the administration of the Creditors Trust. The Creditors Trustee shall step into the shoes of the Reorganized Debtors under the Plan when making Distributions to Creditors Trust Beneficiaries pursuant to the Creditors Trust Agreement. The Bankruptcy Court shall retain jurisdiction to the extent permissible under applicable law, to resolve any disputes regarding the Creditors Trust, hear objections to Claims, and otherwise address such additional matters brought by the Creditors Trustee in the fulfillment of his/her duties pursuant to the Plan and the Creditors Trust Agreement.

### 8.5. *Cooperation Between the Creditors Trustee and Reorganized Debtors*

The Creditors Trustee and the Reorganized Debtors shall consult and cooperate reasonably in the performance of their duties under the Plan.

### 8.6. *Termination of the Creditor Trust*

The Creditors Trust shall continue to exist until the Creditors Trustee has administered all Creditors Trust Assets and made a final Distribution to Holders of Allowed Claims in accordance with the terms of the Plan and performed all other duties required by the Plan and the Creditor Trust Agreement. Multiple extensions of the termination of the Creditors Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term. As soon as reasonably practicable after the Final Distribution, the Creditors Trustee shall dissolve the Creditors Trust pursuant to the Creditors Trust Agreement. Upon dissolution, the Creditors Trustee's duties under the Creditors Trust Agreement and the Plan shall terminate.

## ARTICLE IX
## LIQUIDATION ALTERNATIVE

### 9.1. *Notice of Implementation of the Liquidation Alternative*

If the Plan does not go effective under the Restructuring Alternative, (a) the Debtors shall file a notice with the Bankruptcy Court (the "**Liquidation Notice**"), stating that the Plan is effective under the Liquidation Alternative.

Formatted: DocID

**ARTICLE X**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE;**
**EFFECT OF PLAN CONFIRMATION**

**10.1.** *Conditions to Confirmation*

The following are conditions precedent to confirmation of the Plan:

(a)     The Clerk of the Bankruptcy Court shall have made findings and/or entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to § 1125 of the Bankruptcy Code, (ii) authorizing solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (v) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan, and (vi) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents;

(b)     The Confirmation Order, the Plan Documents, and the Plan are each in a form satisfactory to the Debtors and the Plan Sponsor (if applicable); and

(c)     The Confirmation Order shall include a determination that all of the settlements and compromises contained herein meet the applicable standards under § 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**10.2.** *Conditions Precedent to the Effective Date:  Restructuring Alternative*

The following are conditions precedent to the occurrence of the Effective Date:

(a)     The New Equity Infusion Documents have been executed and all conditions to the effectiveness thereof shall have been satisfied or waived;

(b)     All additional documents effectuating the Plan and the transactions thereunder have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein;

(c)     Approval by the Bankruptcy Court or the State of Texas, as applicable, of (i) the assumption or assumption and assignment or other transfer (if necessary) to the Plan Sponsor of the franchise or dealer agreements between (a) one or more of the Debtors and (b) Ford Motor Company, General Motors, Mitsubishi, and/or Toyota, or (ii) other acceptance or approval of the Plan Sponsor (or members/equity owners of the Plan Sponsor) as the holder of the equity in the Reorganized Debtor;

(d)     Payment of the New Equity Infusion by the Plan Sponsor to the Reorganized Debtors;

(e)     All real estate on which the Reorganized Debtors will operate the Dealerships is owned or leased by the Reorganized Debtors.

**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 49**
4841-4505-7683.15

Formatted: DocID

(f)      The Confirmation Order has become a Final Order, and it authorizes and directs the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to implement and consummate the provisions of, and transactions described or contemplated in, the Plan;

(g)      The Creditors Trust has been created;

(h)      The New Equity has been issued; and

(i)      Unless extended by the United States Trustee or the Court, the Restructuring Alternative under this Plan must go effective on or before seventy-five (75) days after the Confirmation Date.

