Roger S. Cox (SBN 04956200)
UNDERWOOD
P.O. Box 9158
Amarillo, TX  79101
Telephone (Direct): (806) 242-9651
Fax: (806) 379-0316
E-mail: roger.cox@uwlaw.com
*Counsel for Patti Sue Noel, Independent Executor of*
*The Estate of M.I. "Jack" Morris, Deceased, et al.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES MOTORS, LP, | § | **Case No. 18-50214-rlj-11** |
| | § | (Jointly Administered)[1] |
| Debtor. | § | |

## PLAINVIEW LANDLORD'S MOTION
## FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

**Patti Sue Noel, Independent Executor of the Estate of M.I. "Jack" Morris, Deceased**,[2]

a creditor and party in interest ("***Movant***" or "***Plainview Landlord***"), submits the following Motion

for Allowance of Administrative Claim:

### I.    **Summary/Introduction**

1.      Movant, in her representative capacity, is the owner of the Debtors' Ford/Lincoln

dealership location in Plainview.  The Movant seeks allowance of a priority administrative claim

based upon the possession and occupancy of the leased premises by the Debtors-in-Possession

throughout the pendency of this case.

---

[1] The Debtors are Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III LLC (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), Reagor Auto Mall Ltd. (Case No. 18-50324) and Reagor-Dykes Auto Mall I LLC (Case No. 18-50325).

[2] And joined, as necessary, by **Patti Sue Noel, Trustee of the Scottie Morris Credit Trust** and **Jack Morris Ford Lincoln Mercury, Inc.**

**PLAINVIEW LANDLORD'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**Page 1**

## II.   **Jurisdiction/Core Proceeding/Authority**

2.      This Court has jurisdiction over (and constitutional authority to decide) this contested matter under 28 U.S.C. §§ 157 and 1334.  This motion is a core proceeding under 28 U.S.C. § 157(b)(2).  This motion is also filed under 11 U.S.C. §§ 503 and 507.

3.      The Movant consents to the entry of final orders by the Bankruptcy Judge with respect to this Motion.

## III.   **Background Facts**

4.      Plainview Landlord is the owner of the (nonresidential) real property that was the leased and licensed location of Reagor Dykes Ford Lincoln in Plainview, Texas.  The subject property bears the street address of 808 N. I-27, Plainview, Texas ("*the Plainview Dealership*").[3]

5.      The Plainview Dealership is non-residential real property consisting of approximately 25,000 square feet of building space on about 4.9 acres of land at the intersection of Interstate 27 and Olton Road (U.S. 70) in Plainview.  The property is uniquely suited for a franchised new car dealership, and it has been home to the local Ford/Lincoln dealership for many years (pre-dating the Debtors' occupancy).

6.      The Plainview Dealership was originally occupied by Reagor Dykes Auto Company, LP ("*RDAC*"), pursuant to a lease and related monetary obligations arising out of a Dealership Purchase Agreement ("*DPA*") to which Reagor-Dykes Motors, LP ("*RDM*") is also a party.   The DMA includes a lease component that commenced September 1, 2010, with an initial term of ten years (for convenience only, "*the Lease*").

7.      Under the DMA, RDAC was required for the initial Lease term to pay, among other things:  [i] base cash lease payments of $6,500.00 per month, [ii] a related payment stream of a

---

[3] M.I. (Jack) Morris was the owner of record title at the time of his death.

like amount (approximately $6,439.00 per month), and [iii] "triple net" expenses such as ad valorem (property) taxes.  The tenant/lessee is also required to keep the building and premises fully insured.

8.      During the pendency of this jointly administered case, Ford Motor Credit ("*FMC*") also effectively occupied the Plainview Dealership after the order for relief, storing dozens of (100+?) vehicles that were apparently FMC collateral – with no compensation to the Plainview Landlord.[4]  FMD ultimately not only disposed of its motor vehicle collateral (inventory), but its repossession agent effectively ransacked the Plainview Dealership, purportedly in the process of disposing of other personal property (equipment), leaving the Plainview Dealership in complete disarray.[5]

9.      Thereafter, the Debtors, while still acting as Debtors-in-Possession, remained in possession and control of the Plainview Dealership as the Debtors apparently worked through various purported restructuring alternatives.   Vehicles and other personal property have sporadically been on site during this time, including most recently the month of December, 2019.

10.      As mentioned, the Debtors have continued in exclusive occupancy of the Plainview Dealership Property, presumably in anticipation of a plan of reorganization under which the Debtors or a successor under any such plan would resume motor vehicle dealer operations.  On

---

[4] As a practical matter, all of the Debtors have been in possession of the Plainview Dealership post-petition, apparently in anticipation of a plan of reorganization.

