

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 21, 2022**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REAGOR-DYKES MOTORS, LP,[1] | § | CASE NO. 18-50214-rlj11 |
| | § | (Jointly Administered) |
| Debtors. | § | |

## MEMORANDUM OPINION

The Court addresses the Trust's objection to the proofs of claim filed by Manheim Remarketing, Inc. and its affiliate Online Vehicle Exchange, L.L.C. ("OVE").[2] Hearing was held on June 22, 2022. As explained below, the Court holds that Manheim and OVE shall be allowed an administrative claim for two vehicles that the debtors purchased within 20 days of the relevant debtors' bankruptcy filings.

---

[1] The following chapter 11 cases are jointly administered in Case No. 18-50214: Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (Case No. 18-50321), Reagor-Dykes III LLC (Case No. 18-50322), Reagor-Dykes II LLC (Case No. 18-50323), Reagor Auto Mall, Ltd. (Case No. 18-50324), and Reagor Auto Mall I LLC (Case No. 18-50325).

[2] "Trust" refers to the Reagor-Dykes Auto Group Creditors Liquidating Trust created by the debtors' confirmed plan.

The Court has jurisdiction of this matter under 28 U.S.C. § 1334(b); this dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

This claim objection arises under the jointly administered bankruptcies of the Reagor-Dykes auto dealerships ("Reagor-Dykes").[3] Reagor-Dykes was a group of affiliated entities that were in the business of selling new and used motor vehicles. On August 1, 2018, six of the Reagor-Dykes entities filed for bankruptcy under chapter 11 of the Bankruptcy Code.[4] On November 2, 2018, the other five Reagor-Dykes entities filed for bankruptcy under chapter 11.[5] On July 10, 2020, the Court confirmed Reagor-Dykes' chapter 11 liquidation plan. The plan appointed Dennis Faulkner as the Trustee of the Reagor-Dykes Auto Group Creditors Liquidating Trust ("Trustee") with the power to administer the assets of the bankruptcy estate, including objecting to claims.

On December 5, 2018, Manheim filed a proof of claim in Reagor-Dykes' bankruptcy case for a secured amount of $312,150, and OVE filed a proof of claim in Reagor-Dykes' bankruptcy case for a secured amount of $225,100.[6] Manheim and OVE are affiliated entities that administer vehicle sales through auctions. When a vehicle is sold, they advance the purchase price to the seller. They then obtain a lien for the purchase price on the vehicle until they receive payment for the vehicle from the buyer. Manheim and OVE's claims are for the

---

[3] The Reagor-Dykes auto group consists of all the entities listed in note 1.
[4] Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP, Reagor-Dykes Amarillo, LP, Reagor-Dykes Auto Company, LP, Reagor-Dykes Plainview, LP, and Reagor-Dykes Floydada, LP.
[5] Reagor-Dykes Snyder, L.P., Reagor-Dykes III LLC, Reagor-Dykes II LLC, Reagor Auto Mall, Ltd., and Reagor Auto Mall I LLC.
[6] Manheim filed its secured claim of $312,150 in each of the Reagor-Dykes cases; OVE filed its secured claim of $225,100 in each of the cases as well. *See* ECF No. 2287, Ex. A for a listing of the case numbers and claim numbers. "ECF No." hereinafter refers to the numbered docket entries in this case, Case No. 18-50214.

sale of sixteen vehicles to Reagor-Dykes that Reagor-Dykes never paid for and upon which Manheim and OVE hold liens.

On November 8, 2021, the Trustee filed his sixth omnibus objection to claims, which included an objection to the claims of Manheim and OVE. The basis for the objection is that since the Trustee does not possess the vehicles securing their claims—regardless whether Reagor-Dykes possessed the vehicles at some point—Manheim and OVE, through bifurcation of their claims, hold no secured claim. Their claims are therefore wholly unsecured. On January 19, 2022, Manheim and OVE responded to the sixth omnibus objection reiterating that they still jointly hold a secured claim in the amount of $365,417 regardless whether the Trustee possessed the collateral securing their claim.[7] Alternatively, Manheim and OVE claimed they have an administrative claim under 11 U.S.C. § 503(b)(9) in the amount of $315,749 and a general unsecured claim of $49,668.[8] On June 9, 2022, Manheim and OVE filed a supplement to their response, asserting they hold a secured claim of $361,419 and an unsecured claim of $3,998 or, in the alternative, an administrative claim of $315,749 and a general unsecured claim of $49,668.