**10.3.**   *Conditions Precedent to the Effective Date:  Liquidation Alternative*

The following are conditions precedent to the occurrence of the Effective Date:

(a)      The Confirmation Order has become a Final Order, and it authorizes and directs the Debtors and the Creditor Trustee to take all actions necessary or appropriate to implement and consummate the provisions of, and transactions described or contemplated in, the Plan;

(b)      The Creditors Trust has been created.

**10.4.**   *Waiver of Conditions*

The Debtors may waive any one or more of the conditions set forth in Sections 10.1, 10.2(a)-(h) or 10.3 in a writing executed by the Debtors without notice or order of the Bankruptcy Court and without notice to any parties in interest other than the Plan Sponsor.  The condition precedent in 10.2(i) cannot be waived or modified without approval by the United States Trustee or the Court.

**10.5.**   *Effect of Non-Occurrence of the Effective Date*

If the Effective Date shall not occur, the Plan shall be null and void, and nothing contained herein shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors, (b) prejudice in any manner the Debtors' rights, including, without limitation, any right to seek a further extension of the exclusivity periods under § 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors.

**ARTICLE XI**
**CLAIM OBJECTIONS, AND**
**MISCELLANEOUS DISTRIBUTION PROVISIONS**

**11.1.**   *Objections to Claims*

(a)      All objections to Claims must be Filed on or before the Claims Objection Deadline, which is two hundred seventy (270) days after the Effective Date, unless extended by the Bankruptcy Court for cause shown.  Any Disputed Claim to which an objection is not Filed on or before the Claims Objection Deadline will be deemed to constitute an Allowed Claim following the Claims Objection Deadline.  The Creditors Trustee may, on or before the Claims Objection Deadline, File a motion with the Bankruptcy Court requesting an extension of the Claim Objection Deadline.  Any

Formatted: DocID

such motion Filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim that is the subject of the motion, until and including the date that is ten (10) business days following the date of entry of the Order granting the motion.

(b)      Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim. The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtors on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

(c)      To facilitate the timely and effective administration of Claims, except as otherwise expressly stated herein, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be Filed in any of the Chapter 11 Cases to assert a Claim against one of the Debtors or the Estates without prior authorization of the Bankruptcy Court, and any such proof of Claim which is Filed without such authorization shall be deemed null, void and of no force or effect; *provided, however,* that the Holder of a Claim that has been evidenced in the Chapter 11 Cases by the filing of a proof of Claim on or before the Bar Date shall be permitted to File an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**11.2.    *Estimation of Claims***

As applicable, the Creditors Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Debtors had previously objected to or otherwise disputed such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either (a) the Allowed amount of such Claim or (b) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditors Trustee may pursue supplementary proceedings to object to the allowance of such Claim.

**11.3.    *Distributions Under the Plan***

(a)      ***Allowed Claims***

Distributions by either of the Trusts established hereunder will only be made to Holders of Allowed Claims in accordance with the terms of this Plan, the Plan Documents, and the Plan Supplement Documents. No payment or Distribution provided under this Plan shall be made on account of a Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim. Distribution will be made by the Creditors Trustee to Holders of Allowed Claims in all Classes entitled to Distribution pursuant to the Plan.

Formatted: DocID

**SECOND AMENDED** **CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 51**
4841-4505-7683.15

Any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled under this Plan, any other Distribution or treatment that it and the Reorganized Debtors, Creditors Trustee, as the case may be, may agree to in writing, so long as such alternative treatment is (a) substantially the same or less favorable to the Claimant than the treatment otherwise prescribed herein and (b) does not violate any term of this Plan, the Plan Documents, or the Plan Supplement Documents.

(b)     *No Post-Petition Interest on Claims*

Except as otherwise specifically provided in the Plan or Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

(c)     *Due Authorization by Claimants*

Every Claimant who elects to participate in the Distributions provided in this Plan warrants that the Claimant is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Claimant under the Plan.