[5] This is not to suggest a malicious intent by FMC; rather, its repossession agent simply acted with complete disregard for the rights of the owner of that building or others affected by its actions.  This motion assumes for the sake of argument and giving FMC the benefit of the doubt, that this was a function of an ill-equipped or poorly supervised third party contractor and not anything that would have been countenanced by FMC.

**PLAINVIEW LANDLORD'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**Page 3**

information and belief, the Ford dealer license location at this dealer point has not been terminated, and the Texas Department of Motor Vehicles ("**DMV**") still shows this as a licensed location.[6]

11.     The continuous and ongoing right to occupy specific real property is an absolute requirement of maintaining any motor vehicle dealer license in the State of Texas, and it is also generally a requirement of any original equipment manufacturer (OEM) for any motor vehicle dealer to maintain OEM franchise rights.  Here, as mentioned, the Ford dealer point in Plainview has never been terminated, and the motor vehicle license applicable to the Dealership Property remains in existence.

12.     The Plainview Dealership is now at ground zero for any remaining restructure or reorganization.

### IV.     Grounds for Relief

13.     To date, no post-petition base rent has ever been paid for the months of August 2018 or September 2018.  The Debtors therefore have been in material default under the lease/DPA since the order for relief.

14.     No base rent (nor any ad valorem tax accrual) has been paid for October 2019, November 2019, December 2019, or January 2020 occupancy (although on information and belief, the premises are insured).[7]

---

[6] A physical location is critical because Texas motor vehicle dealer licenses are location-specific, with a licensee required to have a legal right to occupy specifically identified real property.  Similarly, any OEM would condition a franchise grant on a specific physical location suitable for a motor vehicle dealership.  Here, the DMV shows an existing license at this location under GDN No. P112025-RDAC, doing business as Reagor Dykes Ford Lincoln.

[7] The other executory obligations of the debtor are described in other pleadings regarding Section 365 and assumption/rejection.  That is beyond the scope of this motion, and Plainview Landlord reserves all rights in the context of assumption and rejection of the applicable lease and related Dealership Purchase Agreement.  By describing only the defaults in payment of base rental and the single item of additional rent, Movant does not waive and expressly reserves all rights with respect to other sums that may be due to or for the benefit of Plainview Landlord under the Code, the lease, or any other contractual obligation, including any cure payments necessary to assume any remaining lease or executory contract rights, if any.

**PLAINVIEW LANDLORD'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**Page 4**

15.     The Debtors recently tendered to Movant a $12,500.00 check drawn on what appeared to be a "Reagor Auto Mall" Debtor-in-Possession Account, purportedly for October 2019 base rent.  The Debtors' CRO, however, has since requested the Movants not negotiate that check.

16.     Ad valorem (property) taxes on the Plainview Dealership Property for 2019 are now due and payable.  This was a material, express obligation of the lessee under the Lease, and it should otherwise be a cost of estate administration and payable under applicable Debtor-in-Possession guidelines in the Northern District of Texas.  The amount of 2019 ad valorem tax now due and payable is $42,440.98, and it becomes delinquent, if not paid by January 31, 2020.  Under state law, applicable interest, penalties, or costs will continue to accrue and increase with each passing month.

17.     Procedurally, the Debtors (as Debtors-in-Possession) filed a motion to assume leases, which purportedly included any remaining lease rights as to the Plainview Dealership.  No ruling, however, was entered, and no lease or executory contract with Movant was ever actually assumed.  *See* Doc Nos. 1115 and 1116.

18.     The Debtors, through counsel, have asserted that any lease applicable to the Plainview Dealership has neither been assumed nor rejected, and they have refused to relinquish possession of the Plainview Dealership.  And the Debtors remain in exclusive possession and occupancy, as they apparently are still in the process of attempting to confirm a plan.  As mentioned above, the Plainview Dealership is a critical component of any remaining reorganization prospect – no location means no authorized dealer, which means no reorganization.

19.     The reasonable rental rate for the Plainview Dealership is not less than $12,500.00 per month, if not more.  This is a reasonable, if not below-market, rate for a building of this size (over 20,000 square feet, with service bays, a paint booth, and other specialized items), specifically

**PLAINVIEW LANDLORD'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**Page 5**

suited for a franchised motor vehicle dealership (specifically a Ford dealership), sitting on nearly five acres of land, with highway access road frontage in a prime, long-standing location.[8]

20.     To reiterate, without at least one licensed location, the Debtors could not have plausibly remained as debtor-in-possession and even purported to formulate a plan. Accordingly, the Debtors' continued occupancy of the Plainview Dealership as Debtors-in-Possession and plan proponents was necessary for the administration of the estate, and the Plainview Landlord should be afforded an appropriate administrative claim.