At the hearing on the claim objection, Manheim and OVE continued to assert that their entire claim is secured. They admitted, however, that if the Court did not accept that they hold a secured claim, the purchase of only two of the vehicles fell within the timeframe of § 503(b)(9), entitling Manheim and OVE to an administrative claim of about $22,000 with the balance of the claim being general unsecured. The Trustee asserted again that Manheim and OVE are not entitled to a secured claim in any amount because the Trustee possesses no collateral securing the claim. The Trustee also asserts that the bar date to file an administrative claim has passed

---

[7] In Manheim and OVE's response, they referred to a single claim as opposed to separate claims. The reduced claim amount is ostensibly due to payments received.
[8] "Section" or "§" hereinafter refers to the Bankruptcy Code, 11 U.S.C., unless otherwise stated.

and Manheim and OVE must file a separate motion explaining why there is cause that excuses their untimely request for an administrative claim.

## DISCUSSION

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." § 502(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim … and shall allow such claim in such amount." § 502(b). The filing of a proof of claim establishes a prima facie case against the debtor's assets. *In re Armstrong*, 320 B.R. 97, 102 (Bankr. N.D. Tex. 2005). "The claimant will prevail unless a party who objects to the proof of claim produces evidence to rebut the claim." *Id*. "[T]he ultimate burden of proof [on a claim objection then] lies with the party who would bear the burden if the dispute arose outside of the bankruptcy context." *Id*. at 103.

**I.    Secured Claim**

Manheim and OVE contend that they hold a secured claim of $361,419 against Reagor-Dykes based on their lien against the sixteen vehicles they sold to Reagor-Dykes. "Section 506(a) states that an allowed claim is secured only to the extent 'of the value of such *creditor's interest in the estate's interest in property* … .' If the estate has no interest in property, there can be no secured claim against it." *In re Vela*, No. BKR. 05-51081-RLJ-13, 2006 WL 6544155, at *3 (Bankr. N.D. Tex. Mar. 27, 2006) (emphasis in original). The Trustee does not possess the sixteen vehicles Reagor-Dykes purchased from Manheim and OVE and accordingly has no interest in that property. Manheim and OVE therefore do not hold a secured claim against Reagor-Dykes in any amount.

## II. Administrative Claim

Manheim and OVE argue that, even if they do not hold a secured claim, they hold an administrative claim in the amount of approximately $22,000 for two vehicles sold to Reagor-Dykes within twenty days before Reagor-Dykes filed bankruptcy. Under the Bankruptcy Code, an administrative claim is allowed for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." § 503(b)(9). The Trustee does not contest that Reagor-Dykes purchased and obtained possession of two vehicles from Manheim and OVE in the ordinary course of business within twenty days of Reagor-Dykes' first bankruptcy filings and concedes those sales fall within the purview of § 503(b)(9).

The Trustee argues that Manheim and OVE's request for an administrative claim should nevertheless be denied because it is untimely under Reagor-Dykes' bankruptcy plan. The plan states:

> For any Administrative Claim,[9] other than (i) a Professional Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtors, or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, an application or request for payment must be Filed with the Bankruptcy Court and served on the Debtors and the Creditors Trustee … within thirty (30) days after the Effective Date, unless an earlier date is established by the Bankruptcy Court.

ECF No. 1897 at 18, § 4.1(a).

Manheim and OVE raised their administrative expense claim in their response to the Trustee's omnibus objection; by then, the bar date under § 4.1(a) of the plan had long passed. But Manheim and OVE argue that their claim squarely rests within the exception of § 4.1(a)(ii) of the plan because the claim was incurred in the ordinary course of Reagor-Dykes' business.

---

[9] An "Administrative Claim" is defined in the plan as "any cost or expense of administration in connection with this Case of a kind specified in § 503(b)." ECF No. 1897 at 7, § 2.1.

The Trustee contends that § 4.1(a)(ii) nevertheless does not apply to prepetition claims under § 503(b)(9). The Trustee notes that the exception refers to the "Debtors," which only exist during a bankruptcy proceeding; the exception therefore only applies to postpetition claims. The Court agrees with Manheim and OVE and concludes that the plain language of the plan excuses claims under § 503(b)(9) from the administrative-claim bar date.

When interpreting provisions of a bankruptcy plan, traditional principles of contract interpretation apply. *Off. Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir. 1981). Furthermore, the plan states that Texas law governs its construction. ECF No. 1897 at 17, § 2.4. When interpreting a contract, courts "give words in the contract their plain meaning and examine the entire contract in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless." *TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.*, 233 S.W.3d 562, 567 (Tex. App.—Dallas 2007, pet. denied). "Only if interpretation of the plain meaning of the contract's provisions results in an ambiguity do [courts] then turn to interpretive canons to resolve the dispute." *Title Res. Guar. Co. v. Lighthouse Church & Ministries*, 589 S.W.3d 226, 233 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Section 4.1(a) of the plan sets a bar date for "Administrative Claims," which are defined as "any cost or expense of administration in connection with this Case of a kind specified in § 503(b)." ECF No. 1897 at 7, § 2.1. Manheim and OVE's claim arises under § 503(b)(9) and is accordingly an administrative claim subject to the § 4.1(a) bar date. But the plan also plainly excludes from the administrative-claim bar date "a liability incurred and payable in the ordinary course of business by the Debtors." ECF No. 1897 at 18, § 4.1(a)(ii). Manheim and OVE's claim was incurred in the ordinary course of business of Reagor-Dykes, which was a car

6

dealership that frequently purchased and sold used cars. Thus, Manheim and OVE's claim ostensibly falls under the § 4.1(a)(ii) exception to the administrative-claim bar date.