(d)     *De Minimis Distributions and Rounding*

Ratable Distributions to holders of Allowed Claims will not be made if such Distribution will result in a Distribution amount of less than $150.00, unless a request therefore is made in writing to the Trustee.

(e)     *Distribution Record Date*

As of the close of business on the Effective Date, the various lists of Holders of Claims in each Class, as maintained by the Debtors or their respective agent(s), shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Effective Date. Neither the Debtors, the Reorganized Debtors, nor the Creditors Trustee has any obligation to recognize any transfer of a Claim occurring after the close of business on the Effective Date.

(f)     *Delivery of Distributions and Other Notices*

As applicable, the Reorganized Debtors or the Creditors Trustee will issue or cause to be issued, the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, will make Distributions to any Holder of an Allowed Claim as and when required by this Plan at (i) the address of such Holder on the books and records of the Debtors; (ii) the address set forth in any timely-filed proof of Claim; or (iii) the address listed in any "address-change" notice delivered to the Reorganized Debtors and the applicable Trustee, including any addresses included on any transfers of Claim Filed pursuant to Bankruptcy Rule 3001 prior to the Effective Date. If any Distribution to any Holder is returned as undeliverable, no Distribution or payment to such Holder shall be made unless and until the Reorganized Debtors or the applicable Trustee, as the case may be, has been notified of the then-current address of such Holder. The Creditors Trustee may require any Trust Beneficiary or other party receiving a Distribution to furnish to said Trustee in writing his/her/its employer or taxpayer-

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 52
4841-4505-7683.15

Formatted: DocID

identification number, as assigned by the IRS. Such Trustee may condition any Distribution to any Trust Beneficiary or other party receiving a Distribution on the receipt of such identification number. Notwithstanding the foregoing, neither the Creditors Trustee nor the Reorganized Debtors is under any duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim. Neither Trustee has any responsibility to ensure that it has the correct mailing address and taxpayer or employer-identification number for a Creditor.

(g) *Distributions to be Pro Rata Within a Class*

Except as otherwise provided herein, all Distributions constituting a partial payment to holders of Allowed Claims within a specific Class shall be made on a Pro Rata basis to the holders of Allowed Claims in such Class.

(h) *Distributions on Account of Disputed Claims*

No Distributions will be made on a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. In determining the amount of Distributions to be made under the Plan to Holders of Allowed Claims on the Effective Date or a Distribution date, the appropriate Distributions shall be made as if all the Disputed Claims as of such Distribution date were Allowed Claims in the full amount claimed by the Holders thereof, unless otherwise ordered or estimated by the Bankruptcy Court.

(i) *Disputed Claim Reserves*

(i) *Disputed Claim Reserve Account*

In addition to as provided otherwise in the Plan, the Creditors Trustee shall reserve for the account of each Holder of a Disputed Claim entitled to receive a Distribution in the Disputed Claim Reserve Account (x) Trust Assets that would otherwise be distributable to such Holder on such date in accordance with the Plan were such Disputed Claim an Allowed Claim on such date or (y) such other property as may be agreed between said Trustee, the Holder of the Disputed Claim, and the Reorganized Debtors.

Property reserved under this Section shall be set aside and, to the extent practicable, held by the applicable Trustee in an interest-bearing account to be maintained by said Trustee pending resolution of such Disputed Claims; provided, however, that Cash shall be invested in a manner consistent with the requirements of § 345 or as otherwise ordered by the Bankruptcy Court. All interest accruing on funds held in the Disputed Claim Reserve Account shall revert to the applicable Trust.