21.     The full nature and extent of the Plainview Landlord's claim is not known, and it will not be fully known until the Plainview Landlord is allowed to regain possession of the Plainview Dealership. In addition to normal wear and tear, the Plainview Dealership has been subjected to the actions of the FMC repossession agent, it has been burglarized on at least one occasion, and more recently, the Debtors have not conducted even the most basic routine maintenance. Accordingly, the Plainview Landlord reserves her right to amend this claim as necessary.[9]

22.     At a minimum, Plainview Landlord's administrative claim includes the following:

- All post-petition, pre-rejection rent including, but not limited to:[10]

    o $6,500.00 (August 2018)

    o $6,500.00 (September 2018)

---

[8] The appraiser retained by Plainview Landlord has opined that the reasonable monthly net base rental value of the Dealership Property is $15,000.00 per month.

[9] As this is written, certain repairs are needed, and Plainview Landlord has requested access to conduct such repairs.

[10] This does not address any cure issues that may arise should the Debtor attempt to assume any remaining lease rights (if any). This would include, for example, other sums due under other executory obligations tied to the DPA and the costs and attorneys' fees incurred by the Plainview Landlord as a result of the lease/rental default that has existed since the order for relief.

**PLAINVIEW LANDLORD'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**
**Page 6**

- o   $12,500.00 (October 2019)[11]

- o   $12,500.00 (November 2019)

- o   $12,500.00 (December 2019)

- o   $12,500.00 (January 2020)

- $42,440.98 (2019 ad valorem taxes, due by January 31, 2020)

- All sums necessary to repair and rehabilitate the Dealership Property (ordinary wear and tear excluded). This amount is unknown at this time.

23.     Additionally, at the instance and request of the Debtors, Plainview Landlord agreed not to oppose the Debtors' most recent motion to continue, which if granted, could lead to occupancy into January 2020. The actual ruling on this continuance now has a February 12, 2020 plan confirmation hearing set – but the ruling does not address occupancy costs for this mission-critical facility.

24.     The Plainview Landlord has filed a motion for relief from the automatic stay, presently set for January 15, 2020. Certain issues raised here could be addressed in the disposition of that motion.

## V.     **Other Issues**

25.     The Debtor/Debtor-in-Possession has paid 2018 ad valorem taxes and insurance premiums covering the property. These expenditures, together with other interim rent, should be approved as reasonable costs of administering the estate.

---

[11] Under an agreement reached at or near the time the Debtors' motion to assume leases was filed, the parties agreed to a monthly base rent for occupancy of $12,500.00 per month. A compromised amount of $32,000.00 was paid for June-August 2019, occupancy. Mr. Rick Dykes paid $12,500.00 for the Debtors' September 2019 occupancy.

26.     Should the Debtor or any trustee seek to surcharge FMC, Plainview Landlord's

property damage should be a component of any such surcharge, the proceeds of which attributable

to the damage caused at the Plainview Dealership should be paid over to Plainview Landlord.

VI.     <b>Reservation of Rights</b>

27.     This motion does not take into account any claim that may arise as so-called

rejection damages resulting from any lease or contract rejection under Section 365, nor does it

otherwise address further administrative claims that may arise after the filing of this motion.

Likewise, this does not address "cure" amounts should the Debtors attempt to assume any lease or

executory contract, if any, with Plainview Landlord.[12]

28.     Plainview Landlord reserves all rights as described in the preceding paragraphs,

including the right to seek a determination and recovery of any applicable "cure" amount.

WHEREFORE, Plainview Landlord prays that the court grant her the administrative claim

and other relief requested above.  Plainview Landlord prays for general relief.

Respectfully submitted,

*/s/ Roger S. Cox*
ROGER S. COX, Texas State Bar No. 04956200
UNDERWOOD
P. O. Box 9158
Amarillo, Texas 79105-9158
Telephone (Direct): (806) 242-9651
Fax: (806) 379-0316
E-mail: roger.cox@uwlaw.com

Counsel for Patti Sue Noel, Independent Executor of
the Estate of M.I. "Jack" Morris, Deceased and Jack
Morris Ford Lincoln Mercury, Inc.

---

[12] Because of the ongoing lease/DPA defaults dating back to the order for relief, any "cure" amount must also include the Plainview Landlord's attorneys' fees. *See, In re Senior Care Centers, LLC*, 607 B.R. 580 (Bankr. N.D. Tex. 2019).

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was served by ECF (electronic) notification in this case (which includes counsel for the debtors and counsel for the United States Trustee).

Date of service:  January 8, 2020.

*/s/ Roger S. Cox*