The Trustee contends that the § 4.1(a)(ii) exception applies only to postpetition claims. But nothing in the plan limits this exception to postpetition claims. "The omitted-case canon instructs, 'Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered.'" *Williams v. Lakeview Loan Servicing LLC*, 509 F. Supp. 3d 676, 680 (S.D. Tex. 2020) (quoting ANTONIN SCALIA AND BRYAN A. GARNER, *Reading Law: The Interpretation of Legal Texts 93* (West 2012)). The text of the plan contains no "exception to the exception" by which a prepetition administrative claim is excluded from § 4.1(a)(ii) of the plan, and the Court will not read such an exception into the plan.

As stated, the Trustee also contends that § 4.1(a)(ii) of the plan applies only to postpetition claims because it refers to the "Debtors," a term that applies only to entities in bankruptcy. But that the exception refers to the "Debtors" is of no consequence. The Plan defines "Debtors" as referring to the eleven Reagor-Dykes entities that filed bankruptcy with no reference to their postpetition or prepetition status. ECF No. 1897 at 11, § 2.1. Thus, properly reading no additional language into the plan, the term "Debtors" refers to the Reagor-Dykes entities at any stage in their existence, whether prepetition or postpetition.

The Trustee finally argues that the bar date for § 503(b)(9) claims is included "elsewhere in the plan." Hearing held June 22, 2022, ECF No. 2633. But the only bar date included in the plan is for administrative claims and fee claims, which are governed exclusively by § 4.1. The bar date for other unsecured claims is in the Court's Local Rules: "In a chapter 9 or 11 case, *where no bar date has otherwise been specifically set*, an unsecured creditor or equity security

7

holder … has a proof of claim timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors." U.S. Bankruptcy Court N.D. Tex. L.B.R. 3003-1 (emphasis added). For administrative claims like Manheim and OVE's, however, a bar date *has* been set with relevant exceptions. The plan categorizes all claims into two classes: (1) administrative claims and priority tax claims, and (2) classes of claims and interests. ECF No. 1897 at 17, Art. III. Claims under § 503(b)(9) explicitly constitute administrative claims under the plan. ECF No. 1897 at 7, § 2.1 ("'Administrative Claim' means any cost or expense of administration in connection with this Case of a kind specified in § 503(b)."). And § 4.1(a) of the plan sets the exclusive bar date for administrative claims. Thus, § 4.1(a) of the plan, not the Local Rules or any other provision of the plan, determines the bar date for Manheim and OVE's claim under § 503(b)(9) with relevant exceptions.

The Trustee could have proposed a separate bar date for § 503(b)(9) claims or excluded them from the § 4.1(a)(ii) exception, either of which would have led to his desired result. But the plan as worded does not do so. Manheim and OVE's claim is an Administrative Claim under the plan subject to § 4.1; no other plan provision or relevant law sets a bar date for such claims; and under the plain language of § 4.1(a)(ii) of the plan, read in harmony with the rest of the plan, claims under § 503(b)(9) fall under an exception to the bar date of § 4.1(a). Accordingly, Manheim and OVE's claim under § 503(b)(9) falls under an exception to the administrative-claim bar date and is not untimely.

### III. Conclusion

Manheim and OVE's claim is not secured in any amount because the Trustee never possessed the collateral upon which Manheim and OVE held liens. The full amount of Manheim and OVE's claim is therefore unsecured. § 506(a). For the two vehicles sold to Reagor-Dykes

in the ordinary course of business during the twenty days before Reagor-Dykes' first bankruptcy filing, Manheim and OVE hold an administrative claim. Under the plan, Manheim and OVE are excepted from the relevant bar date for filing their administrative claim. The total amount of Manheim and OVE's claims against Reagor-Dykes is $365,417, an amount that is not contested by the Trustee. Manheim and OVE have not, however, submitted the actual value of their administrative claim, only claiming that it is around $22,000. Manheim and OVE are thus granted leave to amend their general unsecured claim to exclude the amount of the administrative claim and file a separate administrative claim for the actual amount for the two vehicles.

### End of Memorandum Opinion ###