If a Disputed Claim becomes an Allowed Claim, property of the applicable Trust reserved for the Holder thereof shall be distributed by the Trustee to such Holder as soon as practicable after such Claim becomes an Allowed Claim pursuant to, and to the extent provided for in, the Plan. To the extent an objection to a Disputed Claim is upheld or a Claim is withdrawn or reduced, the reserves held on account of such Disputed or withdrawn Claim shall be reallocated to the Allowed Claimants in the applicable Class pursuant to their respective Pro Rata Share.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 53

4841-4505-7683.15

Formatted: DocID

(ii)     ***Disputed Administrative Claim Reserve Account***

As to Priority Claims, Administrative Claims, and Other Secured Claims, the Reorganized Debtors shall reserve in the Disputed Administrative Claim Reserve Account on account of the Holder of a Disputed Claim (a) Assets of the Reorganized Debtors or the Creditors Trust, as the case may be, that would otherwise be distributable to such Holder on such date in accordance with the Plan were such Disputed Claim an Allowed Claim on such date or (b) such other property as may be agreed between the Reorganized Debtors or the Creditors Trustee, as the case may be, and the Holder of the Disputed Claim.

Property reserved under this Section shall be set aside and, to the extent practicable, held by the Reorganized Debtors or the Creditors Trustee, as the case may be, in an interest-bearing account to be maintained by the Reorganized Debtors or the Creditors Trustee, as the case may be, pending resolution of such Disputed Claims; provided, however, that Cash shall be invested in a manner consistent with the requirements of § 345 or as otherwise ordered by the Bankruptcy Court.  All interest accruing on funds held in the Disputed Administrative Claims Reserve Account shall revert to the Reorganized Debtors or the Creditors Trust, as the case may be.

If a Disputed Claim becomes an Allowed Claim, property of the Reorganized Debtors or the Creditors Trust, as the case may be, that was reserved for the Holder thereof shall be distributed by the Reorganized Debtors or Creditors Trustee to such Holder as soon as practicable after such Claim becomes an Allowed Claim pursuant to (i) and to the extent provided for in the Plan; (ii) an agreement between the Holder of the Disputed Claim and the Reorganized Debtors or Creditors Trustee; or (iii) to a final and non-appealable order of the Bankruptcy Court.  To the extent an objection to a Disputed Claim is upheld or a Claim is withdrawn or reduced, the reserves held on account of such Disputed or withdrawn Claim shall be reallocated to the Reorganized Debtors or the Creditors Trust, as the case may be.

(j)     ***Undeliverable or Unclaimed Distributions***

Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within 90 days of its issuance shall be entitled to receive a reissued check from the Creditors for the amount of the original check, without any interest, if such Entity requests the Creditors Trust to reissue such check and provides such documentation as may be requested to verify that such Entity is entitled to such check ~~prior to the later of (a) the first anniversary of the Effective Date and (b) 180 days after such Entity's Claim becomes an Allowed Claim~~ within 180 days of the date of issuance.  If an Entity fails to cash a check within 90 days of its issuance and fails to request reissuance of such check within 180 days of its issuance pursuant to the terms of this Plan, such Entity shall not be entitled to receive any distribution under the Plan with respect to the amount of such check. If the distribution to any holder of an Allowed Claim is returned to the Creditors as undeliverable, no further Distributions will be made to such holder unless and until the Creditors Trust is notified in writing within 90 days of such Holder's current address; provided, however, that the Creditors Trust shall make reasonable efforts for a period of 90 days to contact the Holder of such Allowed Claim, identify the correct mailing address and resend the Distribution.  All unclaimed property shall revert to the Creditors Trust for further disbursement in accordance with this Plan, and the Claim of any Holder or successor to such Holder with respect to such Claim shall be discharged and forever barred notwithstanding any federal or state escheatment laws to the contrary. In no event shall any funds escheat to the State of Texas.

Formatted: DocID

**11.4.** *Setoffs*

Except as otherwise expressly provided herein, pursuant to §§ 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtors, the applicable Trustee, and the Reorganized Debtors may, but will not be required to, setoff against any Claim and the Distributions made with respect to the Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that any of the Debtors may hold against the Holder of such Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtors, nor any provision of the Plan shall constitute a waiver or release by the Debtors or the Creditors Trustee of any such claims, rights and Causes of Action that the Debtors may possess against such Holder. If the Debtors fail to setoff against a Holder of a Claim and seek to collect a claim from the Holder of such Claim after a Distribution to the Holder of such Claim pursuant to the Plan, the Reorganized Debtors or Creditors Trustee shall be entitled to full recovery on its claim, if any, against the Holder of such Claim or Interest. In event shall any Party be entitled to setoff any Claim or Interest against any Claim of the Debtors without the consent of the Debtors, Reorganized Debtors and/or the Creditors Trustee unless such Party files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such Party asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**11.5.** *Recoupment*

Except as otherwise expressly provided for in the Plan, in no event all shall any holder of Claims if Interests be entitled to recoup any Claim of Interest against any Claim, right or account receivable of the Debtors, the Reorganized Debtors and/or the applicable Trustee unless (a) such holder actually provides notice thereof in writing to the Debtors, the Reorganized Debtors and/or the applicable Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors and/or the applicable Trustee consents to the requested recoupment. In the absence of a written response from the Debtors, the Reorganized Debtors and/or the applicable Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

## ARTICLE XII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1.** *Executory Contracts and Unexpired Leases to be Rejected Unless Expressly Assumed*

To the extent necessary and unless previously rejected, under the Restructuring Alternative, the Plan operates as a motion under § 365 to assume all agreements, including sales and service agreements and real estate leases under which the Debtors operate automotive/vehicle franchise agreements at the Dealerships, including such agreements with Mitsubishi, Toyota, General Motors,

**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 55**

4841-4505-7683.15

and Ford Motor Company.[10] The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and, where applicable, assignments pursuant to § 365 of the Bankruptcy Code. All proposed cure amounts will be identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. If no such cure amount is on the Schedule of Assumed Executory Contracts and Unexpired Leases, then the cure amount is zero. For all other Executory Contracts or Unexpired Leases, and for the foregoing automotive/vehicle franchise agreements in the event of the Liquidation Alternative, except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date or no later than thirty (30) days after the Effective Date, every Executory Contract and Unexpired Lease shall be deemed rejected unless it is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to § 365 of the Bankruptcy Code, effective as of the Petition Date. Any party to an Executory Contract identified for rejection as provided herein may, within the same deadline and in the same manner established for Filing objections to Confirmation, File any objection thereto. Failure to file any such objection within the time period set forth above shall constitute consent and agreement to the rejection

Each Executory Contract on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code. Nothing contained in this Plan constitutes an admission by the Debtors that any such contracts or leases are "executory" or that the Debtors have any liability thereunder. Further, such assumption is subject to the same rights that the Debtors held or hold on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law. If the Bankruptcy Court or any other court of competent jurisdiction determines before, on, or after the Effective Date, that any agreement in the form of a lease of real or personal property identified for assumption on the Schedule of Assumed Executory Contracts and Unexpired Leases is, in fact, a secured transaction, the resulting secured indebtedness arising from such determination shall be treated as a Class 8 Claim. Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law. The Debtors/Reorganized Debtors reserve the right to modify the treatment of an Executory Contract pursuant to this Plan.

## 12.2. *Approval of Assumptions*

Subject to the occurrence of the Closing, the Confirmation Order (except as otherwise provided therein) shall approve the assumptions, revestments, and, to the extent not subject to dispute, the cure amounts described in this Article and listed on the Schedule of Assumed Contracts pursuant to § 365 of the Bankruptcy Code.

## 12.3. *Objections to Assumption of Executory Contracts and Unexpired Leases*

Any Entity objecting to the proposed assumption of an Executory Contract based on any ground, including a lack of adequate assurance of future performance or the adequacy of the cure amount listed in the Schedule of Assumed Contracts and Unexpired Leases, shall File and serve a

---

[10] Issues regarding assumption and assignment of the franchise agreements with Gulf States Toyota, Mitsubishi and General Motors will not be sought via Confirmation of the Plan, but will instead be addressed post-confirmation on or prior to dates to be agreed upon by the Debtors and Gulf State Toyota, Mitsubishi and General Motors.

**SECOND AMENDED** CHAPTER 11 PLAN OF REORGANIZATION FOR REAGOR-DYKES – PAGE 56

4841-4505-7683.15

written objection to the proposed assumption of such Executory Contract by the same deadline and in the same manner established for filing objections to Confirmation.

Failure to File an objection within the time period set forth above shall constitute consent to the assumption of those Executory Contracts by the Reorganized Debtors, including an acknowledgment that the proposed assumption provides adequate assurance of future performance. If any Entity files an objection to the proposed assumption of an Executory Contract by the applicable Debtor based on any ground other than the adequacy of the cure amount set forth in the Schedule of Assumed Contracts and Unexpired Leases, and the Bankruptcy Court ultimately determines that the Debtors cannot assume such contract or lease or that the Debtors cannot provide adequate assurance of future performance as proposed or in any modified proposal submitted by the Debtors, then the Executory Contract shall automatically be deemed to have been rejected pursuant to this Article.

**12.4.** *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

If not the subject of *bona-fide* dispute pursuant to this Article as of Confirmation Date, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Debtors pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract.

**12.5.** *Rejection of Executory Contracts*

The Plan constitutes and incorporates a motion by the Debtors to reject, as of the Effective Date, all Executory Contracts to which one of the Debtors is a party, except for Executory Contracts that (a) have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (b) are the subject of a separate motion pursuant to § 365 of the Bankruptcy Code to be Filed and served by the Debtors on or before the Confirmation Date, or (c) are specifically designated on the Schedule of Assumed Contracts and Unexpired Leases.

**12.6.** *Bar Date for Rejection Damages*

If the rejection of an Executory Contract pursuant to this Article gives rise to a Claim by the other party or parties to such Executory Contract, such Claim must be Filed with the Bankruptcy Court by the Rejection Damages Bar Date.  If such Claim is timely Filed and is an Other Secured Claim, it shall be classified in Class 8.  If such Claim is timely Filed and is a General Unsecured Claim, it shall be classified in Class 11; provided, however, that in either event, any Claim arising from the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Debtors or the Estates, affiliates, successors, or properties, unless a proof of Claim is Filed by the Rejection Damages Bar Date.

**ARTICLE XIII**
**RELEASES; INDEMNIFICATION; PLAN INJUNCTION**

Formatted: DocID

### 13.1. *Binding Effect*

Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in each of the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

### 13.2. *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to §§ 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise of substantially all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest or any Distribution to be made on account of such Allowed Claim or Interest. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and Holders, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Trustee, in conjunction with the Reorganized Debtors, may compromise and settle Claims against them and Causes of Action against other Entities.

### 13.3. *Discharge of Claims and Termination of Interests*

Upon the Effective Date, and in consideration of the Distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each Holder of a Claim or Interest and any successor, assign, or affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors of and from any and all Claims, Interests, Causes of Action, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such Holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 524, and 1141 of the Bankruptcy Code, from asserting any such discharged Claim against or terminated Interest in the Debtors or Reorganized Debtors.

**Formatted:** Underline

### ~~13.4. *Releases by a Holder of a Claim*~~

~~As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Plan Supplement Documents, and the Plan Documents, for good and valuable consideration, including the contributions and services of the Released Parties to the Debtors' reorganization, the adequacy of which is hereby confirmed, and except as otherwise expressly provided in the Plan or the Confirmation Order, as an integral component of this Plan, the Released Parties are deemed forever released and discharged by the Releasing Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of one or more of the Holders of Claims or other Entity, whether liquidated or unliquidated, fixed or~~

**Formatted:** DocID

contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that one or more of the Holders of Claims or other Entities would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Debtors or the Estates or other Entities, based on or related to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the subject matter of or the transactions or events giving rise or related to, any Claim or Interest that is treated in this Plan, the Debtors' business, contractual arrangements between the Debtors and any Released Party, the restructuring of any Claim before or during the Chapter 11 Cases, the Disclosure Statement, this Plan, the Plan Support Documents, the Plan Documents, the negotiation, formulation, or preparation thereof or the terms therein, the solicitation of votes with respect to this Plan, or any act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act, willful misconduct, or gross negligence.

### ~~13.5.~~13.4.     ~~*Exculpation, Release, and*~~ *Injunction*

~~(a)     *Exculpation and Release*~~

~~To the extent permitted by applicable law, the Professionals of the Estates are hereby released and exculpated from any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, including, without limitation, the planning, filing or the administration of the Chapter 11 Cases, the formulation, preparation, dissemination, approval, confirmation, administration, or consummation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan or consummation or administration of the Plan, except to the extent arising out of or related to any act or omission of such Professional that is a criminal act, willful misconduct, or gross negligence. The protections of this section shall be in addition to, and shall not limit, all other releases, injunctions, exculpations, and any other applicable law or rule protecting the Professionals of the Estates and the Released Parties from liability. By accepting Distributions to this Plan, each Holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in this Plan.~~

~~(b)~~(a)     *Injunction / Bankruptcy Court Jurisdiction*

The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on any claim or Cause of Action against ~~a Released Party or~~ one of the Professionals of the Estates in connection with or arising out of the administration of the Chapter 11 Cases, including the negotiation and pursuit of the Disclosure Statement, the Plan Supplement Documents, the Plan Documents, the Restructuring, the solicitation of votes for, or confirmation of, this Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of this Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with this Plan or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct.

### ~~13.6.~~13.5.     *Injunction Related to Releases and Exculpation*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant

to this Plan—*, provided however, that nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.*

Formatted: No underline

### 13.7.13.6.    *Term of Stay or Injunctions*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases or pursuant to §§ 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 13.8.13.7.    *Injunction Against Interference with Plan*

Upon entry of the Confirmation Order, all Holders of Claims and Interests and all other parties in interest, along with their respective successors and assigns and present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or occurrence of the Effective Date and, after the occurrence of the Effective Date in the event of a Restructuring, shall be further enjoined from obstruction or interference, directly or indirectly, with the business operations, business relationships, existing contracts, or prospective contractual relationships of the Reorganized Debtors and/or any effort to impede the Reorganized Debtors' ability to meet the Post-Confirmation Business Plan or otherwise perform their obligations under this Plan.

## ARTICLE XIV
## MISCELLANEOUS

### 14.1.    *Retention of Jurisdiction*

Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    to determine (i) any Disputed Claims, Disputed Interests and all related Claims accruing after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (ii) the validity, extent, priority and avoidability of consensual and nonconsensual Liens and other encumbrances, (iii) preconfirmation tax liability pursuant to § 505, and (iv) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

Formatted: DocID

(b)     to allow, disallow, estimate, liquidate or determine any Claim or Interest against a Debtor and to enter or enforce any order requiring the filing of any such Claim or Interest before a particular date;

(c)     to approve all matters related to the assumption, assumption and assignment, or rejection of any Executory Contract of the Debtor pursuant to § 365 and this Plan;

(d)     to determine any request for payment of an Administrative Claim entitled to priority under § 507(a)(1), including compensation of parties entitled thereto, or fees and reimbursements to the Reorganized Debtors;

(e)     to resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was Filed or whether a Disallowed Claim or Disallowed Interest should be reinstated;

(f)     to implement the provisions of the Plan and entry of orders in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

(g)     to modify the Plan pursuant to § 1127 of the Plan;

(h)     to adjudicate any and all Causes of Action that arose in the Case prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date, including without limitation, any remands of appeals;

(i)     to resolve disputes concerning any reserves with respect to Disputed Claims, Disputed Interests or the administration thereof;

(j)     to resolve disputes, including to hear, adjudicate, and resolve any matter or dispute brought by the Reorganized Debtors or the Trustee, including (i) Claims objections and (ii) any other matter relating to Class 11, a Creditors Trust Asset, this Plan, a Plan Document, a Plan Supplement Document, or anything related to the Plan and the Confirmation Order;

(k)     to resolve any disputes concerning whether a person or entity had sufficient notice of the Case, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(l)     to determine any and all applications, Claims, Interests, pending adversary proceedings and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Interests) in these Case;

(m)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(n)     to seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

Formatted: DocID

(o)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(p)     to recover all Assets of the Debtors and property of the Estates, wherever located, including any Cause of Action;

(q)     to resolve any dispute relating to the approval and payment of the fees and expenses of the Debtors or its respective professionals;

(r)     to resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

(s)     to hear any other matter not inconsistent with the Bankruptcy Code;

(t)     to resolve any and all disputes or controversies relating to distributions to be made, and/or reserves or escrows to be established, under the Plan;

(u)     to enter one or more final decrees closing the Case;

(v)     to enforce the Plan, including the releases, injunctions, and exculpations granted herein; and

(w)     to approve settlements relating to the above.

### 14.2.   *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 14.3.   *Ipso Facto and Similar Provisions Ineffective*

Any term of any policy, contract, instrument, or other obligation applicable to the Debtors shall be void and of no further force or effect with respect to the Debtors to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtors as a result of or gives rise to a right of any Entity based on any of the following (a) the insolvency or financial condition of the Debtors, (b) the commencement of the Chapter 11 Cases, and (c) the confirmation or consummation of this Plan.

### 14.4.   *Cram Down*

If all of the applicable requirements for Confirmation of the Plan are met as set forth in § 1129(a) except subsection (8) thereof, the Debtors may request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b), notwithstanding the requirements of § 1129(a)(8), on the basis that the Plan is fair and equitable as to the Creditors and does not discriminate unfairly with respect to any Impaired Class of Claims against the Debtors that does not vote to accept the Plan as described in the

Formatted: DocID

Disclosure Statement. The Debtors reserve the right to alter the treatment of any Class in order to effectuate a cram down under § 1129(b).

**14.5. *Modification of the Plan***

The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation Date. After the Confirmation Date, the Debtors may, upon order of the Court, amend or modify this Plan in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan.

**14.6. *Withdrawal or Revocation of the Plan***

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn by the Debtors, or if the Confirmation Date does not occur with respect to the Debtors, the Plan shall be of no further force or effect.

**14.7. *Notices***

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following:

| | |
|---|---|
| Counsel for the Debtors: | Marcus A. Helt |
| | C. Ashley Ellis |
| | Foley Gardere |
| | 2021 McKinney Avenue |
| | Suite 1600 |
| | Dallas, Texas 75201 |
| | Telephone: (214) 999-3000 |
| | Facsimile: (214) 999-4667 |
| | |
| To the Creditors Trustee: | Dennis Faulkner |
| | Lain, Faulkner & Co., P.C. |
| | 400 N. St. Paul, Suite 600 |
| | Dallas, Texas 75201 |
| | Telephone: (214) 720-1929 |

**14.8. *Severability***

Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Debtors reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The

Formatted: DocID

Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.9. *All Claims*

This Plan is intended to deal with all Claims against and Interest in each of the Debtors of whatever character whether or not disputed, contingent, or liquidated and whether or not allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code. However, only those Claims Allowed under § 502 shall be entitled to receive the treatment afforded by the Plan.

### 14.10. *Immediate Binding Effect*

This Plan shall be binding on and inure to the benefit of each of the Debtors, the Reorganized Debtors, all present and future Holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Case. In addition, notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement Documents shall be immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property right under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with one of the Debtors.

### 14.11. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement Document shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

Dated: September 3, 2019

Respectfully submitted,
Reagor-Dykes Motors, LP *et al.*

By: _/s/ Robert Schleizer_
       Chief Restructuring Officer

Prepared by:

Marcus A. Helt (TX 24052187)
C. Ashley Ellis (TX 00794824)
**FOLEY GARDERE**
**FOLEY & LARDNER**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

**Formatted:** DocID

Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION**

Formatted: DocID